# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MW GESTION, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>1GLOBE CAPITAL LLC, JIAQIANG LI, CHIANG LI FAMILY, JEFF LI, and LINDA LI<br><br>       Defendants. | Case No.:  22-cv-11315<br><br>**<u>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff MW Gestion ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, and other information regarding Defendants' involvement with 1Globe Capital LLC and Sinovac Biotech Ltd. ("Sinovac" or the "Company"), and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.  INTRODUCTION

1.     This federal securities class action arises out of Defendants' fraud in connection with their battle for control of Sinovac, a biopharmaceutical company that focuses on the research, development, manufacturing, and commercialization of vaccines.

2.     Since January 2016, competing sets of shareholders have been vying for control of Sinovac. Defendants are individuals and entities associated with 1Globe Capital LLC ("1Globe"), a family investment office that is owned and controlled by Defendant Jiaqiang Li. Li was Sinovac's largest shareholders when the Company's CEO made an offer in January 2016 to buy Sinovac for approximately $350 million. Li supported a competing group that sought to buy Sinovac for a higher price. Rather than provide this support in an open and transparent manner, Li and 1Globe used deceptive practices to advance their position. After Sinovac adopted a rights agreement on March 28, 2016 containing a "poison pill" that limited the amount of Sinovac stock that a shareholder could acquire (the "Rights Agreement"), Defendants made many intentionally false and misleading statements, and violated their statutory disclosure obligations under Section 13(d)

of the Securities Exchange Act of 1934 ("Section 13(d)"), in order to conceal the extent and purpose of Li's and 1Globe's ownership of Sinovac stock.

3.    The details of Defendants' deceptive tactics are laid out in a Cease-and-Desist Order that the Securities and Exchange Commission issued on May 13, 2020 against Li and 1Globe (the "SEC Order"). The SEC determined that Li's and 1Globe's deceptive actions "depriv[ed] existing and potential shareholders"—such as Plaintiff and the Class—"of information necessary to make fully informed investment decisions." Moreover, the SEC imposed $290,000 in penalties on Li and 1Globe for their violations of their disclosure requirements under Section 13(d).

4.    For example, in early April 2016, right after the Rights Agreement was adopted, 1Globe and Li separately disclosed 16.4% and 6.19% positions in Sinovac stock, respectively. They misrepresented that these shares were held by separate parties, when in reality, they shared beneficial ownership in this combined 22.5% stake in Sinovac stock. Li sought to obscure his ownership position even further by making his separate disclosure under the name the "Chiang Li Family." The SEC found that the Chiang Li Family is merely an "assumed name" that Li sometimes uses to disclose his ownership of Sinovac stock.

5.    Defendants also falsely represented Li's stake in Sinovac by failing to update their disclosure forms and filing additional false forms that omitted substantial amounts of stock that Li directed family members to purchase in separate accounts beginning in May 2016. By the end of 2017, Li had acquired a 31% stake in Sinovac, but still disclosed only his and 1Globe's 16.4% and 6.19% positions.

6.    In addition to misrepresenting the amount of Sinovac stock that Li and 1Globe owned, Defendants misrepresented their secret plan to act in concert with other shareholders to try to take control of the Company. While Sinovac knew that Li and 1Globe were acting in concert

based on the Company's private communications with them during the battle for control of the Company, this information was not known to public shareholders.

7.      Plaintiff and the Class are Sinovac shareholders that have been caught in the middle of this battle between Sinovac's management and 1Globe for control of the Company. While Plaintiff and the Class also seek to receive fair value if Sinovac is taken private, Defendants' behind-the-scenes scheming impeded this effort. Instead, Defendants have caused Plaintiff and the Class substantial harm by making them lose their ability to collect at least millions of shares that they would have otherwise been entitled to under the Rights Agreement that Sinovac adopted on March 28, 2016.

8.      In addition, Defendants' actions caused even more harm because their misrepresentations and omissions concerning 1Globe's and Li's true ownership of Sinovac stock, and their efforts to take control of the Company, artificially suppressed the price of Sinovac stock from reaching the value that this information would have conferred. The SEC Order explains that "Section 13(d) is a key regulatory provision that allows shareholders and potential investors to evaluate substantial shareholdings and the implications of such shareholdings for their own investment in the security." 1Globe's and Li's misrepresentations and failures to make the disclosures that they were required to make under Section 13(d) deprived Plaintiff and the Class of being able to evaluate the implications of such a large shareholder and potential acquiror for their investment decisions.

9.      If it becomes known that shareholders trigger the poison pill in the Rights Agreement by acquiring 15% or more of Sinovac's stock, the rights of other shareholders, such as Plaintiff, to receive additional discounted shares of Sinovac stock become exercisable. This can take place either by shareholders exercising their Rights or through an Exchange that Sinovac's

Board can conduct under the Rights Agreement. Rather than disclose the full amount of Sinovac stock that Li owned or his plans to influence Sinovac—as Defendants were required to do under Section 13(d)—Li hid his actions that triggered the Rights Agreement by orchestrating a complex scheme in which he directed relatives to secretly purchase substantial stakes in Sinovac stock in separate accounts.

10.     Even the purchase of a single share of Sinovac stock above the Rights Agreement's 15% threshold constitutes a Trigger Event under the Rights Agreement. All of Li's and 1Globe's purchases of Sinovac stock that they made—or directed to be made on their behalf—after March 28, 2016, therefore triggered Sinovac's poison pill. The SEC Order makes clear that Li and 1Globe triggered the poison pill by May 2016, *at the latest*.

11.     Defendants' intentionally false statements and omissions concerning the true nature of Li's and 1Globe's ownership of Sinovac stock caused the Exchange under the Rights Agreement to be delayed by several years. If Li had fully disclosed his ownership of Sinovac stock, as he was required to do under Section 13(d), it would have been clear as day that the Rights Agreement was triggered by May 2016, at the latest. While Sinovac knew enough information starting in 2016, largely based on private correspondence, to determine that 1Globe and Li triggered the Rights Agreement, Defendants hid the full extent of their ownership of Sinovac stock and their agreements in connection with the battle for control of the Company.

12.     If 1Globe and Li's actions were disclosed publicly, as they were required to be under Section 13(d), Plaintiff's Rights would have been exercisable based on that public disclosure, and the Exchange would have occurred based on that date. By misrepresenting the true nature of their ownership of Sinovac stock, Defendants caused that date to be delayed almost three years, until February 22, 2019, resulting in Plaintiff and the Class losing their rights to acquire

additional shares of Sinovac stock for all of their shares that they sold in the interim. While Sinovac should have implemented the Rights Agreement in 2016 based on the information available to it at the time, 1Globe and Li exacerbated the problem by violating their disclosure obligations under Section 13(d). Moreover, Defendants caused the value of Sinovac stock to be artificially depressed by preventing the public from accounting for the value of Defendants' stake in Sinovac and their efforts to take control of the Company.

13.     The purpose of the Rights Agreement is to protect against shareholders such Li and 1Globe from acquiring a substantial stake in Sinovac in order to try to take control of the Company. The contentious dispute between Sinovac's management and 1Globe for control of the Company has taken a toll on other shareholders such as Plaintiff that are stuck watching this struggle unfold. Trading in Sinovac stock on the NASDAQ has been halted since February 22, 2019, while shareholders wait for a court to decide whether to side with Sinovac management or 1Globe. By misrepresenting their secret acquisitions of Sinovac stock, Li and 1Globe have caused Plaintiff and the Class to suffer the harm that has ensued from the fight for control of the Company, while losing out on the extra shares that the Rights Agreement is intended to provide them with in this exact type of situation.

14.     Li's tactics in the battle for control of Sinovac show his intention to deceive the public about the true nature of his Sinovac stock holdings. These activities came to a head at Sinovac's 2017 Annual General Meeting of Shareholders that it held on February 6, 2018 (the "Annual Meeting"). At this meeting, 1Globe and the other shareholders that it was supporting surprised Sinovac's management and incumbent Board by nominating and voting for a new slate of Directors, including a representative from 1Globe. While 1Globe's group cast the majority of

votes at the meeting, Sinovac's management took the position that the votes were not valid because of the group's secret plan to take control of the Company.

15.     Defendants have also harmed Sinovac's shareholders by interfering with the Rights Agreement. Sinovac has used Defendants' actions as a pretext to delay implementing the Rights Agreement as of the proper date. This breach by Sinovac of the Rights Agreement is a direct and foreseeable result of Defendants' trying to evade the Rights Agreement by hiding the full extent of their ownership of Sinovac stock and their agreements with other shareholders in the battle for control of Sinovac.

16.     This struggle for control of the Company has spawned lawsuits between Sinovac and the 1Globe parties in Massachusetts, Delaware, and Antigua (where Sinovac is incorporated). Sinovac alleges that it obtained a recording of a secret meeting between 1Globe and other Sinovac shareholders where they conspired to advance an alternative slate of directors at the Annual Meeting, but warned to "do this smartly. Don't leave any evidence to [Sinovac], showing that our shareholders have formed a 13(d) [group]. This is important." While 1Globe and Li dispute this evidence in their ongoing litigation against Sinovac, and claim that they did not know before the Annual Meeting that they would be voting for an alternative slate of directors, the SEC Order revealed on May 13, 2020 that Li and 1Globe "participated in an activist plan to replace four of five incumbent directors through a shareholder vote at Sinovac's 2018 annual shareholder meeting."

17.     Plaintiff brings this action on behalf of all holders of Sinovac stock other than Defendants who sold their shares between April 11, 2016 (the earliest possible date on which their Rights could have become exercisable) and February 22, 2019 (when Sinovac finally announced

an Exchange under the Rights Agreement) (the "Class Period"), to redress the harm that Defendants' fraudulent conduct has caused them to suffer.

## II.   JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

20.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) because a substantial part of the conduct complained of herein occurred in this District, and because each Defendant resides, conducts business in, and maintains operations within this District.

21.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   PARTIES

22.     Plaintiff MW Gestion is an institutional asset manager based in France that manages investment assets through separate funds and is authorized to bring legal action on their behalves. Prior to filing this Complaint, Plaintiff obtained a valid assignment of the claims of its fund that holds the Sinovac securities that are the subject of this action. Plaintiff's Certification, attached as Exhibit A to this Complaint, lists the transactions in Sinovac securities that are the subject of this action.

23.     Defendant 1Globe is a Delaware corporation with its principal place of business at 245 First Street, Riverview II, 18th Floor, Cambridge, MA 02142.

24.     Defendant Jiaqiang "Chiang" Li ("Li") is a citizen of the People's Republic of China, who resides in Boston, MA. He is the sole owner of 1Globe, which is a family office that purchases stock listed on U.S. exchanges.[1]

25.     Defendant the Chiang Li Family resides at 8 Museum Way, Cambridge, MA 02141-1889. Defendant Li has sometimes used an assumed name, Chiang Li Family, to disclose his ownership of Sinovac shares in SEC filings.

26.     Defendant Linda Li is Vice President and Director of 1Globe. She is also Manager of Corporate Development & Strategy at 1Globe Health Institute LLC ("GHI"). According to GHI's website, www.1globe-usa.com, GHI was founded in 2012 and is a "research organization" located at 333 Boston-Providence Turnpike, Norwood, MA 02062. GHI lists "Chiang J. Li" as one of its founders and the chairman of its board of directors. Linda Li is related to Defendant Li and has signed SEC filings on behalf of 1Globe purporting to disclose its holdings of Sinovac stock.

27.     Jeff Li is related to Defendant Jiaqiang "Chiang" Li. Jeff Li has signed SEC filings on behalf of 1Globe purporting to disclose its holdings of Sinovac stock, as a Managing Director of 1Globe. The SEC Order references Jeff Li as "Relative #1."[2]

---

[1] References in this Complaint to "Li" or "Defendant Li" refer to Defendant Jiaqiang Li rather than to his relatives that are also referenced in this Complaint.

[2] The SEC Order states that Relative #1 signed 1Globe's May 5, 2013 Schedule 13G disclosing its 6.19% ownership of Sinovac common stock, using the title "Managing Director" of 1Globe. Defendant Jeff Li is the individual that signed this Schedule 13G on behalf of 1Globe.

## IV.    **SUBSTANTIVE ALLEGATIONS**

28.     Sinovac is a biopharmaceutical company incorporated under the laws of Antigua and Barbuda, and based in Beijing, PRC. Sinovac focuses on the research, development, manufacturing and commercialization of vaccines that protect against human infectious diseases including, among other diseases, hepatitis A and B, hand foot and mouth disease caused by enterovirus 71, seasonal influenza, H5N1 and H1N1 pandemic influenza and mumps.

29.     Sinovac also developed a vaccine for COVID-19 called CoronaVac that is widely used around the world, including in China and South America. As of April 29, 2022, Sinovac provided over 2.8 billion doses of CoronaVac globally. Sinovac's total sales in 2021 increased from $510.6 million in 2020 to $19.4 billion in 2021, primarily as a result of sales of CoronaVac. In addition, the Company's total sales increased from $246.1 million in 2019 to $510.6 million in 2020, primarily as a result of sales of CoronaVac.

30.     On May 13, 2020, the SEC issued its cease-and-desist order that penalized 1Globe and Li $290,000 for their violations of Section 13(d) of the Securities Exchange Act and Rule 13d thereunder arising out of their improper disclosures related to their ownership of Sinovac stock. Li and 1Globe consented to the SEC Order and Li admitted to its findings for bankruptcy purposes.

31.     1Globe and Li agreed with the SEC that in any "Related Investor Action"—such as this one—"they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action."[3]

---

[3] The SEC Order defines a "Related Investor Action" as "a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding."

32.     Defendants' misrepresentations related to their holdings of Sinovac stock, and their failure to meet their disclosure obligations under Section 13(d), prevented Plaintiff and the Class from receiving the proper amount of Sinovac stock that they should be entitled to under the Rights Agreement that Sinovac adopted on March 28, 2016. Moreover, Defendants caused the value of Sinovac stock to be artificially depressed by preventing the public from being able to account for the value of Defendants' stake in, and efforts to take control of, the Company.

**A.      The Ongoing Battle for Control of Sinovac**

33.     Weidong Yin has been Sinovac's President, CEO, and Chairman since 2003. On January 30, 2016, Yin led a group of investors that submitted a proposal to the Company's Board of Directors to acquire all of Sinovac's shares for $6.18 in cash per share, valuing the company at approximately $350 million. This group of investors (the "Yin Group") owned 29.5% of Sinovac's shares, including 10.6% held by Yin and 18.94% held by an investment company called SAIF Partners IV.

34.     At the time of the Yin Group's offer, Sinovac had already produced successful vaccines and had several new lucrative products in the pipeline. For example, by January 2016, Sinovac had already received licenses from Chinese regulators for vaccines for hepatitis, flu, mumps, and foot-and-mouth disease. It also was in the midst of clinical trials for a Sabin-inactivated polio vaccine ("sIPV") and a varicella vaccine.

35.     Certain Sinovac shareholders unaffiliated with the Yin Group opposed Yin's offer as undervaluing Sinovac. On February 3, 2016, a competing consortium of investors led by Sinobioway, an investor in Sinovac's main operating subsidiary, submitted an offer to acquire all of Sinovac's shares for $7.00 in cash per share, substantially more than the Yin Group offered.

36.     1Globe and Li were Sinovac's largest shareholder at the time, holding approximately 22.5% of Sinovac's common stock by April 2016. They supported the Sinobioway Group's effort to purchase the Company for a higher price.

37.     Plaintiff agrees that if Sinovac is going to be sold, its shareholders should receive fair value for their shares. But Defendants' fraudulent plan that they undertook in response to the Yin Group's offer served only to further disenfranchise Plaintiff and the Class.

38.     On March 28, 2016, Sinovac adopted the Rights Agreement that contained a "poison pill" designed to prevent parties other than the Yin Group from taking control of Sinovac. On March 29, 2016, Sinovac announced that its Board of Directors adopted the Rights Agreement.

39.     The Rights Agreement granted rights through a dividend that the Board declared for each outstanding share of Sinovac common stock at the close of business on April 8, 2016. If the Rights Agreement is triggered, each Right allows the holder, other than the investors that trigger the Rights agreement, to purchase discounted shares of Sinovac stock or to receive free shares if the Board conducts an "Exchange." The Rights Agreement thus discourages outside parties from accumulating substantial portions of Sinovac stock by granting extra shares to Sinovac's other investors but not the potential acquirers.

40.     The Rights Agreement has been amended several times, including on March 24, 2017, June 26, 2017, March 6, 2018, February 22, 2019, and February 19, 2020, February 21, 2021, and February 21, 2022, to extend its expiration past its initial March 27, 2017 expiration date. The Rights Agreement is currently set to expire on February 22, 2023.

41.     The SEC Order states that Li was opposed to the Rights Agreement because he thought that it would discourage rival bids for the Company. Li therefore attempted to evade the

Rights Agreement by secretly accumulating a substantial portion of Sinovac's common stock so that he could influence the battle for control of the Company.

**B.    Defendants Triggered the Rights Agreement by May 2016**

42.    Li used several deceptive tactics to substantially increase his stake in Sinovac after the Rights Agreement was adopted. The SEC determined that Li is the sole owner of 1Globe, which is his family office that purchases stock listed on U.S. exchanges. In addition to acquiring Sinovac stock through 1Globe, Li "also purchases shares individually and has sometimes used an assumed name, Chiang Li Family, to disclose his ownership of such shares in SEC filings."

43.    In order to further conceal his total ownership stake in Sinovac stock, Li instructed multiple relatives, including Defendant Jeff Li, to purchase substantial stakes in the Company in separate accounts under their names. Li and 1Globe funded these purchases in order to increase their stake in Sinovac. These additional purchases were made at Li's direction, "using funds provided by 1Globe Capital and Li." 1Globe and Li therefore had beneficial ownership, including through voting and investment power, over all of these holdings in Sinovac stock across 1Globe's account, Li's account, the Chiang Li Family's account, and the accounts of relatives that purchased Sinovac stock at the direction of 1Globe and Li.

44.    Li and 1Globe triggered the Rights Agreement by acquiring additional shares of Sinovac stock by the beginning of May 2016, *at the latest*. The acquisition of beneficial ownership of 15% or more of Sinovac stock, as set out in Section 1.1 of the Rights Agreement, makes the acquiror an "Acquiring Person" under the Rights Agreement.

45.    In addition, Li and 1Globe further triggered the Rights Agreement through their agreement to act together in connection with the batter for control of Sinovac.

46.    Shares held as of the date that the Rights Agreement was executed are exempted, but if such "Existing Holders" acquire even a single additional share after that date that is over the

Rights Agreement's 15% threshold, that additional acquisition triggers the Rights Agreement.[4] When a party becomes an "Acquiring Person" under the Rights Agreement, that constitutes a "Trigger Event." (Rights Agreement § 1.15.)

47.     A person is considered a "beneficial owner" under the Rights Agreement of shares that "such person, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise has or shares voting power" or of shares that "are Beneficially Owned, directly or indirectly, by any other person with whom such person has an agreement, arrangement or understanding to act together for the purpose of acquiring, holding, voting or disposing of any securities of the Company." (Rights Agreement § 1.3.)

48.     When a "Trigger Event" occurs, the Acquiring Person's Rights become void. In addition, after the Trigger Event, Rightsholders other than the Acquiring Person have the right to acquire discounted shares of Sinovac common stock or the Board may conduct an "Exchange" of one new share of common stock for every Right not held by an Acquiring Person. (Rights Agreement §§ 11.1.2 and 27.) If shareholders choose to exercise their Rights, they may acquire shares of common stock having a market value of two times the then current Purchase Price of the Right.[5]

---

[4] Section 1.1 of the Rights Agreement explains this rule by stating that an Existing Holder becomes an Acquiring Person under the Rights Agreement if they "become the Beneficial Owner of one or more additional Common Shares" after the first public announcement of the Rights Agreement and those additional shares continue to make them "the Beneficial Owner of 15% or more of the Common Shares then issued and outstanding."

[5] The details of how Rights holders can exercise their Rights are described in Sections 7 and 11.1.2 of the Rights Agreement.

49.     The SEC Order makes clear that by May 2016, Li and 1Globe acquired additional shares above the Rights Agreement's 15% threshold beyond what they beneficially owned when the Rights Agreement went into effect on March 28, 2016:

> ***Beginning in May 2016***, using funds provided by 1Globe Capital and Li, Relative #1 began building on the Sinovac position in [Relative #2's account] account. From May 2016 through January 2017, an additional 4.2% of Sinovac's common stock was acquired in Relative #2's account, for a total 4.9% position. 1Globe Capital and Li funded substantially all of the purchases through ten separate wire transfers, totaling $13 million, during the second half of 2016. (Emphasis added).

50.     Defendants also triggered the Rights Agreement even before May 2016. The SEC found that "[a]s of April 30, 2016, Relative #2 held Sinovac common stock constituting approximately 0.7% of Sinovac's outstanding shares in a Canadian brokerage account." The portion of these shares that were purchased between when the Rights Agreement went into effect on March 28, 2016, and the April 30, 2016 date that the SEC noted, constitutes a Trigger Event because any purchases during that time added to Li's and 1Globe's stakes that were already over the 15% triggering threshold.

51.     In addition to all of these acquisitions of Sinovac stock, the SEC Order revealed that Li and 1Globe acquired additional shares of Sinovac stock in several acquisitions that took place through May 2018. (*See infra* ¶¶ 56, 72-73). Each of these additional acquisitions further triggered the Rights Agreement.

52.     The SEC Order explains that Li funded his relatives' purchases with cash transfers totaling at least $23 million and by transferring the shares of another stock that his relatives then liquidated to fund additional purchases of Sinovac stock.

53.     Li and 1Globe also triggered the Rights Agreement during the Class Period when they acquired beneficial ownership of additional shares by virtue of their forming an agreement, arrangement, or understanding to act together with other shareholders to vote their shares in favor

of the Sinobioway Group's offer to buy the Company and in favor of an alternative slate of directors at Sinovac's Annual Meeting. (*See, e.g., infra* ¶¶ 68-71, 73(d), 108, 111).

54.     This size of Defendants' holdings of Sinovac stock was crucial because Yin's offer to purchase the Company needed to be "approved by a special resolution passed by not less at least two-thirds of the Shares present and voting in person or by proxy" at a meeting that would be held to vote on the Yin Group's agreement to buy the Company. The Yin Group required the support of a substantial number of other shareholders for the transaction to be approved because the group held only 29.5% of Sinovac stock.

**C.     Defendants Violated Their Disclosure Obligations under Section 13 of the Exchange Act**

55.     The SEC Order found that Li and 1Globe violated their disclosure duties under Section 13(d) several times during the Class Period by making false statements, and failing to meet their disclosure obligations, in their disclosure forms that they filed with the SEC purporting to disclose 1Globe's and the Chiang Li Family's ownership of Sinovac stock.

56.     These false and misleading statements that Defendants made in connection with 1Globe's and Li's Section 13 filings concealed the fact that Defendants caused a Trigger Event soon after the Rights Agreement was adopted, and several times thereafter, including each of their purchases of Sinovac of stock leading up to Li's and 1Globe's having beneficial ownership of approximately 31% of Sinovac's stock by December 2017, and then 32.6% by May 2018.

57.     The SEC Order explains that Section 13(d)(1) and Rule 13d-1(a) "require any person, including a group, that has acquired, directly or indirectly, beneficial ownership of more than five percent of a class of a registered equity security to file a statement with the Commission disclosing the identity of its members and the purpose of its acquisition." These requirements are met by filing a Schedule 13D with the SEC within ten days after parties acquire the requisite

beneficial ownership. The Schedule 13D form requires the filer to disclose several types of information related to their securities ownership, including any shared beneficial ownership, any agreements related to the securities of the issuer, and the purpose of the acquisition.

58.      In addition, "Section 13(d)(2) of the Exchange Act and Rule 13d-2(a) together require a filer to promptly amend the filer's Schedule 13D when there are material changes to the facts previously reported."

59.      On May 9, 2013, 1Globe filed an initial Schedule 13G disclosing beneficial ownership of 6.19% of Sinovac common stock. A Schedule 13G is a short-form filing that Exchange Act Rule 13d-1(c) allows passive investors to file to meet their Section 13(d) disclosure duties, if they own less than 20% of the class of securities at issue and can certify that the securities were not acquired or held with the "purpose, or with the effect, of changing or influencing the control of the issuer."

60.      This Schedule 13G was signed by Defendant Jeff Li, who identified himself as a Managing Director of 1Globe and who the SEC Order describes as "Relative #1," a relative of Jiaqiang Li. The SEC Order explains that Jeff Li "has sometimes used the title of 1Globe Capital 'Managing Director.'" Since at least 2013, Jiaqiang Li has granted Jeff Li access to 1Globe's and Jiaqiang Li's personal brokerage accounts "in order to engage in securities transactions at Li's general direction, for 1Globe Capital and Li's benefit."

61.      1Globe and Li proceeded to substantially increase their holdings of Sinovac securities after their initial Schedule 13G. On April 5, 2016, shortly after Sinovac entered into the Rights Agreement, 1Globe filed an amendment to its Schedule 13G, disclosing a 16.44% position in Sinovac common stock.  Defendant Linda Li signed this Schedule 13G on behalf of 1Globe, as a Director of the company.

62.    A few days later, on April 11, 2016, Jiaqiang Li filed an initial Schedule 13G, under the name Chiang Li Family, further disclosing a 6.08% position in Sinovac common stock. This Schedule 13G was dated March 31, 2016 and signed by the Chiang Li Family. The SEC Order explains that in addition to purchasing Sinovac shares through 1Globe's account, Li "purchases shares individually and has sometimes used an assumed name, Chiang Li Family, to disclose his ownership of such shares in SEC filings."

63.    The SEC Order also explains that all of the shares referenced in 1Globe's and the Chiang Li Family's Schedule 13G filings were purchased by Jeff Li (who signed 1Globe's May 5, 2013 Schedule 13G). The SEC determined that "1Globe Capital and Li had voting and investment power over all of the shares reported on separate Schedule 13G filings submitted by 1Globe Capital and Chiang Li Family. Therefore, the entire cumulative 22.5% block of Sinovac stock was beneficially owned by both 1Globe Capital and Li. Having acquired a collective 20% or more of the class of Sinovac securities, they were thus ineligible to file a Schedule 13G as Passive Investors under Rule 13d-1(c)." They should have filed a Schedule 13D instead to disclose their full, substantial stake in Sinovac stock.

       1.     <u>Li Acquired Additional Sinovac Stock in His Relatives' Accounts Starting in May 2016</u>

64.    After filing these Schedule 13G forms on behalf of 1Globe and the Chiang Li Family in early April 2016, Defendants proceeded to secretly increase 1Globe's and Li's holdings of Sinovac. Li directed a relative ("Relative #2") to purchase additional Sinovac stock in a separate account. As of April 30, 2016, this relative held approximately 0.7% of Sinovac's outstanding shares in a Canadian brokerage account. The SEC Order explains that "Relative #1 [*i.e.*, Jeff Li] had access to Relative #2's account and sometimes engaged in securities transactions in that

account. Beginning in May 2016, using funds provided by 1Globe Capital and Li, Relative #1 began building on the Sinovac position in this account."

65.     The SEC Order further explains that "[f]rom May 2016 through January 2017, an additional 4.2% of Sinovac's common stock was acquired in Relative #2's account, for a total 4.9% position. 1Globe Capital and Li funded substantially all of the purchases through ten separate wire transfers, totaling $13 million, during the second half of 2016."[6] Because 1Globe and Li had or shared voting and investment power over the Sinovac shares in Relative #2's account, 1Globe and Li were "beneficial owners" of the securities.

66.     Relative #2's holdings of 4.9% of Sinovac's stock fell just below the 5% disclosure threshold (although Defendants still violated Section 13's disclosure requirements because of Li's and 1Globe's shared beneficial ownership of all of their Sinovac stock). As the SEC found, Jeff Li therefore opened a new "Canadian brokerage account in his own name in late December 2016 and began purchasing Sinovac shares in the account after receiving" a total of $10 million in wire transfers from 1Globe and Li in February and March 2017. Relative #1 attained a 3.5% position in Sinovac shares in the new account from February through December 2017. The SEC determined that 1Globe and Li also had or shared voting and investment power over the Sinovac shares in this new account and were therefore "beneficial owners" of the securities.

            2.    Defendants' Section 13 Violations

67.     As a result of these secret purchases by related parties, by December 2017, 1Globe and Li had beneficial ownership of approximately 31% of Sinovac's outstanding common stock. At this point however, Defendants still disclosed only the 22.5% position that they held in 1Globe

---

[6] These purchases were also funded through Li's transfer of "a large block of shares of another stock to Relative #2's Canadian account. The shares were then liquidated and the proceeds used toward the ongoing purchases of Sinovac shares in Relative #2's account."

and Li's accounts. This violated their disclosure requirements under Section 13 for several reasons, including because they did not disclose the total amount of Sinovac securities that they beneficially owned in Relative #1 and #2's accounts, they improperly split their disclosure into two separate 13G schedules (one for 1Globe and one for the Chiang Li Family) instead of filing a single Schedule 13D, and they misstated their purpose in purchasing their Sinovac securities.

68.     On July 7, 2017, 1Globe converted its amended Schedule 13G that it had filed in April 2016 disclosing a 16.44% stake in Sinovac stock, to a Schedule 13D. 1Globe stated in this new filing that it now held the shares of Sinovac stock with a "control purpose," in that it supported the Sinobioway Group's privatization proposal and to "express[] its willingness to vote its shares of Common Stock in favor of such acquisition and roll-over its shares of Common Stock in connection with the acquisition."

69.     This Schedule 13D still did not disclose any of the reportable, material increases in 1Globe's and Li's beneficial ownership that had occurred since 2016, their agreement with each other and other related parties with respect to these shares, or the purpose of any of the shares other than the 16.44% stake that was disclosed in this new filing.

70.     The SEC Order determined that Defendants also acted improperly in connection with Sinovac's Annual Meeting that it held on February 6, 2018. "By at least January 22, 2018, 1Globe Capital and Li had decided to participate in an activist plan, obtain proxies for the Sinovac shares held in their accounts, and instruct their representatives to attend the annual meeting and vote their shares for the Alternative Slate" of directors that the Sinobioway Group proposed at the Annual Meeting. This alternative slate of directors included a relative of Defendant Li who has been employed under Li's general direction as an officer of 1Globe's Beijing research affiliate since at least 2016.

71.     1Globe then filed an amended Schedule 13D on March 26, 2018, only with respect to the 16.4% position that it held in its own account. This amended Schedule 13D misstated Defendants' intentions in connection with the Annual Meeting by claiming that 1Globe "did not have an intention to nominate or second the nomination of a slate of proposed directors that would change the composition of the board." This amended Schedule 13D also continued to misstate 1Globe's true total beneficial ownership of Sinovac stock, its purpose for acquiring or holding the stock, and its agreements with related parties in connection with Sinovac stock.

72.     Defendants' disclosure violations were made even worse by the fact that from January through May 2018, as the resolution of the Annual Meeting remained in limbo, Jeff Li continued to purchase more Sinovac stock in his account with 1Globe's and Li's funds. These purchases added a 1.6% position in Sinovac shares during this time period, raising 1Globe's and Li's beneficial ownership to approximately 32.6% of Sinovac's stock. None of these purchases were disclosed in updated Section 13 filings that 1Globe and Li were required to make for these purchases. Jeff Li stopped buying Sinovac shares in this account only because his broker placed limitations on further purchases after conducting a compliance inquiry.

73.     The SEC determined that 1Globe's and Li's actions violated Sections 13(d)(1) and 13(d)(2) of the Exchange Act and Rules 13d-1 and 13d-2 thereunder. In particular:

    a. No later than April 5, 2016, 1Globe and Jiaqiang Li violated Section 13(d)(1) and Rule 13d-1(f)(1) by failing to disclose their shared beneficial ownership of 20% or more of Sinovac common stock;

    b. From July 2017—when 1Globe converted its Schedule 13G disclosing a 16.44% stake in Sinovac stock to a Schedule 13D—through June 2018, 1Globe and Li violated Section 13(d)(2) and Rule 13d-2(a) because they failed to file a Schedule 13D amendment disclosing multiple additional material acquisitions of shared beneficial ownership of Sinovac common stock;

    c. 1Globe's July 7, 2017, Schedule 13D violated Section 13(d)(1) and Rule 13d-1 because 1Globe and Jiaqiang Li failed to disclose 1Globe's full beneficial

ownership of Sinovac common stock, 1Globe's "Item 4 plans or proposals with respect to additional acquisitions of Sinovac shares," and its "Item 6 arrangements, understandings or relationships with respect to Sinovac securities";

d.  No later than July 7, 2017, Li violated Section 13(d)(1) and Rules 13d-1(e)(1) and 13d-1(f)(1) by failing to file "a Schedule 13D disclosing, in connection with all of the Sinovac common stock shares of which he was a beneficial owner, his plans to support [the Sinobioway Group's] proposed Sinovac privatization";

e.  No later than January 22, 2018, 1Globe and Jiaqiang Li violated Section 13(d)(2) and Rule 13d-2 because they "failed to file a Schedule 13D amendment disclosing their participation in an effort to replace four of Sinovac's five incumbent directors through a shareholder vote at the Sinovac annual meeting"; and

f.  1Globe and Li violated Section 13(d)(2) and Rule 13d-2 because 1Globe's March 26, 2018 Schedule 13D/A:

   i.  failed to disclose 1Globe's full beneficial ownership of Sinovac common stock shares, inclusive of shared beneficial ownership in shares held in Li's account and Relative #1 and #2's accounts;

   ii.  made incomplete disclosure regarding 1Globe's actions in connection with the February 2018 annual shareholder meeting while omitting material facts concerning 1Globe's and Li's participation in the effort to replace four of Sinovac's five incumbent directors;

   iii.  failed to disclose 1Globe's Item 4 plans or proposals with respect to additional acquisitions of Sinovac shares, even as Relative #1 continued to undertake purchases substantially funded by 1Globe Capital and Li; and

   iv.  failed to disclose 1Globe's Item 6 arrangements, understandings or relationships with respect to Sinovac securities, even as Relatives #1 and #2 both held Sinovac shares in their accounts, the purchase of which had been substantially funded by 1Globe Capital and Li.

D.  **Defendants Had a Duty to Disclose, and Made Materially False and Misleading Statements Concerning, Li's Holdings of Sinovac Stock**

   1.  Defendants Violated Their Disclosure Duties Under Section 13(d) and Rule 13d

74.  Throughout the Class Period, Defendants violated their duty under Section 13(d) and Rule 13d to disclose material information concerning Li's and 1Globe's holdings of Sinovac stock.

75.     First, Defendants had a duty under Section 13(d) and Rule 13d to file a Schedule 13D disclosing the full extent of Li's and 1Globe's shared beneficial ownership of Sinovac stock across accounts held by 1Globe, Li, the Chiang Li Family, and Li's relatives who purchased Sinovac stock at the direction of Li.

76.     Second, Defendants had a duty to file a Schedule 13D amendment disclosing each material acquisition of additional shares of Sinovac stock.

77.     Third, Defendants had a duty to disclose their plans in connection with all of their Sinovac holdings to support the Sinobioway Group's offer for the Company, to support the alternative slate of Directors at the Annual Meeting, and to acquire additional shares of Sinovac stock.

78.     Fourth, Defendants had a duty to disclose the full extent of their relationships and agreements to act in concert with other Sinovac shareholders to advance those plans, including their agreements and relationships among each other and with the Sinobioway Group.

2.     <u>Defendants Made Materially False and Misleading Statements Concerning Their Sinovac Stock Holdings</u>

79.     In addition to violating their duties to disclose under Section 13(d) and Rule 13d, Defendants made materially false and misleading statements in each of 1Globe's and Li's (as the Chiang Li Family) Schedule 13G and Schedule 13D filings that they made during the Class Period.

80.     The amended Schedule 13G that 1Globe filed on April 5, 2016, signed by Defendant Linda Li, falsely disclosed a 16.44% stake in Sinovac stock, and falsely certified that the securities at issue "were not acquired and are not held for the purpose of and do not have the effect of changing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having such purpose or effect for the time being."

81.    These statements were materially false and misleading, and violated Section 13(d)(1) and Rule 13d-1(f)(1), because they misrepresented or failed to disclose (i) - 1Globe's and Li's shared beneficial ownership of 20% or more of Sinovac common stock; (ii) - Defendants' agreements and relationships with each other concerning their Sinovac stock; (iii) – their plans to purchase additional shares of Sinovac stock; and (iv) - their plans to support the Sinobioway Group's offer for the Company.

82.    The Schedule 13G that Li filed as the Chiang Li Family on April 11, 2016 (and dated March 31, 2016), falsely disclosed a 6.08% stake in Sinovac stock, and falsely certified that the securities at issue "were not acquired and are not held for the purpose of and do not have the effect of changing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having such purpose or effect for the time being."

83.    These statements were false and misleading, and violated Section 13(d)(1) and Rule 13d-1(f)(1), because they misrepresented or failed to disclose (i) - 1Globe's and Li's shared beneficial ownership of 20% or more of Sinovac common stock; (ii) - Defendants' agreements and relationships with each other concerning their Sinovac stock; (iii) – their plans to purchase additional shares of Sinovac stock; and (iv) - their plans to support the Sinobioway Group's offer for the Company.

84.    The Schedule 13D that 1Globe filed on July 7, 2017, signed by Defendant Linda Li, continued to falsely disclose a 16.4% stake in Sinovac stock and falsely added:

> The purpose of the acquisition was investment. 1Globe Capital LLC supports the Sinobioway Consortium's proposal to acquire all of the Common Shares of Sinovac Biotech for the consideration of $8 per Common Share and has expressed its willingness to vote its shares of Common Stock in favor of such acquisition and roll-over its shares of Common Stock in connection with the transaction. Except as indicated above, 1Globe Capital LLC as of the date of this Statement does not have

any plans or proposals which relate to or would result in additional acquisitions or dispositions of shares of Sinovac Biotech Ltd. Except as indicated above, 1Globe Capital LLC as of the date of this Statement does not have any plans or proposals which relate to or would result in changing the organizational structure, management, governance of Sinovac Biotech Ltd.

85.     These statements were false and misleading, and violated Section 13(d)(1) and Rule 13d-1, because they misrepresented or failed to disclose (i) - 1Globe's and Li's shared beneficial ownership of 20% or more of Sinovac common stock; (ii) - Defendants' agreements and relationships with each other concerning their Sinovac stock; (iii) – their plans to purchase additional shares of Sinovac stock; and (iv) – the full extent of their agreements and relationships with members of the Sinobioway Group with respect to their Sinovac stock.

86.     The amended Schedule 13D that 1Globe filed on March 26, 2018 (dated March 23, 2018), signed by Defendant Linda Li, continued to falsely disclose a 16.4% stake in Sinovac stock and falsely added that Sinovac's allegations in the lawsuit that it filed in this District that 1Globe violated Section 13(d) "are wholly without merit for several reasons, including without limitation, that it has fully complied with its disclosure and filing obligations under Section 13(d)," that the director from the alternative slate that is affiliated with 1Globe "was nominated by an existing shareholder of the Issuer that is unaffiliated with" 1Globe, that prior to the Annual Meeting, 1Globe "did not have an intention to nominate or second the nomination of a slate of proposed directors that would change the composition of the Board," and that 1Globe " simply exercised their basic and legally-protected rights to vote on board of directors at the" Annual Meeting.

87.     These statements were materially false and misleading, and violated Section 13(d)(2) and Rule 13d-2, because they misrepresented or failed to disclose (i) 1Globe's and Li's shared beneficial ownership of 20% or more of Sinovac common stock; (ii) 1Globe's actions in connection with the Annual Meeting, including 1Globe's and Li's participation in the effort to

replace four of Sinovac's five incumbent directors; (iii) Defendants' agreements and relationships with each other concerning their Sinovac stock; and (iv) their plans to purchase additional shares of Sinovac stock.

**E.    Defendants' Misstatements and Section 13(d) Violations Harmed Plaintiff and the Class**

88.    Even though a Trigger Event occurred in May 2016 and earlier immediately following the adoption of the Rights Agreement, Defendants' false and misleading disclosures in violation of Section 13(d) prevented Plaintiff and the Class from being able to obtain their rightful shares under the Rights Agreement. The whole point of the Rights Agreement is to prevent precisely the type of acquisitions that Defendants secretly made.

89.    The Rights Agreement provides that Rights become exercisable on the "Distribution Date," which occurs on the close of business on the tenth Business Day after the "Share Acquisition Date." (Rights Agreement §§ 3.1, 7.1).

90.    The Share Acquisition Date, in turn, is "the first date of public announcement (which, for purposes of this definition, shall include, without limitation, *the filing of a report pursuant to Section 13(d) of the Exchange Act* or pursuant to a comparable successor statute) by the Company or an Acquiring Person that an Acquiring Person has become such or that discloses information which reveals the existence of an Acquiring Person or such earlier date as a majority of the Board shall become aware of the existence of an Acquiring Person." (Rights Agreement § 1.13 (emphasis added)). An Acquiring Person is someone, or a group, that is the "Beneficial Owner of 15% or more of [Sinovac's] Common Shares then issued and outstanding." (Rights Agreement § 1.1).

91.    Until the "Distribution Date," "the Rights (and the right to receive certificates therefor) will be transferable only in connection with the transfer of the underlying Common

Shares." Then, "[a]s of and after the Distribution Date, the Rights will be evidenced solely by" Right Certificates. At this point, the Rights no longer transfer "in connection with the transfer of the underlying Common Shares." Instead, "as of and after the Distribution Date, the Right Certificates are transferable only on the registry books of the Rights Agent if surrendered at the office of the Rights Agent designated for such purpose, duly endorsed or accompanied by a proper instrument of transfer with all required certifications completed." (Rights Agreement §§ 3.1 and 16(b)). [7]

92.    When a Trigger Event occurs, the Rights Agreement gives Rightsholders the ability to purchase discounted shares of Sinovac stock. Alternatively, Sinovac's Board can choose to conduct an "Exchange" under the Rights Agreement whereby Rightsholders exchange their Rights "at an exchange ratio of one Common Share per Right." But neither of these events may occur under the Rights Agreement until after the Distribution Date (which itself does not occur until ten business days after the Share Acquisition Date). (Rights Agreement §§ 7.1, 11.1.2 and 27).

93.    Defendants' material misstatements and omissions concerning their ownership of Sinovac stock caused a delay in certain bases for the Share Acquisition Date. As a result, Plaintiff and the Class are not able to obtain the shares that they would have been entitled to under the Rights Agreement for all shares of Sinovac stock that Plaintiff and the Class sold between the beginning of the Class Period (which is the earliest possible Distribution Date under the Rights

---

[7] The Rights Agreement also provides that "[a]s soon as practicable after the Distribution Date, the Company will prepare and execute, the Rights Agent will countersign and the Company (or, if requested, the Rights Agent) will send" the Right Certificates "to each record holder of Common Shares as of the close of business on the Distribution Date (other than any Acquiring Person or any Related Person of an Acquiring Person), at the address of such holder shown in the register of members of the Company or the transfer agent or registrar for the Common Shares."

Agreement) and February 22, 2019 (when Sinovac declared an Exchange of Rights under the Rights Agreement).

94.     If Defendants had disclosed the true extent and purpose of their beneficial ownership of Sinovac common stock, that would have constituted a Share Acquisition Date. The occurrence of the Share Acquisition Date then would have automatically made the Distribution Date occur ten business days later. At that point, the Rights would have remained in Plaintiff's possession regardless of whether Plaintiff sold any of its Sinovac stock, because after the Distribution Date, the Rights no longer transfer "in connection with the transfer of the underlying Common Shares." If Defendants had truthfully disclosed the extent and nature of their ownership of Sinovac stock, as they were required to do under Section 13(d), then Plaintiff would have retained its full set of Rights for all of the shares that Plaintiff held as of the Distribution Date, regardless of when Sinovac subsequently chose to conduct an Exchange for those Rights.

95.     Plaintiff held hundreds of thousands more Sinovac securities as of May 2016 than it held as of February 22, 2019, when Sinovac declared an Exchange under the Rights Agreement. (*See* Plaintiff's Certification, attached as Exhibit A.) Defendants' false and misleading statements have caused Plaintiff to lose its Rights for this substantial amount of Sinovac securities.

96.     Moreover, Defendants' actions caused even more harm because their misrepresentations concerning 1Globe's and Li's true ownership of Sinovac stock, and their efforts to take control of the Company, artificially suppressed the price of Sinovac stock from reaching the value that this information would have conferred.

F.     **Defendants' Other Deceptive Tactics in the Battle for Control of Sinovac Confirm That They Intentionally Misrepresented Their Sinovac Holdings**

97.     After Sinovac adopted the Rights Agreement on March 28, 2016, the Yin Group and the Sinobioway Group continued to try to advance their competing bids for Sinovac. 1Globe

and Li engaged in unscrupulous tactics in their effort to defeat Yin and Sinovac's incumbent Board that they viewed as beholden to Yin.

98.     The SEC Order found that during the struggle for control of the Company, 1Globe and Li, as large Sinovac shareholders, corresponded and met with representatives of the Yin Group, the Sinobioway Group, and Sinovac management. Li stated his disapproval of Sinovac's poison pill because he believed that it could discourage rival bids. During these meetings, Li also expressed his desire for 1Globe to be represented on Sinovac's Board of Directors, including during an August 2017 joint meeting between him and the two groups vying for control of Sinovac. Li acquired substantial shares of Sinovac stock in violation of the Rights Agreement in order to further these efforts.

99.     On June 26, 2017, Sinovac issued a press release announcing that it had entered into a definitive "Amalgamation Agreement" for the Yin Group to purchase Sinovac for $7.00 per share.

100.    The Sinobioway Group responded immediately by submitting a revised proposal to acquire Sinovac for $8.00 per share. Sinovac's Board told the Sinobioway Group in late October 2017 that it rejected the group's revised offer because of purported concerns with the group's funding. The Sinobioway Group viewed this explanation as a pretext for the Board to continue to support the Yin Group's proposal. Sinobioway wrote a letter to shareholders alleging several types of misconduct by Sinovac's management in the operation of the Company's business.

101.    A dispute then arose at Sinovac's February 6, 2018 Annual Meeting between the Company's management and 1Globe concerning the composition of Sinovac's Board. 1Globe joined with the Sinobioway Group to try to elect an alternative slate of Directors to Sinovac's Board in an attempt to take control of Sinovac's Board and thwart the Yin Group's efforts to buy

the company. The alternative slate of directors received more votes at the Annual Meeting than the incumbent slate of directors. 1Globe then issued a press release after the Annual Meeting declaring that its nominees were successfully elected to the Board.

102.   But the incumbent Board and Sinovac's management took the position that Defendants' votes were not valid, including because they did not disclose before the Annual Meeting that they planned to nominate an alternative slate of directors or that they had formed a group to vote together at the meeting in an effort to take control of Sinovac. Sinovac issued a press release on March 5, 2018, stating that the incumbent Board was "re-elected by a majority of the votes validly cast. The Company determined, after consultation with its Antigua legal counsel, that a ballot proposed by the dissident group without prior notice at the AGM was invalid."

103.   The fallout from Sinovac's contested Annual Meeting is the subject of several lawsuits between Sinovac and 1Globe.[8]

104.   Sinovac brought an action in Delaware Chancery Court against 1Globe and the parties that voted with it at the Annual Meeting, seeking a declaration of a Trigger Event because 1Globe and the other related defendants "became Acquiring Persons under the Rights Agreement [thereby effectuating a Trigger Event] on or before February 6, 2018."[9]

---

[8]  In addition, after these events, on July 3, 2018, Sinovac terminated the Amalgamation Agreement, stopping its agreement allowing the Yin Group to purchase Sinovac for $7.00 per share. But Sinovac also embarked on other efforts to aid Yin's improper attempts to take control of Sinovac. In this same July 3, 2018 announcement, Sinovac disclosed that it was issuing 11.8 million shares to two entities that were members of the Yin Group at a price of $7.35 per share— significantly below the Sinobioway Group's offer of $8 per share and Sinovac's share price of $8.66 per share as recently as June 8, 2018. This transaction had the effect of increasing the Yin Group's holdings of Sinovac stock from approximately 29% to approximately 41%.

[9]  This action is captioned *Sinovac Biotech Ltd. v. 1Globe Capital, LLC*, et al., C.A. No. 2018-0143-JTL (Del. Ch.) (the "Delaware Action").

105.     Sinovac brought this action rather than go ahead and declare that a Trigger Event occurred, because the Company "anticipates Defendants [including 1Globe and Li] will dispute that their actions caused a Trigger Event under the Rights Agreement."

106.     That is exactly what happened. In addition to contesting Sinovac's claims in the Delaware action, 1Globe brought suit in Antigua seeking to have the court declare 1Globe's slate of directors as the properly elected Board.[10]

107.     Sinovac has also brought an action against 1Globe in this District seeking injunctive relief for 1Globe's Section 13(d) violations.[11]

108.     The evidence raised in these lawsuits demonstrates the extent to which 1Globe and Li secretly coordinated to rig the vote at the Annual Meeting and have blatantly lied about those efforts. This evidence includes a recording of what Sinovac describes as a secret meeting between 1Globe, its related parties, and the Sinobioway Group, where they agreed to secretly advance an alternative slate of directors at the Annual Meeting. Sinovac obtained this recording after Sinobioway's Chairman "and about 300 unnamed individuals in security uniforms forcibly entered Sinovac Beijing's Changping site [at 3:20 a.m. on May 19, 2018], in an attempt to steal data and take control of the manufacturing site."

109.     According to Sinovac, these intruders left behind two laptop computers and two thumb drives that contained minutes and the audio recording from a January 8, 2018 teleconference between 1Globe and the Sinobioway Group in which they discussed their secret plan to "replace the Board of Directors during the Annual General Meeting." 1Globe's counsel from DLA Piper

---

[10] This action is captioned *1 Globe Capital, LLC, Claimant, and Sinovac Biotech Ltd.*, Defendant, ANUHCV 2018/0120 (Eastern Caribbean Supreme Court, Antigua and Barbuda).

[11] This action is captioned *Sinovac Biotech Ltd. v. 1Globe Capital LLC and The Chiang Li Family*, No. 18-cv-10421-NMG (D. Mass) (the "Massachusetts Action").

cautioned at this meeting that the group needed to conceal that they were acting in concert. He stated: "The key is we will not only do this, but also do this smartly. Don't leave any evidence to [Sinovac], showing that our shareholders have formed a 13(d) [inaudible] group. This is important." The participants at this meeting also agreed to "conduct internal rehearsal of the Annual General Meeting one or two weeks before February 6" in a manner to avoid detection as "conspirators."

110.    On December 19, 2018, the High Court of Justice of Antigua and Barbuda dismissed 1Globe's claim because 1Globe's "secret plan to take control of" Sinovac led to an "ambush" at the Annual Meeting that "deprived shareholders of the opportunity to make an informed and intelligent decision." The court in Antigua also held that the Rights Agreement is valid under Antigua law.

111.    The court in Antigua also determined that 1Globe's testimony that it was not aware of the proposed alternative slate before the Annual Meeting was not credible. For example, the court determined that Pengfei Li—the 1Globe employee that the Sinobioway Group nominated to the Board—must have been part of the group's plan because he would not otherwise have accepted the nomination on the spot without 1Globe's approval. Moreover, Pengfei Li "remained silent throughout the" Annual Meeting and then chaired a meeting of the Sinobioway Group's Board the next day even through Sinovac's management contested his election. The court determined that "[t]he haste with which he took charge of  [Sinovac], even before an official election result was declared, suggests that he knew of the plan to oust the Incumbent Directors." Pengfei Li was also "at a loss to explain why the email address from which his junior colleague sent an anonymous email to [Sinovac] matched the email address of Sinobioway which, on the evidence, had been

involved in planning to oust the Incumbent Directors and spreading negative publicity about them."

112. Moreover, the SEC Order makes clear that "[b]y the end of 2017, 1Globe Capital, Li, and related parties together held nearly one-third of the common stock of issuer Sinovac Biotech Ltd. . . . and participated in an activist plan to replace four of five incumbent directors through a shareholder vote at Sinovac's 2018 annual shareholder meeting in Beijing, but failed to disclose material information that is required in a Schedule 13D." The SEC also determined that "[b]y at least January 22, 2018, 1Globe Capital and Li had decided to participate in an activist plan, obtain proxies for the Sinovac shares held in their accounts, and instruct their representatives to attend the annual meeting and vote their shares for the Alternative Slate" of directors. Li's and 1Globe's failure to disclose "their full beneficial ownership of Sinovac stock, inclusive of substantial shares held by related parties, and their participation in a plan, led by other investors, thereby depriving existing and potential shareholders of information necessary to make fully informed investment decisions."

113. On February 22, 2019, Sinovac announced that "[b]ased upon the [Antiguan] Court's judgment and other facts, the Board determined [on February 18, 2019] that 1Globe Capital, LLC, Chiangjia Li, OrbiMed Advisors LLC and those additional shareholders who voted together with the foregoing at the AGM, together with their affiliates and associates . . . became Acquiring Persons on or prior to the AGM and their conduct resulted in a Trigger Event under the Rights Agreement." According to Sinovac's Board, these shareholders became Acquiring Persons under the Rights Agreement, thereby creating a Trigger Event, "prior to the Company's Annual General Meeting held on February 6, 2018."

114.     Sinovac's Board decided to conduct an Exchange under the Rights Agreement whereby each Right "that was valid and outstanding as of the close of trading in the United States on February 22, 2019" would be exchanged for 0.655 of the Company's common shares and 0.345 of the Company's newly created Series B Convertible Preferred Shares. Sinovac also explained that each shareholder held one Right "for each Common Share they held as of" February 22, 2019, when the Board declared the Exchange.

115.     On March 6, 2019, the Delaware Chancery Court granted 1Globe's Motion for a *Status Quo* Order. This Order halted Sinovac from taking any action to Exchange the Rights under the Rights Agreement until the final disposition of the Delaware action. The Exchange, and trading of Sinovac securities, have been suspended since March 8, 2019, pending resolution by the Delaware Chancery Court of whether the Rights Agreement was triggered.

116.     On March 8, 2019, Sinovac announced that because of the *Status Quo* Order, the Exchange would not happen until the court in the Delaware Action "has determined whether the conduct of 1Globe Capital, LLC, Chiangjia Li, OrbiMed Advisors LLC and those additional shareholders who voted with the foregoing at the annual general meeting held in February 2018 (the 'Collaborating Shareholders') triggered the Rights Agreement. The Exchange Shares remain issued and outstanding and holders of valid Rights may continue to submit certifications to verify that they are eligible for the Exchange."

117.     Similarly, on April 12, 2019, Sinovac announced that "[o]n April 4, 2019, the Eastern Caribbean Supreme Court, Court of Appeal issued an order that restrains the Company from taking further action under its Rights Agreement, including the distribution of the previously issued Exchange Shares to the holders of valid Rights, until the conclusion of 1Globe Capital, LLC's appeal of the December 19, 2018 Judgment of the High Court of Justice of Antigua and

Barbuda." Sinovac therefore expects the Exchange Shares "to remain in the Shareholder 2019 Rights Exchange Trust in the name of Wilmington Trust, National Association, until, at least, the conclusion of the Antigua appeal and final disposition of the Delaware litigation or further order of the Delaware Chancery Court. The Exchange Shares remain issued and outstanding and holders of valid Rights may continue to submit certifications to verify that they are eligible for the Exchange."

118.    The Antigua Action is continuing, but nearing its conclusion. 1Globe appealed the Antigua court's ruling in Sinovac's favor. On December 9, 2021, the Eastern Caribbean Supreme Court, Court of Appeal, dismissed 1Globe's appeal and upheld the lower court's ruling in Sinovac's favor. 1Globe applied for leave to appeal to the Privy Council and that appeal is still pending.

119.    In January 2022, the Court of Appeal in the Antigua Action extended the order initially made on April 4, 2019, that restrains Sinovac from taking further action under its Rights Agreement, including the distribution of the previously issued Exchange Shares, until the conclusion of 1Globe's appeal to the Privy Council. Sinovac and 1Globe also agreed to the continuation of this injunction until the appeal process is complete.

120.    Sinovac has disclosed in recent SEC filings that the Exchange Shares will not be distributed until the conclusion of both the appeal in the Antigua action and the conclusion of the Delaware action. The implementation of the Exchange under the Rights Agreement, as well as all trading of Sinovac shares on the NASDAQ, therefore remains halted while the Antigua and Delaware Actions are pending.[12] Sinovac has disclosed in recent SEC filings that "[t]he Company

---

[12] Sinovac explained in its 2021 Form 20-F (as well as prior SEC filings) that "NASDAQ implemented a halt in trading in Sinovac Antigua's [*i.e.*, Sinovac's] common shares in order to

is currently unable to estimate when trading will resume, or if Nasdaq will take any additional action in regards to trading of the Company's common shares."

121.    1Globe continues to dispute, in all of its actions against Sinovac (including in Delaware, Antigua, and Massachusetts), that 1Globe triggered the Rights Agreement at all. For example, in an amendment to 1Globe's Schedule 13D that it filed with the SEC on March 19, 2019, it described Sinovac's actions against 1Globe as "frivolous lawsuits." 1Globe explained that although on February 18, 2019, Sinovac (which 1Globe calls the "Disputed Board") "purportedly determined that [1Globe] and all other shareholders that voted against the Disputed Directors at the 2018 AGM (representing about 50% of all shares outstanding) constituted 'Acquiring Persons' and therefore triggered the Poison Pill," Sinovac "did not establish a legitimate basis for such determination or explain why it made such determination over a year after the purported trigger event had occurred without waiting for the result of the Pending Delaware Case which the Issuer initiated.  The intent of the Disputed Board and Former Management is to greatly dilute all shareholders who voted against their re-election through the Poison Pill and to gain control of more than 50% of the Issuer shares in order to remove any resistance to their goal of acquiring the Issuer at a discount."

122.    While 1Globe's arguments do not have any merit, the actual implementation of the Rights Agreement cannot happen until the Delaware and Antigua Actions are resolved. Sinovac's innocent investors, such as Plaintiff and the Class, also have not had any certainty as to whether Sinovac will actually follow through with implementing the Rights Agreement or, rather, reach a negotiated settlement with 1Globe. Sinovac's innocent shareholders have therefore been stuck in

---

facilitate the orderly distribution of the Exchange Shares. In light of the ongoing litigation concerning the Rights Agreement, there can be no assurance when or if this halt will be lifted."

limbo since early 2019, not knowing whether the Rights Agreement will actually be implemented and unable to even trade their Sinovac securities. With the Antigua Action nearing completion, it is time to ensure that the Rights Agreement is implemented as required under its contractual provisions rather than in the improper way that Sinovac is attempting to do so.

> **G.**     **Defendants Caused Sinovac to Breach the Rights Agreement**

123.    While Sinovac also knew that a Trigger Event and Share Acquisition Date occurred earlier, and was required to conduct the Exchange based on shares held at that earlier point in time, Defendants' false and misleading statements, and deceptive tactics at issue here, prevented the knowledge of those events from being revealed publicly. This has allowed Sinovac to breach the Rights Agreement by delaying its implementation in a way that serves Yin's self interest, by making it apply to shares held as of February 22, 2019, instead of when Sinovac actually learned of 1Globe's triggering of the Rights Agreement as early as 2016.

124.    If Defendants complied with their Section 13(d) obligations, and disclosed their true ownership and intentions for their Sinovac stock as required under Section 13(d), Sinovac would not have been able to delay its implementation of the Rights Agreement because 1Globe and Li's violation of the agreement would have been crystal clear to the general public and all of Sinovac's shareholders, such as Plaintiff and the Class, instead of being known just to Sinovac based on private correspondence that took place in connection with the battle for control of Sinovac.

125.    Sinovac knew that 1Globe triggered the Rights Agreement based on 1Globe's amended Schedule 13G that it filed with the SEC on April 5, 2016, disclosing a 16.44% stake in Sinovac stock (as compared to its prior 6.19% stake that it disclosed in its May 8, 2013 Schedule 13G). This Schedule 13G listed March 30, 2016 as the "Date of Event Which Requires Filing of

This Statement." This form therefore showed that 1Globe acquired additional shares of Sinovac stock after the March 28, 2016 Rights Agreement.

126.    In addition, Sinovac disclosed detailed information in its Proxy Statement that it filed with the SEC on January 5, 2018 (and amended on January 30, 2018) in connection with Yin's offer to buy Sinovac, showing that the Sinovac's Board knew additional information starting in 2016 revealing that 1Globe triggered the Rights Agreement.

127.    For example, after Sinovac filed its initial Proxy Statement that repeatedly referred to 1Globe and the Chiang Li Family as shareholders that were acting together, the SEC asked for clarification as to the relationship between 1Globe and the Chiang Li Family "given that the Special Committee sought information regarding the Chiang Li Family from 1Globe." In response, Sinovac amended the Proxy Statement on January 30, 2018, to explain:

> In interactions in connection with the Proposed Transaction among the Special Committee, the Buyer Consortium and their respective advisors, on the one hand, and 1Globe and the Chiang Li Family, on the other hand, *the Chiang Li Family has appeared to follow 1Globe in considering whether to participate in the Proposed Transaction as a member of the Buyer Consortium* by rolling over its Shares. As a result, while the email received by Mr. Anderson [in response to his emailing 1Globe to ask about 1Globe's and the Chiang Li Family's collective position] referred only to 1Globe's position with respect to the Proposed Transaction, *the Company believes that the Chiang Li Family would take a similar position to that of 1Globe*, but is not able to confirm that this is the case. In light of the foregoing and the possible relationship between 1Globe and the Chiang Li Family, the dissenting Shares condition negotiated by the Special Committee in the Amalgamation Agreement refers to both 1Globe and the Chiang Li Family. (Emphasis added.)

128.    The Proxy Statement also references many other correspondence between the Special Committee, on the one hand, and 1Globe and the Chiang Li Family on the other, discussing 1Globe's and the Chiang Li Family's collective position.

129.    For example, on August 17, 2016, the Special Committee (which included three of Sinovac's five Board members) and Yin counsel had a conference call in which they discussed the fact that "two of the Company's existing shareholders, 1Globe and the persons comprising the

reporting person identified as 'Chiang Li Family' in the Schedule 13G relating to the Company filed by such reporting person with the SEC on April 11, 2016 (the 'Chiang Li Family'), which such shareholders collectively held approximately 22.5% of the Shares at such time, would be willing to join the Buyer Consortium and participate in the Proposed Transaction as rollover shareholders."

130.    The Yin Group and Sinovac continued to correspond with 1Globe under the assumption that it had agreed with the Chiang Li Family to act in concert in connection with their decision of whether to join the Yin Group. For example, on September 29, 2016, the Yin Group's counsel sent a "final bid package" that included "1Globe and the Chiang Li Family as two new rollover shareholders." That same day, Duff & Phelps, the Special Committee's financial advisor, "received an email from a representative of 1Globe indicating that the Chiang Li Family intended to join the" Yin Group.

131.    Sinovac's Board therefore knew from this correspondence over the course of 2016 that 1Globe and the Chiang Li Family triggered the Rights Agreement through their beneficial ownership of each other's shares.

132.    The Proxy Statement and 1Globe's disclosures also revealed that Sinovac's Board was aware by July 2017 that 1Globe had attained "beneficial ownership" under the Rights Agreement—either directly or through agreements to act together with other shareholders—of far more than the 22.5% of shares that 1Globe and the Chiang Li Family disclosed in their Schedule 13G filings in April 2016.

133.    On July 7, 2017, 1Globe converted its amended Schedule 13G that it had filed in April 2016 disclosing a 16.44% stake in Sinovac stock, to a Schedule 13D. 1Globe stated in this new filing that it now held the shares of Sinovac stock with a "control purpose," in that it supported

the Sinobioway Group's privatization proposal and to "express[] its willingness to vote its shares of Common Stock in favor of such acquisition and roll-over its shares of Common Stock in connection with the acquisition."

134.    Similarly, on July 24, 2017, the Sinobioway Group's counsel sent the Special Committee's counsel an email stating that "shareholders of the Company (including 1Globe) collectively representing 32% of the Shares had expressed a willingness to support, and roll over their Shares in connection with, the Revised Sinobioway Proposal and that it would need to engage in further discussions with shareholders of the Company."

135.    Then, on October 16, 2017, "the Special Committee received an email from 1Globe and its affiliates stating, among other things, that they held more than 30% of the Shares and that they would vote their Shares against any proposed transaction requiring shareholder approval that was not recognized by 1Globe."[13] Until that point, 1Globe and the Chiang Li Family had disclosed only that they owned 22.5% of Sinovac's stock.

136.    Sinovac's Board thus learned that the Rights Agreement was triggered yet another time, through the Sinobioway Group's and 1Globe's July 24, and October 16, 2017, emails to Sinovac's Special Committee—which included three of Sinovac's five Board Members— concerning the Sinobioway Group's and 1Globe's plans for shareholders representing at least 31% of Sinovac's common stock (including "affiliates" of 1Globe) to act together in connection with the competing offers for the Company.[14]

---

[13] Sinovac similarly stated in its Complaint against 1Globe in Massachusetts that "[o]n October 16, 2017, Sinovac's Special Committee (formed for the purpose of evaluating a strategic transaction) received an email from 1Globe, [stating] among other things, that it and its affiliates held more than 30% of the outstanding Sinovac shares and that they would vote their shares against any proposed transaction requiring shareholder approval that was not recognized by 1Globe."

[14] These July and October 2017 emails align with the SEC's determination that 1Globe is owned

137.    Sinovac then learned additional information in connection with its Annual Meeting on February 6, 2018, showing that 1Globe and its group triggered the Rights Agreement.  Sinovac determined that 1Globe's, Li's, and the Sinobioway Group's actions at the Annual Meeting made them Acquiring Persons under the Rights Agreement by the meeting date on February 6, 2018. Sinovac filed the Delaware Action on March 5, 2018, because it determined that 1Globe, Li, and the Sinobioway Group "reached an agreement, arrangement or understanding to act together to vote in excess of 15% of the outstanding shares of common stock in favor of the alternative slate of nominees at the Annual Meeting." (Delaware Action Complaint ¶ 36).[15]

138.    After Sinovac filed the Delaware Action, it acquired even more evidence showing that 1Globe, Li, and the Sinobioway Group had an agreement to vote for the alternative slate at the Annual Meeting, as described above. On June 26, 2018, Sinovac filed a motion for summary judgment in the Delaware Action before discovery had been conducted because, Sinovac explained, "through a bizarre series of recent events, Sinovac has discovered *evidence that proves*

---

by Jiaqiang "Chiang" Li, who also owned the shares represented by the Chiang Li Family. The SEC also determined that starting in May 2016, through various relatives' accounts, 1Globe and Li began to acquire additional shares of Sinovac stock beyond their 22.5% stake, so that by December 2017, 1Globe and Li had beneficial ownership of approximately 31% of Sinovac's stock.

[15] Sinovac explained in the Delaware Action why 1Globe's, Li's, and the Sinobioway Group's actions at the Annual Meeting made it apparent that they had an agreement to vote as a group in favor of an alternative slate of Directors. Among other reasons, it was unusual that after a member of the Sinobioway Group proposed the alternative slate of directors, which included a representative of 1Globe, without any explanation or commentary in support of their appointment, "no stockholder representative raised any questions concerning the qualifications, or even the affiliations, of the alternative directors." 1Globe and the Sinobioway Group then voted for the alternative slate using pre-printed ballots that the Sinobioway Group member prepared instead of using Sinovac's ballot. These actions made it clear to Sinovac that 1Globe, Li, and the Sinobioway Group had formed an agreement in advance of the Annual Meeting to vote in favor of the alternative slate of directors.

*beyond all doubt that Defendants had an agreement to act together for purposes of voting their shares at the [Annual Meeting].*" (Emphasis added.)

139. Moreover, on October 10, 2018, Sinovac filed a Form 6-K with the SEC, signed by Defendant Wang, that included a press release from the prior day describing an effort to replace the Board of Sinovac's Hong Kong subsidiary with "with nominees of the Sinobioway Consortium, led by Sinobioway Biomedicine Co., Ltd. ('Sinobioway'), a minority shareholder of Sinovac Beijing, and a group of Sinovac's shareholders led by 1Globe and OrbiMed (collectively, the 'Dissident Shareholders') *who have repeatedly attempted to take control of Sinovac Biotech Co. and its subsidiaries and affiliates*." (Emphasis added.)

140. All of this evidence makes clear that Sinovac's Board knew long before February 2019, that the Defendants here (and the Sinobioway Group) triggered the Rights Agreement because they acquired additional Sinovac stock and were acting together in their opposition to Yin's attempt to buy the Company.

141. But Defendants' actions described above gave Sinovac a pretext to improperly delay implementing the Rights Agreement. Defendants also engaged in additional actions that constituted Trigger Events under the Rights Agreement that were not revealed until the SEC Order.

142. Moreover, Defendants' contesting the results of the Annual Meeting and the validity of the Rights Agreement gave Sinovac an added excuse to breach the agreement by delaying its implementation. Sinovac stated in the Delaware Action that it brought that case rather than go ahead and declare that a Trigger Event occurred, because the Company "anticipates Defendants [including 1Globe and Li] will dispute that their actions caused a Trigger Event under the Rights Agreement."

143.    Similarly, Sinovac explained in the Delaware Action that while "Defendants' actions in connection with the Annual Meeting may have caused them to become 'Acquiring Persons' under the terms of the Rights Agreement. . . . Plaintiff anticipates that Defendants will dispute that they are Acquiring Persons and that a Trigger Event has occurred." Sinovac also stated in its Annual Report that it filed with the SEC on May 11, 2018, that "[t]he Company cannot predict the outcome of the [Delaware] litigation, including whether our Rights Plan has been triggered and, if it has been, how the terms of our Rights Plan will be implemented."

144.    1Globe and Li have contested these issues in the various actions between them and Sinovac. After losing in the initial court and on appeal in the Antigua Action, they are continuing to appeal to the Privy Council. Or, in response to Sinovac's motion for summary judgment in the Delaware Action, 1Globe described Sinovac's assertion that 1Globe and other parties had an "agreement, arrangement, or understanding to elect an alternative slate of directors and Sinovac's annual meeting" as "based on hearsay and conjecture, as to which 1Globe should have an opportunity to conduct discovery and test their veracity."

145.    Similarly, on March 19, 2019, 1Globe amended its Schedule 13D to affirm that it "plans to continue to defend its position that the shareholders of Sinovac . . . who voted against the re-election of [the incumbent Directors at the Annual Meeting] did not trigger the Rights Agreement dated March 28, 2016 (as amended, the "Rights Agreement", also known as the "Poison Pill"), despite the Issuer's recent press release dated February 22, 2019 indicating that the Disputed Directors had concluded otherwise. The Reporting Person plans to continue to contest through appeal and other legal channels the validity of the election of the Disputed Directors."

146.    1Globe's and Li's position is completely implausible on its face and does not change the fact that Sinovac knew of 1Globe's triggering of the Rights Agreement in 2016. But

Defendants' obstructionist actions have given Sinovac an excuse to improperly delay implementing the Rights Agreement in a way that unfairly favors Yin and shareholders aligned with him.

147.    Regardless of when Sinovac ultimately decided to implement the Rights Agreement, it was still required to conduct the Exchange of shares under the agreement based on Rights that existed as of the Distribution Date (as described above). Sinovac therefore breached the Rights Agreement by making the Exchange occur for shares held as of the much later date of February 22, 2019. This breach was a direct and foreseeable result of Defendants' actions described above that sought conceal and dispute the full extent of their triggering of the Rights Agreement.

## V.    NO SAFE HARBOR

148.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made, and/or there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of the Company who knew that the statement was false when made.

## VI.    CLASS ACTION ALLEGATIONS

149.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who sold Sinovac securities during the Class Period (the "Class"); and were damaged upon the manifestation of the risk that Defendants concealed.  Excluded from the Class are Defendants herein, the officers and directors of 1Globe, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

150.    The members of the Class are so numerous that joinder of all members is impracticable. As of December 31, 2018, there were over 71 million shares outstanding. Throughout the Class Period, Sinovac securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sinovac or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

151.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

152.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

153.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented or omitted material facts about their transactions in, and intentions for, Sinovac securities;

- whether the Individual Defendants caused 1Globe and the Chiang Li Family to issue false and misleading financial statements during the Class Period; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

154.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### VII.    APPLICABILITY OF PRESUMPTION OF RELIANCE: *AFFILIATED UTE* AND FRAUD-ON-THE-MARKET PRESUMPTIONS

155.    Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United State*s, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above. Defendants omitted material information that they had a duty to disclose under Section 13(d) and the rules promulgated thereunder.

156.    Alternatively, Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Sinovac securities were traded in an efficient market during the Class Period;

- Sinovac's securities were liquid and traded with moderate to heavy volume during the Class Period;

- Sinovac's securities traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Sinovac's securities, including the investor's rights under the Rights Agreement; and

- Plaintiff and members of the Class purchased, acquired and/or sold Sinovac securities between the time the Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

157.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## VIII.   COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

158.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

159.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

160.    Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails, and/or the facilities of national

securities exchanges, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

161.    Defendants made false and misleading statements of material facts, omitted to state material facts which they had a duty to disclose and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

162.    Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the other members of the Class who sold Sinovac securities.

163.    Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Plaintiff and members of the Class; (ii) artificially deflate and maintain the prices of Sinovac securities; and (iii) cause Plaintiff and members of the Class to sell Sinovac securities at artificially deflated prices.

164.    In addition, Defendants had a duty to disclose the true nature of their holdings in, and plans for, Sinovac securities under Section 13(d) and the rules promulgated thereunder.

165.    The Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme and course of conduct designed to deceive Plaintiff and members of the Class, by virtue of having made public statements and prepared, approved, signed and/or disseminated documents that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading. Such reports, filings, releases and statements were materially false and

misleading in that they failed to disclose material adverse information and misrepresented the truth about Defendants' holdings in, and plans for, Sinovac's securities.

166.    By virtue of their positions at 1Globe and in the Chiang Li Family, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

167.    During the Class Period, Sinovac securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying upon the price of the Sinovac securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, sold shares of Sinovac securities without receiving the rights that they were entitled to under the Rights Agreement, and were damaged thereby.  Had Plaintiff and the other members of the Class known the truth, they would not have sold said securities when they did.

168.    By selling their Sinovac securities at these artificially deflated prices, Plaintiff and the Class members suffered economic losses, which losses were a direct and proximate result of Defendants' fraudulent conduct.

169.    By virtue of the foregoing, Defendants are liable to Plaintiff and members of the proposed Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## IX.   COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

170.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

171.     During the Class Period, the Individual Defendants participated in the operation and management of 1Globe and the Chiang Li Family, and conducted and participated, directly and indirectly, in the conduct of 1Globe's and the Chiang Li Family's business affairs.  Because of their senior positions, they knew the adverse non-public information about 1Globe's and the Chiang Li Family's misstatements.

172.     The Individual Defendants had a duty to disseminate accurate and truthful information with respect to 1Globe's and the Chiang Li Family's holdings in, and plans for, Sinovac securities, and to correct promptly any public statements issued by 1Globe and the Chiang Li Family that had become materially false or misleading.

173.     Because of their positions of control and authority as senior officers, owners, and directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which 1Globe and the Chiang Li Family disseminated in the marketplace during the Class Period concerning 1Globe's and the Chiang Li Family's holdings in, and plans for, Sinovac securities.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause 1Globe and the Chiang Li Family to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of 1Globe and the Chiang Li Family within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged herein.

174.     Each of the Individual Defendants, therefore, acted as a controlling person of 1Globe and/or the Chiang Li Family.  By reason of their senior management positions and/or being

owners or directors of 1Globe or the Chiang Li Family, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, 1Globe and the Chiang Li Family to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of 1Globe and the Chiang Li Family, and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

175.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by 1Globe and the Chiang Li Family.

## X.    COUNT III

### (Tortious Interference With Contract)

176.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

177.    Plaintiff and the Class had the Rights Agreement with Sinovac.

178.    Defendants had actual knowledge of the Rights Agreement. Indeed, Defendants were Sinovac's largest shareholder and their reason for their Section 13(d) violations at issue in this action was to try to evade the Rights Agreement.

179.    Notwithstanding this knowledge, Defendants engaged in the acts described above that were designed to avoid disclosure of their full holdings of Sinovac stock or the extent of their agreements among themselves and the Sinobioway Group to act together in connection with the battle for control of Sinovac.

180.    Defendants knew that these actions constituted Trigger Events under the Rights Agreement.

181.    While Sinovac knew starting in 2016, and well before February 22, 2019, that Defendants triggered the Rights Agreement, Defendants' actions caused Sinovac to delay implementing the Rights Agreement until February 22, 2019.

182.    This breach of the Rights Agreement by Sinovac was a direct and foreseeable consequence of Defendants' actions.

183.    Defendants did not have authority or justification to interfere with Plaintiff's and the Class's contract with Sinovac. Rather, Defendants purposefully engaged in the acts described above to try to evade the Rights Agreement.

184.    Defendants had a duty, including under Section 13(d), to provide complete and accurate disclosures concerning their holdings of Sinovac stock and their agreements and plans in connection with those holdings.

185.    If Defendants had complied with their disclosure obligations under Section 13(d), Sinovac would not have been able to breach the Rights Agreement by delaying its implementation until February 22, 2019. If Defendants complied with their disclosure obligations, their earlier triggering of the Rights Agreement, which Sinovac already knew of, would have been very clear to the public and all of Sinovac's shareholders.

186.    Defendants further interfered with the Rights Agreement by challenging it in the Antigua Action, which has further delayed its implementation.

187.    In addition, Defendants' actions have caused even more harm by causing all trading in Sinovac stock on the NASDAQ to be halted since Sinovac's belated attempt to implement the Rights Agreement in February 2019.

188.    As a result of Defendants' misconduct, Plaintiff and the Class have suffered damages in the form of the fewer shares they stand to receive under the Rights Agreement, the

lower share price of Sinovac's stock that Defendants' actions caused, and the inability to trade Sinovac stock since February 2019.

## XI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Requiring Defendants to give Plaintiff and the other members of the Class the amount of Sinovac shares that they are entitled to based on Defendants' triggering the Rights Agreement in 2016;

D.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

E.      Awarding such other and further relief as this Court may deem just and proper.

## XII.   <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  August 16, 2022                              Respectfully submitted,

**ANDREWS DEVALERIO LLP**

<u>/s/ Daryl Andrews</u>

Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
Email: daryl@andrewsdevalerio.com
Email: glen@andrewsdevalerio.com

**POMERANTZ LLP**

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
Michael Grunfeld
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: mgrunfeld@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for Plaintiff MW Gestion and the
Proposed Class*