**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MW GESTION, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Case No.:  1:22-cv-11315-NMG |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| 1GLOBE CAPITAL LLC, JIAQIANG LI, CHIANG LI FAMILY, JEFF LI, and LINDA LI | ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Introduction.................................................................................................................1

Background ...............................................................................................................3

     A.     The Battle Over Sinovac's Future.............................................................3

     B.     Defendants' SEC Reporting.....................................................................5

Argument ..................................................................................................................7

I.     The Court Should Dismiss the Complaint with Prejudice ....................................7

     A.     The Court Should Dismiss the Securities Fraud Claims (Counts I-III) ...................7

          1.     The Statute of Limitations Has Run.................................................7

          2.     An Asserted Section 13(d) Violation Cannot Serve as the Predicate For a Section 10(b) Claim.................................................8

          3.     The Complaint Confirms that Defendants Did Not Misrepresent Whether the Trigger Had Been Met.................................................9

          4.     The Complaint Fails to Allege Scienter......................................10

          5.     The Complaint Fails to Allege Loss Causation .........................14

          6.     References to a "Scheme" Do Not Alter the Conclusion ..........16

     B.     The Court Should Dismiss the Tortious Interference Claim (Count IV)...............17

          1.     The Statute of Limitations Has Run.............................................17

          2.     SLUSA Preempts the Claim ......................................................18

          3.     The Complaint Fails to Allege the Elements of Tortious Interference .................................................................................19

Conclusion ..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) ................................................................................................10

*Amorosa v. Gen. Elec. Co.*,
2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) .....................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................16

*Baron v. Smith*,
380 F.3d 49 (1st Cir. 2004) ................................................................................................10

*In re Boston Sci. Corp. Sec. Litig.*,
686 F.3d 21 (1st Cir. 2012) ................................................................................................14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................................15

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015) ..............................................................................................14

*FirstBank P.R., Inc. v. La Vida Merger Sub, Inc.*,
638 F.3d 37 (1st Cir. 2011) ..................................................................................................7

*Heng Ren Investments LP v. Sinovac Biotech Ltd., et al.*,
No. 1:19-cv-11612-NMG (D. Mass.) ...................................................................................5

*Hidalgo-Velez v. San Juan Asset Management, Inc.*,
758 F.3d 98 (1st Cir. 2014) ...........................................................................................18, 19

*LaChapelle v. Berkshire Life Ins. Co.*,
142 F.3d 507 (1st Cir.1998) ..................................................................................................7

*Metzler Asset Mgmt. GmbH v. Kingsley*,
305 F. Supp. 3d 181 (D. Mass. 2018) .................................................................................13

*Militello v. Park Blvd. Condo. Council of Owners*,
2021 WL 8993847 (D.P.R. Jul. 23, 2021) ............................................................................7

*Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*,
No. 2018-cv-10421-NMG (D. Mass.) ...............................................................................5, 8

*In re Stone & Webster, Inc. Sec. Litig.*,
  253 F. Supp. 2d 102 (D. Mass. 2003) .................................................................4

*Takata v. Riot Blockchain, Inc.*,
  2022 WL 1058389 (D.N.J. Apr. 8, 2022) ............................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).......................................................................................3, 10

*Thant v. Karyopharm Therapeutics Inc.*,
  43 F.4th 214 (1st Cir. 2022).................................................................................7

*Urman v. Novelos Therapeutics, Inc.*,
  867 F. Supp. 2d 190 (D. Mass. 2012) ................................................................14

*Yan v. ReWalk Robotics Ltd.*,
  973 F.3d 22 (1st Cir. 2020)................................................................................14

**State Cases**

*1Globe Capital LLC v. Sinovac Biotech Ltd.*,
  No. ANUHCVAP2019/0005 (Ant. & Barb.)........................................................5

*Banks v. Banks*,
  2022 WL 17261512 (Del. Ch. Nov. 29, 2022) ...................................................18

*Bhole, Inc. v. Shore Investments, Inc.*,
  67 A.3d 444 (Del. 2013) .............................................................................19, 20

*BTIG, LLC v. Palantir Techs., Inc.*,
  2020 WL 95660 (Del. Super. Jan. 3, 2020) .......................................................17

*Lebanon Cnty. Employees' Ret. Fund v. Collis*,
  2022 WL 17687848 (Del. Ch. Dec. 15, 2022)....................................................18

*Sinovac Biotech Ltd. v. 1Globe Capital LLC*,
  No. 2018-0143-JTL (Del. Ch.) .......................................................................5, 8

**Federal Statutes**

11 U.S.C. § 523....................................................................................................12

15 U.S.C. § 78bb(f)(1)..........................................................................................18

15 U.S.C. § 78j(b).................................................................................................19

15 U.S.C. § 78m(d)................................................................................................5

15 U.S.C. § 78u-4(b).......................................................................................10, 14

28 U.S.C. § 1658(b) ................................................................................................................7

Securities Exchange Act of 1934 Section 13(d) ...................................................... *passim*

Private Securities Litigation Reform Act of 1995 ..........................................................10, 11, 12

Securities Litigation Uniform Standards Act of 1998 ....................................................3, 7, 18, 19

Defendants 1Globe Capital LLC ("1Globe"), Jiaqiang Li ("Li"), Chiang Li Family, and Linda Li (collectively the "Defendants")[1] submit this Memorandum in Support of their Motion to Dismiss the First Amended Complaint (the "Complaint" or "FAC").  Filed herewith is the Declaration of Timothy J. Perla ("Perla Decl."), with exhibits cited herein.

## Introduction

This case arises from an ongoing battle between two groups over the future of Sinovac, a Chinese vaccine company.  One group is the Yin Group, composed of the Sinovac CEO, certain directors, and their related investors who tried to take Sinovac private on the cheap.  The other group is Sinobioway, which made a higher acquisition offer but was thwarted when the Sinovac Board responded by causing Sinovac to adopt a so-called "poison pill" which generally provides that, under certain circumstances, if any Sinovac stockholder or group acquires (or announces a plan to acquire) beneficial ownership of more than fifteen percent of Sinovac's stock, other stockholders may have the right to make dilutive purchases of stock.

Defendant 1Globe is a longtime investor in Sinovac which, consistent with the interests of stockholders, has supported the highest bid for Sinovac, which in this instance was from Sinobioway.  In May 2020, the SEC found (via a "nether admit nor deny" settlement) that 1Globe and its principal had violated technical reporting requirements of Section 13(d) of the Securities Exchange Act of 1934.  Although 1Globe had disclosed its holdings of Sinovac stock, including shares held by related parties, to the Company in 2017, the SEC found that 1Globe and its principal had violated Section 13(d) by, in some instances, failing to make the required filings documenting 1Globe's holdings of Sinovac stock.  Plaintiff (a purported assignee of litigation claims by a

---

[1] Defendant "Chiang Li Family" is not an actual person but rather is how Li reports certain of his holdings (in a similarly named account that is earmarked for family charitable purposes).  FAC ¶ 27.  It joins this Motion to the extent it is properly considered a party.  Defendant Jeff Li has not been served.

Sinovac stockholder) now tries to parlay that SEC resolution, which involved no assertion of scienter, into private litigation by claiming that the alleged Section 13(d) violations deprived Sinovac investors of knowledge that 1Globe's holdings of Sinovac stock had allegedly triggered the poison pill and thereby delayed its implementation, causing putative class members both to sell their shares at an artificially depressed price and to lose the benefit of the poison pill. Plaintiff sues for securities fraud (Counts I-III) and tortious interference with contract (the contract being the poison pill agreement) (Count IV). The Court should dismiss these claims.

*First,* the claims are time-barred. The relevant statutes of limitations are two years (securities fraud) and three years (tortious interference). Plaintiff sued on August 16, 2022. More than four years earlier, Sinovac sued 1Globe (in this Court) for violating Section 13(d), which provided inquiry notice to Plaintiff of the claims asserted here. Furthermore, the SEC settlement on which the Complaint is based also predates the Complaint by over two years, and thus ends any potential doubt about the obvious untimeliness of the securities fraud claims.

*Second*, the Complaint contains concessions that conclusively rebut any assertion that Defendants' alleged violations of Section 13(d) damaged stockholders by concealing the supposed triggering of the poison pill. The Complaint alleges that the Section 13(d) filings that Defendants made were alone sufficient to show the trigger being met. FAC ¶ 133.

*Third*, the securities fraud claims fail to state a claim because: (i) the Section 10(b) claims here are an improper attempt to end run the lack of a private right of action for the asserted Section 13(d) violations; (ii) the Complaint fails to contain a cogent assertion that stockholders were misled; (iii) the Complaint fails to allege a strong inference of scienter; (iv) the Complaint fails to allege loss causation; and (v) the Complaint fails to allege scheme liability.

*Finally*, the tortious interference claim fails to state a claim because the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") preempts it and the Complaint fails to allege the required elements of an intentional act that is a significant factor in causing a breach, bad faith, and causation.

## Background

### A.    The Battle Over Sinovac's Future

Sinovac is a vaccine company incorporated under the laws of Antigua and Barbuda, based in Beijing.  FAC ¶ 31.  1Globe is a family investment office based in Massachusetts.  FAC ¶¶ 2, 25.  Li owns 1Globe.  FAC ¶ 26.

For years, two factions have battled over the future of Sinovac.  The "Yin Group" includes Sinovac's CEO (Weidong Yin), certain directors, and their related investors who collectively own 29.5% of Sinovac.  *See* FAC ¶ 36.  The other group, to which the Complaint refers to as "Sinobioway," is led by an investor in Sinovac's main operating subsidiary.  FAC ¶ 38.  On January 30, 2016, the Yin Group proposed to acquire Sinovac for $6.18 per share.  FAC ¶ 36.  Sinobioway countered at $7.00 per share.  FAC ¶ 38.  Defendants support the higher bid.  FAC ¶ 39.

While an ensuing competitive bidding process and acquisition would have served stockholders' interests (*see* FAC ¶ 40), that did not occur.  Instead, on March 28, 2016, Sinovac (under the helm of CEO Yin) adopted a Rights Agreement containing a "poison pill."  FAC ¶ 41; Perla Decl. Ex. A (the "Rights Agreement").[2]

---

[2] A rights agreement (also known as a poison pill) is a defensive mechanism that corporations sometimes put into place to protect shareholders' investments when faced with the prospect of acquisition proposals that may not reflect the full market value of the company.  They can provide for an orderly bidding process but also can be a vehicle for abuse and entrenchment by company management.  *See* Corporate Acquisitions § 10:103 (2022).  The Court may consider the Rights Agreement on a motion to dismiss because the Complaint incorporated it by reference.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The Rights Agreement provides that, under some circumstances, if a stockholder or group acquires beneficial ownership of more than fifteen percent of Sinovac's shares or announces a proposal to do so (hereinafter the "Trigger") then stockholders (other than the one(s) who caused the Trigger) may attain the right to purchase additional stock for a discounted price, thereby diluting the stockholder causing the Trigger and limiting that stockholder's ability to gain control of the company. *See* Rights Agreement at C-1 (summary of Rights Agreement). The Rights Agreement further provides that stockholders who beneficially own more than fifteen percent of Sinovac's shares as of the adoption of the Rights Agreement, such as the Yin Group, are grandfathered in as to those shares. *Id.*; FAC ¶ 49.

The 2016 adoption of the Rights Agreement had the predictable effect of stopping a competitive bidding process to acquire Sinovac, such that two years later Sinovac had not been sold. On February 6, 2018, Sinovac held its annual meeting to elect directors. FAC ¶ 15. Sinobioway nominated a new slate of directors, which received support from a majority of stockholders including OrbiMed and 1Globe. FAC ¶¶ 15, 147.[3] The outgoing Sinovac Board retaliated by asserting that, by allegedly voting against their reelection, the investors who voted against the incumbent Board had formed a group and thus triggered the Rights Agreement and faced dilution. *See* FAC ¶ 15; Perla Decl. Ex. B (Sinovac Feb. 22, 2019 Form 6-K) at 2.[4]

These events spawned several ongoing pieces of litigation, including two cases brought by Sinovac against 1Globe, that will determine the makeup of the Sinovac Board, the validity of the Rights Agreement, and other matters:

---

[3] Sinobioway published an open letter explaining its views. *See* An Open Letter from Sinobioway Consortium to All Shareholders of Sinovac Biotech Ltd. ("SVA"), PRNEWSWIRE (Jan. 31, 2018, 5:00 PM), https://www.prnewswire.com/news-releases/an-open-letter-from-sinobioway-consortium-to-all-shareholders-of-sinovac-biotech-ltd-sva-300590957.html.

[4] The Court may consider SEC filings, which include Exhibits B, D, E, and F, on a motion to dismiss. *See In re Stone & Webster, Inc. Sec. Litig.*, 253 F. Supp. 2d 102, 128 n.11 (D. Mass. 2003).

- *Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*, No. 1:18-cv-10421-NMG (D. Mass.): a case pending before this Court in which Sinovac alleges that 1Globe violated Section 13(d) reporting requirements. On March 22, 2021, this Court entered a stay pending the outcome of the Antigua Case. *See* Order, *Sinovac*, No. 1:18-cv-10421-NMG (D. Mass. Mar. 22, 2021), Dkt. No. 118.

- *Heng Ren Investments LP v. Sinovac Biotech Ltd., et al.*, No. 1:19-cv-11612-NMG (D. Mass.) and *Lerner v. Sinovac Biotech Ltd. et al.*, 1:22-cv-12063-NMG (D. Mass.): cases before this Court in which Sinovac investors, unrelated to Defendants, allege that Sinovac wrongfully diluted investors through a private investment in public equity ("PIPE") offering after the Yin Group's buyout attempt failed.

- *Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*, No. 2018-0143-JTL (Del. Ch.) (the "Delaware Case"): a case pending before the Delaware Court of Chancery challenging the validity of the Rights Agreement and the outcome of the 2018 Sinovac Board meeting. The Delaware court stayed the case in favor of the Antigua Case, which has the effect of prohibiting any implementation of the Rights Agreement until the Antigua case is resolved.

- *1Globe Capital LLC v. Sinovac Biotech Ltd.*, No. ANUHCVAP2019/0005 (Ant. & Barb.) (the "Antigua Case"): a case in Antigua challenging the validity of the Rights Agreement and the validity of the 2018 Sinovac Board reelection. The case is presently on appeal to the court of last resort. The court issued an injunction prohibiting any implementation of the Rights Agreement until the final ruling on appeal.

## B.     Defendants' SEC Reporting

The Complaint focuses on a May 13, 2020 settlement with the Securities and Exchange Commission. *See* Perla Decl., Ex. C (the "SEC Order").[5] The SEC found (and 1Globe and Li neither admit nor deny) that 1Globe and Li violated reporting requirements of Section 13(d) in connection with their investments in Sinovac. Section 13(d) mandates certain filings by investors who own five percent or more of an issuer's stock. 15 U.S.C. § 78m(d). Although Defendants made some Section 13(d) filings (*see, e.g.*, FAC ¶ 133), the SEC Order found that Li's and 1Globe's filings should have disclosed (i) shares held by related parties and (ii) their participation in voting, led by other investors, to replace Sinovac's current directors. SEC Order at 2, 9-10. The SEC Order contained no admissions of liability and did not assert that any Defendant acted with

---

[5] The Court may consider the SEC order on a motion to dismiss because the Complaint incorporated it by reference. *See supra* note 2.

scienter. *See* SEC Order. The SEC Order also contained no findings concerning whether the Rights Agreement was triggered. *See* SEC Order.

Now, the Plaintiff (a purported assignee of litigation claims from a Sinovac stockholder) through this case seeks to convert the SEC settlement into a class action—and manufacture Sinovac investor harm—by asserting on behalf of a putative class of stockholders who sold Sinovac stock between April 11, 2016 and February 22, 2019 that: (i) Defendants' related parties' purchases of Sinovac stock triggered the Rights Agreement; (ii) Defendants' failure to make certain Section 13(d) filings prevented Sinovac stockholders from understanding that reality and prevented the Sinovac stock price from "reaching the value that this information would have conferred;" (iii) Sinovac understood the Trigger had been met but "breached" the Rights Agreement by failing to provide benefits under the Rights Agreement; and (iv) stockholders who sold their shares were harmed because they did not receive the benefits available under the Rights Agreement. *See generally* FAC.[6]

The assertion that Defendants harmed Sinovac stockholders is unfortunate, misguided, and ironic. Plaintiff acknowledges that stockholders should receive the highest price in a sale of Sinovac. FAC ¶ 40. And the Complaint acknowledges that 1Globe used its Sinovac holdings to support the highest bidder (FAC ¶ 39), and even brought litigation—at 1Globe's own expense— to challenge the Rights Agreement and ask the Antiguan court to determine the procedural validity of the removal of the then incumbent directors who were bent on steering Sinovac into a cheap sale to the Yin Group (*see* FAC ¶ 114). These are unambiguously the principled actions of persons

---

[6] Defendants accept the allegations of the Complaint only for purposes of this Motion as required under Rule 12(b)(6) and reserve all rights, including as to whether the Trigger was in fact met.

trying to ensure that stockholders receive the highest price, not harm them.  Sadly, however, this litigation proves that the saying, "no good deed goes unpunished," is true.

**Argument**

The Court should dismiss the Complaint.  The securities fraud claims (Counts I-III): (i) are time barred; (ii) impermissibly use a Section 13(d) violation as the basis for a Section 10(b) claim; (iii) fail to allege a materially misleading misrepresentation or omission; (iv) fail to allege scienter; (v) fail to allege loss causation; and (vi) fail to allege scheme liability.[7]  The tortious interference claim (Count IV): (i) is time barred; (ii) is preempted by SLUSA; and (iii) fails to allege some required elements.

**I.      The Court Should Dismiss the Complaint with Prejudice**

**A.      The Court Should Dismiss the Securities Fraud Claims (Counts I-III)**

**1.      The Statute of Limitations Has Run**

Securities fraud claims have a two-year limitations period.  28 U.S.C. § 1658(b).  A claim accrues when a reasonably diligent plaintiff would have discovered the facts constituting the violation.  *FirstBank P.R., Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37, 38 (1st Cir. 2011).[8]  Plaintiff sued on August 16, 2022, so the claims are timely only if they accrued after August 16, 2020.  However, the claims accrued before that date based on any of several distinct events.

*First*, as recounted above, on March 5, 2018, Sinovac sued 1Globe for violations of Section 13(d).  FAC ¶ 115.  That complaint alleges (like the Complaint here) that Li and 1Globe violated

---

[7] The Court should dismiss Count III (Section 20 claim) because no underlying claim survives.  *Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 226 (1st Cir. 2022).

[8] The statute of limitations constitutes a ground for dismissal under Rule 12(b)(6) where, as here, the Complaint makes clear that the limitations period has run.  *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998) (acknowledging the appropriateness of a motion to dismiss raising a statute of limitations defense); *see, e.g.*, *Militello v. Park Blvd. Condo. Council of Owners*, 2021 WL 8993847, at *1 (D.P.R. Jul. 23, 2021) (dismissing complaint based on statute of limitations).

7

Section 13(d) by failing to make required disclosures.  Complaint, *Sinovac*, No. 1:18-cv-10421-NMG (D. Mass. Mar. 5, 2018), Dkt. No. 1.  The same day, Sinovac sued 1Globe in the Delaware Court of Chancery (FAC ¶ 112) seeking a declaration that the events of the February 6, 2018 annual meeting triggered the Rights Agreement.  Complaint, *Sinovac*, No. 2018-0143-JTL (Del. Ch. Mar. 5, 2018), Dkt. No. 1.  Sinovac disclosed both actions in detail in its March 6, 2018 Form 6-K.  Perla Decl. Ex. D (Sinovac Mar. 6, 2018 Form 6-K).  Public accusations that 1Globe violated Section 13(d) and that the Trigger was met put a reasonably diligent plaintiff on notice of the claims asserted in this lawsuit, which also assert Section 13(d) violations based on the same facts and that the Trigger was met.

*Second*, in any event, the limitations period further undeniably accrued by May 13, 2020 when the SEC Order was published and Sinovac highlighted it in an SEC filing.  SEC Order at 1; Perla Decl., Ex. E (Sinovac May 18, 2020 Form 6-K).  The Complaint asserts expressly that the SEC Order revealed Defendants' alleged wrongdoing.  *See* FAC ¶ 12 ("Defendants engaged in additional actions that constituted Trigger Events under the Rights Agreement that were not revealed until the SEC Order.") (emphasis supplied).  Indeed, given that virtually the entire Complaint is based on the SEC Order, Plaintiff cannot cogently dispute that their claim accrued no later than the time of its filing.

The related lawsuits and the SEC Order predate the Complaint by over two years.  Thus, the claims are time-barred.

### 2. An Asserted Section 13(d) Violation Cannot Serve as the Predicate For a Section 10(b) Claim

The Court should also dismiss Counts I-III because, as a matter of law, a private plaintiff cannot assert a Section 10(b) claim based on a predicate violation of Section 13(d).  The case law on this issue is varied because of stockholder plaintiffs' efforts over the years to end run restrictions

8

on private actions under Section 13(d) in various courts. However, the case law is marshaled in the recent opinion in *Takata v. Riot Blockchain, Inc.*, 2022 WL 1058389 (D.N.J. Apr. 8, 2022). In *Takata*, Judge Quraishi of the District of New Jersey addresses head on whether a private stockholder plaintiff may use a Section 10(b) claim to sue for damages based on a predicate violation of Section 13(d). After a detailed review of the case law, the court explained that "[t]he trend in Section 13(d) cases indicates a strong reluctance of, if not an absolute bar to, allowing suits for damages, both under 10(b) and 18(a)." *Id.* at *10. Thus, the Court dismissed claims under Section 10(b) and 20(a) that, as here, were based entirely on asserted Section 13(d) violations. *Id.*

*Takata* is on all fours with this case in that regard and the Court should follow it. As the court there persuasively explains, allowing a plaintiff to use a Section 13(d) violation as a predicate for relief under Section 10(b) would have the effect of providing damages for violations of technical reporting provisions, absent any evidence that Congress intended that result. *Id.*

### 3. The Complaint Confirms that Defendants Did Not Misrepresent Whether the Trigger Had Been Met

As noted above, Plaintiff's central theory is that the Defendants' alleged Section 13(d) violations had the effect of concealing from Sinovac stockholders (but not Sinovac itself) that (according to Plaintiff) the Rights Agreement had been triggered. FAC ¶ 12. The Complaint, however, rebuts Plaintiff's own theory because it asserts that a *public filing* by Defendants in April 2016 disclosed that Defendants had reached a share ownership threshold sufficient for the Trigger:

> Sinovac knew that 1Globe triggered the Rights Agreement based on 1Globe's amended Schedule 13G that it filed with the SEC on April 5, 2016, disclosing a 16.44% stake in Sinovac stock (as compared to its prior 6.19% stake that it disclosed in its May 8, 2013 Schedule 13G). This Schedule 13G listed March 30, 2016 as the "Date of Event Which Requires Filing of This Statement." This form therefore showed that 1Globe acquired additional shares of Sinovac stock after the March 28, 2016 Rights Agreement.

9

FAC ¶ 133; *see also* Perla Decl., Ex. F (April 5, 2016 Schedule 13G filing) at 2.  As a public SEC filing, the document necessarily provided this information to stockholders.[9]  As such, Plaintiff's theory as to how Defendants allegedly misled stockholders fails.[10]  *See Baron v. Smith*, 380 F.3d 49, 55 (1st Cir. 2004) (affirming dismissal and concluding that plaintiffs' omission claim failed because defendant "disclosed the material facts that would lead a reasonable investor to make an informed decision" regarding transacting in issuer's stock).

### 4.    The Complaint Fails to Allege Scienter

"Scienter" is a "mental state embracing intent to deceive, manipulate, or defraud" that requires a showing that the defendant acted with "either conscious intent to defraud or a high degree of recklessness."  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  To qualify as strong, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *See Tellabs, Inc.*, 551 U.S. at 314.  The Complaint does not meet this standard.

As a threshold matter, the notion that Defendants sought to defraud Sinovac stockholders is at odds with Defendants' course of conduct—acknowledged in the Complaint—whereby

---

[9] Sinovac stockholders would have been aware of what conditions would meet the Trigger, as all stockholders received notice of the Rights Agreement when the Board approved it.  *See* Rights Agreement § 3.2 (requiring notice to stockholders of Rights Agreement), C-1 (summary of Rights Agreement).

[10] The Complaint also challenges Defendants' alleged failure to make additional Section 13(d) filings as their beneficial holdings thereafter allegedly changed.  However, even assuming that were true, it is immaterial because, by Plaintiff's own logic, what investors needed to know was that the Trigger had allegedly been met and, by the Complaint's own assertion, investors had that information.

Defendants sought to have Sinovac sold to the highest bidder and funded ongoing litigation to block an insider plot to steer Sinovac to a cheap sale by the Yin Group. *See supra* Background. These are the actions of the public stockholders' champion, not someone defrauding them.

Beyond that, Plaintiff makes no sense in articulating its central theory that Defendants' asserted Section 13(d) violations were part of "a deliberate plan to conceal the full extent and true nature of 1Globe's and Li's holdings of Sinovac stock" (FAC ¶ 160) "as part of their attempt to take control of the Company" (FAC ¶ 159). The theory is implausible and comes nowhere close to supporting the cogent and compelling pleading of scienter required under the PSLRA:

- The Complaint asserts that Sinovac was aware a Trigger had occurred. *E.g.,* FAC ¶¶ 131, 133, 148, 200. If Defendants wanted to conceal a supposed Trigger— particularly one as part of a takeover attempt—they necessarily would have wanted to conceal it *from Sinovac*, the party that could use the Rights Agreement to dilute Defendants' holdings and thereby stop any potential takeover attempt.

- The Complaint also asserts that Defendants made a *public filing* disclosing stock ownership sufficient to meet the Trigger—thereby supplying that information to the world. FAC ¶ 133. The fair inference from these Complaint admissions is that Defendants were not seeking to conceal the underlying facts.

- The suggestion that Defendants wanted to take over Sinovac is itself implausible. The Complaint acknowledges that Defendants are composed of a "family investment office" (FAC ¶ 2) and related individuals and supplies no fact for the proposition that Defendants had the desire or wherewithal to takeover a public company. Moreover, any allegation that Defendants acquired shares of Sinovac in violation of the Rights Agreement to further a supposed plan to take over Sinovac (FAC ¶ 162) is illogical because if Defendants had any intent to acquire Sinovac, which they did not, they would have wanted to avoid a Trigger and the risk that their holdings would be immediately diluted. Furthermore, if Defendants had any intent to acquire Sinovac, they would not have supported the bidder with the highest offer. In that regard, the only fair inference from FAC ¶ 39 is not that Defendants wanted to buy Sinovac, but rather that they supported Sinobioway's effort to do so for the highest price. There is similarly no allegation that Defendants profited from the alleged Section 13(d) violations.

- The Complaint states that Defendants made Section 13(d) filings under both 1Globe and "Chiang Li Family" and surmises this was an attempt to "obscure" stock ownership. FAC ¶ 4. If Li wished to conceal stock ownership, surely he would choose a less obvious filing name than "Chiang Li Family."

11

In sum, the Complaint's assertion that the "only plausible explanation for Defendants' actions" was a "deliberate plan" to conceal share ownership (FAC ¶ 160) defies common sense and the allegations of the Complaint. To the contrary, there is an obviously plausible alternative and innocent explanation drawn from the Complaint's allegations, which is that Defendants at most misunderstood Section 13(d) filing rules applicable when relatives hold stock of the same issuer.[11]

Unable to develop an intelligible theory of fraud, Plaintiff leans on the SEC settlement, extensively citing it throughout the Complaint in an apparent effort to suggest that deliberate wrongdoing must have occurred. However, the SEC findings that 1Globe and Li violated the filing requirements of Section 13(d) are not indicative of fraud. *See generally* SEC Order. A Section 13(d) violation does not require scienter and, consistent with that, the SEC Order does not find scienter nor suggest intentional misconduct. *See Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *4 (S.D.N.Y. Aug. 19, 2022) (rejecting scienter allegations as insufficient under PSLRA where complaint relied on SEC order containing "no findings regarding scienter and did not bring any scienter-based claims" and plaintiff argued that defendants' intent was "[i]mplicit in the SEC's findings"). The SEC Order also contains no admissions by 1Globe or Li of misconduct or of any facts at all.[12] *See* SEC Order at 1, 12. Thus, the SEC settlement is irrelevant.

---

[11] The filing requirements for Schedules 13D and 13G are complex, often are not "black and white," and are not readily understood even by legal experts. *Cf. United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (affirming use of "expert" testimony regarding federal securities regulations and the filing requirements of Schedule 13D). Like in cases involving the misapplication of complicated accounting rules, the inference that Defendants simply misapplied a SEC rule is more compelling here. *See, e.g.*, *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."); *Rotunno v. Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) (concluding that negligent accounting error that was later corrected with the SEC when defendants were made aware of error was more compelling inference).

[12] FAC ¶ 158 contains a disingenuous assertion that "Defendant Li's scienter is further established by his *admitting* in the SEC Order that 'the findings in this Order are true'" (emphasis in original). That is a truncated quotation apparently designed to create the misleading impression that Li admitted to all SEC findings. Not so. Here is what the SEC Order states: "[i]t is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the findings in this Order are true and admitted by Respondent

The Complaint fares no better positing that Defendants must have been committing fraud because there was a "secret" "activist plan to take control of Sinovac at the [2018 Sinovac] Annual Meeting." FAC ¶¶ 168-71. As a threshold matter, this allegation is irrelevant: it concerns events years after when Defendants allegedly failed to disclose in 2016 that their stock ownership supposedly triggered the Rights Agreement. Moreover, accepting, *arguendo,* that in 2018 Defendants supported ("secretly" or otherwise) efforts by Sinobioway and OrbiMed to replace the Sinovac Board, that would not suggest any intention to defraud Sinovac stockholders. Unsurprisingly, the Complaint conspicuously fails to explain how seeking to replace directors who were trying to sell Sinovac to the Yin Group on the cheap plausibly harmed stockholders.

Next, the Complaint also grasps at straws trying to invoke the core operations doctrine (FAC ¶¶ 173-74) as supportive of scienter. That doctrine posits that, under some circumstances, a court may infer awareness by company executives of matters relating to a company's core operations. *Leung v. bluebird bio, Inc.*, 2022 WL 1192801, at *10 (D. Mass. Apr. 21, 2022). However, courts "have been hesitant to apply significant weight to 'core operations' allegations without other significant evidence of a defendant's intent or recklessness, or a 'plus factor.'" *Metzler Asset Mgmt. GmbH v. Kingsley*, 305 F. Supp. 3d 181, 219 (D. Mass. 2018), *aff'd*, 928 F.3d 151 (1st Cir. 2019). Here, the doctrine is irrelevant. The Complaint does not describe the core operations of 1Globe, which is identified only as a family investment office. FAC ¶ 2. Even assuming 1Globe's core operation is "investing," Plaintiff's theory of scienter is based not on knowledge of investing or on the extent of Defendants' investments, but rather knowledge about the legal filing requirements of Section 13(d). Nothing suggests such knowledge. Moreover, even

---

Li…." SEC Order at 12. Thus, Li did not admit underlying facts or any violations, but rather only that the SEC fine could not be discharged pursuant to certain bankruptcy exceptions.

such knowledge by itself would not be enough; Plaintiff also would need facts supporting a compelling inference that Defendants intended their filings to defraud investors. *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 41 (1st Cir. 2020) ("[M]ere knowledge of facts is insufficient to support a strong inference of scienter. There must be some allegation strongly implying that defendants had reason to believe their omissions to be fraudulent." (citations omitted)); *Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 245 (1st Cir. 2015) ("[t]he key question ... is not whether defendants had knowledge of certain undisclosed facts, but rather whether defendants knew or should have known that their failure to disclose those facts 'present[ed] a danger of misleading buyers or sellers.'" (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F. 3d 751, 758 (1st Cir. 2011).[13]

Finally, as important as what the Complaint pleads is what is lacking. In the First Circuit, a complaint that properly pleads scienter "often contains clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they made the statements claimed to be misleading, the defendant[s] … were aware that they were withholding vital information or at least were warned by others that this was so." *In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012). The Complaint features nothing of the sort.

Thus, the Court should find that the Complaint fails to plead scienter.

### 5.     The Complaint Fails to Allege Loss Causation

Plaintiff must plausibly allege that the acts complained of "caused the loss for which [it] seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *Urman v. Novelos Therapeutics, Inc.*, 867 F.

---

[13] The Complaint mentions an audio recording from a January 8, 2018 teleconference between unnamed representatives of 1Globe, 1Globe's alleged outside counsel, and Sinobioway during which 1Globe's supposed outside counsel purportedly advised those present on the call to conceal efforts to act in concert. FAC ¶ 117. But this recording, even if it is authentic and involved the people identified in the Complaint, sheds no light on Defendants' state of mind in the preceding two years and, in any event, Sinovac had already disclosed its view that 1Globe and the Chiang Li Family were a group in a Proxy Statement the Company filed with the SEC on January 5, 2018. FAC ¶ 134.

14

Supp. 2d 190, 198 (D. Mass. 2012) ("plaintiff's loss causation theory must be plausible"). This requires alleging the traditional elements of causation and loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The Complaint's three allegations of loss causation, FAC ¶¶ 176-79, are deficient.

Plaintiff's first theory of loss causation is that stockholders who sold Sinovac stock were harmed when Sinovac breached the Rights Agreement and thereby deprived those selling stockholders of the benefits of the Rights Agreement. FAC ¶¶ 131, 133, 148, 176, 200. However, if this allegation describes a harm at all, Sinovac caused it, not Defendants, by taking steps to delay the implementation of the Rights Agreement after the Board was on notice that a Trigger may have occurred. The Complaint does not allege any facts to support the conclusion that Defendants encouraged Sinovac to breach, otherwise participated, or even knew Sinovac would allegedly breach. Nor is there any basis to infer that additional Section 13(d) filings by Defendants would have averted any alleged breach by Sinovac. The Complaint admits that Sinovac was aware of the alleged Trigger event, and that Defendants made public filings sufficient to disclose the alleged Trigger to stockholders. FAC ¶ 133. And, even assuming (contrary to FAC ¶ 133) that Sinovac stockholders were unaware of the alleged Trigger event, the Complaint contains no allegations addressing how the world would have unfolded any differently had they received such information. Thus, there is no causal relationship between Defendants' alleged failure to make Section 13(d) filings and Sinovac's alleged breach of the Rights Agreement.

Next, FAC ¶ 177 posits that Defendants somehow artificially "suppressed" the price of Sinovac securities by failing to disclose their full stockholdings. That is illogical because Plaintiff admits that Defendants supported a buyout offer from the highest bidder. FAC ¶ 39. The Complaint, however, contains no allegations about how or when the allegedly misleading filings

15

affected Sinovac's share price. Without such allegations, the Court lacks sufficient information to evaluate whether price suppression occurred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (bare recital of legal elements supported by conclusory statements are insufficient). Moreover, once again FAC ¶ 133 undermines the Complaint by asserting that Defendants' public filings were sufficient to notify stockholders of the alleged Trigger.

Finally, FAC ¶ 178 posits that Defendants' unspecified "actions" caused Nasdaq to halt trading of Sinovac stock. It is unsurprising the Complaint does not identify the "actions" because the allegation makes no sense. Defendants have no ability to cause Nasdaq to halt trading of a public stock. Indeed, as Sinovac disclosed, the reason Nasdaq halted Sinovac stock trading was because Sinovac in 2019 decided in its discretion to call a share exchange under the Rights Agreement. *See* Rights Agreement § 27.1 (establishing Board discretion over exchanges); Ex. B (Feb. 22, 2019 Form 6-K) at 6 (announcing trading halt). The proximate cause of the trading halt was that decision by Sinovac, not anything Defendants did.

### 6.   References to a "Scheme" Do Not Alter the Conclusion

Unable to state a claim for a misrepresentation or omission, Plaintiff repackages the same allegations concerning Defendants' Section 13(d) violations into "scheme" liability. FAC ¶¶ 201–08 (alleging "scheme" of evading Section 13(d) requirements amid plan to take over Company). These allegations do not salvage the Complaint. The above arguments (statute of limitations, absence of a cogent assertion that stockholders were misled, absence of scienter, absence of loss causation) all apply equally to any assertion of scheme liability under Section 10(b).[14]

---

[14] To allege a scheme, a complaint must plausibly allege "manipulation or deception" that "mislead[s] investors," *Santa Fe Indus. v. Green*, 430 U.S. 462, 473, 476 (1977), amounting to an "inherently deceptive" act, *In re Kirkland Lake Gold Ltd. Sec. Litig*, 2021 WL 4482151, at *6 (S.D.N.Y. Sept. 30, 2021), on which the plaintiff relied "in connection with the purchase or sale" of a security, *see Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159–60 (2008). The Complaint must also plead scienter. *See, e.g.*, *S.E.C. v. Bio Defense Corp.*, 2019 WL 7578525, at *21 (D. Mass. Sept. 6, 2019), *aff'd*, 997 F.3d 52 (1st Cir. 2021).

Moreover, the Complaint does not articulate a genuine "scheme" claim. The asserted scheme alleged must be distinct from the misrepresentations. *See S.E.C. v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) ("misstatements and omissions alone are not enough for scheme liability"). That is not the case here where the supposed scheme is bound up with and had no effect separate from the technically erroneous Section 13(d) filings that are the basis of the misrepresentation claim. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677, at *56-59 (S.D.N.Y. Sept. 2, 2022) (dismissing scheme liability claim where plaintiffs failed to allege deceptive act distinct from alleged misstatement).

### B.    The Court Should Dismiss the Tortious Interference Claim (Count IV)

#### 1.    The Statute of Limitations Has Run

According to the Complaint, the alleged breach of contract occurred in 2016 when Sinovac delayed implementing the Rights Agreement despite knowledge that a Trigger had occurred. FAC ¶¶ 220-21. Plaintiff claims that Defendants interfered with the Rights Agreement by failing to make Section 13(d) filings that would have disclosed that a Trigger had occurred. FAC ¶¶ 222-23. If that is so, the elements of the claim were present in 2016. Because tortious interference with contract has a three-year limitations period, *BTIG, LLC v. Palantir Techs., Inc.*, 2020 WL 95660, at *3 (Del. Super. Jan. 3, 2020), Plaintiff's claim is timely only if it accrued after August 16, 2019.[15] The claim is untimely.

Tolling does not salvage the claim. Based on the Complaint, Plaintiff had inquiry notice of the claim by April 5, 2016 when the Complaint asserts that Defendants made a Section 13(d) filing that "showed that 1Globe acquired additional shares of Sinovac stock after the March 28, 2016 Rights Agreement." FAC ¶ 133. This put Plaintiff on inquiry notice that Sinovac had not

---

[15] The Rights Agreement states that Delaware law governs. Rights Agreement § 32. Thus, Defendants for purposes of this Motion only apply Delaware law and reserve all rights as to choice of law issues.

triggered the Rights Agreement when it supposedly should have done so.  Moreover, were that insufficient, Plaintiff had inquiry notice of injury no later than 2018 when, as set forth above, multiple lawsuits accused 1Globe of Section 13(d) violations.  *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 2022 WL 17687848, at *5 (Del. Ch. Dec. 15, 2022).  Thus, the claim is time barred.[16]

### 2.    SLUSA Preempts the Claim

In 1998, Congress passed the Securities Litigation Uniform Standards Act ("SLUSA") to prevent class plaintiffs from bringing common law claims to seek recovery for stock transactions. SLUSA operates by preempting such claims.  It provides, in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).  SLUSA preemption has four requirements: (i) a covered class action, (ii) based on state law, (iii) alleging fraud or misrepresentation in connection with the purchase or sale of, (iv) a covered security.  *Hidalgo-Velez v. San Juan Asset Management, Inc.*, 758 F.3d 98, 104 (1st Cir. 2014) (citations omitted).  The tortious interference claim meets all four elements.

*First,* this case is a covered class action.  *Compare id.* at 105 ("[a] covered class action is a lawsuit in which damages are sought on behalf of more than 50 people")*, with* FAC ¶¶ 180-85 (class allegations asserting "hundreds or thousands of members in the proposed Class").

*Second*, tortious inference is a state law claim.

---

[16] It is irrelevant that the 2018 complaints did not contain all the same allegations as the Complaint here; the allegations were more than sufficient to put Plaintiff on notice that Defendants had allegedly violated Section 13(d), which is the basis for injury asserted in this case.  *See, e.g.*, *Banks v. Banks*, 2022 WL 17261512, at *5 (Del. Ch. Nov. 29, 2022) (claim accrued when "red flags" were available to plaintiffs).

*Third*, this case concerns alleged misrepresentations and omissions in connection with a purchase or sale of securities—Plaintiff's theory is that Defendants' alleged Section 13(d) violations concealed that the Trigger had been met and thereby caused Plaintiff to suffer losses as they made securities sales at allegedly deflated prices and without the benefits of the Rights Agreement. *See, e.g.*, FAC ¶ 13; *see also* FAC ¶¶ 180 (proposing class of securities sellers), 227 (claiming damages in form of "fewer shares [putative class members] stand to receive the benefit of under the Rights Agreement").[17]

*Finally*, Sinovac securities are covered securities. *Compare Hidalgo-Velez*, 758 F.3d at 105 (covered security includes "one traded nationally and listed on a regulated national exchange")*, with* FAC ¶ 181 ("Sinovac securities were actively traded on the NASDAQ").

### 3.  The Complaint Fails to Allege the Elements of Tortious Interference

Under Delaware law, a claim for tortious interference with a contract has five elements: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013). The Complaint is deficient in at least two respects.

*First*, there are no cogent allegations that Defendants' 13(d) filings caused Sinovac to breach the Rights Agreement, much less intentionally. Defendants' arguments concerning causation are set forth above and are incorporated by reference here. *See supra* I.A.5 (loss causation argument). In short, a fair reading of the Complaint describes a sequence of events whereby: (i) Defendants allegedly triggered the Rights Agreement; (ii) made a public filing

---

[17] Plaintiff cannot deny that the Complaint asserts wrongdoing "in connection with" a securities transaction, because "in connection with" is a required element of securities fraud. *See* 15 U.S.C. § 78j(b). Thus, if Plaintiff tries to walk away from "in connection with" to attempt to dodge SLUSA preemption of Count IV, that will create another basis for dismissal of Counts I-III.

19

showing as much (FAC ¶ 133); (iii) Sinovac knew the Trigger had occurred; and yet (iv) decided to breach the Rights Agreement. Nothing in the Complaint sets forth a factual basis supporting the conclusion that Defendants did—or even had any ability to—cause Sinovac allegedly to breach the Rights Agreement.

*Second*, even if Defendants somehow caused Sinovac to breach the Rights Agreement by failing to make Section 13(d) filings—which as described above is without factual basis in the Complaint—the Complaint does not establish the "without justification" element. Plaintiff must plead that Defendants sought to injure Plaintiff "maliciously or in bad faith" rather than "to achieve permissible financial goals." *Bhole*, 67 A.3d at 453. The Complaint contains no fact for the proposition that Defendants had any cause to injure public stockholders, much less sought to do so maliciously or in bad faith. Moreover, the Complaint acknowledges that Defendants had the legitimate financial goal (for themselves and public stockholders) of ensuring that Sinovac was sold to the highest bidder. *See, e.g.*, FAC ¶¶ 2, 38, 57. The Complaint further recognizes that Defendants' Section 13(d) filings put Sinovac on notice of its actions. FAC ¶ 133. Even assuming for the sake of argument that Defendants caused a breach of the Rights Agreement by Sinovac, it would not amount to bad faith interference with Plaintiff's rights thereunder.

## Conclusion

The Court should dismiss the Complaint with prejudice.

20

Dated: January 19, 2023

Respectfully submitted,

_/s/ Michael G. Bongiorno_

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
Michael G. Bongiorno (BBO # 558748)
Timothy J. Perla (BBO # 660447)
60 State Street
Boston, MA 02109
617/526-6000 (t)
617/526-5000 (f)
michael.bongiorno@wilmerhale.com
timothy.perla@wilmerhale.com

_Counsel for Defendants 1Globe Capital
LLC, Jiaqiang Li, Chiang Li Family, and
Linda Li_