# EXHIBIT A

**Exhibit 4.1**

**SINOVAC BIOTECH LTD.**

and

**PACIFIC STOCK TRANSFER COMPANY**

as Rights Agent

Rights Agreement

Dated as of March 28, 2016

<u>RIGHTS AGREEMENT</u>

Rights Agreement, dated as of March 28, 2016 (this "*Agreement*"), between SINOVAC BIOTECH LTD., an Antigua and Barbuda company (the "*Company*"), and Pacific Stock Transfer Company, as Rights Agent (the "*Rights Agent*").

<u>RECITALS</u>

WHEREAS, the Board of Directors (the "*Board*") of the Company has authorized the Company to enter into this Agreement, authorized and declared a dividend of one preferred share purchase right (a "*Right*") for each Common Share (as defined in <u>Section 1.6</u>) of the Company issued and outstanding at the close of business on April 8, 2016 (the "*Record Date*") and authorized and directed the issuance of one Right (subject to adjustment as provided herein) with respect to each Common Share that shall become issued and outstanding between the Record Date and the earliest of the Distribution Date and the Expiration Date (as such terms are defined in <u>Sections 3.1 and 7.1</u>, respectively), each Right initially representing the right to purchase one one-thousandth (subject to adjustment) of a Series A Junior Participating Preferred Share, par value US$0.001 per share (the "*Series A Preferred Shares*"), of the Company having the rights, powers and preferences set forth in the form of Certificate of Designations of Series A Junior Participating Preferred Shares attached hereto as <u>Exhibit A</u> (as amended from time to time), upon the terms and subject to the conditions hereinafter set forth; *provided, however,* that Rights may be issued with respect to Common Shares that shall become issued and outstanding after the Distribution Date and prior to the Expiration Date in accordance with <u>Section 22</u>.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties hereby agree as follows:

Section 1.  <u>Certain Definitions</u>.

For purposes of this Agreement, the following terms have the meanings indicated:

1.1.  "*Acquiring Person*" shall mean any Person who or which, together with all Related Persons of such Person, shall be the Beneficial Owner of 15% or more of the Common Shares then issued and outstanding, but shall not include (i) an Exempt Person or (ii) any Existing Holder, unless and until such time as such Existing Holder shall, after the first public announcement of this Agreement, become the Beneficial Owner of one or more additional Common Shares (other than pursuant to (a) a dividend or distribution paid or made by the Company on the issued and outstanding Common Shares in Common Shares, (b) a split or subdivision of the issued and outstanding Common Shares or (c) an Exempt Acquisition), unless upon acquiring such Beneficial Ownership, such Existing Holder does not Beneficially Own 15% or more of the Common Shares then issued and outstanding. Notwithstanding the foregoing, no Person shall become an "Acquiring Person" as the result of either (i) an acquisition of Common Shares by the Company which, by reducing the number of shares issued and outstanding, increases the proportionate number of shares Beneficially Owned by such Person to 15% or more of the Common Shares then issued and outstanding or (ii) an Exempt Acquisition; *provided, however*, that if a Person shall become the Beneficial Owner of 15% or more of the Common Shares then issued and outstanding solely by reason of share purchases by the Company or an Exempt Acquisition and shall, after such share purchases by the Company or an Exempt Acquisition, become the Beneficial Owner of one or more additional Common Shares (other than pursuant to (a) a dividend or distribution paid or made by the Company on the issued and outstanding Common Shares in Common Shares, (b) a split or subdivision of the issued and outstanding Common Shares or (c) an Exempt Acquisition), then such Person shall be deemed to be an "Acquiring Person" unless, upon becoming the Beneficial Owner of such additional Common Shares, such Person does not Beneficially Own 15% or more of the Common Shares then issued and outstanding. Notwithstanding the foregoing, if the Board determines in good faith that a Person who would otherwise be an "Acquiring Person," as defined pursuant to the foregoing provisions of this Section 1.1, has become such inadvertently (including, without limitation, because (A) such Person was unaware that it Beneficially Owned a percentage of Common Shares that would otherwise cause such Person to be an "Acquiring Person" or (B) such Person was aware of the extent of its Beneficial Ownership of Common Shares but had no actual knowledge of the consequences of such Beneficial Ownership under this Agreement) and had no intention of changing or influencing control of the Company, and such Person divests as promptly as practicable (as determined, in good faith, by the Board) a sufficient number of Common Shares so that such Person would no longer be an Acquiring Person, as defined pursuant to the foregoing provisions of this Section 1.1, then such Person shall not be deemed to be or have become an "Acquiring Person" at any time for any purposes of this Agreement. For all purposes of this Agreement, any calculation of the number of Common Shares issued and outstanding at any particular time, including for purposes of determining the particular percentage of such issued and outstanding Common Shares of which any Person is the Beneficial Owner, shall include the number of Common Shares not outstanding at the time of such calculation that such Person is otherwise deemed to Beneficially Own for purposes of this Agreement. The number of Common Shares not issued an outstanding that such Person is otherwise deemed to Beneficially Own for the purposes of this Agreement shall be deemed to be issued and outstanding for the purpose of computing the percentage of the issued and outstanding number of Common Shares owned by such Person but shall not be deemed to be outstanding for the purpose of computing the percentage of issued and outstanding Common Shares owned by any other Person. Notwithstanding the foregoing, if any Person satisfying the requirements of Rule 13d-1(b)(1) (other than a Person that so satisfies Rule 13d-1(b)(1) solely by reason of Rule 13d-1(b)(1)(ii)(E)) who would otherwise be an "Acquiring Person" has become so as a result of its actions in the ordinary course of such Person's business as a derivatives dealer that the Board determines, in good faith, were taken without the intent or effect of evading or assisting any other Person to evade the purposes and intent of this Agreement, then, and unless and until the Board shall otherwise determine, such Person shall not be deemed to be an "Acquiring Person" for any purposes of this Agreement.

1.2.  "*Affiliate*" and "*Associate*" shall have the respective meanings ascribed to such terms in Rule 12b-2 of the General Rules and Regulations under the U.S. Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), as in effect on the date of this Agreement.

1.3.  A Person shall be deemed the "*Beneficial Owner*" of and shall be deemed to "*Beneficially Own*" or have *"Beneficial Ownership"* of any securities:

1.3.1. which such Person or any of such Person's Related Persons, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise has or shares: (A) voting power, which includes the power to vote, or to direct the voting of, such security (except that a Person shall not be deemed to be the Beneficial Owner of any security under this clause (A) if such voting power arises solely from a revocable proxy or consent given to such Person in response to a public proxy or consent solicitation made pursuant to, and in accordance with, Section 14(a) of the Exchange Act by means of a solicitation statement filed on Schedule 14A), and/or (B) investment power, which includes the power to dispose, or to direct the disposition of, such security;

1.3.2. which such Person or any of such Person's Related Persons, directly or indirectly, has the Right to Acquire; *provided, however*, that a Person shall not be deemed the Beneficial Owner of, or to Beneficially Own, (x) securities tendered pursuant to a tender or exchange offer made by or on behalf of such Person or any of such Person's Related Persons, until such tendered securities are accepted for purchase or exchange, (y) securities which such Person or any of such Person's Related Persons, has a Right to Acquire upon the exercise of Rights at any time prior to the time that any Person becomes an Acquiring Person, or (z) securities issuable upon the exercise of Rights from and after the time that any Person becomes an Acquiring Person if such Rights were acquired by such Person or any of such Person's Related Persons prior to the Distribution Date or pursuant to Section 3.1 or Section 22 ("*Original Rights*") or pursuant to Section 11.9 or Section 11.15 with respect to an adjustment to Original Rights;

1.3.3. which are Beneficially Owned, directly or indirectly, by any other Person (or any Affiliate or Associate thereof) with whom such Person or any of such Person's Related Persons, has an agreement, arrangement or understanding to act together for the purpose of acquiring, holding, voting or disposing of any securities of the Company (except that a Person shall not be deemed to be the Beneficial Owner of any security under this Section 1.3.3 if such voting power arises solely from a revocable proxy or consent given to such Person in response to a public proxy or consent solicitation made pursuant to, and in accordance with, Section 14(a) of the Exchange Act by means of a solicitation statement filed on Schedule 14A); or

1.3.4. which such Person would otherwise be deemed to be the beneficial owner pursuant to Rule 13d-3 under the Exchange Act; or

1.3.5. which are "Beneficially Owned" within the meaning of Sections 1.3.1 through 1.3.4 hereof), directly or indirectly, by a Counterparty (as such term is defined in the immediately following paragraph) (or any of such Counterparty's Affiliates or Associates) that has any Synthetic Equity Position (as such term is defined in the immediately following paragraph) (without regard to any short or similar position under the same or any other Synthetic Equity Position) to which such Person or any of such Person's Affiliates or Associates is a Receiving Party (as such term is defined in the immediately following paragraph) and that is not otherwise included in the definition of Beneficial Ownership (within the meaning of Sections 1.3.1 through 1.3.4 hereof); *provided, however*, that the number of Common Shares of the Company that a Person is deemed to "Beneficially Own" pursuant to this Section 1.3.5 in connection with a particular Synthetic Equity Position shall not exceed the number of Notional Common Shares (as such term is defined in the immediately following paragraph) with respect to such Synthetic Equity Position; *provided further*, that the number of securities Beneficially Owned by each Counterparty (including its Affiliates and Associates) under a Synthetic Equity Position shall for purposes of this clause Section 1.3.5 be deemed to include all securities that are Beneficially Owned, directly or indirectly, by any other Counterparty (or any of such other Counterparty's Affiliates or Associates) under any Synthetic Equity Position to which such Counterparty (or any of such first Counterparty's Affiliates or Associates) is a Receiving Party, with this proviso being applied to successive Counterparties as appropriate.

3

A "*Synthetic Equity Position*" is a "derivative security" (as such term is defined in Rule 16a-1(c) under the Exchange Act) between two parties (the "*Receiving Party*" and the "*Counterparty*") that constitutes a "call equivalent position" (as such term is defined in Rule 16a-1(b) under the Exchange Act); *provided* that, for the purposes of the definition of "Synthetic Equity Position," the term "derivative security" shall also include any security or instrument that would not otherwise constitute a "derivative security" as a result of any feature that would make any conversion, exercise or similar right or privilege of such security or instrument become determinable only at some future date or upon the happening of a future occurrence, in which case the determination of the amount of securities into which such security or instrument would be convertible or exercisable shall be made assuming that such security or instrument is immediately convertible or exercisable at the time of such determination. The number of Common Shares of the Company specified or referenced in such derivative security contract (as determined by the Board in good faith) is the number of "*Notional Common Shares*." For the avoidance of doubt, interests in broad-based index options, broad-based index futures and broad-based publicly traded market baskets of stocks approved for trading by the appropriate federal governmental authority shall not be deemed to be Synthetic Equity Positions.

No Person shall be deemed to be the "Beneficial Owner" of, to have "Beneficial Ownership" of or to "Beneficially Own" any securities which such Person or any of such Person's Related Persons would otherwise be deemed to "Beneficially Own" pursuant to this Section 1.3 solely as a result of any amalgamation, merger or other acquisition agreement between the Company and such Person (or one or more of such Person's Related Persons), or any tender, voting or support agreement entered into by such Person (or one or more of such Person's Related Persons) in connection therewith, if, prior to such Person becoming an Acquiring Person, the Board has approved such amalgamation, merger or other acquisition agreement, or such tender, voting or support agreement.

No Person who is an officer, director or employee of an Exempt Person shall be deemed, solely by reason of such Person's status or authority as such, to be the "Beneficial Owner" of, to have "Beneficial Ownership" of or to "Beneficially Own" any securities that are "Beneficially Owned" (as defined in this Section 1.3), including, without limitation, in a fiduciary capacity, by an Exempt Person or by any other such officer, director or employee of an Exempt Person.

1.4.    "*Business Day*" shall mean any day other than a Saturday, Sunday or a day on which banking institutions in the State of New York are authorized or obligated by law or executive order to close.

4

1.5.  "*close of business*" on any given date shall mean 5:00 p.m., New York time, on such date; *provided, however,* that if such date is not a Business Day it shall mean 5:00 p.m., New York time, on the next succeeding Business Day.

1.6.  "*Common Shares*" when used with reference to the Company shall mean the Common Shares, par value US$0.001 per share, of the Company. "Common Shares" when used with reference to any Person other than the Company shall mean the class of share capital with the greatest voting power, or the equity securities or other equity interest having power to control or direct the management of, such other Person or, if such Person is a Subsidiary of another Person, the Person or Persons which ultimately control such first-mentioned Person, and which has issued and outstanding such share capital, equity securities or equity interest.

1.7.  "*Exempt Acquisition*" shall mean any increase in Beneficial Ownership due to equity granted to the officers and members of the board of directors of the Company and any Subsidiary of the Company in their capacity as such officers and directors.

1.8.  "*Exempt Person*" shall mean the Company, any Subsidiary of the Company, or any employee benefit plan of the Company or of any Subsidiary of the Company or any entity or trustee holding (or acting in a fiduciary capacity in respect of) share capital of the Company for or pursuant to the terms of any such plan, or for the purpose of funding other employee benefits for employees of the Company or any Subsidiary of the Company.

1.9.  "*Existing Holder*" shall mean any Person who, immediately prior to the first public announcement of the adoption of this Agreement, is the Beneficial Owner of 15% or more of the Common Shares then issued and outstanding, together with any Affiliates and Associates of such Person.

1.10.  "*Person*" shall mean any individual, partnership, joint venture, limited liability company, firm, corporation, unincorporated association or organization, trust or other entity, and shall include any successor (by merger or otherwise) of any such Person.

1.11.  "*Related Person*" shall mean, as to any Person, any Affiliates or Associates of such Person.

1.12.  "*Right to Acquire*" shall mean a legal, equitable or contractual right to acquire (whether directly or indirectly and whether exercisable immediately, or only after the passage of time, compliance with regulatory requirements, fulfillment of a condition or otherwise), pursuant to any agreement, arrangement or understanding, whether or not in writing (excluding customary agreements entered into in good faith with and between an underwriter and selling group members in connection with a firm commitment underwriting registered under the U.S. Securities Act of 1933, as amended (the "*Securities Act*")), or upon the exercise of any option, warrant or right, through conversion of a security, pursuant to the power to revoke a trust, discretionary account or similar arrangement, pursuant to the power to terminate a repurchase or similar so-called "stock borrowing" agreement or arrangement, or pursuant to the automatic termination of a trust, discretionary account or similar arrangement.

1.13.  "*Share Acquisition Date*" shall mean the first date of public announcement (which, for purposes of this definition, shall include, without limitation, the filing of a report pursuant to Section 13(d) of the Exchange Act or pursuant to a comparable successor statute) by the Company or an Acquiring Person that an Acquiring Person has become such or that discloses information which reveals the existence of an Acquiring Person or such earlier date as a majority of the Board shall become aware of the existence of an Acquiring Person.

1.14.  "*Subsidiary*" of any Person shall mean any partnership, joint venture, limited liability company, firm, corporation, unincorporated association, trust or other entity of which a majority of the voting power of the voting equity securities or equity interests is owned, of record or beneficially, directly or indirectly, by such Person.

1.15.  A "*Trigger Event*" shall be deemed to have occurred upon any Person becoming an Acquiring Person.

1.16.  The following terms shall have the meanings defined for such terms in the Sections set forth below:

| Term | Section |
|------|---------|
| Adjustment Shares | 11.1.2 |
| Agreement | Preamble |
| Board | Recitals |
| Book Entry Shares | 3.1 |
| call equivalent position | 1.3.5 |
| common share equivalent | 11.1.3 |
| Company | Preamble |
| Counterparty | 1.3.5 |
| current per share market price | 11.4.1 |
| Current Value | 11.1.3 |
| derivative security | 1.3.5 |
| Distribution Date | 3.1 |
| equivalent preferred shares | 11.2 |
| Exchange Act | 1.2 |
| Exchange Consideration | 27.1 |
| Expiration Date | 7.1 |
| Final Expiration Date | 7.1 |
| NASDAQ | 9 |
| Notional Common Shares | 1.3.5 |
| Original Rights | 1.3.2 |
| Principal Party | 13.2 |
| Purchase Price | 4 |
| Receiving Party | 1.3.5 |
| Record Date | Recitals |
| Redemption Date | 7.1 |
| Redemption Price | 23.1 |
| Right | Recitals |
| Right Certificate | 3.1 |
| Rights Agent | Preamble |
| Securities Act | 1.12 |
| Security | 11.4.1 |
| Series A Preferred Shares | Recitals |
| Spread | 11.1.3 |
| Substitution Period | 11.1.3 |
| Summary of Rights | 3.2 |
| Synthetic Equity Position | 1.3.5 |
| Trading Day | 11.4.1 |
| Trust | 27.1 |
| Trust Agreement | 27.1 |

6

Section 2.  <u>Appointment of Rights Agent</u>. The Company hereby appoints the Rights Agent to act as rights agent for the Company and the holders of the Rights (who, in accordance with <u>Section 3</u>, shall prior to the Distribution Date also be the holders of the Common Shares) in accordance with the terms and conditions hereof, and the Rights Agent hereby accepts such appointment. The Company may from time to time appoint such co-Rights Agents as it may deem necessary or desirable. In the event the Company appoints one or more co-Rights Agents, the respective duties of the Rights Agent and any co-Rights Agent shall be as the Company shall determine. Contemporaneously with such appointment, if any, the Company shall notify the Rights Agent thereof.

Section 3.  <u>Issuance of Right Certificates</u>.

3.1.  <u>Rights Evidenced by Common Share Certificates and Book Entry Shares</u>. Until the earlier of (i) the close of business on the tenth (10th) Business Day after the Share Acquisition Date or (ii) the close of business on the tenth (10th) Business Day after the date of the commencement of, or first public announcement of the intent of any Person (other than an Exempt Person) to commence, a tender or exchange offer the consummation of which would result in any Person becoming an Acquiring Person (the earlier of (i) and (ii) being herein referred to as the "*Distribution Date*"), (x) the Rights (unless earlier expired, redeemed or terminated) will be evidenced (subject to the provisions of <u>Section 3.2</u>) by the certificates representing the Common Shares registered in the names of the holders thereof or, in the case of uncertificated Common Shares registered in book entry form ("*Book Entry Shares*"), by notation in book entry (which certificates for Common Shares and Book Entry Shares shall also be deemed to be Right Certificates) and not by separate certificates, and (y) the Rights (and the right to receive certificates therefor) will be transferable only in connection with the transfer of the underlying Common Shares. The preceding sentence notwithstanding, prior to the occurrence of a Distribution Date specified as a result of an event described in clause (ii) (or such later Distribution Date as the Board may select pursuant to this sentence), the Board may postpone, one or more times, the Distribution Date which would occur as a result of an event described in clause (ii) beyond the date set forth in such clause (ii). Nothing herein shall permit such a postponement of a Distribution Date after a Person becomes an Acquiring Person, except as a result of the operation of the third sentence of <u>Section 1.1</u>. As soon as practicable after the Distribution Date, the Company will prepare and execute, the Rights Agent will countersign and the Company (or, if requested, the Rights Agent) will send, by first-class, postage-prepaid mail, to each record holder of Common Shares as of the close of business on the Distribution Date (other than any Acquiring Person or any Related Person of an Acquiring Person), at the address of such holder shown in the register of members of the Company or the transfer agent or registrar for the Common Shares, one or more certificates for Rights, in substantially the form of <u>Exhibit B</u> hereto (a "*Right Certificate*"), evidencing one Right (subject to adjustment as provided herein) for each Common Share so held. As of and after the Distribution Date, the Rights will be evidenced solely by such Right Certificates.

7

3.2.  <u>Summary of Rights</u>. On the Record Date or as soon as practicable thereafter, the Company will send or cause to be sent a copy of a Summary of Rights to Purchase Series A Preferred Shares, in substantially the form attached hereto as <u>Exhibit C</u> (the "*Summary of Rights*"), by first-class, postage-prepaid mail, to each record holder of Common Shares as of the close of business on the Record Date (other than any Acquiring Person or any Related Person of any Acquiring Person) at the address of such holder shown on the records of the Company or the transfer agent or registrar for the Common Shares. Any failure to send a copy of the Summary of Rights shall not invalidate the Rights or affect their transfer with the Common Shares. With respect to certificates representing Common Shares and Book Entry Shares issued and outstanding as of the close of business on the Record Date, until the Distribution Date (or the earlier Expiration Date), the Rights will be evidenced by such certificates for Common Shares registered in the names of the holders thereof or by such Book Entry Shares, as applicable, together with a copy of the Summary of Rights and the registered holders of the Common Shares shall also be registered holders of the associated Rights. Until the Distribution Date (or the earlier Expiration Date), the surrender for transfer of any certificate for Common Shares or Book Entry Shares issued and outstanding at the close of business on the Record Date, with or without a copy of the Summary of Rights, shall also constitute the transfer of the Rights associated with the Common Shares represented thereby and the Book Entry Shares, as applicable.

3.3.  <u>New Certificates and Uncertificated Shares After Record Date</u>. Certificates for Common Shares that become outstanding (whether upon issuance out of authorized but unissued Common Shares, disposition out of treasury or transfer or exchange of issued and outstanding Common Shares) after the Record Date but prior to the earliest of the Distribution Date or the Expiration Date, or in certain circumstances provided in <u>Section 22</u> hereof, after the Distribution Date, shall have impressed, printed, stamped, written or otherwise affixed onto them a legend in substantially the following form:

> This certificate also evidences and entitles the holder hereof to certain rights as set forth in a Rights Agreement between Sinovac Biotech Ltd. (the "*Company*") and Pacific Stock Transfer Company, as Rights Agent, dated as of March 28, 2016, as the same may be amended from time to time (the "*Agreement*"), the terms of which are hereby incorporated herein by reference and a copy of which is on file at the principal executive offices of the Company. Under certain circumstances, as set forth in the Agreement, such Rights (as defined in the Agreement) will be evidenced by separate certificates and will no longer be evidenced by this certificate. The Company will mail to the holder of this certificate a copy of the Agreement without charge after receipt of a written request therefor. ***As described in the Agreement, Rights which are owned by, transferred to or have been owned by Acquiring Persons (as defined in the Agreement) or any Related Person (as defined in the Agreement) of any Acquiring Person shall become null and void and will no longer be transferable***.

8

With respect to any Book Entry Shares, such legend shall be included in a notice to the record holder of such shares in accordance with applicable law. Until the Distribution Date (or the earlier Expiration Date), the Rights associated with the Common Shares represented by such certificates and such Book Entry Shares shall be evidenced solely by such certificates or the Book Entry Shares alone, and the surrender for transfer of any such certificates or Book Entry Shares, except as otherwise provided herein, shall also constitute the transfer of the Rights associated with such Common Shares. In the event that the Company purchases or otherwise acquires any Common Shares after the Record Date but prior to the Distribution Date, any Rights associated with such Common Shares shall be deemed canceled and retired so that the Company shall not be entitled to exercise any Rights associated with the Common Shares that are no longer outstanding.

Notwithstanding this Section 3.3, neither the omission of the legend required hereby, nor the failure to provide the notice thereof, shall affect the enforceability of any part of this Agreement or the rights of any holder of the Rights.

Section 4.    Form of Right Certificates. The Right Certificates (and the forms of election to purchase shares and assignment, including the certifications therein, to be printed on the reverse thereof) shall each be substantially in the form set forth in Exhibit B hereto and may have such marks of identification or designation and such legends, summaries or endorsements printed thereon as the Company may deem appropriate and as are not inconsistent with the provisions of this Agreement, or as may be required to comply with any applicable law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange or trading system on which the Rights may from time to time be listed or quoted, or to conform to usage. Subject to the terms and conditions hereof, the Right Certificates, whenever issued, shall be dated as of the Record Date, and shall show the date of countersignature by the Rights Agent, and on their face shall entitle the holders thereof to purchase such number of one one-thousandths of a Series A Preferred Share as shall be set forth therein at the price per one one-thousandths of a Series A Preferred Share set forth therein (the "*Purchase Price*"), but the number of such one one-thousandths of a Series A Preferred Share and the Purchase Price shall be subject to adjustment as provided herein.

Section 5.    Countersignature and Registration. The Right Certificates shall be executed on behalf of the Company by the Chief Executive Officer or Chief Financial Officer of the Company, either manually or by facsimile signature, and shall have affixed thereto the Company's seal or a facsimile thereof which shall be attested by the Director of Investor Relations and International Business Development of the Company or by such officers as the Board may designate, either manually or by facsimile signature. The Right Certificates shall be countersigned, either manually or by facsimile signature, by an authorized signatory of the Rights Agent, but it shall not be necessary for the same signatory to countersign all of the Right Certificates hereunder. No Right Certificate shall be valid for any purpose unless so countersigned. In case any officer of the Company who shall have signed any of the Right Certificates shall cease to be such officer of the Company before countersignature by the Rights Agent and issuance and delivery by the Company, such Right Certificates, nevertheless, may be countersigned by the Rights Agent, and issued and delivered by the Company with the same force and effect as though the Person who signed such Right Certificates had not ceased to be such officer of the Company; and any Right Certificate may be signed on behalf of the Company by any Person who, at the actual date of the execution of such Right Certificate, shall be a proper officer of the Company to sign such Right Certificate, although at the date of the execution of this Agreement any such Person was not such an officer.

Following the Distribution Date, the Rights Agent will keep or cause to be kept, at its principal office, books for registration and transfer of the Right Certificates issued hereunder. Such books shall show the names and addresses of the respective holders of the Right Certificates, the number of Rights evidenced on its face by each of the Right Certificates, the certificate number of each of the Right Certificates and the date of each of the Right Certificates.

Section 6.  <u>Transfer, Split Up, Combination and Exchange of Right Certificates; Mutilated, Destroyed, Lost or Stolen Right Certificates</u>. Subject to the provisions of this Agreement, including but not limited to <u>Section 11.1.2</u> and <u>Section 14</u>, at any time after the close of business on the Distribution Date, and at or prior to the close of business on the Expiration Date, any Right Certificate or Right Certificates (other than Right Certificates representing Rights that have become void pursuant to <u>Section 11.1.2</u> or that have been exchanged pursuant to <u>Section 27</u>) may be transferred, split up, combined or exchanged for another Right Certificate or Right Certificates, entitling the registered holder to purchase a like number of one one-thousandths of a Series A Preferred Share as the Right Certificate or Right Certificates surrendered then entitled such holder to purchase. Any registered holder desiring to transfer, split up, combine or exchange any Right Certificate shall make such request in writing delivered to the Rights Agent, and shall surrender, together with any required form of assignment and certificate duly executed and properly completed, the Right Certificate or Right Certificates to be transferred, split up or combined or exchanged at the office of the Rights Agent designated for such purpose. Neither the Rights Agent nor the Company shall be obligated to take any action whatsoever with respect to the transfer of any such surrendered Right Certificate or Right Certificates until the registered holder shall have properly completed and duly executed the certificate contained in the form of assignment on the reverse side of such Right Certificate or Right Certificates and shall have provided such additional evidence of the identity of the Beneficial Owner (or former Beneficial Owner) thereof or any Related Person of such registered holder or such Beneficial Owner (or such former Beneficial Owner), in each case, as the Company shall reasonably request. Thereupon, the Rights Agent shall countersign and deliver to the Person entitled thereto a Right Certificate or Right Certificates, as the case may be, as so requested. The Company may require payment from the holders of Right Certificates of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer, split up or combination or exchange of such Right Certificates.

Subject to the provisions of <u>Section 11.1.2</u>, at any time after the Distribution Date and prior to the Expiration Date, upon receipt by the Company and the Rights Agent of evidence reasonably satisfactory to them of the loss, theft, destruction or mutilation of a Right Certificate, and, in case of loss, theft or destruction, of indemnity or security reasonably satisfactory to them, and, at the Company's request, reimbursement to the Company and the Rights Agent of all reasonable expenses incidental thereto, and upon surrender to the Rights Agent and cancellation of the Right Certificate if mutilated, the Company will make and deliver a new Right Certificate of like tenor to the Rights Agent for countersignature and delivery to the registered owner in lieu of the Right Certificate so lost, stolen, destroyed or mutilated.

10

Section 7. Exercise of Rights; Purchase Price; Expiration Date of Rights.

7.1. Exercise of Rights. Subject to Section 11.1.2 and except as otherwise provided herein, the registered holder of any Right Certificate may exercise the Rights evidenced thereby in whole or in part at any time after the Distribution Date upon surrender of the Right Certificate, with the form of election to purchase and certification on the reverse side thereof properly completed and duly executed, to the Rights Agent at the office of the Rights Agent designated for such purpose, together with payment of the aggregate Purchase Price for the total number of one one-thousandths of a Series A Preferred Share (or other securities, cash or other assets) as to which the Rights are exercised, at or prior to the time (the "*Expiration Date*") that is the earliest of (i) the close of business on March 27, 2017 (the "*Final Expiration Date*"), (ii) the time at which the Rights are redeemed as provided in Section 23 (the "*Redemption Date*"), (iii) the closing of any amalgamation, merger or other acquisition transaction involving the Company pursuant to an agreement of the type described in Section 13.3 at which time the Rights are deemed terminated, or (iv) the time at which the Rights are exchanged as provided in Section 27.

7.2. Purchase. The Purchase Price for each one one-thousandth of a Series A Preferred Share pursuant to the exercise of a Right shall be initially US$30.00, shall be subject to adjustment from time to time as provided in Sections 11, 13 and 26 and shall be payable in lawful money of the United States of America in accordance with Section 7.3.

7.3. Payment Procedures. Except as otherwise provided herein, upon receipt of a Right Certificate representing exercisable Rights, with the form of election to purchase and certification properly completed and duly executed, accompanied by payment of the aggregate Purchase Price for the total number of one one-thousandths of a Series A Preferred Share to be purchased and an amount equal to any applicable tax or charge required to be paid by the holder of such Right Certificate in accordance with Section 9, in cash or by certified or cashier's check or money order payable to the order of the Company, the Rights Agent shall thereupon promptly (i)(A) requisition from any transfer agent of the Series A Preferred Shares (or make available, if the Rights Agent is the transfer agent) to be purchased and the Company hereby irrevocably authorizes its transfer agent to comply with all such requests, or (B) if the Company shall have elected to deposit the total number of Series A Preferred Shares issuable upon exercise of the Rights hereunder with a depositary agent, requisition from such depositary agent depositary receipts representing interests in such number of one one-thousandths of a Series A Preferred Share as are to be purchased (in which case certificates for the Series A Preferred Shares represented by such receipts shall be deposited by the transfer agent with the depositary agent) and the Company hereby directs such depositary agent to comply with all such requests; (ii) when appropriate, requisition from the Company the amount of cash to be paid in lieu of the issuance of fractional shares in accordance with Section 14 or otherwise in accordance with Section 11.1.3; (iii) promptly after receipt of such Series A Preferred Shares or depositary receipts, cause the same to be delivered to the registered holder of such Right Certificate, or upon the order of the registered holder of such Right Certificate, registered in such name or names as may be designated by such holder and (iv) when appropriate, after receipt, promptly deliver such cash to the registered holder of such Right Certificate, or upon the order of the registered holder of such Right Certificate, to such other Person as designated by such holder. In the event that the Company is obligated to issue other securities of the Company, pay cash and/or distribute other property pursuant to Section 11.1.3, the Company will make all arrangements necessary so that such other securities, cash and/or other property are available for distribution by the Rights Agent, if and when appropriate.

11

7.4.  Partial Exercise. In case the registered holder of any Right Certificate shall exercise less than all the Rights evidenced thereby, a new Right Certificate evidencing Rights equivalent to the Rights remaining unexercised shall be issued by the Rights Agent and delivered to the registered holder of such Right Certificate or to his or her duly authorized assigns, subject to the provisions of Section 14.

7.5.  Full Information Concerning Ownership. Notwithstanding anything in this Agreement to the contrary, neither the Rights Agent nor the Company shall be obligated to undertake any action with respect to a registered holder of Rights upon the occurrence of any purported transfer or exercise of Rights pursuant to Section 6 or as set forth in this  Section 7 unless the certification contained in the form of election to purchase set forth on the reverse side of the Right Certificate surrendered for such exercise shall have been properly completed and duly executed by the registered holder thereof and the Company shall have been provided with such additional evidence of the identity of the Beneficial Owner (or former Beneficial Owner) thereof or any Related Person of such registered holder or such Beneficial Owner (or such former Beneficial Owner), in each case, as the Company shall reasonably request.

Section 8.  Cancellation and Destruction of Right Certificates. All Right Certificates surrendered for the purpose of exercise, transfer, split up, combination or exchange shall, if surrendered to the Company or to any of its agents, be delivered to the Rights Agent for cancellation or in canceled form, or, if surrendered to the Rights Agent, shall be canceled by it, and no Right Certificates shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Agreement. The Company shall deliver to the Rights Agent for cancellation and retirement, and the Rights Agent shall so cancel and retire, any other Right Certificate purchased or acquired by the Company otherwise than upon the exercise thereof. Subject to applicable law and regulation, the Rights Agent shall maintain in a retrievable database electronic records or physical records of all cancelled or destroyed Rights Certificates which have been cancelled or destroyed by the Rights Agent. The Rights Agent shall maintain such electronic records or physical records for the time period required by applicable law and regulation. Upon written request of the Company (and at the expense of the Company), the Rights Agent shall provide to the Company or its designee copies of such electronic records or physical records relating to Rights Certificates cancelled or destroyed by the Rights Agent.

Section 9.  Reservation and Availability of Share Capital. The Company covenants and agrees that, from and after the Distribution Date, it will cause to be reserved and kept available out of its authorized and unissued Series A Preferred Shares (and, following the occurrence of a Trigger Event, out of its authorized and unissued Common Shares or other securities or out of its shares held in its treasury) the number of Series A Preferred Shares (and, following the occurrence of a Trigger Event, Common Shares and/or other securities) that will be sufficient to permit the exercise in full of all outstanding Rights.

12

So long as the Series A Preferred Shares (and, following the occurrence of a Trigger Event, Common Shares and/or other securities) issuable upon the exercise of Rights may be listed on the NASDAQ Global Market ("NASDAQ") or any other national securities exchange or traded in the over-the-counter market, the Company shall use its best efforts to cause, from and after such time as the Rights become exercisable, all shares reserved for such issuance to be listed or admitted to trading on NASDAQ or such other exchange or market upon official notice of issuance upon such exercise.

The Company covenants and agrees that it will take all such action as may be necessary to ensure that all Series A Preferred Shares (and, following the occurrence of a Trigger Event, Common Shares and/or other securities) delivered upon exercise of Rights shall, at the time of delivery of the certificates for such shares (subject to payment of the Purchase Price), be duly and validly authorized and issued and fully paid and nonassessable shares.

From and after such time as the Rights become exercisable, the Company shall use its best efforts, if then necessary, to permit the issuance of Series A Preferred Shares upon the exercise of Rights, to register and qualify such Series A Preferred Shares under the Securities Act, the Antigua and Barbuda Companies Act, 1995, and any applicable state securities or "Blue Sky" laws (to the extent exemptions therefrom are not available), cause such registration statement and qualifications to become effective as soon as possible after such filing and keep such registration and qualifications effective until the earlier of the date as of which the Rights are no longer exercisable for such securities and the Expiration Date. The Company may temporarily suspend, from time to time for a period of time not to exceed one hundred twenty (120) days in any particular instance, the exercisability of the Rights in order to prepare and file a registration statement under the Securities Act and permit it to become effective or in order to prepare and file any supplement or amendment to such registration statement that the Board determines to be necessary and appropriate under applicable law. Upon any such suspension, the Company shall issue a public announcement stating that the exercisability of the Rights has been temporarily suspended, as well as a public announcement at such time as the suspension is no longer in effect. Notwithstanding any provision of this Agreement to the contrary, the Rights shall not be exercisable in any jurisdiction unless the requisite qualification or exemption in such jurisdiction shall have been obtained and until a registration statement under the Securities Act (if required) shall have been declared effective.

The Company further covenants and agrees that it will pay when due and payable any and all taxes and charges which may be payable in respect of the issuance or delivery of the Right Certificates or of any Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) upon the exercise of Rights. The Company shall not, however, be required to pay any tax or charge which may be payable in respect of any transfer or delivery of Right Certificates to a Person other than, or the issuance or delivery of certificates for the Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) in a name other than that of, the registered holder of the Right Certificate evidencing Rights surrendered for exercise or to issue or deliver any certificates for Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) in a name other than that of the registered holder upon the exercise of any Rights until any such tax or charge shall have been paid (any such tax or charge being payable by the registered holder of such Right Certificate at the time of surrender) or until it has been established to the Company's satisfaction that no such tax or charge is due.

13

Section 10.  Series A Preferred Shares Record Date. Each Person in whose name any Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) are issued upon the exercise of Rights shall for all purposes be deemed to have become the holder of record of the Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) represented thereby on, and such certificate shall be dated, the date upon which the Right Certificate evidencing such Rights was duly surrendered and payment of the Purchase Price (and any applicable taxes or charges) was made; *provided, however,* that if the date of such surrender and payment is a date upon which the Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) register of members of the Company is closed, such Person shall be deemed to have become the record holder of such shares (fractional or otherwise) on, and such certificate shall be dated, the next succeeding Business Day on which the Series A Preferred Shares (or Common Shares and/or other securities, as the case may be) register of members of the Company is open. Prior to the exercise of the Rights evidenced thereby (or an exchange pursuant to Section 27), the holder of a Right Certificate shall not be entitled to any rights of a holder of Series A Preferred Shares (or Common Shares or other securities, as the case may be) for which the Rights shall be exercisable, including, without limitation, the right to vote or to receive dividends or other distributions, and shall not be entitled to receive any notice of any proceedings of the Company, except as provided herein.

Section 11.  Adjustment of Purchase Price, Number of Shares or Number of Rights. The Purchase Price, the number of Series A Preferred Shares or other securities or property purchasable upon exercise of each Right and the number of Rights outstanding are subject to adjustment from time to time as provided in this Section 11.

11.1.  Post-Execution Events.

11.1.1.  Dividends, Reclassifications, Etc. In the event the Company shall, at any time after the date of this Agreement, (A) declare and pay a dividend or bonus issue on the Series A Preferred Shares payable in Series A Preferred Shares, (B) subdivide the issued and outstanding Series A Preferred Shares, (C) combine or consolidate the issued and outstanding Series A Preferred Shares into a smaller number of Series A Preferred Shares or (D) issue any share capital in a reclassification of the Series A Preferred Shares (including any such reclassification in connection with a consolidation, amalgamation or merger in which the Company is the continuing or surviving company), except as otherwise provided in this Section 11.1.1, the Purchase Price in effect at the time of the record date for such dividend or bonus issue or of the effective date of such subdivision, combination, consolidation or reclassification, and the number and kind of share capital issuable on such date, shall be proportionately adjusted so that the holder of any Right exercised after such time shall be entitled to receive the aggregate number and kind of share capital which, if such Right had been exercised immediately prior to such date and at a time when the Series A Preferred Shares register of members of the Company were open, such holder would have owned upon such exercise and been entitled to receive by virtue of such dividend, bonus issue, subdivision, combination, consolidation or reclassification; *provided, however,* that in no event shall the consideration to be paid upon the exercise of one Right be less than the aggregate par value of the shares of the Company issuable upon exercise of one Right. If an event occurs which would require an adjustment under both Section 11.1.1 and Section 11.1.2, the adjustment provided for in this Section 11.1.1 shall be in addition to, and shall be made prior to, the adjustment required pursuant to, Section 11.1.2.

14

11.1.2. <u>Acquiring Person Events; Trigger Events</u>. Subject to <u>Section 27</u>, in the event that a Trigger Event occurs, then, from and after the first occurrence of such event, each holder of a Right, except as provided below, shall thereafter have a right to receive, upon exercise thereof at a price per Right equal to the then current Purchase Price multiplied by the number of one one-thousandths of a Series A Preferred Share for which a Right is then exercisable (without giving effect to this <u>Section 11.1.2</u>), in accordance with the terms of this Agreement and in lieu of Series A Preferred Shares, such number of Common Shares as shall equal the result obtained by (x) multiplying the then current Purchase Price by the number of one one-thousandths of a Series A Preferred Share for which a Right is then exercisable (without giving effect to this <u>Section 11.1.2</u>) and (y) dividing that product by 50% of the current per share market price of the Common Shares (determined pursuant to <u>Section 11.4</u>) on the first of the date of the occurrence of, or the date of the first public announcement of, a Trigger Event (the "*Adjustment Shares*"); *provided* that the Purchase Price and the number of Adjustment Shares shall thereafter be subject to further adjustment as appropriate in accordance with <u>Section 11.6</u>. Notwithstanding the foregoing, upon and after the occurrence of a Trigger Event, any Rights that are or were acquired or Beneficially Owned by (1) any Acquiring Person or any Related Person of such Acquiring Person, (2) a transferee of any Acquiring Person (or of any Related Person of such Acquiring Person) who becomes a transferee after the Acquiring Person becomes such, or (3) a transferee of any Acquiring Person (or of any Related Person of such Acquiring Person) who becomes a transferee prior to or concurrently with the Acquiring Person becoming such and receives such Rights pursuant to either (A) a transfer (whether or not for consideration) from the Acquiring Person to holders of equity interests in such Acquiring Person or to any Person with whom the Acquiring Person has any continuing agreement, arrangement or understanding regarding the transferred Rights or (B) a transfer which the Board has determined is part of a plan, arrangement or understanding which has as a primary purpose or effect avoidance of this <u>Section 11.1.2</u>, and subsequent transferees, shall become void without any further action, and any holder (whether or not such holder is an Acquiring Person or a Related Person of an Acquiring Person) of such Rights shall thereafter have no right to exercise such Rights under any provision of this Agreement or otherwise. From and after the Trigger Event, no Right Certificate shall be issued pursuant to <u>Section 3</u> or <u>Section 6</u> that represents Rights that are or have become void pursuant to the provisions of this paragraph, and any Right Certificate delivered to the Rights Agent that represents Rights that are or have become void pursuant to the provisions of this paragraph shall be canceled.

The Company shall use all reasonable efforts to ensure that the provisions of this <u>Section 11.1.2</u> are complied with, but shall have no liability to any holder of Right Certificates or any other Person as a result of its failure to make any determinations with respect to any Acquiring Person or its Related Persons or transferees hereunder.

15

From and after the occurrence of an event specified in Section 13.1, any Rights that theretofore have not been exercised pursuant to this Section 11.1.2 shall thereafter be exercisable only in accordance with Section 13 and not pursuant to this Section 11.1.2.

11.1.3. Insufficient Shares. The Company may at its option substitute for Common Shares issuable upon the exercise of Rights in accordance with the foregoing Section 11.1.2 a number of Series A Preferred Shares or fraction thereof such that the then current per share market price of one Series A Preferred Share multiplied by such number or fraction is equal to the then current per share market price of one Common Share. In the event that upon the occurrence of a Trigger Event there shall not be sufficient Common Shares authorized but unissued, or held by the Company as treasury shares, to permit the exercise in full of the Rights in accordance with the foregoing Section 11.1.2, the Company shall take all such action as may be necessary to authorize additional Common Shares for issuance upon exercise of the Rights, *provided, however,* that if the Company determines that it is unable to cause the authorization of a sufficient number of additional Common Shares, then, in the event the Rights become exercisable, the Company, with respect to each Right and to the extent necessary and permitted by applicable law and any agreements or instruments in effect on the date hereof to which it is a party, shall: (A) determine the excess of (1) the value of the Adjustment Shares issuable upon the exercise of a Right (the "*Current Value*"), over (2) the Purchase Price (such excess, the "*Spread*") and (B) with respect to each Right (other than Rights which have become void pursuant to Section 11.1.2), make adequate provision to substitute for the Adjustment Shares, upon payment of the applicable Purchase Price, (1) cash, (2) a reduction in the Purchase Price, (3) Series A Preferred Shares, (4) other equity securities of the Company (including, without limitation, preferred shares, or fractions thereof, which, by virtue of having dividend, voting and liquidation rights substantially comparable to those of the Common Shares, the Board has deemed in good faith to have substantially the same value as the Common Shares) (each such preferred share or fractions thereof constituting a "*common share equivalent*")), (5) debt securities of the Company, (6) other assets or (7) any combination of the foregoing having an aggregate value equal to the Current Value, where such aggregate value has been determined by the Board based upon the advice of a nationally recognized investment banking firm selected in good faith by the Board; *provided, however,* that if the Company shall not have made adequate provision to deliver value pursuant to clause (B) above within thirty (30) days following the occurrence of a Trigger Event, then the Company shall be obligated to deliver, to the extent necessary and permitted by applicable law and any agreements or instruments in effect on the date hereof to which it is a party, upon the surrender for exercise of a Right and without requiring payment of the Purchase Price, Common Shares (to the extent available) and then, if necessary, such number or fractions of Series A Preferred Shares (to the extent available) and then, if necessary, cash, which shares and/or cash have an aggregate value equal to the Spread. If, upon the occurrence of a Trigger Event, the Board shall determine in good faith that it is likely that sufficient additional Common Shares could be authorized for issuance upon exercise in full of the Rights, then, if the Board so elects, the thirty (30) day period set forth above, may be extended to the extent necessary, but not more than one hundred twenty (120) days following the occurrence of a Trigger Event, in order that the Company may seek shareholder approval for the authorization of such additional shares (such thirty (30) day period, as it may be extended, is herein called the "*Substitution Period*"). To the extent that the Company determines that some actions need be taken pursuant to the second and/or third sentences of this Section 11.1.3, the Company (x) shall provide that such action shall apply uniformly to all outstanding Rights, and (y) may suspend the exercisability of the Rights until the expiration of the Substitution Period in order to seek any authorization of additional shares and/or to decide the appropriate form of distribution to be made pursuant to such first sentence and to determine the value thereof. In the event of any such suspension, the Company shall issue a public announcement stating that the exercisability of the Rights has been temporarily suspended as well as a public announcement at such time as the suspension is no longer in effect. For purposes of this Section 11.1.3, the value of a Common Share shall be the then current per share market price (as determined pursuant to Section 11.4) on the date of the occurrence of a Trigger Event and the value of any "common share equivalent" shall be deemed to have the same value as the Common Shares on such date. The Board may, but shall not be required to, establish procedures to allocate the right to receive Common Shares upon the exercise of the Rights among holders of Rights pursuant to this Section 11.1.3.

16

11.2. <u>Dilutive Rights Offering</u>. In case the Company shall fix a record date for the issuance of rights, options or warrants to all holders of Series A Preferred Shares entitling them (for a period expiring within forty-five (45) calendar days after such record date) to subscribe for or purchase Series A Preferred Shares (or securities having the same rights, privileges and preferences as the Series A Preferred Shares ("*equivalent preferred shares*")) or securities convertible into Series A Preferred Shares or equivalent preferred shares at a price per share of Series A Preferred Shares or per share of equivalent preferred shares (or having a conversion or exercise price per share, if a security convertible into or exercisable for Series A Preferred Shares or equivalent preferred shares) less than the then current per share market price of the Series A Preferred Shares (as determined pursuant to <u>Section 11.4</u>) on such record date, the Purchase Price to be in effect after such record date shall be determined by multiplying the Purchase Price in effect immediately prior to such record date by a fraction, the numerator of which shall be the number of Series A Preferred Shares and equivalent preferred shares issued and outstanding on such record date plus the number of Series A Preferred Shares and equivalent preferred shares which the aggregate offering price of the total number of Series A Preferred Shares and/or equivalent preferred shares to be offered (and/or the aggregate initial conversion price of the convertible securities so to be offered) would purchase at such current per share market price and the denominator of which shall be the number of Series A Preferred Shares and equivalent preferred shares issued and outstanding on such record date plus the number of additional Series A Preferred Shares and/or equivalent preferred shares to be offered for subscription or purchase (or into which the convertible securities so to be offered are initially convertible); *provided, however,* that in no event shall the consideration to be paid upon the exercise of one Right be less than the aggregate par value of the shares of the Company issuable upon exercise of one Right. In case such subscription price may be paid in a consideration part or all of which shall be in a form other than cash, the value of such consideration shall be as determined in good faith by the Board, whose determination shall be described in a statement filed with the Rights Agent and shall be binding on the Rights Agent and the holders of the Rights. Series A Preferred Shares and equivalent preferred shares owned by or held for the account of the Company or any Subsidiary of the Company shall not be deemed outstanding for the purpose of any such computation. Such adjustments shall be made successively whenever such a record date is fixed; and in the event that such rights or warrants are not so issued, the Purchase Price shall be adjusted to be the Purchase Price which would then be in effect if such record date had not been fixed.

11.3.  Distributions. In case the Company shall fix a record date for the making of a distribution to all holders of the Series A Preferred Shares (including any such distribution made in connection with a consolidation, amalgamation or merger in which the Company is the continuing or surviving company) of evidences of indebtedness, cash, securities or assets (other than a regular periodic cash dividend at a rate not in excess of 125% of the rate of the last regular periodic cash dividend theretofore paid or, in case regular periodic cash dividends have not theretofore been paid, at a rate not in excess of 50% of the average net income per share of the Company for the four quarters ended immediately prior to the payment of such dividend, or a dividend or bonus issue payable in Series A Preferred Shares (which dividend or bonus issue, for purposes of this Agreement, shall be subject to the provisions of Section 11.1.1(A))) or convertible securities, or subscription rights or warrants (excluding those referred to in Section 11.2), the Purchase Price to be in effect after such record date shall be determined by multiplying the Purchase Price in effect immediately prior to such record date by a fraction, the numerator of which shall be the then current per share market price of the Series A Preferred Shares (as determined pursuant to Section 11.4) on such record date, less the fair market value (as determined in good faith by the Board, whose determination shall be described in a statement filed with the Rights Agent and shall be binding on the Rights Agent) of the portion of the cash, assets, securities or evidences of indebtedness so to be distributed or of such subscription rights or warrants applicable to one Series A Preferred Share and the denominator of which shall be such current per share market price of the Series A Preferred Shares (as determined pursuant to Section 11.4); *provided, however,* that in no event shall the consideration to be paid upon the exercise of one Right be less than the aggregate par value of the shares of the Company to be issued upon exercise of one Right. Such adjustments shall be made successively whenever such a record date is fixed; and in the event that such distribution is not so made, the Purchase Price shall again be adjusted to be the Purchase Price that would then be in effect if such record date had not been fixed.

11.4.  Current Per Share Market Value.

11.4.1.  General. For the purpose of any computation hereunder, the "*current per share market price*" of any security (a "*Security*" for the purpose of this Section 11.4.1) on any date shall be deemed to be the average of the daily closing prices per share of such Security for the thirty (30) consecutive Trading Days (as such term is hereinafter defined) immediately prior to, but not including, such date; *provided, however,* that in the event that the then current per share market price of the Security is determined during any period following the announcement by the issuer of such Security of (i) a dividend, bonus issue or distribution on such Security payable in shares of such Security or securities convertible into such shares or (ii) any subdivision, combination, consolidation or reclassification of such Security, and prior to the expiration of thirty (30) Trading Days after the ex-dividend date for such dividend, bonus issue or distribution, or the record date for such subdivision, combination, consolidation or reclassification, then, and in each such case, the "current per share market price" shall be appropriately adjusted to reflect the then current market price per share equivalent of such Security. The closing price for each day shall be the last sale price, regular way, or, in case no such sale takes place on such day, the average of the closing bid and asked prices, regular way, in either case as reported in the principal consolidated transaction reporting system with respect to securities listed or admitted to trading on NASDAQ or, if the Security is not listed or admitted to trading on NASDAQ, as reported in the principal consolidated transaction reporting system with respect to securities listed on the principal national securities exchange on which the Security is listed or admitted to trading or, if the Security is not listed or admitted to trading on any national securities exchange, the last quoted price or, if on such date the Security is not so quoted, the average of the high bid and low asked prices in the over-the-counter market, as reported thereby or such other system then in use, or, if on any such date the Security is not quoted by any such organization, the average of the closing bid and asked prices as furnished by a professional market maker making a market in the Security selected by the Board. If on any such date no such market maker is making a market in the Security, the fair value of the Security on such date as determined in good faith by the Board shall be used. The term "*Trading Day*" shall mean a day on which the principal national securities exchange on which the Security is listed or admitted to trading is open for the transaction of business or, if the Security is not listed or admitted to trading on any national securities exchange, a Business Day. If the Security is not publicly held or not so listed or traded, or if on any such date the Security is not so quoted and no such market maker is making a market in the Security, "current per share market price" shall mean the fair value per share as determined in good faith by the Board or, if at the time of such determination there is an Acquiring Person, by a nationally recognized investment banking firm selected by the Board, which shall have the duty to make such determination in a reasonable and objective manner, whose determination shall be described in a statement filed with the Rights Agent and shall be conclusive for all purposes.

18

11.4.2. <u>Series A Preferred Shares</u>. Notwithstanding <u>Section 11.4.1</u>, for the purpose of any computation hereunder, the "current per share market price" of the Series A Preferred Shares shall be determined in the same manner as set forth above in <u>Section 11.4.1</u> (other than the last sentence thereof). If the current per share market price of the Series A Preferred Shares cannot be determined in the manner described in <u>Section 11.4.1</u>, the "current per share market price" of the Series A Preferred Shares shall be conclusively deemed to be an amount equal to 1,000 (as such number may be appropriately adjusted for such events as share splits, share dividends, bonus issues and recapitalizations with respect to the Common Shares occurring after the date of this Agreement) multiplied by the current per share market price of the Common Shares (as determined pursuant to <u>Section 11.4.1</u>). If neither the Common Shares nor the Series A Preferred Shares are publicly held or so listed or traded, or if on any such date neither the Common Shares nor the Series A Preferred Shares are so quoted and no such market maker is making a market in either the Common Shares or the Series A Preferred Shares, "current per share market price" of the Series A Preferred Shares shall mean the fair value per share as determined in good faith by the Board, or, if at the time of such determination there is an Acquiring Person, by a nationally recognized investment banking firm selected by the Board, which shall have the duty to make such determination in a reasonable and objective manner, which determination shall be described in a statement filed with the Rights Agent and shall be conclusive for all purposes. For purposes of this Agreement, the "current per share market price" of one one-thousandth of a Series A Preferred Share shall be equal to the "current per share market price" of one Series A Preferred Share divided by 1,000.

11.5. <u>Insignificant Changes</u>. No adjustment in the Purchase Price shall be required unless such adjustment would require an increase or decrease of at least 1% in the Purchase Price. Any adjustments which by reason of this <u>Section 11.5</u> are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations under this <u>Section 11</u> shall be made to the nearest cent or to the nearest one-hundred thousandth of a Series A Preferred Share or the nearest ten-thousandth of a Common Share or other share or security, as the case may be.

19

11.6. <u>Shares Other Than Series A Preferred Shares</u>. If as a result of an adjustment made pursuant to <u>Section 11.1</u>, the holder of any Right thereafter exercised shall become entitled to receive any shares of the Company other than Series A Preferred Shares, thereafter the number of such other shares so receivable upon exercise of any Right shall be subject to adjustment from time to time in a manner and on terms as nearly equivalent as practicable to the provisions with respect to the Series A Preferred Shares contained in <u>Sections 11.1, 11.2, 11.3, 11.5, 11.8, 11.9</u> and <u>11.13</u>, and the provisions of <u>Sections 7, 9, 10, 13</u> and <u>14</u> with respect to the Series A Preferred Shares shall apply on like terms to any such other shares.

11.7. <u>Rights Issued Subsequent to Adjustment</u>. All Rights originally issued by the Company subsequent to any adjustment made to the Purchase Price hereunder shall evidence the right to purchase, at the adjusted Purchase Price, the number of one one-thousandths of a Series A Preferred Share and other shares or other securities, assets or cash of the Company, if any, purchasable from time to time hereunder upon exercise of the Rights, all subject to further adjustment as provided herein.

11.8. <u>Effect of Adjustments on Existing Rights</u>. Unless the Company shall have exercised its election as provided in <u>Section 11.9</u>, upon each adjustment of the Purchase Price as a result of the calculations made in <u>Sections 11.2</u> and <u>11.3</u>, each Right outstanding immediately prior to the making of such adjustment shall thereafter evidence the right to purchase, at the adjusted Purchase Price, that number of one one-thousandths of a Series A Preferred Share (calculated to the nearest one-hundred thousandth of a Series A Preferred Share) obtained by (i) multiplying (x) the number of one one-thousandths of a Series A Preferred Share covered by a Right immediately prior to this adjustment by (y) the Purchase Price in effect immediately prior to such adjustment of the Purchase Price and (ii) dividing the product so obtained by the Purchase Price in effect immediately after such adjustment of the Purchase Price.

11.9. <u>Adjustment in Number of Rights</u>. The Company may elect on or after the date of any adjustment of the Purchase Price to adjust the number of Rights, in substitution for any adjustment in the number of one one-thousandths of a Series A Preferred Share issuable upon the exercise of a Right. Each of the Rights outstanding after such adjustment of the number of Rights shall be exercisable for the number of one one-thousandths of a Series A Preferred Share for which a Right was exercisable immediately prior to such adjustment. Each Right held of record prior to such adjustment of the number of Rights shall become that number of Rights (calculated to the nearest ten-thousandth) obtained by dividing the Purchase Price in effect immediately prior to adjustment of the Purchase Price by the Purchase Price in effect immediately after adjustment of the Purchase Price. The Company shall make a public announcement of its election to adjust the number of Rights, indicating the record date for the adjustment, and, if known at the time, the amount of the adjustment to be made. This record date may be the date on which the Purchase Price is adjusted or any day thereafter, but, if the Right Certificates have been issued, shall be at least ten (10) days later than the date of the public announcement. If Right Certificates have been issued, upon each adjustment of the number of Rights pursuant to this <u>Section 11.9</u>, the Company may, as promptly as practicable, cause to be distributed to holders of record of Right Certificates on such record date Right Certificates evidencing, subject to <u>Section 14</u>, the additional Rights to which such holders shall be entitled as a result of such adjustment, or, at the option of the Company, shall cause to be distributed to such holders of record in substitution and replacement for the Right Certificates held by such holders prior to the date of adjustment, and upon surrender thereof, if required by the Company, new Right Certificates evidencing all the Rights to which such holders shall be entitled after such adjustment. Right Certificates so to be distributed shall be issued, executed and countersigned in the manner provided for herein (and may bear, at the option of the Company, the adjusted Purchase Price) and shall be registered in the names of the holders of record of Right Certificates on the record date specified in the public announcement.

20

11.10. <u>Right Certificates Unchanged</u>. Irrespective of any adjustment or change in the Purchase Price or the number of one one-thousandths of a Series A Preferred Share issuable upon the exercise of the Rights, the Right Certificates theretofore and thereafter issued may continue to express the Purchase Price per share and the number of one one-thousandths of a Series A Preferred Share which were expressed in the initial Right Certificates issued hereunder.

11.11. <u>Par Value Limitations</u>. Before taking any action that would cause an adjustment reducing the Purchase Price below one one-thousandth of the then par value, if any, of the Series A Preferred Shares or other shares issuable upon exercise of the Rights, the Company shall take any corporate action which may, in the opinion of its counsel, be necessary in order that the Company may validly and legally issue fully paid and nonassessable Series A Preferred Shares or other such shares at such adjusted Purchase Price.

11.12. <u>Deferred Issuance</u>. In any case in which this <u>Section 11</u> shall require that an adjustment in the Purchase Price be made effective as of a record date for a specified event, the Company may elect to defer until the occurrence of such event the issuance to the holder of any Right exercised after such record date of that number of Series A Preferred Shares and other shares or securities of the Company, if any, issuable upon such exercise over and above the Series A Preferred Shares and other shares or other securities, assets or cash of the Company, if any, issuable upon such exercise on the basis of the Purchase Price in effect prior to such adjustment; *provided, however,* that the Company shall deliver to such holder a due bill or other appropriate instrument evidencing such holder's right to receive such additional shares upon the occurrence of the event requiring such adjustment.

11.13. <u>Reduction in Purchase Price</u>. Anything in this <u>Section 11</u> to the contrary notwithstanding, the Company shall be entitled to make such reductions in the Purchase Price, in addition to those adjustments expressly required by this <u>Section 11</u>, as and to the extent that it in its sole discretion shall determine to be advisable in order that any consolidation or subdivision of the Series A Preferred Shares, issuance wholly for cash of any of the Series A Preferred Shares at less than the current market price, issuance wholly for cash of Series A Preferred Shares or securities which by their terms are convertible into or exchangeable for Series A Preferred Shares, dividends or bonus issues on Series A Preferred Shares payable in Series A Preferred Shares or issuance of rights, options or warrants referred to hereinabove in this <u>Section 11</u>, hereafter made by the Company to holders of its Series A Preferred Shares shall not be taxable to such shareholders.

21

11.14. <u>Company Not to Diminish Benefits of Rights</u>. The Company covenants and agrees that after the earlier of the Share Acquisition Date or Distribution Date it will not, except as permitted by <u>Section 23</u>, <u>Section 26</u> or <u>Section 27</u>, take (or permit any Subsidiary to take) any action if at the time such action is taken it is reasonably foreseeable that such action will substantially diminish or otherwise eliminate the benefits intended to be afforded by the Rights.

11.15. <u>Adjustment of Rights Associated with Common Shares</u>. Notwithstanding anything contained in this Agreement to the contrary, in the event that the Company shall at any time after the date hereof and prior to the Distribution Date (i) declare or pay any dividend or bonus issue on the issued and outstanding Common Shares payable in Common Shares, (ii) effect a subdivision or consolidation of the issued and outstanding Common Shares (by reclassification or otherwise than by the payment of dividends or bonus issues payable in Common Shares), or (iii) combine or consolidate the issued and outstanding Common Shares into a greater or lesser number of Common Shares, then in any such case, the number of Rights associated with each Common Share then issued and outstanding, or issued or delivered thereafter but prior to the Distribution Date or in accordance with <u>Section 22</u> shall be proportionately adjusted so that the number of Rights thereafter associated with each Common Share following any such event shall equal the result obtained by multiplying the number of Rights associated with each Common Share immediately prior to such event by a fraction, the numerator of which shall be the total number of Common Shares issued and outstanding immediately prior to the occurrence of the event and the denominator of which shall be the total number of Common Shares issued and outstanding immediately following the occurrence of such event. The adjustments provided for in this <u>Section 11.15</u> shall be made successively whenever such a dividend or bonus issue is declared or paid or such a subdivision, combination or consolidation is effected.

Section 12.    <u>Certificate of Adjusted Purchase Price or Number of Shares</u>. Whenever an adjustment is made as provided in <u>Sections 11</u> or <u>13</u>, the Company shall (a) promptly prepare a certificate setting forth such adjustment, and a brief statement of the facts accounting for such adjustment, (b) promptly file with the Rights Agent and with each transfer agent for the Common Shares or the Series A Preferred Shares a copy of such certificate and (c) mail a brief summary thereof to each holder of a Right Certificate (or if before the Distribution Date, to each holder of a certificate representing Common Shares or of Book Entry Shares) in accordance with <u>Section 25</u>. The Rights Agent shall be fully protected in relying on any such certificate and on any adjustment or statement therein contained and shall not be deemed to have knowledge of any such adjustment unless and until it shall have received such certificate.

Section 13. <u>Consolidation, Amalgamation, Merger or Sale or Transfer of Assets or Earning Power</u>.

13.1.  <u>Certain Transactions</u>. In the event that, from and after the first occurrence of a Trigger Event, directly or indirectly, (A) the Company shall consolidate or amalgamate with, or merge with and into, any other Person and the Company shall not be the continuing or surviving company, (B) any Person shall consolidate or amalgamate with the Company, or merge with and into the Company and the Company shall be the continuing or surviving company of such merger and, in connection with such merger, all or part of the Common Shares shall be changed into or exchanged for shares or other securities of the Company or any other Person or cash or any other property, or (C) the Company shall sell, exchange, mortgage or otherwise transfer (or one or more of its Subsidiaries shall sell, exchange, mortgage or otherwise transfer), in one or more transactions, assets or earning power aggregating 50% or more of the assets or earning power of the Company and its Subsidiaries (taken as a whole) to any other Person or Persons (other than the Company or one or more wholly-owned Subsidiaries of the Company in one or more transactions each of which complies with <u>Section 11.14</u>), then, and in each such case, proper provision shall be made so that (i) each holder of a Right (other than Rights which have become void pursuant to <u>Section 11.1.2</u>) shall thereafter have the right to receive, upon the exercise thereof at a price per Right equal to the then current Purchase Price multiplied by the number of one one-thousandths of a Series A Preferred Share for which a Right was exercisable immediately prior to the first occurrence of a Trigger Event (as subsequently adjusted pursuant to <u>Sections 11.1.1, 11.2, 11.3, 11.8, 11.9</u> and <u>11.12</u>), in accordance with the terms of this Agreement and in lieu of Series A Preferred Shares or Common Shares, such number of validly authorized and issued, fully paid, non-assessable and freely tradable Common Shares of the Principal Party (as such term is hereinafter defined) not subject to any liens, encumbrances, rights of first refusal or other adverse claims, as shall be equal to the result obtained by (x) multiplying the then current Purchase Price by the number of one one-thousandths of a Series A Preferred Share for which a Right was exercisable immediately prior to the first occurrence of a Trigger Event (as subsequently adjusted pursuant to <u>Sections 11.1.1, 11.2, 11.3, 11.8, 11.9</u> and <u>11.12</u>) and (y) dividing that product by 50% of the then current per share market price of the Common Shares of such Principal Party (determined pursuant to <u>Section 11.4</u>) on the date of consummation of such consolidation, amalgamation, merger, sale or transfer; *provided* that the price per Right so payable and the number of Common Shares of such Principal Party so receivable upon exercise of a Right shall thereafter be subject to further adjustment as appropriate in accordance with <u>Section 11.6</u> to reflect any events covered thereby occurring in respect of the Common Shares of such Principal Party after the occurrence of such consolidation, amalgamation, merger, sale or transfer; (ii) such Principal Party shall thereafter be liable for, and shall assume, by virtue of such consolidation, amalgamation, merger, sale or transfer, all of the obligations and duties of the Company pursuant to this Agreement; (iii) the term "Company" shall thereafter be deemed to refer to such Principal Party; and (iv) such Principal Party shall take such steps (including, but not limited to, the reservation of a sufficient number of Common Shares in accordance with <u>Section 9</u>) in connection with such consummation as may be necessary to assure that the provisions hereof shall thereafter be applicable, as nearly as reasonably may be, in relation to its Common Shares thereafter deliverable upon the exercise of the Rights; *provided* that, upon the subsequent occurrence of any consolidation, amalgamation, merger, sale or transfer of assets or other extraordinary transaction in respect of such Principal Party, each holder of a Right shall thereupon be entitled to receive, upon exercise of a Right and payment of the Purchase Price as provided in this <u>Section 13.1</u>, such cash, shares, rights, warrants and other property which such holder would have been entitled to receive had such holder, at the time of such transaction, owned the Common Shares of the Principal Party receivable upon the exercise of a Right pursuant to this <u>Section 13.1</u>, and such Principal Party shall take such steps (including, but not limited to, reservation of shares) as may be necessary to permit the subsequent exercise of the Rights in accordance with the terms hereof for such cash, shares, rights, warrants and other property. The Company shall not consummate any such consolidation, amalgamation, merger, sale or transfer unless prior thereto the Company and such Principal Party shall have executed and delivered to the Rights Agent a supplemental agreement confirming that the requirements of this <u>Section 13.1</u> and <u>Section 13.2</u> shall promptly be performed in accordance with their terms and that such consolidation, amalgamation, merger, sale or transfer of assets shall not result in a default by the Principal Party under this Agreement as the same shall have been assumed by the Principal Party pursuant to this <u>Section 13.1</u> and <u>Section 13.2</u> and providing that, as soon as practicable after executing such agreement pursuant to this <u>Section 13</u>, the Principal Party, at its own expense, shall:

23

(1)  prepare and file a registration statement under the Securities Act, if necessary, with respect to the Rights and the securities purchasable upon exercise of the Rights on an appropriate form, use its best efforts to cause such registration statement to become effective as soon as practicable after such filing and use its best efforts to cause such registration statement to remain effective (with a prospectus at all times meeting the requirements of the Securities Act) until the Expiration Date and similarly comply with applicable state securities laws;

(2)  use its best efforts, if the Common Shares of the Principal Party shall be listed or admitted to trading on NASDAQ or on another national securities exchange, to list or admit to trading (or continue the listing of) the Rights and the securities purchasable upon exercise of the Rights on NASDAQ or such securities exchange;

(3)  deliver to holders of the Rights historical financial statements for the Principal Party which comply in all respects with the requirements for registration on Form 10 (or any successor form) under the Exchange Act; and

(4)  obtain waivers of any rights of first refusal or preemptive rights in respect of the Common Shares of the Principal Party subject to purchase upon exercise of outstanding Rights.

In case the Principal Party has a provision in any of its authorized securities or in its articles or certificate of incorporation or by-laws or other instrument governing its corporate affairs, which provision would have the effect of (i) causing such Principal Party to issue (other than to holders of Rights pursuant to this Section 13), in connection with, or as a consequence of, the consummation of a transaction referred to in this Section 13, Common Shares or common share equivalents of such Principal Party at less than the then current market price per share thereof (determined pursuant to Section 11.4) or securities exercisable for, or convertible into, Common Shares or common share equivalents of such Principal Party at less than such then current market price (other than to holders of Rights pursuant to this Section 13), or (ii) providing for any special payment, taxes, charges or similar provision in connection with the issuance of the Common Shares of such Principal Party pursuant to the provision of Section 13, then, in such event, the Company hereby agrees with each holder of Rights that it shall not consummate any such transaction unless prior thereto the Company and such Principal Party shall have executed and delivered to the Rights Agent a supplemental agreement providing that the provision in question of such Principal Party shall have been canceled, waived or amended, or that the authorized securities shall be redeemed, so that the applicable provision will have no effect in connection with, or as a consequence of, the consummation of the proposed transaction.

24

The Company covenants and agrees that it shall not, at any time after the Trigger Event, enter into any transaction of the type described in clauses (A) through (C) of this Section 13.1 if (i) at the time of or immediately after such consolidation, amalgamation, merger, sale, transfer or other transaction there are any rights, warrants or other instruments or securities outstanding or agreements in effect which would substantially diminish or otherwise eliminate the benefits intended to be afforded by the Rights, (ii) prior to, simultaneously with or immediately after such consolidation, amalgamation, merger, sale, transfer or other transaction, the shareholders of the Person who constitutes, or would constitute, the Principal Party for purposes of Section 13.2 shall have received a distribution of Rights previously owned by such Person or any of its Related Persons or (iii) the form or nature of organization of the Principal Party would preclude or limit the exercisability of the Rights. The provisions of this Section 13 shall similarly apply to successive transactions of the type described in clauses (A) through (C) of this Section 13.1.

13.2.  Principal Party. "*Principal Party*" shall mean:

(i) in the case of any transaction described in clauses (A) or (B) of the first sentence of Section 13.1: (i) the Person that is the issuer of the securities into which the Common Shares are converted in such merger, amalgamation or consolidation, or, if there is more than one such issuer, the issuer the Common Shares of which has the greatest aggregate market value of shares issued and outstanding, or (ii) if no securities are so issued, (x) the Person that is the other party to the merger, if such Person survives said merger, or, if there is more than one such Person, the Person the Common Shares of which has the greatest aggregate market value of shares issued and outstanding or (y) if the Person that is the other party to the merger does not survive the merger, the Person that does survive the merger (including the Company if it survives) or (z) the Person resulting from the consolidation; and

(ii) in the case of any transaction described in clause (C) of the first sentence in Section 13.1, the Person that is the party receiving the greatest portion of the assets or earning power transferred pursuant to such transaction or transactions, or, if each Person that is a party to such transaction or transactions receives the same portion of the assets or earning power so transferred or if the Person receiving the greatest portion of the assets or earning power cannot be determined, whichever of such Persons is the issuer of Common Shares having the greatest aggregate market value of shares issued and outstanding; *provided, however,* that in any such case described in the foregoing clause (i) or (ii) of this Section 13.2, if the Common Shares of such Person are not at such time or have not been continuously over the preceding twelve (12) month period registered under Section 12 of the Exchange Act, then (1) if such Person is a direct or indirect Subsidiary of another Person the Common Shares of which are and have been so registered, the term "Principal Party" shall refer to such other Person, or (2) if such Person is a Subsidiary, directly or indirectly, of more than one Person, the Common Shares of all of which are and have been so registered, the term "Principal Party" shall refer to whichever of such Persons is the issuer of Common Shares having the greatest aggregate market value of shares issued and outstanding, or (3) if such Person is owned, directly or indirectly, by a joint venture formed by two or more Persons that are not owned, directly or indirectly, by the same Person, the rules set forth in clauses (1) and (2) above shall apply to each of the owners having an interest in the venture as if the Person owned by the joint venture was a Subsidiary of both or all of such joint venturers, and the Principal Party in each such case shall bear the obligations set forth in this Section 13 in the same ratio as its interest in such Person bears to the total of such interests.

25

13.3.  <u>Approved Acquisitions</u>. Notwithstanding anything contained herein to the contrary, upon the consummation of any merger or other acquisition transaction of the type described in clause (A), (B) or (C) of <u>Section 13.1</u> involving the Company pursuant to a merger or other acquisition agreement between the Company and any Person (or one or more of such Person's Affiliates or Associates) which agreement has been approved by the Board prior to any Person becoming an Acquiring Person, this Agreement and the rights of holders of Rights hereunder shall be terminated in accordance with <u>Section 7.1</u>.

Section 14.  <u>Fractional Rights and Fractional Shares</u>.

14.1.  <u>Cash in Lieu of Fractional Rights</u>. The Company shall not be required to issue fractions of Rights or to distribute Right Certificates which evidence fractional Rights (except prior to the Distribution Date in accordance with <u>Section 11.15</u>). In lieu of such fractional Rights, there shall be paid to the registered holders of the Right Certificates with regard to which such fractional Rights would otherwise be issuable an amount in cash equal to the same fraction of the current market value of a whole Right. For the purposes of this <u>Section 14.1</u>, the current market value of a whole Right shall be the closing price of the Rights for the Trading Day immediately prior to the date on which such fractional Rights would have been otherwise issuable. The closing price for any day shall be the last sale price, regular way, or, in case no such sale takes place on such day, the average of the closing bid and asked prices, regular way, in either case as reported in the principal consolidated transaction reporting system with respect to securities listed or admitted to trading on NASDAQ or, if the Rights are not listed or admitted to trading on NASDAQ, as reported in the principal consolidated transaction reporting system with respect to securities listed on the principal national securities exchange on which the Rights are listed or admitted to trading or, if the Rights are not listed or admitted to trading on any national securities exchange, the last quoted price or, if not so quoted, the average of the high bid and low asked prices in the over-the-counter market, as reported by NASDAQ or such other system then in use or, if on any such date the Rights are not quoted by any such organization, the average of the closing bid and asked prices as furnished by a professional market maker making a market in the Rights selected by the Board. If on any such date no such market maker is making a market in the Rights, the current market value of the Rights on such date shall be the fair value of the Rights as determined in good faith by the Board, or, if at the time of such determination there is an Acquiring Person, by a nationally recognized investment banking firm selected by the Board, which shall have the duty to make such determination in a reasonable and objective manner, which determination shall be described in a statement filed with the Rights Agent and shall be conclusive for all purposes.

14.2.  Cash in Lieu of Fractional Series A Preferred Shares. The Company shall not be required to issue fractions of Series A Preferred Shares (other than fractions which are integral multiples of one one-thousandth of a Series A Preferred Share) upon exercise or exchange of the Rights or to distribute certificates which evidence fractional Series A Preferred Shares (other than fractions which are integral multiples of one one-thousandths of a Series A Preferred Share). Interests in fractions of Series A Preferred Shares in integral multiples of one one-thousandth of a Series A Preferred Share may, at the election of the Company, be evidenced by depositary receipts, pursuant to an appropriate agreement between the Company and a depositary selected by it; *provided,* that such agreement shall provide that the holders of such depositary receipts shall have all the rights, privileges and preferences to which they are entitled as Beneficial Owners of the Series A Preferred Shares represented by such depositary receipts. In lieu of fractional Series A Preferred Shares that are not integral multiples of one one-thousandth of a Series A Preferred Share, the Company shall pay to the registered holders of Right Certificates at the time such Rights are exercised or exchanged as herein provided an amount in cash equal to the same fraction of the current per share market price of one Series A Preferred Share (as determined in accordance with Section 14.1) for the Trading Day immediately prior to the date of such exercise or exchange.

14.3.  Cash in Lieu of Fractional Common Shares. The Company shall not be required to issue fractions of Common Shares or to distribute certificates which evidence fractional Common Shares upon the exercise or exchange of Rights. In lieu of such fractional Common Shares, the Company shall pay to the registered holders of the Right Certificates with regard to which such fractional Common Shares would otherwise be issuable an amount in cash equal to the same fraction of the current market value of a whole Common Share (as determined in accordance with Section 14.1) for the Trading Day immediately prior to the date of such exercise or exchange.

14.4.  Waiver of Right to Receive Fractional Rights or Shares. The holder of a Right by the acceptance of the Rights expressly waives his right to receive any fractional Rights or any fractional shares upon exercise or exchange of a Right, except as permitted by this Section 14.

Section 15.  Rights of Action. All rights of action in respect of this Agreement, except the rights of action given to the Rights Agent under Section 18, are vested in the respective registered holders of the Right Certificates (and, prior to the Distribution Date, the registered holders of Common Shares); and any registered holder of any Right Certificate (or, prior to the Distribution Date, of Common Shares), without the consent of the Rights Agent or of the holder of any other Right Certificate (or, prior to the Distribution Date, of Common Shares), may, in his own behalf and for his own benefit, enforce this Agreement, and may institute and maintain any suit, action or proceeding against the Company to enforce this Agreement, or otherwise enforce or act in respect of his right to exercise the Rights evidenced by such Right Certificate (or, prior to the Distribution Date, such Common Shares) in the manner provided in such Right Certificate and in this Agreement. Without limiting the foregoing or any remedies available to the holders of Rights, it is specifically acknowledged that the holders of Rights would not have an adequate remedy at law for any breach of this Agreement and shall be entitled to specific performance of the obligations under, and injunctive relief against actual or threatened violations of, the obligations of any Person (including, without limitation, the Company) subject to this Agreement.

Section 16.  Agreement of Right Holders. Every holder of a Right by accepting the same consents and agrees with the Company and the Rights Agent and with every other holder of a Right that:

27

(a)  prior to the Distribution Date, the Rights will not be evidenced by a Right Certificate and will be transferable only in connection with the transfer of Common Shares;

(b)  as of and after the Distribution Date, the Right Certificates are transferable only on the registry books of the Rights Agent if surrendered at the office of the Rights Agent designated for such purpose, duly endorsed or accompanied by a proper instrument of transfer with all required certifications completed; and

(c)  the Company and the Rights Agent may deem and treat the Person in whose name the Right Certificate (or, prior to the Distribution Date, the associated Common Share certificate or Book Entry Share) is registered as the absolute owner thereof and of the Rights evidenced thereby (notwithstanding any notations of ownership or writing on the Right Certificates, the associated Common Share certificate, the register of members or Book Entry Share made by anyone other than the Company or the Rights Agent) for all purposes whatsoever, and neither the Company nor the Rights Agent shall be affected by any notice to the contrary.

Section 17.  <u>Right Certificate Holder Not Deemed a Shareholder</u>. No holder, as such, of any Right Certificate shall be entitled to vote, receive dividends or be deemed for any purpose the holder of Series A Preferred Shares or any other securities of the Company which may at any time be issuable on the exercise of the Rights represented thereby, nor shall anything contained herein or in any Right Certificate be construed to confer upon the holder of any Right Certificate, as such, any of the rights of a shareholder of the Company or any right to vote for the election of directors or upon any matter submitted to shareholders at any meeting thereof, or to give or withhold consent to any corporate action, or to receive notice of meetings or other actions affecting shareholders (except as provided in <u>Section 24</u>), or to receive dividends or subscription rights, or otherwise, until the Right or Rights evidenced by such Right Certificate shall have been exercised in accordance with the provisions hereof.

Section 18.  <u>Concerning the Rights Agent</u>. The Company agrees to pay to the Rights Agent reasonable compensation for all services rendered by it hereunder in accordance with a fee schedule to be mutually agreed upon and, from time to time, on demand of the Rights Agent, its reasonable expenses and counsel fees and other disbursements incurred in the administration and execution of this Agreement and the exercise and performance of its duties hereunder. The Company also agrees to indemnify the Rights Agent for, and to hold it harmless against, any loss, liability, or expense, incurred without negligence, bad faith or willful misconduct on the part of the Rights Agent, for anything done or omitted by the Rights Agent in connection with the acceptance and administration of this Agreement, including the costs and expenses of defending against any claim of liability arising therefrom, directly or indirectly.

The Rights Agent shall be protected and shall incur no liability for or in respect of any action taken, suffered or omitted by it in connection with its administration of this Agreement in reliance upon any Right Certificate or certificate for the Series A Preferred Shares or the Common Shares or for other securities of the Company, instrument of assignment or transfer, power of attorney, endorsement, affidavit, letter, notice, instruction, direction, consent, certificate, statement, or other paper or document believed by it to be genuine and to be signed, executed and, where necessary, verified or acknowledged, by the proper Person or Persons.

28

Section 19.  Merger or Consolidation or Change of Name of Rights Agent. Any corporation or limited liability company or other entity into which the Rights Agent or any successor Rights Agent may be merged or with which it may be consolidated, or any corporation or limited liability company or other entity resulting from any merger or consolidation to which the Rights Agent or any successor Rights Agent shall be a party, or any corporation or limited liability company succeeding to the corporate trust or share transfer business of the Rights Agent or any successor Rights Agent, shall be the successor to the Rights Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, *provided* that such corporation or limited liability company or other entity would be eligible for appointment as a successor Rights Agent under the provisions of Section 21. In case at the time such successor Rights Agent shall succeed to the agency created by this Agreement, any of the Right Certificates shall have been countersigned but not delivered, any such successor Rights Agent may adopt the countersignature of the predecessor Rights Agent and deliver such Right Certificates so countersigned; and in case at that time any of the Right Certificates shall not have been countersigned, any successor Rights Agent may countersign such Right Certificates either in the name of the predecessor Rights Agent or in the name of the successor Rights Agent; and in all such cases such Right Certificates shall have the full force provided in the Right Certificates and in this Agreement.

In case at any time the name of the Rights Agent shall be changed and at such time any of the Right Certificates shall have been countersigned but not delivered, the Rights Agent may adopt the countersignature under its prior name and deliver Right Certificates so countersigned; and in case at that time any of the Right Certificates shall not have been countersigned, the Rights Agent may countersign such Right Certificates either in its prior name or in its changed name; and in all such cases such Right Certificates shall have the full force provided in the Right Certificates and in this Agreement.

Section 20.  Duties of Rights Agent. The Rights Agent undertakes the duties and obligations imposed by this Agreement upon the following terms and conditions, by all of which the Company and the holders of Right Certificates, by their acceptance thereof, shall be bound:

20.1.  Legal Counsel. The Rights Agent may consult with legal counsel selected by it (who may be legal counsel for the Company), and the opinion of such counsel shall be full and complete authorization and protection to the Rights Agent as to any action taken or omitted by it in good faith and in accordance with such opinion.

20.2.  Certificates as to Facts or Matters. Whenever in the performance of its duties under this Agreement the Rights Agent shall deem it necessary or desirable that any fact or matter be proved or established by the Company prior to taking or suffering any action hereunder, such fact or matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by any one of the Chief Executive Officer or Chief Financial Officer of the Company and delivered to the Rights Agent; and such certificate shall be full authorization to the Rights Agent for any action taken or suffered in good faith by it under the provisions of this Agreement in reliance upon such certificate.

29

20.3.  <u>Standard of Care</u>. The Rights Agent shall be liable hereunder only for its own negligence, bad faith or willful misconduct.

20.4.  <u>Reliance on Agreement and Right Certificates</u>. The Rights Agent shall not be liable for or by reason of any of the statements of fact or recitals contained in this Agreement or in the Right Certificates (except as to its countersignature thereof) or be required to verify the same, but all such statements and recitals are and shall be deemed to have been made by the Company only.

20.5.  <u>No Responsibility as to Certain Matters</u>. The Rights Agent shall not be under any responsibility in respect of the validity of this Agreement or the execution and delivery hereof (except the due execution hereof by the Rights Agent) or in respect of the validity or execution of any Right Certificate (except its countersignature thereof); nor shall it be responsible for any breach by the Company of any covenant or condition contained in this Agreement or in any Right Certificate; nor shall it be responsible for any change in the exercisability of the Rights (including the Rights becoming void pursuant to Section 11.1.2) or any adjustment required under the provisions of Sections 3, 11, 13, 23 or 27 or responsible for the manner, method or amount of any such adjustment or the ascertaining of the existence of facts that would require any such adjustment (except with respect to the exercise of Rights evidenced by Right Certificates after actual notice of any such change or adjustment); nor shall it by any act hereunder be deemed to make any representation or warranty as to the authorization or reservation of any Series A Preferred Shares or other securities to be issued pursuant to this Agreement or any Right Certificate or as to whether any Series A Preferred Shares or other securities will, when so issued, be validly authorized and issued, fully paid and nonassessable.

20.6.  <u>Further Assurance by Company</u>. The Company agrees that it will perform, execute, acknowledge and deliver or cause to be performed, executed, acknowledged and delivered all such further and other acts, instruments and assurances as may reasonably be required by the Rights Agent for the carrying out or performing by the Rights Agent of the provisions of this Agreement.

20.7.  <u>Authorized Company Officers</u>. The Rights Agent is hereby authorized and directed to accept instructions with respect to the performance of its duties hereunder from any one of the Chief Executive Officer or Chief Financial Officer of the Company, and to apply to such officers for advice or instructions in connection with its duties under this Agreement, and it shall not be liable for any action taken or suffered to be taken by it in good faith in accordance with instructions of any such officer or for any delay in acting while waiting for these instructions. Any application by the Rights Agent for written instructions from the Company may, at the option of the Rights Agent, set forth in writing any action proposed to be taken or omitted by the Rights Agent with respect to its duties or obligations under this Agreement and the date on and/or after which such action shall be taken or such omission shall be effective. The Rights Agent shall not be liable to the Company for any action taken by, or omission of, the Rights Agent in accordance with a proposal included in any such application on or after the date specified therein (which date shall not be less than three (3) Business Days after the date any such officer actually receives such application, unless any such officer shall have consented in writing to an earlier date) unless, prior to taking of any such action (or the effective date in the case of omission), the Rights Agent shall have received written instructions in response to such application specifying the action to be taken or omitted.

20.8. <u>Freedom to Trade in Company Securities</u>. The Rights Agent and any stockholder, director, officer or employee of the Rights Agent may buy, sell or deal in any of the Rights or other securities of the Company or become pecuniarily interested in any transaction in which the Company may be interested, or contract with or lend money to the Company or otherwise act as fully and freely as though it were not Rights Agent under this Agreement. Nothing herein shall preclude the Rights Agent from acting in any other capacity for the Company or for any other legal entity.

20.9. <u>Reliance on Attorneys and Agents</u>. The Rights Agent may execute and exercise any of the rights or powers hereby vested in it or perform any duty hereunder either itself or by or through its attorneys or agents, and the Rights Agent shall not be answerable or accountable for any act, omission, default, neglect or misconduct of any such attorneys or agents or for any loss to the Company resulting from any such act, omission, default, neglect or misconduct, *provided* that reasonable care was exercised in the selection and continued employment thereof.

20.10. <u>Incomplete Certificate</u>. If, with respect to any Right Certificate surrendered to the Rights Agent for exercise or transfer, the certificate contained in the form of assignment or the form of election to purchase set forth on the reverse thereof, as the case may be, has not been completed to certify the holder is not an Acquiring Person (or a Related Person of an Acquiring Person), the Rights Agent shall not take any further action with respect to such requested exercise or transfer without first consulting with the Company.

20.11. <u>Rights Holders List</u>. At any time and from time to time after the Distribution Date, upon the request of the Company, the Rights Agent shall promptly deliver to the Company a list, as of the most recent practicable date (or as of such earlier date as may be specified by the Company), of the holders of record of Rights.

31

Section 21. <u>Change of Rights Agent</u>. The Rights Agent or any successor Rights Agent may resign and be discharged from its duties under this Agreement upon thirty (30) days' notice in writing mailed to the Company and to each transfer agent of the Common Shares and/or Series A Preferred Shares, as applicable, by registered or certified mail. Following the Distribution Date, the Company shall promptly notify the holders of the Right Certificates by first-class mail of any such resignation. The Company may remove the Rights Agent or any successor Rights Agent upon thirty (30) days' notice in writing, mailed to the Rights Agent or successor Rights Agent, as the case may be, and to each transfer agent of the Common Shares and/or Series A Preferred Shares, as applicable, by registered or certified mail, and to the holders of the Right Certificates by first-class mail. If the Rights Agent shall resign or be removed or shall otherwise become incapable of acting, the resigning, removed or incapacitated Rights Agent shall remit to the Company, or to any successor Rights Agent designated by the Company, all books, records, funds, certificates or other documents or instruments of any kind then in its possession which were acquired by such resigning, removed or incapacitated Rights Agent in connection with its services as Rights Agent hereunder, and shall thereafter be discharged from all duties and obligations hereunder. Following notice of such removal, resignation or incapacity, the Company shall appoint a successor to such Rights Agent. If the Company shall fail to make such appointment within a period of thirty (30) days after giving notice of such removal or after it has been notified in writing of such resignation or incapacity by the resigning or incapacitated Rights Agent or by the holder of a Right Certificate (who shall, with such notice, submit his Right Certificate for inspection by the Company), then the registered holder of any Right Certificate may apply to any court of competent jurisdiction for the appointment of a new Rights Agent. Any successor Rights Agent, whether appointed by the Company or by such a court, shall be a Person organized and doing business under the laws of the State of New York or the State of Delaware (or any other state of the United States so long as such corporation is authorized to do business as a banking institution in the State of New York or the State of Delaware) in good standing, having an office in the State of New York or the State of Delaware, which is authorized under such laws to exercise share transfer or corporate trust powers and is subject to supervision or examination by Federal or state authority and which has at the time of its appointment as Rights Agent a combined capital and surplus of at least US$100 million. After appointment, the successor Rights Agent shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named as Rights Agent without further act or deed; but the predecessor Rights Agent shall deliver and transfer to the successor Rights Agent any property at the time held by it hereunder, and execute and deliver any further assurance, conveyance, act or deed necessary for the purpose. Not later than the effective date of any such appointment the Company shall file notice thereof in writing with the predecessor Rights Agent and each transfer agent of the Common Shares and/or Series A Preferred Shares, as applicable, and, following the Distribution Date, mail a notice thereof in writing to the registered holders of the Right Certificates. Failure to give any notice provided for in this <u>Section 21</u>, however, or any defect therein, shall not affect the legality or validity of the resignation or removal of the Rights Agent or the appointment of the successor Rights Agent, as the case may be.

Section 22. <u>Issuance of New Right Certificates</u>. Notwithstanding any of the provisions of this Agreement or of the Rights to the contrary, the Company may, at its option, issue new Right Certificates evidencing Rights in such form as may be approved by its Board to reflect any adjustment or change in the Purchase Price and the number or kind or class of shares or other securities or property purchasable under the Right Certificates made in accordance with the provisions of this Agreement. In addition, in connection with the issuance or sale of Common Shares following the Distribution Date and prior to the Expiration Date, the Company shall, with respect to Common Shares so issued or sold pursuant to the exercise of options or under any employee plan or arrangement, granted or awarded, or upon exercise, conversion or exchange of securities heretofore or hereinafter issued by the Company, in each case existing prior to the Distribution Date, issue Right Certificates representing the appropriate number of Rights in connection with such issuance or sale; *provided, however,* that (i) no such Right Certificate shall be issued if, and to the extent that, the Company shall be advised by counsel that such issuance would create a significant risk of material adverse tax consequences to the Company or the Person to whom such Right Certificate would be issued and (ii) no such Right Certificate shall be issued if, and to the extent that, appropriate adjustment shall otherwise have been made in lieu of the issuance thereof.

Section 23.  Redemption.

23.1.  Right to Redeem. The Board may, at its option, at any time prior to a Trigger Event, redeem all but not less than all of the then outstanding Rights at a redemption price of US$0.001 per Right, appropriately adjusted to reflect any share split, share dividend, recapitalization or similar transaction occurring after the date hereof (such redemption price being hereinafter referred to as the "*Redemption Price*"), and the Company may, at its option, pay the Redemption Price in Common Shares (based on the "current per share market price," determined pursuant to Section 11.4, of the Common Shares at the time of redemption), cash or any other form of consideration deemed appropriate by the Board. The redemption of the Rights by the Board may be made effective at such time, on such basis and subject to such conditions as the Board in its sole discretion may establish.

23.2.  Redemption Procedures. Immediately upon the action of the Board ordering the redemption of the Rights (or at such later time as the Board may establish for the effectiveness of such redemption), and without any further action and without any notice, the right to exercise the Rights will terminate and the only right thereafter of the holders of Rights shall be to receive the Redemption Price for each Right so held. The Company shall promptly give public notice of such redemption; *provided, however,* that the failure to give, or any defect in, any such notice shall not affect the validity of such redemption. The Company shall promptly give, or cause the Rights Agent to give, notice of such redemption to the holders of the then outstanding Rights by mailing such notice to all such holders at their last addresses as they appear upon the registry books of the Rights Agent or, prior to the Distribution Date, on the registry books of the transfer agent for the Common Shares. Any notice which is mailed in the manner herein provided shall be deemed given, whether or not the holder receives the notice. Each such notice of redemption shall state the method by which the payment of the Redemption Price will be made. The failure to give notice required by this Section 23.2 or any defect therein shall not affect the validity of the action taken by the Company. Neither the Company nor any of its Affiliates or Associates may redeem, acquire or purchase for value any Rights at any time in any manner other than that specifically set forth in this Section 23 or in Section 27, and other than in connection with the purchase, acquisition or redemption of Common Shares prior to the Distribution Date.

Section 24.  Notice of Certain Events. In case the Company shall propose at any time after the earlier of the Share Acquisition Date and the Distribution Date (a) to pay any dividend or bonus issue payable in shares of any class to the holders of Series A Preferred Shares or to make any other distribution to the holders of Series A Preferred Shares (other than a regular periodic cash dividend at a rate not in excess of 125% of the rate of the last regular periodic cash dividend theretofore paid or, in case regular periodic cash dividends have not theretofore been paid, at a rate not in excess of 50% of the average net income per share of the Company for the four quarters ended immediately prior to the payment of such dividends, or a share dividend or bonus issue on, or a subdivision, combination or reclassification of the Common Shares), or (b) to offer to the holders of Series A Preferred Shares rights or warrants to subscribe for or to purchase any additional Series A Preferred Shares or shares of any class or any other securities, rights or options, or (c) to effect any reclassification of its Series A Preferred Shares (other than a reclassification involving only the subdivision of issued and outstanding Series A Preferred Shares), or (d) to effect any consolidation, amalgamation or merger into or with, or to effect any sale or other transfer (or to permit one or more of its Subsidiaries to effect any sale or other transfer), in one or more transactions, of 50% or more of the assets or earning power of the Company and its Subsidiaries (taken as a whole) to, any other Person (other than pursuant to a merger or other acquisition agreement of the type excluded from the definition of "Beneficial Ownership" in Section 1.3), or (e) to effect the liquidation, dissolution or winding up of the Company, or (f) to declare or pay any dividend or bonus issue on the Common Shares payable in Common Shares or to effect a subdivision, combination or consolidation of the Common Shares (by reclassification or otherwise than by payment of dividends or bonus issue in Common Shares), then, in each such case, the Company shall give to the Rights Agent and to each holder of a Right Certificate, in accordance with Section 25, a notice of such proposed action, which shall specify the record date for the purposes of such share dividend, bonus issue, distribution of rights or warrants, or the date on which such reclassification, consolidation, amalgamation, merger, sale, transfer, liquidation, dissolution, or winding up is to take place and the date of participation therein by the holders of Series A Preferred Shares and/or Common Shares, if any such date is to be fixed, and such notice shall be so given in the case of any action covered by clause (a) or (b) above at least ten (10) days prior to the record date for determining holders of the Series A Preferred Shares for purposes of such action, and in the case of any such other action, at least ten (10) days prior to the date of the taking of such proposed action or the date of participation therein by the holders of the Series A Preferred Shares and/or Common Shares, whichever shall be the earlier.

33

In case any event set forth in <u>Section 11.1.2</u> or <u>Section 13</u> shall occur, then, in any such case, (i) the Company shall as soon as practicable thereafter give to the Rights Agent and to each holder of a Right Certificate, in accordance with <u>Section 25</u>, a notice of the occurrence of such event, which notice shall describe the event and the consequences of the event to holders of Rights under <u>Section 11.1.2</u> and <u>Section 13</u>, and (ii) all references in this <u>Section 24</u> to Series A Preferred Shares shall be deemed thereafter to refer to Common Shares and/or, if appropriate, other securities.

Section 25.  <u>Notices</u>. Notices or demands authorized by this Agreement to be given or made by the Rights Agent or by the holder of any Right Certificate to or on the Company shall be sufficiently given or made if sent by overnight delivery service or first-class mail, postage prepaid, addressed (until another address is filed in writing with the Rights Agent) as follows:

> Sinovac Biotech Ltd.
> No. 39
> Shangdi Xi Road
> Haidian District
> Beijing 100085
> PRC
> Attention: Head of Investor Relations

34

Subject to the provisions of <u>Section 21</u> and <u>Section 24</u>, any notice or demand authorized by this Agreement to be given or made by the Company or by the holder of any Right Certificate to or on the Rights Agent shall be sufficiently given or made if sent by overnight delivery service or first-class mail, postage prepaid, addressed (until another address is filed in writing with the Company) as follows:

> Pacific Stock Transfer Company
> 6725 Via Austi Parkway Suite 300
> Las Vegas, NV 89119
> Attention: Matthew Smith

Notices or demands authorized by this Agreement to be given or made by the Company or the Rights Agent to the holder of any Right Certificate (or, prior to the Distribution Date, to the holder of any certificate representing Common Shares or of any Book Entry Shares) shall be sufficiently given or made if sent by first-class mail, postage prepaid, addressed to such holder at the address of such holder as shown on the registry books of the Company or the transfer agent or registrar for the Common Shares; *provided* that prior to the Distribution Date a filing by the Company with the U.S. Securities and Exchange Commission shall constitute sufficient notice to the holders of securities of the Company, including the Rights, for purposes of this Agreement and no other notice need be given.

Section 26. <u>Supplements and Amendments</u>. For so long as the Rights are then redeemable, the Company may in its sole and absolute discretion, and the Rights Agent shall, if the Company so directs, supplement or amend any provision of this Agreement in any respect without the approval of any holders of Rights or Common Shares. From and after the time that the Rights are no longer redeemable, the Company may, and the Rights Agent shall, if the Company so directs, from time to time supplement or amend this Agreement without the approval of any holders of Rights (i) to cure any ambiguity or to correct or supplement any provision contained herein which may be defective or inconsistent with any other provisions herein or (ii) to make any other changes or provisions in regard to matters or questions arising hereunder which the Company may deem necessary or desirable, including but not limited to extending the Final Expiration Date; *provided, however,* that no such supplement or amendment shall adversely affect the interests of the holders of Rights as such (other than an Acquiring Person or a Related Person of an Acquiring Person), and no such supplement or amendment may cause the Rights again to become redeemable or cause this Agreement again to become amendable as to an Acquiring Person or a Related Person of an Acquiring Person, other than in accordance with this sentence; *provided further,* that the right of the Board to extend the Distribution Date shall not require any amendment or supplement hereunder. Upon the delivery of a certificate from an appropriate officer of the Company which states that the proposed supplement or amendment is in compliance with the terms of this <u>Section 26</u>, the Rights Agent shall execute such supplement or amendment; *provided* that any supplement or amendment that does not amend <u>Sections 18</u>, <u>19</u>, <u>20</u> or <u>21</u> hereof or this <u>Section 26</u> or any other Section of this Agreement in a manner adverse to the Rights Agent shall become effective immediately upon execution by the Company, whether or not also executed by the Rights Agent. The Company shall promptly provide the Rights Agent with written notice of such supplement or amendment.

Section 27.  Exchange.

27.1.  Exchange of Common Shares for Rights. The Board may, at its option, at any time after the occurrence of a Trigger Event, exchange Common Shares for all or part of the then outstanding and exercisable Rights (which shall not include Rights that have become void pursuant to the provisions of Section 11.1.2) by exchanging at an exchange ratio of one Common Share per Right, appropriately adjusted to reflect any share split, share subdivision, share dividend, bonus issue or similar transaction occurring after the date hereof (such amount per Right being hereinafter referred to as the "*Exchange Consideration*"). Notwithstanding the foregoing, the Board shall not be empowered to effect such exchange at any time after any Acquiring Person shall have become the Beneficial Owner of 50% or more of the Common Shares then issued and outstanding. From and after the occurrence of an event specified in Section 13.1, any Rights that theretofore have not been exchanged pursuant to this Section 27.1 shall thereafter be exercisable only in accordance with Section 13 and may not be exchanged pursuant to this Section 27.1. The exchange of the Rights by the Board may be made effective at such time, on such basis and with such conditions as the Board in its sole discretion may establish. Without limiting the foregoing, prior to effecting an exchange pursuant to this Section 27, the Board may cause the Company to enter into a Trust Agreement in such form and with such terms as the Board shall then approve (the "*Trust Agreement*"). If the Board so determines, the Company shall enter into the Trust Agreement and shall issue to the trust created by such agreement (the "*Trust*") all of the Common Shares issuable pursuant to the exchange (or any portion thereof that has not theretofore been issued in connection with the exchange). From and after the time at which such shares are issued to the Trust, all shareholders then entitled to receive shares pursuant to the exchange shall be entitled to receive such shares (and any dividends or distributions made thereon after the date on which such shares are deposited in the Trust) only from the Trust and solely upon compliance with the relevant terms and provisions of the Trust Agreement. Any Common Share issued at the direction of the Board in connection herewith shall be validly issued, fully paid and nonassessable Common Shares or Series A Preferred Shares (as the case may be), and the Company shall be deemed to have received as consideration for such issuance a benefit having a value that is at least equal to the aggregate par value of the shares so issued.

27.2.  Exchange Procedures. Immediately upon the effectiveness of the action of the Board ordering the exchange for any Rights pursuant to Section 27.1 and without any further action and without any notice, the right to exercise such Rights shall terminate and the only right thereafter of a holder of such Rights shall be to receive the Exchange Consideration. The Company shall promptly give public notice of any such exchange; *provided, however,* that the failure to give, or any defect in, such notice shall not affect the validity of such exchange. The Company promptly shall mail a notice of any such exchange to all of the holders of such Rights at their last addresses as they appear upon the registry books of the Rights Agent. Any notice which is mailed in the manner herein provided shall be deemed given, whether or not the holder receives the notice. Each such notice of exchange shall state the method by which the exchange of the Common Shares for Rights will be effected and, in the event of any partial exchange, the number of Rights which will be exchanged. Any partial exchange shall be effected pro rata based on the number of Rights (other than the Rights that have become void pursuant to the provisions of Section 11.1.2) held by each holder of Rights.

27.3.  Insufficient Shares. The Company may at its option substitute, for each Common Share that would otherwise be issuable upon exchange of a Right, (i) a number of shares of Series A Preferred Shares or fraction thereof (or equivalent preferred shares, as such term is defined in Section 11.2), (ii) cash, (iii) other equity securities of the Company or common share equivalents, as such term is defined in Section 11.1.3), (iv) debt securities of the Company, (v) other assets or (vi) any combination of the foregoing, in each case having an aggregate value equal to the current per share market price of one Common Share (determined pursuant to Section 11.4) as of the date of such exchange. In the event that there shall not be sufficient Common Shares issued but not outstanding or authorized but unissued and otherwise available for issuance to permit an exchange of Rights for Common Shares as contemplated in accordance with this Section 27, the Company shall substitute to the extent of such insufficiency, for each Common Share that would otherwise be issuable upon the exchange of a Right, consideration of any type described in Section 11.1.3(B)(1)-(7), which consideration shall have an aggregate current per share market price (determined pursuant to Section 11.4 hereof) equal to the current per share market price of one Common Share (determined pursuant to Section 11.4 hereof) as of the date of such exchange.

Section 28.  <u>Successors</u>. All the covenants and provisions of this Agreement by or for the benefit of the Company or the Rights Agent shall bind and inure to the benefit of their respective successors and assigns hereunder.

Section 29.  <u>Benefits of this Agreement</u>. Nothing in this Agreement shall be construed to give to any Person or company other than the Company, the Rights Agent and the registered holders of the Right Certificates (and, prior to the Distribution Date, the Common Shares) any legal or equitable right, remedy or claim under this Agreement; but this Agreement shall be for the sole and exclusive benefit of the Company, the Rights Agent and the registered holders of the Right Certificates (and, prior to the Distribution Date, the Common Shares).

Section 30.  <u>Determination and Actions by the Board or Committee Thereof</u>. The Board, or a duly authorized committee thereof, shall have the exclusive power and authority to administer this Agreement and to exercise the rights and powers specifically granted to the Board or to the Company, or as may be necessary or advisable in the administration of this Agreement, including, without limitation, the right and power to (i) interpret the provisions of this Agreement and (ii) make all determinations deemed necessary or advisable for the administration of this Agreement (including, without limitation, a determination to redeem or not redeem the Rights or amend this Agreement). In administering this Agreement and exercising the rights and powers specifically granted to the Board and to the Company hereunder, and in interpreting this Agreement and making any determination hereunder, the Board, or a duly authorized committee thereof, may consider any and all facts, circumstances or information it deems to be necessary, useful or appropriate. All such actions, calculations, interpretations and determinations that are done or made by the Board, or a duly authorized committee thereof, in good faith shall be final, conclusive and binding on the Company, the Rights Agent, the holders of the Rights, as such, and all other parties to the fullest extent permitted by applicable law.

Section 31.  <u>Severability</u>. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

Section 32.  <u>Governing Law</u>. This Agreement and each Right Certificate issued hereunder shall be deemed to be a contract made under the internal laws of the State of Delaware and for all purposes shall be governed by and construed in accordance with the laws of such State applicable to contracts to be made and performed entirely within such State.

Section 33.  <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same instrument. A signature to this Agreement transmitted electronically shall have the same authority, effect and enforceability as an original signature.

Section 34.  <u>Descriptive Headings</u>. Descriptive headings of the several Sections of this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

[*Signature Page Follows*]

38

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, as of the day and year first above written.

**SINOVAC BIOTECH LTD.**

By:   /s/ Weidong Ying

Name:  Weidong Yin

Title:    Chairman, President and CEO

**PACIFIC STOCK TRANSFER COMPANY**

By:   /s/ Matthew J. Smith

Name:  Matthew J. Smith

Title:    Associate General Counsel

EXHIBIT A

FORM OF

CERTIFICATE OF DESIGNATIONS

of

**SERIES A JUNIOR PARTICIPATING PREFERRED SHARES**

of

**SINOVAC BIOTECH LTD.**

(Pursuant to Article III of the
Company's Articles of Incorporation)

_____

SINOVAC BIOTECH LTD., an exempted company incorporated and existing under the laws of Antigua and Barbuda (hereinafter called the "*Company*"), hereby certifies that the following resolution was adopted by the Board of Directors of the Company (hereinafter called the "*Board of Directors*" or the "*Board*") at a meeting duly called and held on March 16, 2016.

RESOLVED, that pursuant to the authority expressly granted to and vested in the Board in accordance with the provisions of the Articles of Incorporation of the Company, the Board hereby creates a series of Preferred Shares, with a par value of US$0.001 per share (the "*Preferred Shares*"), of the Company and hereby states the designation and number of shares, and fixes the relative rights, powers and preferences and qualifications, limitations and restrictions thereof as follows:

Section 1.  <u>Designation and Amount</u>. The shares of such series shall be designated as "Series A Junior Participating Preferred Shares" (the "*Series A Preferred Shares*") and the number of shares constituting the Series A Preferred Shares shall be 1,000,000. Such number of shares may be increased or decreased by resolution of the Board; *provided,* that no decrease shall reduce the number of Series A Preferred Shares to a number less than the number of shares then issued and outstanding plus the number of shares reserved for issuance upon the exercise of outstanding options, rights or warrants or upon the conversion of any outstanding securities issued by the Company convertible into Series A Preferred Shares.

Section 2.  Dividends and Distributions.

(A)  Subject to the prior and superior rights of the holders of any shares of any class or series of shares of the Company ranking prior and superior to the Series A Preferred Shares with respect to dividends, the holders of Series A Preferred Shares, in preference to the holders of Common Shares, par value US$0.001 per share (the "*Common Shares*"), of the Company, and of any other share capital ranking junior to the Series A Preferred Shares, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, quarterly dividends payable in cash on the first day of March, June, September and December in each year (each such date being referred to herein as a "*Quarterly Dividend Payment Date*"), commencing on the first Quarterly Dividend Payment Date after the first issuance of a Series A Preferred Share or fraction thereof, in an amount per share (rounded to the nearest cent) equal to the greater of (a) US$1.00 or (b) subject to the provision for adjustment hereinafter set forth, 1,000 times the aggregate per share amount of all cash dividends, and 1,000 times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions, other than a dividend or bonus issue payable in Common Shares or a subdivision of the issued and outstanding Common Shares (by reclassification or otherwise), declared on the Common Shares since the immediately preceding Quarterly Dividend Payment Date or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any Series A Preferred Share or fraction thereof. In the event the Company shall at any time declare or pay any dividend or bonus issue on the Common Shares payable in Common Shares, or effect a subdivision, combination or consolidation of the issued and outstanding Common Shares (by reclassification or otherwise than by payment of a dividend or bonus issue in Common Shares) into a greater or lesser number of Common Shares, then in each such case the amount to which holders of Series A Preferred Shares were entitled immediately prior to such event under clause (b) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of Common Shares issued and outstanding immediately after such event and the denominator of which is the number of Common Shares that were issued and outstanding immediately prior to such event.

(B)  The Company shall declare a dividend or distribution on the Series A Preferred Shares as provided in paragraph (A) of this Section 2 immediately after it declares a dividend or distribution on the Common Shares (other than a dividend or bonus issue payable in Common Shares); *provided* that, in the event no dividend or distribution shall have been declared on the Common Shares during the period between any Quarterly Dividend Payment Date and the next subsequent Quarterly Dividend Payment Date, a dividend of US$1.00 per Series A Preferred Share shall nevertheless be payable (with any such payment being within the discretion of the Board) on such subsequent Quarterly Dividend Payment Date.

(C)  Dividends shall begin to accrue and be cumulative on issued and outstanding Series A Preferred Shares from the Quarterly Dividend Payment Date next preceding the date of issue of such shares, unless the date of issue of such shares is prior to the record date for the first Quarterly Dividend Payment Date, in which case dividends on such shares shall begin to accrue from the date of issue of such shares, or unless the date of issue is a Quarterly Dividend Payment Date or is a date after the record date for the determination of holders of Series A Preferred Shares entitled to receive a quarterly dividend and before such Quarterly Dividend Payment Date, in either of which events such dividends shall begin to accrue and be cumulative from such Quarterly Dividend Payment Date. Accrued but unpaid dividends shall not bear interest. Dividends paid on the Series A Preferred Shares in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time issued and outstanding. The Board of Directors may fix a record date for the determination of holders of Series A Preferred Shares entitled to receive payment of a dividend or distribution declared thereon, which record date shall be not more than sixty (60) days prior to the date fixed for the payment thereof.

A-2

Section 3. <u>Voting Rights</u>. The holders of Series A Preferred Shares shall have the following voting rights:

(A)  Subject to the provision for adjustment hereinafter set forth, each Series A Preferred Share shall entitle the holder thereof to 1,000 votes on all matters submitted to a vote of the shareholders of the Company. In the event the Company shall at any time declare or pay any dividend or bonus issue on the Common Shares payable in Common Shares, or effect a subdivision, combination or consolidation of the issued and outstanding Common Shares (by reclassification or otherwise than by payment of a dividend or bonus issue in Common Shares) into a greater or lesser number of Common Shares, then in each such case the number of votes per share to which holders of Series A Preferred Shares were entitled immediately prior to such event shall be adjusted by multiplying such number by a fraction, the numerator of which is the number of Common Shares issued and outstanding immediately after such event and the denominator of which is the number of Common Shares that were issued and outstanding immediately prior to such event.

(B)  Except as otherwise provided herein, in any other Certificate of Designations creating a series of Preferred Shares or any similar shares, or provided by law or the Company's Articles of Incorporation or By-Laws, the holders of Series A Preferred Shares and the holders of Common Shares and any other share capital of the Company having general voting rights shall vote together as one class on all matters submitted to a vote of shareholders of the Company.

(C)  Except as set forth herein, or as otherwise provided by law, holders of Series A Preferred Shares shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of Common Shares as set forth herein) for taking any corporate action.

A-3

(D)  If, at the time of any annual meeting of stockholders for the election of directors, the equivalent of six quarterly dividends (whether or not consecutive) payable on any Series A Preferred Shares are in default, the number of directors constituting the Board of Directors of the Corporation shall be increased by two. In addition to voting together with the holders of Common Shares for the election of other directors of the Company, the holders of record of Series A Preferred Shares, voting separately as a class to the exclusion of the holders of Common Shares, shall be entitled at such meeting of shareholders (and at each subsequent annual meeting of shareholders), unless all dividends in arrears on the Series A Preferred Shares have been paid or declared and set apart for payment prior thereto, to vote for the election of two directors of the Company, the holders of any Series A Preferred Shares being entitled to cast a number of votes per share of Series A Preferred Shares as is specified in paragraph (A) of this Section 3. Each such additional director shall serve until the next annual meeting of shareholders for the election of directors, or until his successor shall be elected and shall qualify, or until his right to hold such office terminates pursuant to the provisions of this Section 3(D). Until the default in payments of all dividends which permitted the election of said directors shall cease to exist, any director who shall have been so elected pursuant to the provisions of this Section 3(D) may be removed at any time, without cause, only by the affirmative vote of the holders of the shares of Series A Preferred Shares at the time entitled to cast a majority of the votes entitled to be cast for the election of any such director at a special meeting of such holders called for that purpose, and any vacancy thereby created may be filled by the vote of such holders. If and when such default shall cease to exist, the holders of the Series A Preferred Shares shall be divested of the foregoing special voting rights, subject to revesting in the event of each and every subsequent like default in payments of dividends. Upon the termination of the foregoing special voting rights, the terms of office of all persons who may have been elected directors pursuant to said special voting rights shall forthwith terminate, and the number of directors constituting the Board of Directors shall be reduced by two. The voting rights granted by this Section 3(D) shall be in addition to any other voting rights granted to the holders of the Series A Preferred Shares in this Section 3.

Section 4.  Certain Restrictions.

(A)  Whenever quarterly dividends or other dividends or distributions payable on the Series A Preferred Shares as provided in Section 2 are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on Series A Preferred Shares issued and outstanding shall have been paid in full, the Company shall not:

(i) declare or pay dividends, or make any other distributions, on any shares ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Shares;

(ii) declare or pay dividends, or make any other distributions, on any shares ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Shares, except dividends paid ratably on the Series A Preferred Shares and all such parity shares on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled;

(iii) redeem or purchase or otherwise acquire for consideration any shares ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Shares, provided that the Company may at any time redeem, purchase or otherwise acquire any such junior shares in exchange for any shares of the Company ranking junior (both as to dividends and upon dissolution, liquidation or winding up) to the Series A Preferred Shares; or

A-4

(iv) redeem or purchase or otherwise acquire for consideration any Series A Preferred Shares, or any shares ranking on a parity with the Series A Preferred Shares, except in accordance with a purchase offer made in writing or by publication (as determined by the Board of Directors) to all holders of such shares upon such terms as the Board of Directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine in good faith will result in fair and equitable treatment among the respective series or classes.

(B)  The Company shall not permit any subsidiary of the Company to purchase or otherwise acquire for consideration any shares of the Company unless the Company could, under paragraph (A) of this Section 4, purchase or otherwise acquire such shares at such time and in such manner.

Section 5.  Reacquired Shares. Any Series A Preferred Shares purchased or otherwise acquired by the Company in any manner whatsoever shall be retired and canceled upon or promptly after the acquisition thereof. All such shares shall upon their cancellation become authorized but unissued Preferred Shares and may be reissued as part of a new series of Preferred Shares subject to the conditions and restrictions on issuance set forth herein, in the Company's Articles of Incorporation and By-Laws or in any other Certificate of Designations creating a series of Preferred Shares or any similar shares or as otherwise required by law.

Section 6.  Liquidation, Dissolution or Winding Up.

(A) Upon any liquidation, dissolution or winding up of the Company, voluntary or otherwise no distribution shall be made (i) to the holders of shares ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Shares unless, prior thereto, the holders of Series A Preferred Shares shall have received an amount per share (the "Series A Liquidation Preference") equal to US$1,000 per share, plus an amount equal to accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment, provided that the holders of Series A Preferred Shares shall be entitled to receive an aggregate amount per share, subject to the provision for adjustment hereinafter set forth, equal to 1,000 times the aggregate amount to be distributed per share to holders of Common Shares, or (ii) to the holders of shares ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Shares, except distributions made ratably on the Series A Preferred Shares and all such parity shares in proportion to the total amounts to which the holders of all such shares are entitled upon such liquidation, dissolution or winding up. In the event the Company shall at any time declare or pay any dividend or bonus issue on the Common Shares payable in Common Shares, or effect a subdivision, combination or consolidation of the issued and outstanding Common Shares (by reclassification or otherwise than by payment of a dividend or bonus issue in Common Shares) into a greater or lesser number of Common Shares, then in each such case the aggregate amount to which holders of Series A Preferred Shares were entitled immediately prior to such event under the proviso in clause (i) of the preceding sentence shall be adjusted by multiplying such amount by a fraction the numerator of which is the number of Common Shares issued and outstanding immediately after such event and the denominator of which is the number of Common Shares that are issued and outstanding immediately prior to such event.

A-5

(B)  In the event, however, that there are not sufficient assets available to permit payment in full of the Series A Liquidation Preference and the liquidation preferences of all other classes and series of share capital of the Company, if any, that rank on a parity with the Series A Preferred Shares in respect thereof, then the assets available for such distribution shall be distributed ratably to the holders of the Series A Preferred Shares and the holders of such parity shares in proportion to their respective liquidation preferences.

(C)  The merger, amalgamation or consolidation of the Company into or with another company and the merger, amalgamation or consolidation of any other company into or with the Company shall not be deemed to be a liquidation, dissolution or winding up of the Company within the meaning of this Section 6.

Section 7.    Consolidation, Merger, etc. In case the Company shall enter into any consolidation, amalgamation, merger, combination or other transaction in which the Common Shares are exchanged for or changed into other shares or securities, cash and/or any other property, then in any such case each Series A Preferred Share shall at the same time be similarly exchanged or changed into an amount per share, subject to the provision for adjustment hereinafter set forth, equal to 1,000 times the aggregate amount of shares, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each Common Share is changed or exchanged. In the event the Company shall at any time declare or pay any dividend or bonus issue on the Common Shares payable in Common Shares, or effect a subdivision, combination or consolidation of the issued and outstanding Common Shares (by reclassification or otherwise than by payment of a dividend or bonus issue in Common Shares) into a greater or lesser number of Common Shares, then in each such case the amount set forth in the preceding sentence with respect to the exchange or change of Series A Preferred Shares shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of Common Shares issued and outstanding immediately after such event and the denominator of which is the number of Common Shares that were issued and outstanding immediately prior to such event.

Section 8. No Redemption. The Series A Preferred Shares shall not be redeemable by the Company.

Section 9. Rank. The Series A Preferred Shares shall rank, with respect to the payment of dividends and the distribution of assets upon liquidation, dissolution or winding up, junior to all series or any other class of the Company's Preferred Shares, except to the extent that any such other series or class specifically provides that it shall rank on a parity with or junior to the Series A Preferred Shares.

Section 10.  <u>Amendment</u>. At any time any Series A Preferred Shares are issued and outstanding, the Articles of Incorporation and By-Laws of the Company shall not be further amended in any manner which would materially alter or change the powers, preferences or special rights of the Series A Preferred Shares so as to affect them adversely without the affirmative vote of the holders of at least two-thirds of the issued and outstanding Series A Preferred Shares, voting separately as a single class.

Section 11.  <u>Fractional Shares</u>. Series A Preferred Shares may be issued in fractions of a share that shall entitle the holder, in proportion to such holder's fractional shares, to exercise voting rights, receive dividends, participate in distributions and to have the benefit of all other rights of holders of Series A Preferred Shares.

* * *

A-7

**EXHIBIT B**

[Form of Right Certificate]

Certificate No. R-                                                                                                    _____ Rights

NOT EXERCISABLE AFTER MARCH 27, 2017 OR EARLIER IF NOTICE OF REDEMPTION OR EXCHANGE IS GIVEN OR IF THE COMPANY IS MERGED OR ACQUIRED PURSUANT TO AN AGREEMENT OF THE TYPE DESCRIBED IN SECTION 13.3 OF THE AGREEMENT. THE RIGHTS ARE SUBJECT TO REDEMPTION AT US$0.001 PER RIGHT, AND TO EXCHANGE ON THE TERMS SET FORTH IN THE AGREEMENT. UNDER CERTAIN CIRCUMSTANCES (SPECIFIED IN SECTION 11.1.2 OF THE AGREEMENT), RIGHTS BENEFICIALLY OWNED BY OR TRANSFERRED TO AN ACQUIRING PERSON (AS DEFINED IN THE AGREEMENT), OR ANY SUBSEQUENT HOLDER OF SUCH RIGHTS, WILL BECOME NULL AND VOID AND WILL NO LONGER BE TRANSFERABLE.

Right Certificate

**SINOVAC BIOTECH LTD.**

This certifies that _____, or registered assigns, is the registered owner of the number of Rights set forth above, each of which entitles the owner thereof, subject to the terms, provisions and conditions of the Rights Agreement, dated as of March 28, 2016, as the same may be amended from time to time (the "*Agreement*"), between Sinovac Biotech Ltd., an Antigua and Barbuda company (the "*Company*"), and Pacific Stock Transfer Company, as Rights Agent (the "*Rights Agent*"), to purchase from the Company at any time after the Distribution Date and prior to 5:00 P.M. (New York time) on March 27, 2017, at the offices of the Rights Agent, or its successors as Rights Agent, designated for such purpose, one one-thousandth of a fully paid, nonassessable Series A Junior Participating Preferred Share, par value US$0.001 per share (the "*Series A Preferred Shares*"), of the Company, at a purchase price of US$30.00 per one one-thousandth of a Series A Preferred Share, subject to adjustment (the "*Purchase Price*"), upon presentation and surrender of this Right Certificate with the Form of Election to Purchase and certification duly executed. The number of Rights evidenced by this Right Certificate (and the number of one one-thousandths of a Series A Preferred Share which may be purchased upon exercise thereof) set forth above, and the Purchase Price set forth above, are the number and Purchase Price as of April 8, 2016, based on the Series A Preferred Shares as constituted at such date. Capitalized terms used in this Right Certificate without definition shall have the meanings ascribed to them in the Agreement. As provided in the Agreement, the Purchase Price and the number of Series A Preferred Shares which may be purchased upon the exercise of the Rights evidenced by this Right Certificate are subject to modification and adjustment upon the happening of certain events.

B-1

This Right Certificate is subject to all of the terms, provisions and conditions of the Agreement, which terms, provisions and conditions are hereby incorporated herein by reference and made a part hereof and to which Agreement reference is hereby made for a full description of the rights, limitations of rights, obligations, duties and immunities hereunder of the Rights Agent, the Company and the holders of the Right Certificates. Copies of the Agreement are on file at the principal offices of the Company and the Rights Agent.

This Right Certificate, with or without other Right Certificates, upon surrender at the offices of the Rights Agent designated for such purpose, may be exchanged for another Right Certificate or Right Certificates of like tenor and date evidencing Rights entitling the holder to purchase a like aggregate number of one one-thousandths of a Series A Preferred Share as the Rights evidenced by the Right Certificate or Right Certificates surrendered shall have entitled such holder to purchase. If this Right Certificate shall be exercised in part, the holder shall be entitled to receive upon surrender hereof another Right Certificate or Right Certificates for the number of whole Rights not exercised.

Subject to the provisions of the Agreement, the Board may, at its option, (i) redeem the Rights evidenced by this Right Certificate at a redemption price of US$0.001 per Right or (ii) exchange Common Shares for the Rights evidenced by this Certificate, in whole or in part.

No fractional Series A Preferred Shares will be issued upon the exercise of any Right or Rights evidenced hereby (other than fractions of Series A Preferred Shares which are integral multiples of one one-thousandth of a Series A Preferred Share, which may, at the election of the Company, be evidenced by depository receipts), but in lieu thereof a cash payment will be made, as provided in the Agreement.

No holder of this Right Certificate, as such, shall be entitled to vote or receive dividends or be deemed for any purpose the holder of Series A Preferred Shares or of any other securities of the Company which may at any time be issuable on the exercise hereof, nor shall anything contained in the Agreement or herein be construed to confer upon the holder hereof, as such, any of the rights of a shareholder of the Company or any right to vote for the election of directors or upon any matter submitted to shareholders at any meeting thereof, or to give or withhold consent to any corporate action, or to receive notice of meetings or other actions affecting shareholders (except as provided in the Agreement), or to receive dividends or subscription rights, or otherwise, until the Right or Rights evidenced by this Right Certificate shall have been exercised as provided in the Agreement.

If any term, provision, covenant or restriction of the Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of the Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

This Right Certificate shall not be valid or binding for any purpose until it shall have been countersigned by the Rights Agent.

B-2

WITNESS the facsimile signature of the proper officers of the Company and its corporate seal.

Dated as of _____, 20__.

Attest:                                                      **SINOVAC BIOTECH LTD.**

By _____             By _____
    Title:                                                          Title:

Countersigned:

**PACIFIC STOCK TRANSFER COMPANY,**
as Rights Agent

By _____
    Authorized Signature

B-3

Form of Reverse Side of Right Certificate

FORM OF ASSIGNMENT

(To be executed by the registered holder if such holder
desires to transfer the Right Certificate.)

FOR VALUE RECEIVED _____

hereby sells, assigns and transfers unto _____

_____

_____

(Please print name and address
of transferee)

Rights evidenced by this Right Certificate, together with all right, title and interest therein, and does hereby irrevocably constitute and appoint Attorney, to transfer the within Right Certificate on the books of the within-named Company, with full power of substitution.

Dated:_____

_____
Signature

Signature Medallion Guaranteed:

_____

      Signatures must be guaranteed by an "eligible guarantor institution" as defined in Rule 17Ad-15 promulgated under the U.S. Securities Exchange Act of 1934, as amended, which is a member of a recognized Medallion Signature Guarantee Program.

B-4

The undersigned hereby certifies that:

        (1)  the Rights evidenced by this Right Certificate are not Beneficially Owned by and are not being assigned to an Acquiring Person or a Related Person of an Acquiring Person; and

        (2)  after due inquiry and to the best knowledge of the undersigned, the undersigned did not acquire the Rights evidenced by this Right Certificate from any Person who is, was or subsequently became an Acquiring Person or a Related Person of an Acquiring Person.

Dated:_____

 

_____
Signature

B-5

FORM OF ELECTION TO PURCHASE

(To be executed if holder desires to
exercise the Right Certificate.)

To: Sinovac Biotech Ltd.

The undersigned hereby irrevocably elects to exercise _____ Rights represented by this Right Certificate to purchase the Series A Preferred Shares issuable upon the exercise of such Rights (or such other securities or property of the Company or of any other Person which may be issuable upon the exercise of the Rights) and requests that certificates for such shares (or such other securities or property of the Company or of any other Person which may be issuable upon the exercise of the Rights) be issued in the name of (or to, as the case may be):

_____

(Please print name and address)

If such number of Rights shall not be all the Rights evidenced by this Right Certificate, a new Right Certificate for the balance remaining of such Rights shall be registered in the name of and delivered to:

Please insert U.S. social security
or other identifying number _____

_____

(Please print name and address)

Dated: _____

_____
Signature

Signature Medallion Guaranteed:

_____

Signatures must be guaranteed by an "eligible guarantor institution" as defined in Rule 17Ad-15 promulgated under the U.S. Securities Exchange Act of 1934, as amended, which is a member of a recognized Medallion Signature Guarantee Program.

B-6

The undersigned hereby certifies that:

(1)  the Rights evidenced by this Right Certificate are not Beneficially Owned by and are not being assigned to an Acquiring Person or a Related Person of an Acquiring Person; and

(2)  after due inquiry and to the best knowledge of the undersigned, the undersigned did not acquire the Rights evidenced by this Right Certificate from any Person who is, was or subsequently became an Acquiring Person or a Related Person of an Acquiring Person.


Dated:_____


_____
Signature


**NOTICE**

The signature in the foregoing Form of Assignment and Form of Election to Purchase must conform to the name as written upon the face of this Right Certificate in every particular, without alteration or enlargement or any change whatsoever.

In the event the certification set forth above in the Form of Assignment or Form of Election to Purchase is not completed, the Company will deem the Beneficial Owner of the Rights evidenced by this Right Certificate to be an Acquiring Person or a Related Person of an Acquiring Person and such Assignment or Election to Purchase will not be honored.

B-7

**EXHIBIT C**

As described in the Rights Agreement, Rights which are
held by or have been held by an Acquiring Person or any Related Persons of an Acquiring Person (as such terms are defined in the Rights
Agreement) and certain transferees thereof shall become null and void and will no longer be transferable.

SUMMARY OF RIGHTS TO PURCHASE
PREFERRED SHARES

On March 28, 2016 the Board of Directors of Sinovac Biotech Ltd. (the "*Company*") declared a dividend of one preferred share purchase right (a "*Right*") for each Common Share, par value US$0.001 (the "*Common Shares*"), of the Company issued and outstanding at the close of business on April 8, 2016 (the "*Record Date*"). As long as the Rights are attached to the Common Shares, the Company will issue one Right (subject to adjustment) with each new Common Share so that all such shares will have attached Rights. When exercisable, each Right will entitle the registered holder to purchase from the Company one one-thousandth of a Series A Junior Participating Preferred Share (the "*Series A Preferred Shares*") of the Company at a price of US$30.00 per one one-thousandth of a Series A Preferred Share, subject to certain anti-dilution adjustments (the "*Purchase Price*"). The description and terms of the Rights are set forth in a Rights Agreement, dated as of March 28, 2016, as the same may be amended from time to time (the "*Agreement*"), between the Company and Pacific Stock Transfer Company, as Rights Agent (the "*Rights Agent*").

Until the earlier to occur of (i) the close of business on the tenth (10th) business day following a public announcement that a person or group of affiliated or associated persons has acquired, or obtained the right to acquire, beneficial ownership of 15% or more of the Common Shares (including certain synthetic equity positions created by derivative securities, which are treated as beneficial ownership of the number of Common Shares equivalent to the economic exposure created by the synthetic equity position, to the extent actual Common Shares are directly or indirectly beneficially owned by a counterparty to the synthetic equity position) (an "*Acquiring Person*") or (ii) the close of business on the tenth (10th) business day (or such later date as may be determined by action of the Board of Directors prior to such time as any person or group of affiliated persons becomes an Acquiring Person) following the commencement or announcement of an intention to make a tender offer or exchange offer the consummation of which would result in the beneficial ownership by a person or group of 15% or more of the Common Shares (the earlier of (i) and (ii) being called the "*Distribution Date*"), the Rights will be evidenced, with respect to any of the Common Share certificates issued and outstanding as of the Record Date, by such Common Share certificates or, with respect to any uncertificated Common Shares registered in book entry form, by notation in book entry, in either case together with a copy of this Summary of Rights. The Agreement provides that any person who beneficially owned 15% or more of the Common Shares immediately prior to the first public announcement of the adoption of the Agreement, together with any affiliates and associates of that person (each an "*Existing Holder*"), shall not be deemed to be an "Acquiring Person" for purposes of the Agreement unless the Existing Holder becomes the beneficial owner of one or more additional Common Shares (other than pursuant to (a) a dividend or distribution paid or made by the Company on the issued and outstanding Common Shares in Common Shares, (b) a split or subdivision of the issued and outstanding Common Shares or (c) an Exempt Acquisition). However, if upon acquiring beneficial ownership of one or more additional Common Shares, the Existing Holder does not beneficially own 15% or more of the Common Shares then issued and outstanding, the Existing Holder shall not be deemed to be an "Acquiring Person" for purposes of the Agreement.

Furthermore, the Agreement provides that any person who becomes the beneficial owner of 15% or more of the Common Shares as a result of equity granted to the officers and members of the board of directors of the Company and any Subsidiary of the Company in their capacity as such officers and directors (each an "*Exempt Acquisition*"), shall not be deemed to be an "Acquiring Person" for purposes of the Agreement unless such person becomes the beneficial owner of one or more additional Common Shares (other than pursuant to a dividend or distribution paid or made by the Company on the issued and outstanding Common Shares in Common Shares, a split or subdivision of the issued and outstanding Common Shares, or another Exempt Acquisition). However, if upon acquiring beneficial ownership of one or more additional Common Shares, such holder does not beneficially own 15% or more of the Common Shares then issued and outstanding, such holder shall not be deemed to be an "Acquiring Person" for purposes of the Agreement.

The Agreement provides that until the Distribution Date (or earlier redemption, exchange, termination or expiration of the Rights), the Rights will be transferred with and only with the Common Shares. Until the Distribution Date (or earlier redemption, exchange, termination or expiration of the Rights), new Common Share certificates issued after the close of business on the Record Date upon transfer or new issuance of the Common Shares will contain a notation incorporating the Agreement by reference, and the Company will deliver a notice to that effect upon the transfer or new issuance of book entry shares. Until the Distribution Date (or earlier redemption, exchange, termination or expiration of the Rights), the surrender for transfer of any certificates for Common Shares or any Book Entry Shares, with or without such notation, notice or a copy of this Summary of Rights, will also constitute the transfer of the Rights associated with the Common Shares represented by such certificate or the Book Entry Shares. As soon as practicable following the Distribution Date, separate certificates evidencing the Rights ("*Right Certificates*") will be mailed to holders of record of the Common Shares as of the close of business on the Distribution Date and such separate Right Certificates alone will evidence the Rights.

The Rights are not exercisable until the Distribution Date. The Rights will expire on March 27, 2017, subject to the Company's right to extend such date (the "*Final Expiration Date*"), unless earlier redeemed or exchanged by the Company or terminated.

Each Series A Preferred Share purchasable upon exercise of the Rights will be entitled, when, as and if declared, to a minimum preferential quarterly dividend payment of US$1.00 per share or, if greater, an aggregate dividend of 1,000 times the dividend, if any, declared per Common Shares. In the event of liquidation, dissolution or winding up of the Company, the holders of the Series A Preferred Shares will be entitled to a minimum preferential liquidation payment of US$1,000 per share (plus any accrued but unpaid dividends), provided that such holders of Series A Preferred Shares will be entitled to an aggregate payment of 1,000 times the payment made per Common Share. Each Series A Preferred Share will have 1,000 votes and will vote together with the Common Shares. Finally, in the event of any merger, amalgamation, consolidation or other transaction in which Common Shares are exchanged, each Series A Preferred Share will be entitled to receive 1,000 times the amount received per Common Share. Series A Preferred Shares will not be redeemable. These rights are protected by customary antidilution provisions. Because of the nature of the Series A Preferred Shares' dividend, liquidation and voting rights, the value of one one-thousandth of a Series A Preferred Share purchasable upon exercise of each Right should approximate the value of one Common Share.

The Purchase Price payable, and the number of Series A Preferred Shares or other securities or property issuable, upon exercise of the Rights are subject to adjustment from time to time to prevent dilution (i) in the event of a share dividend or bonus issue on, or a subdivision, combination or reclassification of the Series A Preferred Shares, (ii) upon the grant to holders of the Series A Preferred Shares of certain rights or warrants to subscribe for or purchase Series A Preferred Shares or convertible securities at less than the current market price of the Series A Preferred Shares or (iii) upon the distribution to holders of the Series A Preferred Shares of evidences of indebtedness, cash, securities or assets (excluding regular periodic cash dividends at a rate not in excess of 125% of the rate of the last regular periodic cash dividend theretofore paid or, in case regular periodic cash dividends have not theretofore been paid, at a rate not in excess of 50% of the average net income per share of the Company for the four quarters ended immediately prior to the payment of such dividend, or dividends payable in Series A Preferred Shares (which dividends will be subject to the adjustment described in clause (i) above)) or of subscription rights or warrants (other than those referred to above).

In the event that a Person becomes an Acquiring Person or if the Company were the surviving company in a merger with an Acquiring Person or any affiliate or associate of an Acquiring Person and Common Shares were not changed or exchanged, each holder of a Right, other than Rights that are or were acquired or beneficially owned by the Acquiring Person (which Rights will thereafter be void), will thereafter have the right to receive upon exercise that number of Common Shares having a market value of two times the then current Purchase Price of the Right. In the event that, after a Person has become an Acquiring Person, the Company were acquired in a merger or other business combination transaction or more than 50% of its assets or earning power were sold, proper provision shall be made so that each holder of a Right shall thereafter have the right to receive, upon the exercise thereof at the then current Purchase Price of the Right, that number of common shares of the acquiring company which at the time of such transaction would have a market value of two times the then current Purchase Price of the Right.

At any time after a Person becomes an Acquiring Person and prior to the earlier of one of the events described in the last sentence of the previous paragraph or the acquisition by such Acquiring Person of 50% or more of the then issued and outstanding Common Shares, the Board of Directors may cause the Company to exchange the Rights (other than Rights owned by an Acquiring Person which will have become void), in whole or in part, for Common Shares at an exchange rate of one Common Share per Right (subject to adjustment).

C-3

No adjustment in the Purchase Price will be required until cumulative adjustments require an adjustment of at least 1% in such Purchase Price. No fractional Series A Preferred Shares or Common Shares will be issued (other than fractions of Series A Preferred Shares which are integral multiples of one one-thousandth of a Series A Preferred Share, which may, at the election of the Company, be evidenced by depository receipts), and in lieu thereof, a payment in cash will be made based on the market price of the Series A Preferred Shares or Common Shares on the last trading date prior to the date of exercise.

The Rights may be redeemed in whole, but not in part, at a price of US$0.001 per Right (the "*Redemption Price*") by the Board of Directors at any time prior to the time that an Acquiring Person has become such. The redemption of the Rights may be made effective at such time, on such basis and with such conditions as the Board of Directors in its sole discretion may establish. Immediately upon any redemption of the Rights, the right to exercise the Rights will terminate and the only right of the holders of Rights will be to receive the Redemption Price.

Until a Right is exercised, the holder thereof, as such, will have no rights as a shareholder of the Company beyond those as an existing shareholder, including, without limitation, the right to vote or to receive dividends.

Any of the provisions of the Agreement may be amended by the Board of Directors, or a duly authorized committee thereof, for so long as the Rights are then redeemable, and after the Rights are no longer redeemable, the Company may amend or supplement the Agreement in any manner that does not adversely affect the interests of the holders of the Rights (other than an Acquiring Person or any affiliate or associate of an Acquiring Person).

A copy of the Agreement has been furnished to the U.S. Securities and Exchange Commission as an exhibit to a report on Form 6-K. A copy of the Agreement is available free of charge from the Company. This summary description of the Rights does not purport to be complete and is qualified in its entirety by reference to the Agreement, which is incorporated herein by reference.

C-4