# EXHIBIT C

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 88864 / May 13, 2020**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-19799**

| | |
|---|---|
| **In the Matter of**<br><br>   **1GLOBE CAPITAL, LLC**<br>   **and JIAQIANG "CHIANG"**<br>   **LI**<br><br>**Respondents.** | **ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER AND CIVIL PENALTIES** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against 1Globe Capital, LLC ("1Globe Capital") and Jiaqiang "Chiang" Li ("Li") ("Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V with respect to Respondent Li, Respondents consent to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order and Civil Penalties ("Order") as set forth below.

## III.

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

### Summary

1.      These proceedings arise out of multiple violations of Section 13(d) of the Exchange Act and related rules by Li and 1Globe Capital, a company he owns.  Section 13(d) requires any person, including a group, who directly or indirectly acquires beneficial ownership of more than five percent of certain equity securities to file a statement with the Commission, within ten days, disclosing information relating to such beneficial ownership.  Section 13(d) is a key regulatory provision that allows shareholders and potential investors to evaluate substantial shareholdings and the implications of such shareholdings for their own investment in the security.  Whenever a material change occurs to the facts set forth in any disclosure statement filed on Schedule 13D, the filing must be promptly and truthfully amended.

2.      By the end of 2017, 1Globe Capital, Li, and related parties together held nearly one-third of the common stock of issuer Sinovac Biotech Ltd. ("Sinovac") and participated in an activist plan to replace four of five incumbent directors through a shareholder vote at Sinovac's 2018 annual shareholder meeting in Beijing, but failed to disclose material information that is required in a Schedule 13D.  Specifically, 1Globe Capital and Li failed to disclose their full beneficial ownership of Sinovac stock, inclusive of substantial shares held by related parties, and their participation in a plan, led by other investors, thereby depriving existing and potential shareholders of information necessary to make fully informed investment decisions.
.

### Respondents

3.      1Globe Capital is a Delaware limited liability company with its principal place of business in Boston, MA and a research affiliate in Beijing, People's Republic of China ("PRC").

4.      Li is a PRC citizen who resides in Boston, MA and Beijing, PRC.  He is the sole owner of 1Globe Capital, which is a family office that purchases stock listed on US exchanges.  Li also purchases shares individually and has sometimes used an assumed name, Chiang Li Family, to disclose his ownership of such shares in SEC filings, as further discussed below.

### Other Persons

5.      "Relative #1" is a Canadian citizen and resident related to Li.  Since at least 2013, Li has granted Relative #1 access to 1Globe Capital and his brokerage accounts in order to engage

---

[1] The findings herein are made pursuant to Respondents' Offers of Settlement and are not binding on any other person or entity in this or any other proceeding.

in securities transactions at Li's general direction, for 1Globe Capital and Li's benefit.  Relative #1 has sometimes used the title of 1Globe Capital "Managing Director."

6.      "Relative #2" is a Canadian citizen and resident.  She is related to both Li and Relative #1.

7.      "Relative #3" is a PRC citizen and resident who has been employed under Li's general direction as an officer of 1Globe Capital's Beijing research affiliate since at least 2016.  He is related to Li and Relatives #1 and #2.

## Issuer

8.      Sinovac is an Antigua corporation headquartered in Beijing, PRC.  It is a holding company for a 73% majority interest in Sinovac Biotech Co., Ltd., its PRC subsidiary engaged in the research, development, manufacture, and commercialization of vaccines.  Its common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the NASDAQ Global Select Market.  Sinovac is a foreign private issuer as defined in Rule 405 of Regulation C under the Securities Act of 1933 and Rule 3b-4 under the Exchange Act.  Sinovac's common stock has been subject to an indefinite trading halt based on ongoing disputes between Sinovac and activist investors.

## Background

### Legal Framework: Required Ownership Disclosures

9.      Section 13(d)(1) of the Exchange Act and Rule 13d-1(a) together require any person, including a group, that has acquired, directly or indirectly, beneficial ownership of more than five percent of a class of a registered equity security to file a statement with the Commission disclosing the identity of its members and the purpose of its acquisition. *See generally GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2d Cir. 1971), *cert. denied*, 406 U.S. 910 (1972).  Individuals or entities comply with this requirement by filing a Schedule 13D with the Commission no later than ten days after they acquire the requisite beneficial ownership.

10.      Schedule 13D requires disclosure of, among other things:  (l) the identity of the acquirer, including beneficial owners;[2] (2) the aggregate amount beneficially owned by each reporting person and the percent of class represented by such amount; (3) a description, in Item 4,

---

[2] Whether a person is a "beneficial owner" is determined through the application of Rule 13d-3 of the Exchange Act, which broadly includes "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise" has or shares voting or investment power with respect to a registered equity security. *See* Rule 13d-3(a).  Any person who uses any contract, arrangement, or device as part of a plan or scheme to evade the reporting requirements of Sections 13(d) or (g) of the Exchange Act shall be deemed a beneficial owner. *See* Rule 13d-3(b); *see also SEC v. First City Financial Corp.,* 890 F.2d 1215, 1221 (D.C. Cir. 1989).

of the purpose(s) of the acquisition, including any plans (i) to affect the issuer's Board of Directors, or (ii) to cause an extraordinary corporate transaction, such as a merger, reorganization, or liquidation; (4) the interest of all persons making the filing, including shared beneficial owners; and (5) a description, in Item 6, of all "contracts, arrangements, understandings or relationships with repect to securities of the issuer," including the giving or withholding of proxies. A duty to file under Section 13(d) and Rule 13d-1 creates the duty to file truthfully and completely. *SEC v. Savoy Indus.,* 587 F.2d 1149, 1165 (D.C. Cir. 1978*) cert. denied,* 440 U.S. 913 (1979). *Scienter* is not required to establish a violation of Section 13(d). *Id.* at 1167; *SEC v. Levy,* 706 F. Supp. 61, 69 (D.D.C. 1989).

11. Section 13(d)(2) of the Exchange Act and Rule 13d-2(a) together require a filer to promptly amend the filer's Schedule 13D when there are material changes to the facts previously reported. Rule 13d-2(a) specifies that the acquisition of beneficial ownership of securities equal to 1% or more of the class of securities is "material" for purposes of the rule.

12. Under Exchange Act Rule 13d-1(c), certain persons (*i.e.*, "Passive Investors") required to file under Section 13(d) of the Exchange Act may instead file with the Commission a short-form Schedule 13G, which allows disclosure of much more limited information, if they own less than 20% of the class of securities and are able to certify that the securities were not acquired or held with the "purpose, or with the effect, of changing or influencing the control of the issuer [*i.e.*, a 'control purpose'], or in connection with or as a participant in any transaction having that purpose or effect." (*See Amendments to Beneficial Ownership Reporting Requirements*, Exchange Act Release No. 34-39538 (Jan. 12, 1998) (adopting release).

### Events: 2016 and Prior

13. On May 5, 2013, 1Globe Capital filed an initial Schedule 13G with the Commission disclosing beneficial ownership of 6.19% of Sinovac common stock. The schedule was signed by Relative #1, using the title of 1Globe Capital "Managing Director." By 2016, both 1Globe Capital and Li, its principal, had acquired substantially more shares of Sinovac stock in their respective brokerage accounts. Consequently, their broker identified 1Globe Capital and Li as holding more than 10% of the issuer's common stock and placed limitations on further trades in the stock. On April 5, 2016, 1Globe Capital filed an initial amendment to its Schedule 13G, disclosing a 16.44% position in Sinovac common stock. These shares were held in the 1Globe Capital account. On April 11, 2016, Li filed an initial Schedule 13G, under the name Chiang Li Family, further disclosing a 6.08% position in Sinovac common stock. Li held these shares in his individual account.

14. All of the shares in the positions had been purchased in trades effected by Relative #1, who had general authorization to trade in the brokerage accounts of 1Globe Capital and Li with funds from the two accounts. 1Globe Capital and Li had voting and investment power over all of the shares reported on separate Schedule 13G filings submitted by 1Globe Capital and Chiang Li Family. Therefore, the entire cumulative 22.5% block of Sinovac stock was beneficially owned by both 1Globe Capital and Li. Having acquired a collective 20% or more of the class of Sinovac

4

securities, they were thus ineligible to file a Schedule 13G as Passive Investors under Rule 13d-1(c).

15.     In February 2016, Sinovac announced that it had received a proposal for its equity to be bought out and the company to be taken private by a CEO-led consortium ("Group A"). Subsequently, it received an unsolicited, rival privatization proposal from a second consortium ("Group B").  If approved by Sinovac's board of directors, either plan would have required ratification by at least two-thirds (*i.e.*, 66.67%) of the company's shares voting in favor of a special resolution.  Sinovac established a special committee to evaluate the rival proposals, and a long period of evaluation and discussion ensued.[3]

16.     In late March 2016, Sinovac announced that its board had approved a shareholder rights plan, or so-called "poison pill."  The rights plan had a 15% beneficial-ownership trigger applicable to any "person or group."  A person or group exceeding this threshold could be deemed an "acquiring person" by Sinovac and subjected to ownership dilution through the company's issuance of new shares to non-acquiring shareholders only.  Under the rights plan, each group member would be deemed to beneficially own all of the group's shares.  The rights plan therefore restricted overt communications and coordination among shareholders wanting to avoid being identified as a group by Sinovac.  Subject to the above, a "grandfather clause" in the rights plan exempted 1Globe Capital and Li's pre-existing, collective 22.5% position in Sinovac shares from application of the poison pill.  However, even a small increase in beneficial ownership, as determined under the rights plan, risked being deemed a "trigger event" by Sinovac.

17.     As large shareholders, 1Globe Capital and Li, sometimes through employees of 1Globe Capital's Beijing affiliate, including Relative #3, corresponded and met with representatives of Groups A and B, including Sinovac management, to urge an outcome that would be agreeable to all parties and investors.  Although Sinovac had previously announced that the purpose of the rights plan was to ensure that its board of directors had sufficient time to consider the various strategic alternatives presented, Li stated his disapproval of the poison pill on the basis that it could discourage rival bids.

18.     As of April 30, 2016, Relative #2 held Sinovac common stock constituting approximately 0.7% of Sinovac's outstanding shares in a Canadian brokerage account.  Relative #1 had access to Relative #2's account and sometimes engaged in securities transactions in that account.  Beginning in May 2016, using funds provided by 1Globe Capital and Li, Relative #1 began building on the Sinovac position in this account.

19.     From May 2016 through January 2017, an additional 4.2% of Sinovac's common stock was acquired in Relative #2's account, for a total 4.9% position.  1Globe Capital and Li funded substantially all of the purchases through ten separate wire transfers, totaling $13 million, during the second half of 2016.  During this same time period, Li's account also transferred a large block of shares of another stock to Relative #2's Canadian account.  The shares were then

---

[3] The special committee ultimately notified Group B in late October 2017 that it would not recommend Group B's privatization proposal.

liquidated and the proceeds used toward the ongoing purchases of Sinovac shares in Relative #2's account.

20.    1Globe Capital and Li directly or indirectly, through a relationship or otherwise, had or shared voting and investment power over the Sinovac shares in Relative #2's account and were therefore beneficial owners of the securities.  The total 4.9% Sinovac position in Relative #2's account made up approximately 90% of her total account value but fell just below the 5% threshold that would have independently triggered an Exchange Act Section 13(d) filing requirement and potentially the disclosure by her of information such as source of funds, as well as agreements, understandings and relationships with respect to the securities.  1Globe Capital and Li likewise made no filings disclosing the purchase of these Sinovac shares and their own shared beneficial ownership of the securities.

**Events: 2017**

21.    As the Sinovac stock position held in Relative #2's Canadian brokerage account neared the 5% disclosure threshold, Relative #1 opened a Canadian brokerage account in his own name in late December 2016 and began purchasing Sinovac shares in the account after receiving a $5 million wire transfer from 1Globe Capital and Li in February 2017.  A second $5 million wire was sent from 1Globe Capital and Li the following month.  Relative #1 used the funds in furtherance of building a 3.5% position in Sinovac shares in the new account, during the time period February through December 2017.  These shares comprised approximately 90% of the total account value.

22.    1Globe Capital and Li directly or indirectly, through a relationship or otherwise, had or shared voting and investment power over the Sinovac shares in Relative #1's account and were therefore beneficial owners of the securities.  However, 1Globe Capital and Li disclosed neither the purchase nor shared beneficial ownership of these securities.

23.    By December 2017, 1Globe Capital and Li thus had beneficial ownership of approximately 31% of Sinovac's outstanding common stock, inclusive of a then-4.99% position in Relative #1's account[4] and the 3.5% position in Relative #2's account.  Yet, at the time, Respondents had disclosed only the 22.5% position held in 1Globe Capital and Li's accounts, improperly splitting the disclosure into two separate disclosure schedules and not including the shares in the relatives' accounts on either schedule.

24.    On July 7, 2017, 1Globe Capital converted its amended Schedule 13G, previously filed with respect to the 16.44% Sinovac position held in its own account, to a Schedule 13D. 1Globe Capital converted this schedule to disclose that it now held the shares with a "control purpose," specifically that, no later than this date, it supported Group B's privatization proposal and to "express[] its willingness to vote its shares of Common Stock in favor of such acquisition and roll-over its shares of Common Stock in connection with the acquisition."  The new schedule did not disclose, however, any of the reportable, material increases in 1Globe Capital and Li's

---

[4] Relative #1 purchased a relatively small number of shares in Relative #2's account during December 2017, increasing Relative #2's account position to 4.99%.

beneficial ownership that had occurred incrementally throughout the period leading up to the filing. Moreover, 1Globe Capital failed to disclose:

- Item 4 plans or proposals that relate to or would result in: (a) the acquisition of additional shares or (b) changing the management or governance of Sinovac; or

- Item 6 contracts, arrangements, understandings or relationships with respect to securities of Sinovac.

25.    At no time did Li convert the Chiang Li Family Schedule 13G that he had previously filed to disclose the 6.08% Sinovac position held in his individual account to a Schedule 13D, even though he had already disclosed a control purpose with respect to the position held in 1Globe Capital's account and he beneficially owned both blocks of shares.

26.    Sinovac issued a press release on December 29, 2017 announcing that it would hold its 2017 Annual Meeting of Shareholders on February 6, 2018, in Beijing.  According to the press release, all shareholders of record as of December 26, 2017 were eligible to vote and invited to attend the meeting.  The press release also stated that the "primary agenda of the meeting" included a vote to "approve the re-election" of Sinovac's current directors.  There were no other director nominees at that time.

**Events: 2018**

27.    The Group B privatization consortium was led by a PRC entity that held a 27% minority interest in Sinovac's PRC operating subsidiary but owned no shares of Sinovac common stock.  This entity already held one seat on Sinovac's five member board of directors.  After Sinovac announced its upcoming annual shareholder meeting, Group B recruited a number of Sinovac shareholders who supported Group B's privatization proposal to participate in an effort to identify four additional director candidates to be nominated and voted for, as part of a full slate of five directors ("Alternative Slate"), on the floor of Sinovac's annual meeting.  The full scope of this effort was not made known to Sinovac prior to the annual meeting.

28.    The effort required that participating shareholders work during January to obtain proxies from the institutional custodians holding legal title to their shares so that the shares could be voted by proxy, at the annual meeting, at the shareholders' direction.  Li had voiced his desire for 1Globe Capital to be represented on Sinovac's board of directors at least once, in an August 2017 joint meeting between him and Groups A and B, and Relative #3 was eventually selected as a director candidate on the Alternative Slate.

29.    By at least January 22, 2018, 1Globe Capital and Li had decided to participate in an activist plan, obtain proxies for the Sinovac shares held in their accounts, and instruct their representatives to attend the annual meeting and vote their shares for the Alternative Slate.  1Globe Capital named Relative #3 as its representative on its proxy, and Li's individual account was represented by an employee of 1Globe Capital's Beijing affiliate.  Relative #3, along with Group B's counsel and proxy solicitor, assisted 1Globe Capital, Li, and Relatives #1 and #2 in obtaining

7

the necessary proxies, through their brokers.  Group B's counsel and proxy solicitor advised all four parties to instruct their brokers to "keep the whole thing strictly confidential from Sinovac." Relatives #2 and #3, whose stock positions and relationship to Li were not publicly disclosed, named as their proxy representatives individuals unaffiliated with 1Globe Capital and the relatives.

30.     At the annual meeing, the Alternative Slate, including Relative #3, was provisionally elected with approximately 26.1 million votes, versus 21.2 million votes received by the incumbent slate.  Of the shares voted for the Alternative Slate, 17.7 million, or fully 67.8%, consisted of the collective 31% position beneficially owned by 1Globe Capital and Li, held in their accounts and in the Canadian accounts of Relatives #1 and #2.  However, on March 5, 2018, Sinovac announced its own determination that the Alternative Slate had not been validly proposed under Antiguan law and that the incumbent slate had therefore been re-elected by a majority of votes validly cast.  1Globe Capital challenged Sinovac's determination in a lawsuit filed against Sinovac, in Antigua, on March 13, 2018.  Since February 22, 2019, NASDAQ has halted trading in the stock pending additional corporate action with respect to the securities.  As of the current date, trading has not resumed.

31.     In the period January through May 2018, as the situation at Sinovac remained unresolved, Relative #1 continued to effect the purchase of Sinovac common stock in his Canadian account.  The purchases were substantially funded by 1Globe Capital and Li with a third wire transfer from them to Relative #1, in the amount of $6 million.  In all, Relative #1 purchased an additional 1.6% position in Sinovac shares during this time period, giving 1Globe Capital and Li beneficial ownership of approximately 32.6% of Sinovac's common stock.  Relative #1 stopped buying Sinovac shares in the account after his broker conducted a compliance inquiry and placed limitations on further purchases.

32.     During the period from August 2017 until after the Sinovac shareholder vote had already been held, 1Globe Capital and Li did not make any Sinovac-related disclosure filings.  On March 26, 2018, 1Globe Capital ultimately filed an amended Schedule 13D with respect to its disclosed 16.4% position.  (Li's only disclosure schedule remained the April 2016 Chiang Li Family Schedule 13G.)  1Globe Capital's amended Schedule 13D made incomplete disclosure regarding 1Globe Capital's actions in connection with the February 2018 annual shareholder meeting while omitting material facts concerning 1Globe Capital and Li's participation in the effort to replace four of Sinovac's five incumbent directors.  For example, the amended Schedule 13D states:

> *Prior to the AGM [Annual General Meeting], the Reporting Person [1Globe Capital] did not have an intention to nominate or second the nomination of a slate of proposed directors that would change the composition of the board.  At the invitation of the Issuer, the Reporting Person attended the AGM.  At the AGM, the Reporting Person's shares were voted in favor of the alternative slate.*

This recitation of facts omitted material facts concerning 1Globe Capital and Li's participation in the effort led by Group B.

8

33.    Furthermore, the amended Schedule 13D failed to disclose, as had 1Globe Capital's July 7, 2017 Schedule 13D:

- 1Globe Capital's full beneficial ownership of Sinovac common stock shares, inclusive of shares held in Li's account and Relative #1 and #2's accounts;

- Item 4 plans or proposals that related to or would have resulted in the acquisition of additional Sinovac shares; and

- Item 6 contracts, arrangements, understandings or relationships with respect to securities of Sinovac,

even as Relative #1 continued to effect purchases of Sinovac shares in his Canadian account, substantially funded by 1Globe Capital and Li, and even as Relatives #1 and #2 continued to hold the aforementioned large positions in Sinovac common stock, substantially funded by 1Globe Capital and Li.

## **Violations**

34.    As a result of the conduct described in paragraphs 13 through 33, above, 1Globe Capital and Li violated Sections 13(d)(1) and 13(d)(2) of the Exchange Act and Rules 13d-1 and 13d-2 thereunder.  Specifically:

A.  1Globe Capital and Li, no later than April 5, 2016, failed to file, as required by Rule 13d-1(f)(1), a Schedule 13D disclosing their shared beneficial ownership of 20% or more of Sinovac common stock shares, thereby violating Exchange Act Section 13(d)(1) and Rule 13d-1 thereunder.

B.  1Globe Capital and Li, from July 2017 through June 2018, failed in numerous instances to file a Schedule 13D amendment disclosing an acquisition of an additional 1% or more of shared beneficial ownership of Sinovac common stock, thereby violating Exchange Act Section 13(d)(2) and Rule 13d-2(a) thereunder.

C.  1Globe Capital and Li failed to disclose, in the July 7, 2017 Schedule 13D filing:

   i.  1Globe Capital's full beneficial ownership of Sinovac common stock shares, inclusive of shared beneficial ownership in shares held in Li's account and Relative #1 and #2's accounts;

   ii.  1Globe Capital's Item 4 plans or proposals with respect to additional acquisitions of Sinovac shares, even as Relative #1 continued to undertake purchases substantially funded by 1Globe Capital and Li; and

   iii.  1Globe Capital's Item 6 arrangements, understandings or relationships with respect to Sinovac securities, even as Relatives #1 and #2 both held Sinovac

9

shares in their accounts, the purchase of which had been substantially funded by 1Globe Capital and Li,

thereby violating Exchange Act Section 13(d)(1) and Rule 13d-1 thereunder.

D. Li, no later than July 7, 2017, failed to file, as required by Rules 13d-1(e)(1) and 13d-1(f)(1), a Schedule 13D disclosing, in connection with all of the Sinovac common stock shares of which he was a beneficial owner, his plans to support Group B's proposed Sinovac privatization, thereby violating Exchange Act Section 13(d)(1) and Rule 13d-1 thereunder.

E. 1Globe Capital and Li, no later than January 22, 2018, failed to file a Schedule 13D amendment disclosing their participation in an effort to replace four of Sinovac's five incumbent directors through a shareholder vote at the Sinovac annual meeting, thereby violating Exchange Act Section 13(d)(2) and Rule 13d-2 thereunder.

F. 1Globe Capital and Li, in the March 26, 2018 Schedule 13D/A filing:

   i. failed to disclose 1Globe Capital's full beneficial ownership of Sinovac common stock shares, inclusive of shared beneficial ownership in shares held in Li's account and Relative #1 and #2's accounts,

   ii. made incomplete disclosure regarding 1Globe Capital's actions in connection with the February 2018 annual shareholder meeting while omitting material facts concerning 1Globe Capital and Li's participation in the effort to replace four of Sinovac's five incumbent directors,

   iii. failed to disclose 1Globe Capital's Item 4 plans or proposals with respect to additional acquisitions of Sinovac shares, even as Relative #1 continued to undertake purchases substantially funded by 1Globe Capital and Li, and

   iv. failed to disclose 1Globe Capital's Item 6 arrangements, understandings or relationships with respect to Sinovac securities, even as Relatives #1 and #2 both held Sinovac shares in their accounts, the purchase of which had been substantially funded by 1Globe Capital and Li,

thereby violating Exchange Act Section 13(d)(2) and Rule 13d-2 thereunder.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondents' Offers.

Accordingly, it is hereby ORDERED that**:**

A.      Pursuant to Section 21C of the Exchange Act, Respondents 1Globe Capital and Li cease and desist from committing or causing any violations and any future violations Sections 13(d)(1) and 13(d)(2) of the Exchange Act and Rules 13d-1 and 13d-2 thereunder.

B.      Respondent 1Globe Capital shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $200,000.00 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

C.      Respondent Li shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $90,000.00 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

D.      Payment must be made in one of the following ways:

(1)      Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)      Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)      Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying the above-named Respondent as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Anita Bandy, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549.

E.      Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Respondents 1Globe Capital and Li agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset").  If the court in any

Related Investor Action grants such a Penalty Offset, Respondents agree that they shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the findings in this Order are true and admitted by Respondent Li, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent Li under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by him of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Vanessa A. Countryman
Secretary

12