**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE 1GLOBE CAPITAL LLC SECURITIES LITIGATION | No.: 1:22-cv-11315-NMG |
| | <u>Oral Argument Requested</u> |
| | Leave to file granted on February 24, 2023 |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO**
**<u>DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND.................................................................................... 5

III. ARGUMENT ........................................................................................................... 7

     A.   Plaintiff Adequately Alleges Securities Fraud Claims....................................... 7

        1.   Plaintiff's Securities Fraud Claims Are Timely........................................ 7

        2.   The Section 10(b) Claim May be Based on Section 13(d) Violations................... 11

        3.   Defendants Misrepresented Their Triggering of the Rights Agreement .............. 13

        4.   The Complaint Alleges a Strong Inference of Scienter ...................................... 14

        5.   The Complaint Adequately Alleges Loss Causation ........................................... 19

        6.   The Complaint Adequately Alleges Scheme Liability ........................................ 21

     B.   Plaintiff Adequately Alleges Tortious Interference With Contract ............................... 22

        1.   The Claim is Timely ..................................................................... 22

        2.   SLUSA Does Not Preempt the Claim.................................................... 23

        3.   The Complaint Adequately Alleges Tortious Interference................................. 24

IV.  CONCLUSION........................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) ................................................................14, 15, 17, 18

*Am. Bottl. Co. v. BA Sports Nutrition, LLC*,
   2021 WL 6068705 (Del. Super. Ct. Dec. 15, 2021) ............................................25

*Azurite Corp. v. Amster & Co.*,
   52 F.3d 15 (2d Cir. 1995) ....................................................................................11

*Baldwin v. Merrill Lynch*,
   2019 WL 4046542 (D. Me. Aug. 27, 2019) .........................................................24

*Baum v. Harman Int'l Indus.*,
   575 F. Supp. 3d 289 (D. Conn. 2021) ..................................................................21

*Bhole, Inc. v. Shore Invs., Inc.*,
   67 A.3d 444 (Del. 2013) ......................................................................................25

*Blatt v. Muse Techs.*,
   2002 WL 31107537 (D. Mass. Aug. 27, 2002) ...............................................13, 18

*BTIG, LLC v. Palantir Techs.*,
   2020 WL 95660 (Del. Super. Ct. Jan. 3, 2020) .............................................22, 23

*Burt v. Maasberg*,
   2014 WL 1291834 (D. Md. Mar. 28, 2014) ..........................................................11

*Cap. Ventures Int'l v. UBS Sec. LLC*,
   2012 WL 4469101 (D. Mass. Sept. 28, 2012) ....................................................7, 8

*Castellano v. Young & Rubicam*,
   257 F.3d 171 (2d Cir. 2001) ................................................................................14

*Chadbourne & Parke LLP v. Troice*,
   571 U.S. 377 (2014) ............................................................................................24

*Colon v. Diaz-Gonzalez*,
   2009 WL 3571974 (D.P.R. Oct. 26, 2009) ..........................................................19

*Coons v. Indus. Knife Co.*,
   620 F.3d 38 (1st Cir. 2010) ..................................................................................23

*Cosby v. KPMG, LLP*,
   2018 WL 3723712 (E.D. Tenn. Aug. 2, 2018) .....................................................11

*Crowell v. Ionics, Inc.*,
 343 F. Supp. 2d 1 (D. Mass. 2004) ...............................................................................18

*Dahhan v. OvaScience, Inc.*,
 2021 WL 2186466 (D. Mass. May 28, 2021) ..............................................................8, 10

*DoubleLine Cap. LP v. Odebrecht Fin.*,
 323 F. Supp. 3d 393 (S.D.N.Y. 2018) .........................................................................10, 11

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ..................................................................................................3, 19

*Eton Park Fund, L.P. v. Am. Realty Cap. Props.*,
 2017 WL 4898226 (S.D.N.Y. Aug. 14, 2017) ..................................................................8

*Ezell v. Lexington Ins. Co.*,
 286 F. Supp. 3d 292 (D. Mass. 2017) .............................................................................25

*GAF Corp. v. Milstein*,
 453 F.2d 709 (2d Cir. 1971) ..........................................................................................11

*Gastro. Wrkrs. Union Loc. 610 v. Dorado Beach Hotel*,
 617 F.3d 54 (1st Cir. 2010) ............................................................................................11

*Genereux v. Am. Beryllia Corp.*,
 577 F.3d 350 (1st Cir. 2009) ..........................................................................................20

*Green v. Sirchie Acquis. Co.*,
 2022 WL 4540983 (D. Mass. Sept. 28, 2022) ................................................................20

*Gruber v. Gilbertson*,
 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ................................................................11

*Hall v. Children's Place Retail Stores*,
 580 F. Supp. 2d 212 (S.D.N.Y. 2008) ............................................................................16

*Henderson v. BNYM Corp.*,
 146 F. Supp. 3d 438 (D. Mass. 2015) .............................................................................24

*Hill v. State St. Corp.*,
 2011 WL 3420439 (D. Mass. Aug. 3, 2011) ...................................................................14

*Hoff v. Popular, Inc.*,
 727 F. Supp. 2d 77 (D.P.R. 2010) ...................................................................................19

*In re Allergan PLC Sec. Litig.*,
 2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019) ...............................................................13

*In re Cabletron Sys., Inc.*,
 311 F.3d 11 (1st Cir. 2002) ............................................................................................15

iv

*In re Carter-Wallace*,
150 F.3d 153 (2d Cir. 1998)......................................................................................12

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013)........................12

*In re Luxottica Grp. S.p.A., Sec. Litig.*,
293 F. Supp. 2d 224 (E.D.N.Y. 2003) ......................................................................11

*In re MCI Worldcom, Inc. Sec. Litig.*,
93 F. Supp. 2d 276 (E.D.N.Y. 2000) ........................................................................17

*In re Mindbody, Inc. Sec. Litig.*,
489 F. Supp. 3d 188 (S.D.N.Y. 2020) ......................................................................11

*In re Parmalat Sec. Litig.*,
493 F. Supp. 2d 723 (S.D.N.Y. 2007), *aff'd*, 535 F.3d 87 (2d Cir. 2008) ...............................10

*In re Raytheon Sec. Litig.*,
157 F. Supp. 2d 131 (D. Mass. 2001) .......................................................................18

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)........................................................................................16

*In re Smith & Wesson Hold. Corp. Sec. Litig.*,
604 F. Supp. 2d 332 (D. Mass. 2009) ..........................................................14, 15, 18

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993)..........................................................................................17

*In re XL Fleet Corp. Sec. Litig.*,
2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)...........................................................22

*Karth v. Keryx Biopharm.*,
2018 WL 3518497 (D. Mass. July 19, 2018)...........................................................14

*Levie v. Sears Roebuck & Co.*,
2006 WL 1886223 (N.D. Ill. July 5, 2006)..............................................................11

*Levie v. Sears Roebuck & Co.*,
496 F. Supp. 2d 944 (N.D. Ill. 2007) .......................................................................21

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)..............................................................................................21

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010).....................................................................................................8

*MissPERS v. Bos. Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008)................................................................................15, 17

*MTB Invest. Partners v. Siemens Hearing Instruments*,
  2013 WL 12149253 (D.N.J. Feb. 19, 2013) ...................................................................11

*NACCO Indus. v. Applica Inc.*,
  997 A.2d 1 (Del. Ch. 2009)...........................................................................................25

*Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*,
  484 F. Supp. 1375 (D. Del. 1980)..................................................................................23

*Pesce v. Coppinger*,
  355 F. Supp. 3d 35 (D. Mass. 2018) ..............................................................................11

*Puddu v. 6D Glob. Techs., Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ...........................................................11, 21

*Rotunno v. Wood*,
  2022 WL 14997930 (2d Cir. Oct. 27, 2022).....................................................................18

*Sanchez v. Pereira-Castillo*,
  590 F.3d 31 (1st Cir. 2009)..........................................................................................3, 20

*SEC v. Liberty*,
  2021 WL 664834 (D. Me. Feb. 19, 2021) .......................................................................22

*SEC v. Sharp*,
  2022 WL 4085676 (D. Mass. Sept. 6, 2022) ...............................................................8, 22

*Shuster v. AXA Equit. Life Ins. Co.*,
  2015 WL 4314378 (D.N.J. July 14, 2015)......................................................................24

*Sinovac Biotech Ltd. v. 1Globe Capital, LLC, et al.*,
  C.A. No. 2018-0143-JTL (Del. Ch.).................................................................................9

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
  775 F. Supp. 2d 227 (D. Mass. 2011) .............................................................................19

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)..............................................................................................11

*Stumpf v. Garvey*,
  2005 WL 2127674 (D.N.H. Sept. 2, 2005)....................................................................3, 20

*Sun v. Han*,
  2015 WL 9304542 (D.N.J. Dec. 21, 2015).......................................................................8

*Swack v. Credit Suisse First Bos.*,
  383 F. Supp. 2d 223 (D. Mass. 2004) ..........................................................................13, 14

*Takata v. Riot Blockchain, Inc.*,
  2020 WL 2079375 (D.N.J. Apr. 30, 2020) .......................................................................12

vi

*Takata v. Riot Blockchain, Inc.*,
   2022 WL 1058389 (D.N.J. Apr. 8, 2022) ...............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................................14

*Thomas v. Harford Mut. Ins. Co.*,
   2003 WL 220511 (Del. Super. Ct. Jan. 31, 2003) ................................................................25

*Tutor Perini Corp. v. Banc of Am. Sec. LLC*,
   2013 WL 5376023 (D. Mass. Sept. 24, 2013) ......................................................................20

*U.S. v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)................................................................................................18

*Vladimir v. Bioenvision Inc.*,
   606 F. Supp. 2d 473 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 141 (2d Cir. 2010)...................4, 11

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt. L.P.*,
   2010 WL 1267126 (Del. Super. Ct. Mar. 31, 2010) .............................................................23

*Wortley v. Camplin*,
   333 F.3d 284 (1st Cir. 2003)..................................................................................................20

*Yan v. ReWalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020)....................................................................................................15

*Yi Xiang v. Inovalon Holds.*,
   254 F. Supp. 3d 635 (S.D.N.Y. 2017) ....................................................................................8

**Statutes**

Exchange Act Section 10(b) .................................................................................... *passim*

Exchange Act Section 13(d) .................................................................................... *passim*

**Rules**

17 C.F.R § 240.10b-5..............................................................................................21

Lead Plaintiff MW Gestion ("Plaintiff") respectfully submits this Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint. (ECF No. 28).[1]

## I.    INTRODUCTION

Since 2016, Defendants engaged in a deceptive scheme in which they repeatedly purchased Sinovac stock to increase 1Globe's stake as Sinovac's largest shareholder. By 2018, 1Globe beneficially owned 32.6% of the stock. 1Globe and its owner, Jiaqiang Li, acquired their outsize stake in Sinovac as part of their battle with Sinovac's CEO for control of the company. Throughout the Class Period, Defendants misrepresented their holdings — in violation of their duty to disclose under Section 13(d) of the Exchange Act — in order to evade Sinovac's Poison Pill that would take effect if the full extent of 1Globe and Li's holdings was known.

Each share of Sinovac stock that Defendants purchased after Sinovac adopted the Rights Agreement on March 28, 2016 violated the Poison Pill provision in the agreement. Any shareholder that triggered the Poison Pill by acquiring shares over its 15% threshold would have their stake substantially diluted by having additional shares issued or made available to every other shareholder, but not the triggering party. ¶42. That would have reduced the value of Li's stake in Sinovac and prevented him purchasing additional shares. He therefore orchestrated a plan in which relatives discreetly accumulated Sinovac stock in multiple accounts to evade disclosure thresholds. ¶¶44, 68-70, 106. Each of these purchases following March 28, 2016 triggered the Poison Pill. Defendants also violated their disclosure obligations under Section 13(d) of the Exchange Act by failing to disclose, and filing forms that misstated, the full extent of their Sinovac stock ownership. ¶¶71-95. The SEC issued an order in May 2020 describing their Section 13(d) violations.

---

[1] ¶_ references herein are to paragraphs of the Amended Class Action Complaint ("Complaint," ECF No. 23). Defendants' Memorandum of Law in Support of their Motion (ECF No. 29) is referenced as "Mem." Capitalized terms not defined herein have the same meaning as in the Complaint.

Defendants' deceptive campaign culminated in Li and 1Globe joining with others to form a self-described group of "conspirators" that would vote for an alternative slate of Directors at Sinovac's 2018 annual meeting. ¶¶119, 170. 1Globe's counsel cautioned that they must "do this smartly," without "leav[ing] any evidence" that they had "formed a 13(d) group." *Id.* Sinovac's management opposed 1Globe's actions. This dispute spawned litigation between Sinovac and 1Globe in Delaware, Antigua, and this Court concerning whether 1Globe triggered the Rights Agreement. In February 2019, after the trial court in Antigua ruled against 1Globe, Sinovac announced it was implementing the Poison Pill. 1Globe, however, obtained a stay of Sinovac's implementation pending resolution of its appeal in Antigua. That stay is still pending years later.

Sinovac's delay in implementing the Rights Agreement has harmed Plaintiff and the proposed Class in several ways. They have lost out on the additional shares that they are entitled to under the Rights Agreement for all the Sinovac securities that they sold between when Defendants first triggered the Rights Agreement in 2016 and when Sinovac finally implemented it as of February 2019. In addition, Defendants' actions suppressed the price of Sinovac securities from reaching the value that the information regarding 1Globe's stake would have conferred. Lastly, Defendants' interference with the Rights Agreement caused trading in Sinovac stock to be halted until 1Globe's dispute with Sinovac is resolved. Both the SEC and the Antigua court determined that 1Globe's misrepresentation of its stake in Sinovac deprived shareholders of the ability "to make an informed and intelligent [investment] decision." ¶¶118, 120.

In response, Defendants disingenuously portray 1Globe as the "champion" of Sinovac shareholders. (Mem. at 6-7, 10-11). This characterization is laughable considering the level of deception in which Defendants' engaged. Although 1Globe and Li sought to prevent the Yin Group from buying Sinovac, Defendants were trying to purchase Sinovac for themselves at the lowest

2

price possible, not to maximize value for other shareholders. (*See infra* at 16-17). The Complaint, and the plainly deliberate nature of Defendants' conduct, plead a strong inference of scienter.

Defendants also implausibly argue that they did not cause any harm because it was Sinovac that improperly delayed implementing the Poison Pill. (Mem. at 15). This ignores the well-established rule that defendants are responsible for "consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50–51 (1st Cir. 2009). The question of whether Sinovac's actions are considered "an intervening event that interrupted the chain of causation" is "a matter of proof after discovery." *Stumpf v. Garvey*, 2005 WL 2127674, at *12–13 (D.N.H. Sept. 2, 2005). Sinovac's delay in implementing the Poison Pill was not only a reasonably foreseeable result of Defendants' actions — it was their ***intended goal***. The whole point of Defendants' scheme was to evade the Poison Pill. They succeeded by misrepresenting their holdings of Sinovac stock and then engaging in extended litigation with Sinovac in which 1Globe obtained injunctions against implementation of the Rights Agreement. Plaintiff therefore easily alleges "some indication of the loss and the causal connection [it] has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

In addition, Defendants contend that Plaintiff's securities claims are barred by the statute of limitations based on the SEC's finding in May 2020 that 1Globe and Li violated Section 13(d). But Defendants have not met their burden of showing that the limitations period has run. Courts have enjoined Sinovac from implementing the Poison Pill and all trading in Sinovac stock has been halted since 2019 while 1Globe's litigation with Sinovac is pending. This Court and the Delaware court have stated that they cannot rule on crucial predicates to Plaintiff's claims until 1Globe's dispute in Antigua is resolved. (*See infra* at 6, 8-10). Plaintiff cannot be barred from filing this action when the Rights Agreement has not been implemented yet and this Court and others have

3

refrained — at 1Globe's urging — from ruling on issues that are central to Plaintiff's claims.

Defendants also contest whether Plaintiff may bring a claim under Section 10(b) of the Exchange Act based on Defendants' Section 13(d) violations. The law is clear, however, that plaintiffs "can point to a violation of section 13(d) as the predicate for a 10b–5 claim." *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 490–91 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 141 (2d Cir. 2010). In addition to violating disclosure duties, Defendants made affirmative misstatements in Section 13(d) filings and engaged in an intricate fraudulent scheme, all of which are actionable. Even the outlier case that Defendants cite as their sole support recognized that a Section 10(b) claim may be based on an egregious violation of Section 13(d), as alleged herein. (*Infra* at 11-12).

Next, Defendants misconstrue Plaintiff's claim for tortious interference with contract. This claim centers on the complete inability of investors to trade their Sinovac securities as a result of Defendants' actions. SLUSA does not preempt this claim because there is no possible securities transaction that it could relate to. In addition, Defendants misstate the legal standard that applies to the merits of this claim. Plaintiff is required to plead only that Defendants acted "without justification," which they did by engaging in their web of deceptive conduct.

Lastly, Defendants repeatedly harp on a single paragraph of the Complaint that they argue shows that they publicly disclosed their triggering of the Rights Agreement in April 2016. (*See* Mem. at 2, 5, 9-11, 15-17, 19-20 (citing ¶133)). This mischaracterization plainly ignores the repeated statements in the Complaint, as well as the SEC's express finding, that Defendants first triggered the Rights Agreement in May 2016 and never publicly disclosed those purchases. (*See infra* at 6-7, 13-14). Defendants' many deceptive acts — and their continuing to vehemently contest in Antigua, Delaware, and this Court whether they triggered the Rights Agreement — also belie their assertion that they "were not seeking to conceal the underlying facts." (Mem. at 11).

4

## II.    FACTUAL BACKGROUND

Defendant 1Globe is an investment company owned and controlled by Defendant Jiaqiang Li ("Li"). ¶¶25-26. Since 2016, Li and 1Globe have been vying for control of Sinovac, a vaccine maker based in China. ¶¶31-32. Rather than conduct this campaign openly and transparently, Defendants misrepresented, and used deceptive tactics to conceal, their growing position in Sinovac stock. In March 2016, Sinovac enacted the Rights Agreement, containing the Poison Pill, to prevent shareholders from acquiring more than 15% of Sinovac stock. ¶11.

Soon after the Rights Agreement was adopted, Defendants proceeded to violate it by acquiring additional shares of Sinovac stock beyond the 22.5% owned when the agreement was adopted. The SEC determined on May 13, 2020, in an enforcement action against 1Globe and Li, that Li orchestrated the purchase of Sinovac stock in multiple accounts by a relative, Defendant Jeff Li, to conceal the full extent of 1Globe's ownership. ¶46, 52, 60, 68-70, 76-81. For example, Li funded purchases from May 2016 to January 2017 "through ten separate wire transfers, totaling $13 million," and totaling at least $23 million over the course of the Class Period. ¶¶52, 55, 69. Defendants evaded reporting requirements by switching accounts when their holdings fell just below the disclosure threshold. ¶¶ 69-70. By May 2018, Li had acquired 32.6% of Sinovac stock, but still disclosed only the 22.5% that he owned at the start of the Class Period. ¶5, 59.

Evidence from 1Globe's action against Sinovac in Antigua shows that it also engaged in deceptive practices leading up to Sinovac's 2018 annual shareholder meeting. 1Globe and Li joined with another group to vote for an insurgent slate of Directors while "keep[ing] the whole thing strictly confidential from Sinovac." ¶¶74, 109-20. 1Globe's counsel even instructed that they "do this smartly. Don't leave any evidence to [Sinovac], showing that" they had "formed a 13(d)" group, to avoid detection as "conspirators." ¶117. 1Globe thus took many steps to advance what the Antigua court described as its "secret plan to take control of" Sinovac. ¶¶109, 118-20.

5

Defendants engaged in all of these deceptive acts to prevent Sinovac from implementing the Poison Pill that would substantially dilute their ownership stake. Li and 1Globe then continued this strategy — causing years more of delay — by contesting Sinovac's actions in court, including by bringing suit in Antigua and opposing Sinovac's actions in Delaware and before this Court. (*See* Mem. at 4-6). In addition to contesting whether they triggered the Rights Agreement and its validity, 1Globe and Li have actively sought to delay by requesting the courts halt implementation of the Rights Agreement and agreeing that the Delaware and Massachusetts actions should be stayed pending resolution of 1Globe's interminable appeals in Antigua. ¶¶111-15, 123-29. This extended delay serves 1Globe's interest of continuing to avoid dilution from the Poison Pill.

Despite their accumulation of Sinovac stock well beyond the Rights Agreement's 15% threshold, 1Globe and Li never publicly disclosed their ownership or control of Sinovac stock beyond the disclosure in April 2016 of 1Globe's 16.44% stake and a 6.08% stake of a secretly related entity called the "Chiang Li Family." ¶¶65-66. Each of their purchases of shares after the Rights Agreement was adopted, and agreements to vote their shares with others, constituted a Trigger Event. ¶¶47, 56, 59. Defendants' omission of this information violated their duty under Section 13(d) to disclose material changes in ownership above five percent of Sinovac shares, to report a stake above 20% (including the joint stake shared by 1Globe and the Chiang Li Family), to report their purpose for acquiring the stock, and to report agreements to vote their shares with others. ¶¶61-62, 67, 71, 77, 82-95; *see also* ¶¶87-95 (regarding affirmative misrepresentations).

Because of Defendants' Section 13(d) violations, ordinary investors such as Plaintiff had no way to know that Defendants caused a Trigger Event. Defendants mischaracterize 1Globe's April 5, 2016 Schedule 13G as publicly disclosing its violating the Rights Agreement's ownership threshold. (Mem. at 2, 5, 9-11, 15-17, 19-20 (citing ¶133)). This contention goes against Plaintiff's

clear allegations and the SEC's express findings. The SEC stated that the 22.5% of Sinovac stock that 1Globe and Li disclosed in April 2016 was owned prior to the Rights Agreement and was therefore "exempted" from the Poison Pill. (Perla Decl., Ex. C ("SEC Order," ECF No. 30-3) ¶16).[2] The Complaint is also clear that Defendants started purchasing new shares in violation of the Rights Agreement by May 2016, after the disclosure at issue. ¶¶5, 11, 12, 47, 52, 68-69, 78, 96. None of Defendants' subsequent Section 13(d) filings disclosed these purchases. ¶¶92-95.

Defendants' self-serving misrepresentations and omissions of 1Globe and Li's holdings of Sinovac stock, in violation of their duty to disclose under Section 13(d), has caused substantial harm to ordinary Sinovac shareholders such as Plaintiff. By concealing their triggering of the Rights Agreement, Defendants caused Sinovac to delay implementing the Poison Pill until Sinovac had more certainty about its ability to do so. ¶¶96-102. Innocent shareholders such as Plaintiff did not know that Li and 1Globe violated the Right Agreement starting in 2016. Plaintiff therefore sold hundreds of thousands of securities that would have entitled it to extra shares based on when 1Globe caused a Trigger Event in May 2016, but that Plaintiff no longer held as of when Sinovac finally implemented the Rights Agreement in February 2019. ¶¶103, 131, 176. And Defendants caused even more harm because their actions (1) resulted in trading in Sinovac stock being halted until 1Globe's dispute with Sinovac is resolved and (2) prevented Sinovac securities from reaching the value that this information would have conferred. ¶104, 128, 177-78.

## III.    ARGUMENT

### A.    Plaintiff Adequately Alleges Securities Fraud Claims

#### 1.    Plaintiff's Securities Fraud Claims Are Timely

It is Defendants' burden to establish that the statute of limitations ("SOL") has run. *Cap.*

---

[2] 1Globe's April 5, 2016 Schedule 13G, based on an unnamed event on March 30, 2016 (Perla Decl., Ex. F, ECF No. 30-6), appears to have been in response to the adoption of the Rights Agreement, which Sinovac filed with the SEC on March 29, 2016, rather than because 1Globe purchased additional shares the day after the Rights Agreement was publicly disclosed. (*See* Grunfeld Decl., Ex. 1).

*Ventures Int'l v. UBS Sec. LLC*, 2012 WL 4469101, at *12–13 (D. Mass. Sept. 28, 2012). A "claim will be dismissed on the pleadings only when there is no doubt that it is time-barred." *Id.*; *see also SEC v. Sharp*, 2022 WL 4085676, at *20 (D. Mass. Sept. 6, 2022) (holding SOL accrual "is a question of fact to be resolved by the fact finder"). The Supreme Court in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), held that the SOL begins to run when a plaintiff reasonably would discover "the facts constituting the violation." *Id.* at 648. That does not happen until the plaintiff "can plead that fact with sufficient detail and particularity to survive" a motion to dismiss. *Dahhan v. OvaScience, Inc.*, 2021 WL 2186466, at *5 n.3 (D. Mass. May 28, 2021).

Plaintiff must be able to "successfully plead **all elements** of their Section 10(b) claim," including loss causation and scienter. *Eton Park Fund, L.P. v. Am. Realty Cap. Props.*, 2017 WL 4898226, at *3 (S.D.N.Y. Aug. 14, 2017) (emphasis added); *see also Yi Xiang v. Inovalon Holds.*, 254 F. Supp. 3d 635, 642 (S.D.N.Y. 2017) (holding SOL does not begin to run until "all of the [necessary] elements" are known, "including damages"); *Sun v. Han*, 2015 WL 9304542, at *5, 18 (D.N.J. Dec. 21, 2015) (loss causation allegations were within the SOL).

Plaintiff could not have pled loss causation earlier because Plaintiff's loss is tied to Sinovac's delayed implementation of the Rights Agreement and the effect of Defendants' actions on Sinovac's share price. ¶¶176-79. The Rights Agreement still has not been implemented, and all trading in Sinovac stock is still halted, because the Delaware and Antigua courts have enjoined Sinovac from implementing the agreement until those actions are resolved. ¶¶123-30. Those cases will determine whether the Rights Agreement is valid and, if so, whether and when 1Globe triggered it. ¶¶112-13, 149-52. Plaintiff could not have pled loss causation earlier when Sinovac's ability to go forward with implementing the Rights Agreement — the basis for Plaintiff's loss — depends on how pending litigation is resolved, and trading in Sinovac stock remains halted.

These issues pending in other litigation, related to the validity of the Rights Agreement and whether 1Globe and Li caused a Trigger Event, are fundamental predicates of Defendants' alleged misconduct. They go beyond the timing of Plaintiff's loss and relate to the basic nature and existence of the alleged harm. In addition, the pendency of these issues that are crucial components of Plaintiff's claims independently prevented the SOL from running because they address Defendants' culpability — and thus scienter — for their scheme to evade the Rights Agreement.

Defendants' argument that the SOL started to run with the release of the SEC Order on May 13, 2020, is highly disingenuous because it is Li and 1Globe's actions that prevented Plaintiff from bringing this action earlier. In the Delaware and Antigua actions between 1Globe and Sinovac, as well as a case pending in this Court, 1Globe continues to contest whether it triggered the Rights Agreement. ¶¶112-14, 124. In Sinovac's action against 1Globe arising out of 1Globe's Section 13(d) violations, this Court has been waiting for resolution of the Antigua litigation since at least August 17, 2018, because the Antigua court's ruling will provide important information relevant to the parties' claims. On March 22, 2021, this Court formally stayed that action because it "reached an impasse due to [1Globe's] unresolved appeal" in the Antigua action. *Sinovac Biotech Ltd. v. 1Globe Capital LLC and The Chiang Li Family*, No. 18-cv-10421-NMG (D. Mass) (the "Massachusetts Action"), ECF Nos. 118-19; *see also id.* at ECF Nos. 34, 52, 87, 92, 95, 101, 103, 105, 108 (waiting for resolution of Antigua action). 1Globe supported staying that action, including its counterclaims, pending resolution of the Antigua action. *Id.* at ECF No. 123.

Similarly, Sinovac's action against 1Globe in Delaware has been stayed since 2019 pending resolution of the Antigua action. *See* Grunfeld Decl., Ex. 2 (docket entries dated March 15, 2019, April 5, 2019, October 8, 2020, and March 17, 2022 in *Sinovac Biotech Ltd. v. 1Globe Capital, LLC, et al.*, C.A. No. 2018-0143-JTL (Del. Ch.)). 1Globe also successfully petitioned the

Delaware and Antigua courts to halt implementation of the Rights Agreement until its litigation against Sinovac is resolved. ¶¶123-27.[3]

Plaintiff's claims cannot be time barred when this Court and others have ruled that key points at issue here — including whether 1Globe triggered the Poison Pill — cannot be addressed until the Antigua litigation is resolved. Plaintiff could not have pleaded "fact[s] with sufficient detail and particularity to survive" a motion to dismiss on the elements of loss causation and scienter when this Court and the Delaware court determined they could not rule on key predicates to Plaintiff's claims while the Antigua action was pending. *Dahhan*, 2021 WL 2186466, at *5.[4]

Plaintiff, however, cannot be expected to wait forever. On January 11, 2019, this Court asked 1Globe to provide "the promised estimate for how long an appeal in Antigua takes" and noted that it would proceed if "the Antigua matter is just going to be taking a very long time." *Massachusetts Action*, ECF No. 97 at 28:12-24. None of 1Globe's subsequent status reports gave any indication that its Antigua appeal would still be pending over four years later, with no end in sight. If 1Globe had been transparent with the Court as to the timing of the Antigua action, the Court would have "move[d] forward" rather than wait years for a resolution. *Id.* at 26:3-5.

Plaintiff filed this action on August 16, 2022, just eight months after the Antigua Court of Appeal dismissed 1Globe's appeal. ¶126. That ruling greatly increased the certainty of Plaintiff's claims. Although 1Globe has appealed that ruling yet again, investors cannot be expected to wait indefinitely as 1Globe delays resolution of its other cases that have been pending since 2018. *See*

---

[3] Even in this action, Defendants contest whether they caused a Trigger Event and argue that the SEC Order did not reach that issue. (Mem. at 6 & n.6). They also argue that the SEC Order "did not assert that any Defendant acted with scienter." (Mem. at 5-6, 12).

[4] Similarly, the SOL did not start to run in light of Defendants' "express denials" of any wrongdoing. *DoubleLine Cap. LP v. Odebrecht Fin.*, 323 F. Supp. 3d 393, 438 (S.D.N.Y. 2018). Furthermore, the SOL has been tolled while all parties involved have been waiting for resolution of the Antigua litigation. *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 731-32 (S.D.N.Y. 2007) (holding SOL is tolled when order of another court "prevents a person from exercising his legal remedy"), *aff'd*, 535 F.3d 87 (2d Cir. 2008).

10

*Gastro. Wrkrs. Union Loc. 610 v. Dorado Beach Hotel*, 617 F.3d 54, 61–62 (1st Cir. 2010) ("A refusal to adjudicate the parties' conflicting claims would serve only to delay the vindication of that injury.").[5] But Plaintiff also cannot be faulted for waiting until there were developments in the Antigua action that multiple courts have been waiting for, at 1Globe's urging.[6]

### 2.    The Section 10(b) Claim May be Based on Section 13(d) Violations

Defendants are wrong that Plaintiff "cannot assert a Section 10(b) claim based on a predicate violation of Section 13(d)." (Mem. at 8). Courts clearly hold that although "[t]here is no private right of action under section 13(d) of the Exchange Act," plaintiffs "can point to a violation of section 13(d) as the predicate for a 10b–5 claim." *Vladimir v. Bioenvision*, 606 F. Supp. 2d 473, 490–91 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 141 (2d Cir. 2010); *see also Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 18 (2d Cir. 1995) (Section 10(b) claim may be based "solely" on "alleged section 13(d) violation") (affirming then-D.J. Sotomayor).[7] This rule follows from the basic principle that omissions are actionable when they violate "a duty to disclose," including based on "statutes or regulations that obligate a party to speak." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101-03 (2d Cir. 2015); *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 209-210 n.13 (S.D.N.Y. 2020) (Section 10(b) claim may be based on state law disclosure duties).

In response, Defendants cite an outlier case where the court had ruled earlier in the

---

[5] *See also Pesce v. Coppinger*, 355 F. Supp. 3d 35, 44 (D. Mass. 2018) (holding "the record is sufficiently developed and the disagreement between the parties is definite, [that] the dispute is ripe" for adjudication).

[6] Defendants argue that the mere existence of the related actions started the limitations period. (Mem. at 7-8). But complaints in other actions do not provide notice of the violation, particularly where plaintiffs must "plead scienter, reliance, or loss causation." *DoubleLine Cap. LP*, 323 F. Supp. 3d at 439 & n.7; *see also Cosby v. KPMG, LLP*, 2018 WL 3723712, at *8 (E.D. Tenn. Aug. 2, 2018) (holding "previous lawsuits" were "not enough" to trigger the SOL).

[7] Many other courts similarly allow a Section 10(b) claim based on a Section 13(d) violation: *GAF Corp. v. Milstein*, 453 F.2d 709, 720 n.22 (2d Cir. 1971); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *6 (S.D.N.Y. Mar. 30, 2021); *Gruber v. Gilbertson*, 2018 WL 1418188, at *13-14 (S.D.N.Y. Mar. 20, 2018); *MTB Invest. Partners v. Siemens Hearing Instruments*, 2013 WL 12149253, at *1-2, 4 (D.N.J. Feb. 19, 2013); *Burt v. Maasberg*, 2014 WL 1291834, at *17 (D. Md. Mar. 28, 2014); *Levie v. Sears Roebuck & Co.*, 2006 WL 1886223, at *2-3 (N.D. Ill. July 5, 2006); *In re Luxottica Grp. S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 234, 235 (E.D.N.Y. 2003).

11

litigation that a violation of Section 13(d) "reporting requirements" fell "within the range of conduct prohibited by Section 10(b)." *Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, at *15 (D.N.J. Apr. 30, 2020). Even the lone decision that Defendants cite, from later in that litigation, acknowledged that such a claim is valid in a variety of circumstances, including "when disclosure was expressly required," the duty arose "in the midst of or the aftermath of a merger or proxy contest when disclosure is vital," or it was based on "express agreements to act as a group." *Takata v. Riot Blockchain, Inc.*, 2022 WL 1058389, at *8-9 (D.N.J. Apr. 8, 2022). Disclosure of 1Globe and Li's stake in Sinovac, in light of Defendants' clear-cut violations, the battle for control of Sinovac, and the crucial role of the Rights Agreement that Defendants sought to evade, was similarly vital.

Moreover, Defendants not only violated their duty to disclose, they also made affirmatively false statements in their Section 13(d) filings, by misrepresenting the true nature and extent of their Sinovac holdings. ¶¶87-95. These statements are actionable because investors "generally consider most publicly announced material statements." *In re Carter-Wallace*, 150 F.3d 153, 156 (2d Cir. 1998). Such statements are actionable, particularly when they are made in SEC filings. *See In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 476 (S.D.N.Y. 2012) ("Courts routinely find that misstatements in SEC filings . . . are made 'in connection with' the purchase or sale of a security."), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). The SEC and the Antigua court both explained that 1Globe's Section 13(d) filings were important to providing investors "information necessary to make fully informed investment decisions." ¶¶118, 120. Statements in these disclosures fall well within the types of statements that courts hold give rise to Section 10b) liability.

Lastly, Plaintiff also seeks injunctive relief and the court in *Riot Blockchain* addressed only claims for damages, not injunctive relief. *See* Complaint, Prayer for Relief ¶D.

12

### 3.    Defendants Misrepresented Their Triggering of the Rights Agreement

Defendants made many material misrepresentations concerning their ownership of Sinovac stock. ¶¶87-95. These misstatements and omissions concealed 1Globe and Li's triggering of the Rights Agreement when they acquired shares over the 15% threshold after the agreement was adopted. ¶¶47-57. Defendants blatantly misread the Complaint when they argue that they publicly disclosed their breach in April 2016. (Mem. at 9-10). Moreover, whether a defendant disclosed the allegedly misrepresented information is an "intensely fact-specific" question that cannot be decided at this stage "unless the truth conveyed to the public was done with a degree of intensity and credibility so as to counter-balance any misleading impression" defendants created. *In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *28 (S.D.N.Y. Sept. 20, 2019) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000)); *see also Swack v. Credit Suisse First Bos.*, 383 F. Supp. 2d 223, 238 (D. Mass. 2004) (holding the "extent of the market's knowledge about conflicts . . . is a fact-specific question that is rarely an appropriate basis for dismissal").

The Complaint makes clear that Defendants triggered the Rights Agreement by May 2016 — after the disclosure that Defendants point to — and never publicly disclosed those purchases. (*See supra* at 6-7). The SEC Order even states expressly that 1Globe and Li's holdings disclosed in April 2016 were "exempted" from the Poison Pill. (SEC Order ¶16). And, as the SEC and Antigua court concluded, 1Globe and Li deprived "shareholders of information necessary to make fully informed investment decisions." ¶¶118, 120. It is also implausible to suggest that Defendants' actions were clearly disclosed in April 2016, considering the years of contentious disputes in which they have denied triggering the Rights Agreement. ¶¶112-15, 123-29, 149-52; (*supra* at 6, 8-10).

At the very least, the truth was not disclosed with sufficient "intensity and credibility" to be decided at this stage. *Allergan*, 2019 WL 4686445, at *28; *see also Blatt v. Muse Techs.*, 2002 WL 31107537, at *8 (D. Mass. Aug. 27, 2002) (information "available to the market" concerning

13

company's "bleak financial position" did not render misstatements immaterial); *Swack*, 383 F. Supp. 2d at 238. Similarly, the Court cannot resolve as this stage whether a reasonable investor would have been misled by Defendants' Section 13(d) filings. *See Karth v. Keryx Biopharm.*, 2018 WL 3518497, at *4 (D. Mass. July 19, 2018) (holding falsity adequately alleged because "a reasonable investor could have been misled" by statement's context); *Hill v. State St. Corp.*, 2011 WL 3420439, at *11 (D. Mass. Aug. 3, 2011) ("evaluating the meaning of the disputed term" could not be resolved at the pleading stage); *Castellano v. Young & Rubicam*, 257 F.3d 171, 178 (2d Cir. 2001) (holding there was "a jury question as to" the proper interpretation of defendant's statement).

### 4.    The Complaint Alleges a Strong Inference of Scienter

The scienter inquiry turns on "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The inference of scienter "need not be irrefutable" (*i.e.*, of the "'smoking-gun' genre"), nor "even the most plausible." *Id.* at 324. There is no requirement of "absolute proof," but rather, "merely enough to raise an inference equal to that of innocent conduct." *In re Smith & Wesson Hold. Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 344 (D. Mass. 2009).

"[T]hat the defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002); *see also Mahoney v. Found. Med.*, Inc., 342 F. Supp. 3d 206, 213 (D. Mass. 2018) (holding scienter met by internal records suggesting "defendants were aware that they were withholding vital information"). There can be no serious dispute that Defendants knew their Section 13(d) filings were inaccurate. The SEC Order makes clear that Li orchestrated an elaborate scheme, from May 2016 to May 2018, by which Jeff Li purchased Sinovac shares in multiple accounts, specifically switching accounts when his purchases

14

fell just under the 5% reporting threshold. ¶70; *see also* ¶¶44-46, 52-55, 68-70, 76-81, 160-67. Li was aware of the Rights Agreement, as he expressed his disapproval of the agreement to Sinovac. ¶¶106, 161. He also did not tell Sinovac of the joint ownership between 1Globe and the Chiang Li Family. ¶¶135-37.[8] Linda Li was an essential part of this scheme. ¶¶28, 65, 88, 92, 94.

This conduct exhibits a clearly intentional effort by Defendants to evade 1Globe and Li's Section 13(d) obligations and implementation of the Poison Pill. It displays not only Defendants' knowledge of information contrary to their public disclosures, which itself supports scienter, but their ***personal involvement*** in the concealment of those facts. *See In re Cabletron Sys., Inc.*, 311 F.3d 11, 39 (1st Cir. 2002) (holding allegation "that Benson specifically directed" fraudulent activities supported scienter); *see also In re Smith & Wesson*, 604 F. Supp. 2d at 344 (holding scienter supported by executives attending meetings where contrary information was clear); *Aldridge*, 284 F.3d at 83; *MissPERS v. Bos. Sci. Corp.*, 523 F.3d 75, 90-91 (1st Cir. 2008) (scienter "may be inferred" where contrary information was available). Defendants' contention that the Complaint lacks the type of allegations that complaints "often contain" (Mem. at 14) is completely incongruous given Li and Jeff Li's direct involvement in the fraud.[9] The inference that they deliberately evaded their Section 13(d) duties is at least as plausible as any competing inference.

Defendants' conduct in connection with Sinovac's 2018 annual meeting further supports a strong inference of scienter. The Antigua court determined that 1Globe was involved in a "secret plan" to take over Sinovac's Board. ¶¶74, 117-20, 168-71. 1Globe's counsel even instructed

---

[8] While Defendants describe the Chiang Li Family as an account that Li uses for "charitable purposes" (Mem. at 1 n.1), that assertion is plainly outside the Complaint. The SEC Order describes the Chiang Li Family as "an assumed name" that Li sometimes uses "to disclose his ownership of [Sinovac] shares in SEC filings." ¶45. Li also admits that the shares disclosed under the Chiang Li Family are "his holdings." (Mem. at 1 n.1).

[9] Defendants argue that knowledge is not enough to support scienter. (Mem. at 14). That position goes against the clear rulings of the cases cited above. *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020), which Defendants cite, did not address any allegedly false statements or independent legal duty to disclose "run-of-the mill regulatory back-and-forths" with the FDA. At any rate, the Complaint alleges that Defendants intended to defraud investors by deliberately violating their disclosure duties whose purpose is to allow investors to make informed decisions.

1Globe to hide its role as "conspirators" in "form[ing] a [Section] 13(d)" group. *Id.* Defendants argue that these allegations are irrelevant because they took place after Defendants first failed to disclose their stake in 2016. (Mem. at 13). But Defendants' actions in connection with the 2018 annual meeting were part of their continuous course of conduct over the whole Class Period. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (plaintiff may "rel[y] on post-class period data to confirm what a defendant should have known during the class period"); *Hall v. Children's Place Retail Stores*, 580 F. Supp. 2d 212, 227, 233 (S.D.N.Y. 2008) (holding later admissions, "coupled with defendants' continuous intimate knowledge of company affairs," supports scienter). Furthermore, the Class Period covers investors that sold Sinovac securities through February 22, 2019. ¶18. Defendants also filed a false amended Schedule 13D on March 26, 2018 and were under a duty to disclose their holdings the entire Class Period. ¶¶ 82-86, 94-95.

In addition, Defendants argue that their contrivances do "not suggest any intention to defraud Sinovac stockholders," that they were actually a "public stockholders' champion" through their support of the Sinobioway Group, and that they did not have "the desire or wherewithal to takeover" Sinovac. (Mem. at 10-11, 13). These contentions are contradicted by the findings of the Antigua court that 1Globe's "***secret plan to take control*** of" Sinovac led to an "ambush" at the Annual Meeting that "deprived shareholders of the opportunity to make an informed and intelligent decision," and by the SEC that this plan "depriv[ed] existing and potential shareholders of information necessary to make fully informed investment decisions." ¶¶118, 120. Indeed, 1Globe was Sinovac's largest shareholder. ¶¶39, 57, 59. 1Globe also spearheaded the plan to overthrow Sinovac's Board, sought representation on the Board, and had its employee nominated to the Board. ¶¶106, 117, 119-20. Regardless of whether 1Globe led the insurgent group or was just a part of it, that does not change Defendants' deliberate campaign to conceal their Sinovac holdings

16

and crucial role in the battle for its control. While Defendants sought to prevent the Yin Group from buying Sinovac, they did so to purchase it for themselves at a favorable price. ¶¶38-40, 105-09. Defendants initially offered just $7 per share to Sinovac's shareholders and raised their offer to $8 per share only in response to Yin's counteroffer. ¶¶38, 108. Defendants were trying to maximize their own profit, not the profit of all shareholders.

Defendants' scienter is further established by their motive to (1) increase their stake in Sinovac for less than it would cost had they disclosed their position, (2) purchase Sinovac at a favorable price, and (3) avoid dilution from the Poison Pill. ¶¶129, 159, 161. The substantial economic benefit that Defendants would receive if their plan succeeded, and the significant setback they would suffer if the Poison Pill was implemented, strongly support scienter. *See Aldridge*, 284 F.3d at 83 (holding "financial incentives" tied to particular circumstances support scienter); *MissPERS*, 523 F.3d at 92 (suspicious insider trading "may be probative of scienter"); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 270 (2d Cir. 1993) (motive to "reduce the degree of dilution" supports scienter); *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 284 (E.D.N.Y. 2000) ("being able to acquire a company for a significantly reduced price" supports scienter).

Next, Defendants implausibly contend that they did not conceal their holdings because they could have done a better job conducting their fraud. (Mem. at 11). Any plausible reading of the facts, however, supports the inference that Defendants undertook great effort to conceal their holdings. If Defendants wanted to be transparent, they could have clearly disclosed the full extent of their stake. Li's decision to keep his disclosures limited to 1Globe and the Chiang Li Family is not exculpatory, but rather, shows his effort to keep his misconduct within his inner family circle.

Defendants also argue that they did not know the Section 13(d) reporting requirements.

17

(Mem. at 12).[10] This explanation is not believable in light of their clear attempt to evade reporting requirements — such as by buying shares in multiple accounts until they prompted a compliance inquiry, Li's antipathy for the Rights Agreement, their misleading Sinovac as to the connection between 1Globe and the Chiang Li Family, and their evading detection as a "13(d) group" of "conspirators." (*See supra* at 5-7); ¶¶44, 106, 76, 117, 135-37; *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 148 (D. Mass. 2001) (holding although there are numerous "judgment calls in the application of GAAP," an application "that strays beyond the bound[s] of reasonableness" supports scienter); *Blatt*, 2002 WL 31107537, at *9 (scienter adequately alleged as to GAAP violation).

Defendants' scienter is also supported for the independent reason that 1Globe's investment was "critical to [its] core operations or [was] an important transaction." *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 19 (D. Mass. 2004). 1Globe was Sinovac's largest shareholder, owning as much as 32.6%, and led a battle to control it. Defendants concede the significance of 1Globe, "a family investment office," having such a large stake in a public company. (Mem. at 11). It "can be inferred that top executives at [1Globe] were aware of [this] scheme." *Crowell*, 343 F. Supp. 2d at 19.

Considering all of the allegations in the Complaint, Defendants' inference that they simply "misunderstood Section 13(d) filing rules when relatives hold stock of the same issuer" (Mem. at 12) is patently absurd.[11] It is by no means more plausible than Plaintiff's competing inference, "[t]aking all the facts . . . into consideration." *Aldridge*, 284 F.3d at 82; *In re Smith & Wesson*, 604

---

[10] The cases that Defendants cite dealt with very different circumstances. (*See* Mem. at 12 n.11 (citing *U.S. v. Bilzerian*, 926 F.2d 1285, 1299 (2d Cir. 1991) (addressing issues raised at trial of defendant convicted of knowingly violating Section 13(d), not a motion to dismiss, and holding "there is no basis to set aside the securities fraud convictions"); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270-71 (2d Cir. 1996) (no allegations indicating misconduct at defendant's subsidiary)). These cases stand for the uncontroversial principle that "GAAP violations or accounting irregularities, standing alone," do not support securities fraud, but may do so where there is evidence of scienter. *Rotunno v. Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). Indeed, "[a]lthough § 13(d) is a reporting requirement . . . , criminal penalties" apply to those who knowingly" misstate a "material fact on a" filing required by the securities laws. *Bilzerian*, 926 F.2d at 1298.

[11] Furthermore, Defendants' understanding of Section 13(d) has nothing to do with the plainly false information that they affirmatively misstated on their Section 13(d) filings. ¶¶87-95.

F. Supp. 2d at 344 (scienter supported by "bits and pieces of the larger mosaic").

### 5.    The Complaint Adequately Alleges Loss Causation

Loss causation is assessed under "'ordinary'—not heightened—pleading requirements." *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 244 (D. Mass. 2011). Pleading loss causation under Section 10(b) does not "impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). All that is required is for the plaintiff to provide "some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* "[D]isputes about loss causation turn primarily on questions of fact" that courts should not resolve at this stage. *Hoff v. Popular, Inc.*, 727 F. Supp. 2d 77, 94 (D.P.R. 2010).

Plaintiff alleges that Defendants' actions harmed them by concealing their triggering of the Rights Agreement, which caused Sinovac to delay implementing the Poison Pill until Sinovac had more certainty about its ability to do so. ¶¶96-102. Plaintiff therefore sold hundreds of thousands of shares during the Class Period that would have entitled them to extra shares based on when 1Globe caused a Trigger Event in May 2016, but that Plaintiff no longer held as of when Sinovac finally sought to implement the Rights Agreement in February 2019. ¶¶103, 131, 176.

Plaintiffs satisfy their light burden of pleading loss causation under ordinary principles of "proximate cause". *Colon v. Diaz-Gonzalez*, 2009 WL 3571974, at *6 (D.P.R. Oct. 26, 2009). Defendants' misstatements, omissions, and fraudulent scheme caused Plaintiff's loss because it was foreseeable that they would lead Sinovac to delay implementing the Rights Agreement from when 1Globe and Li first violated it in 2016. ¶¶101-03, 113-14, 149-53, 176. Indeed, the whole purpose of their scheme was to evade the Poison Pill that would dilute their holdings of Sinovac stock. ¶¶44, 106. Sinovac's delay in implementing the Poison Pill was a predictable result of Defendants' actions because they first prevented Sinovac from knowing with certainty the extent of their holdings of Sinovac stock and then prevented Sinovac from having legal certainty as to

19

the enforceability of the Rights Agreement. While Sinovac might have suspected that 1Globe triggered the Rights Agreement early on, Defendants injected enough uncertainty into that issue through their deceptive conduct to prevent Sinovac from being able to implement the Poison Pill.

Defendants argue that Sinovac caused this harm, not Defendants. (Mem. at 15). But the law is clear that the causal chain can be established where the defendant "knows or reasonably should know" their actions "would cause others to inflict the" injury, such as results "attributable to reasonably foreseeable intervening forces, including the acts of third parties." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50–51 (1st Cir. 2009); *see also Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 375 (1st Cir. 2009) (same); *Green v. Sirchie Acquis. Co.*, 2022 WL 4540983, at *5 (D. Mass. Sept. 28, 2022) (same). Moreover, "[p]roximate causation and intervening cause are usually issues for the jury." *Wortley v. Camplin*, 333 F.3d 284, 295–96 (1st Cir. 2003); *see also Stumpf v. Garvey*, 2005 WL 2127674, at *12–13 (D.N.H. Sept. 2, 2005) (even if "there had been an intervening event that interrupted the" causal chain, that "determination is a matter of proof after discovery"); *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 2013 WL 5376023, at *21 (D. Mass. Sept. 24, 2013) (rejecting argument that loss was "attributable to market-wide conditions").

Defendants caused Sinovac to delay implementing the Rights Agreement. Indeed, the whole purpose of Defendants' scheme was to evade the Rights Agreement that would harm Li and 1Globe by substantially diluting their stake in Sinovac. ¶¶44-46, 74, 78-80, 106, 117-20, 129; (*supra* at 5-6). If Defendants had made the required disclosures under Section 13(d), showing unequivocally that 1Globe triggered the Rights Agreement, Sinovac would have had the certainty it needed to implement the agreement right away. Sinovac even stated that it delayed implementing the agreement because it anticipated — correctly — that 1Globe and Li would "dispute that their actions caused a Trigger Event." ¶¶113-14. Defendants have now delayed even further by

20

appealing the Antigua action to the Privy Council. ¶126. They also went out of their way to obtain orders from the Delaware and Antigua courts ensuring that the Rights Agreement will not be implemented until those cases are resolved. ¶¶123-29. 1Globe has also agreed to stay Sinovac's actions against it. (*See supra* at 6, 9). Sinovac's delay in implementing the Rights Agreement was not only the foreseeable result of Defendants' misstatements, omissions, and scheme — it was Defendants' goal all along. Plaintiff has therefore adequately alleged loss causation.

In addition, as an independent basis for loss causation, Defendants caused the price of Sinovac securities to be artificially deflated because investors could not account for the increased value that 1Globe and Li's substantial stake conferred. ¶¶104, 177. There is a premium placed on a company's share price when it is known that it is a takeover target, which causes the share price to rise. *See Baum v. Harman Int'l Indus.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021) (explaining that "merger announcements typically are followed by a rise in price"). Courts therefore approve of claims that a class "sold at a price that was artificially lower than the investor should have received." *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 948 (N.D. Ill. 2007) (certifying class). Defendants prevented Plaintiff from making an informed investment decision (¶¶118, 120), causing Plaintiff to miss out on the premium associated with 1Globe and Li's ownership position.

### 6.    The Complaint Adequately Alleges Scheme Liability

A fraudulent scheme under Rule 10b-5(c) is "expansive" and "capture[s] a wide range of conduct." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019). Defendants are wrong that they did not engage in any "deceptive act distinct from [their] alleged misstatements." (Mem. at 17).[12]

In addition to their misstatements and omissions in Section 13(d) disclosures, Defendants engaged in a wide-ranging course of conduct whereby Li surreptitiously wired funds to Jeff Li to

---

[12] Moreover, "the existence of a 'manipulative or deceptive act'" may be alleged "by pointing to alleged misrepresentations or omissions." *Puddu v. 6D Glob. Techs.*, 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021).

purchase Sinovac stock in multiple accounts to deliberately avoid accumulating more than 5% of the shares in any account. ¶¶68-70, 76, 78-81. 1Globe and Li also engaged in an elaborate deception in their interactions with Sinovac, concealing the true identity of the Chiang Li Family and engaging in a "secret plan to take control of" Sinovac's Board at the 2018 annual meeting. ¶¶116-20, 135-37. Defendants then continued delaying implementation of the Rights Agreement by contesting it in litigation spanning Antigua, Delaware, and this Court. (*See supra* 6, 8-10).

This course of conduct, separate from Defendants' statements in their Section 13(d) filings, led to Sinovac's delayed implementation of the Rights Agreement and supports a claim of scheme liability. *See SEC v. Sharp*, 2022 WL 4085676, at \*25 (D. Mass. Sept. 6, 2022) (holding allegations support "a scheme to defraud as they involve active efforts to create and conceal entities such that SEC regulations can be skirted"); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at \*7 (S.D.N.Y. Feb. 17, 2022) (scheme liability alleged based on inference defendant "must have been aware that his [materially] false . . . would be passed on to investors"); *SEC v. Liberty*, 2021 WL 664834, at \*4 (D. Me. Feb. 19, 2021) (scheme liability adequately alleged when it "has [been] pled that [the defendant] was an active, aware, and essential participant" in the scheme).

### B. Plaintiff Adequately Alleges Tortious Interference With Contract

#### 1. The Claim is Timely

Plaintiff's tortious interference with contract claim is timely under the three-year statute of limitations that applies.[13] The SOL is tolled until the basis of Plaintiff's claim was "revealed publicly." *BTIG, LLC v. Palantir Techs.*, 2020 WL 95660, at \*6-7 (Del. Super. Ct. Jan. 3, 2020).

Plaintiff could not have brought this claim earlier for the reasons explained above as to the securities claims. (*See supra* at 7-11). Moreover, the May 2020 SEC Order falls within the three-

---

[13] Plaintiff applies Delaware law in this Opposition and reserves all rights as to choice-of-law issues later in the case.

year SOL for tortious interference. The only information that Defendants point to earlier than August 16, 2019, is their Section 13(d) filings in 2016 and their lawsuits against Sinovac filed in 2018. (Mem. at 17-18). This information did not give Plaintiff notice for the reasons explained above. (*Supra* at 11 n.6, 13-14). The lawsuits filed in 2018 also did not provide notice because Defendants have vehemently contested in those cases whether they triggered the Rights Agreement. ¶¶114, 123-29; *BTIG*, 2020 WL 95660, at \*6-7 (tolling applies "especially where it is alleged" the defendant sought to keep the information "from becoming public").

In addition, Plaintiff's tortious interference claim is timely for the independent reason that "in a claim where injury is a required element, such as tortious interference, the plaintiff could not file suit until the injury occurred." *WaveDivision Holdings, LLC v. Highland Cap. Mgmt. L.P.*, 2010 WL 1267126, at \*4–5 (Del. Super. Ct. Mar. 31, 2010). "Delaware courts have held that where there is a continuing injury whose damages cannot be determined until the cessation of the wrong, the statute of limitations begins to run no earlier than the last date of that wrong." *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 484 F. Supp. 1375, 1389–90 (D. Del. 1980). Plaintiff's injury is continuing because the trading of Sinovac's shares is still halted. ¶¶128-30, 178.

### 2.      SLUSA Does Not Preempt the Claim

Defendants argue that SLUSA preempts Plaintiff's tortious interference claim alleging they caused losses when Plaintiff sold securities "at allegedly deflated prices and without the benefits of the Rights Agreement." (Mem. at 19). This argument ignores entirely Plaintiff's separate claim that Defendants harmed them by causing trading in Sinovac stock on the NASDAQ to be halted since February 2019. (Mem. at 19); ¶¶128-30, 178. Defendants have thus waived any argument that SLUSA preempts this claim. *See Coons v. Indus. Knife Co.*, 620 F.3d 38, 44 (1st Cir. 2010).

Moreover, this claim does not allege fraud or misrepresentation in connection with the purchase or sale of Sinovac securities. The whole basis of this claim is that Defendants' actions

23

have prevented Plaintiff and the Class from being able to trade their securities *at all*. SLUSA does not apply unless the defendant's "misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security" where "the 'someone' making that decision to purchase or sell must be a party other than the fraudster. If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a 'connection' that matters." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387-88 (2014).

Based on this ruling, "a mere coincidence of fraud with a transaction in covered securities will no longer suffice for SLUSA preemption." *Henderson v. BNYM Corp.*, 146 F. Supp. 3d 438, 443–44 (D. Mass. 2015) (breach of fiduciary duty claim of "imprudent investment decisions" not preempted), *denying mot. to cert.*, 2016 WL 11003504, at *3 (D. Mass. Feb. 17, 2016) (noting plaintiff "was powerless to buy or sell covered securities"); *Baldwin v. Merrill Lynch*, 2019 WL 4046542, at *5 (D. Me. Aug. 27, 2019) (holding insufficient link between statements and purchase or sale of a covered security); *Shuster v. AXA Equit. Life Ins. Co.*, 2015 WL 4314378, at *6-7 (D.N.J. July 14, 2015) (SLUSA did not preempt breach of contract claim related to investment strategy where plaintiff "was not induced to sell or retain her investments"). Plaintiff's claim does not arise in connection with the purchase or sale of Sinovac securities because, as a result of Defendants' conduct, no investors have been able to trade Sinovac securities in the public market. Plaintiff's claim is similar to one arising out of an outage that locked customers out of brokerage accounts. The claim has nothing to do with specific securities transactions even though it happens to involve a brokerage, but rather is based on the plaintiff's inability to access their property.[14]

### 3.    The Complaint Adequately Alleges Tortious Interference

Defendants challenge only two elements of Plaintiff's tortious interference claim —

---

[14] If the Court holds there is no cause of action under Section 10(b) (which it should not for the reasons explained above) then Plaintiff's other damages theories also did not arise out of a fraud or misrepresentation under SLUSA.

causation and whether Defendants acted "without justification." (Mem. at 19-20). The discussion of loss causation above also explains why Defendants' actions were a "significant factor" in causing Sinovac's breach of the Rights Agreement. (*Id.*; *see supra* at 19-21).

Defendants' other argument, that they did not act in "maliciously or in bad faith" (Mem. at 20), misstates the law. While Defendants did in fact act in bad faith, their erroneous standard applies only where the defendant is an "affiliated enterprise" of the breaching party. *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013). 1Globe is not an affiliated entity of Sinovac. Plaintiff is therefore required to plead only that Defendants acted "without justification," which "involve[s] a consideration of many factors" and cannot be a basis for dismissal when "there are factual questions that the jury must resolve." *Am. Bottl. Co. v. BA Sports Nutrition, LLC*, 2021 WL 6068705, at *19 (Del. Super. Ct. Dec. 15, 2021); *see also Thomas v. Harford Mut. Ins. Co.*, 2003 WL 220511, at *6 (Del. Super. Ct. Jan. 31, 2003) (same).

Acquiring a substantial stake in a company's stock in a deceptive manner, thereby preventing investors from "receiv[ing] the full benefit" of contractual protections, including a "mechanism for filtering" the review of "topping bids," adequately states a claim for tortious interference. *NACCO Indus. v. Applica Inc.*, 997 A.2d 1, 34-35 (Del. Ch. 2009). That is precisely what Defendants did here. Moreover, their conduct was also not justified because it had the express purpose of concealing their triggering of the Rights Agreement between Plaintiff and Sinovac.

## IV.    CONCLUSION

The Court should deny Defendants' Motion in its entirety for all of the reasons explained above. If the Court grants the Motion, Plaintiff respectfully requests leave to amend.[15]

---

[15] *See Ezell v. Lexington Ins. Co.*, 286 F. Supp. 3d 292, 302 (D. Mass. 2017) (granting leave to amend where nothing "suggest[s] the request is made in bad faith or to slow the progress of the case").

Dated:  March 6, 2023

Respectfully submitted,

/s/_Daryl Andrews_____
Daryl Andrews (BBO #658523)
Glen DeValerio (BBO #122010)
**ANDREWS DEVALERIO LLP**
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
daryl@andrewsdevalerio.com
glen@andrewsdevalerio.com

*Counsel for Lead Plaintiff MW Gestion and
Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Michael Grunfeld (*pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff
MW Gestion and the Class*