**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE 1GLOBE CAPITAL LLC SECURITIES LITIGATION | ) ) ) ) ) ) ) ) |

Case No.:  1:22-cv-11315-NMG

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

ARGUMENT

I.    The Court Should Dismiss the Securities Fraud Claims (Counts I-III)...........................1

    A.    The Statute of Limitations Has Run....................................................................1

    B.    A Section 13(d) Violation Cannot Be a Predicate for a Section 10(b) Claim...................................................................................................................2

    C.    The FAC Confirms Defendants Did Not Misrepresent That Trigger Was Met........................................................................................................................3

    D.    The FAC Fails to Allege Scienter.......................................................................5

    E.    The FAC Fails to Allege Loss Causation............................................................6

    F.    Manufacturing a Purported "Scheme" Does Not Alter the Conclusion.................8

II.    The Court Should Dismiss the Tortious Interference Claim (Count IV)...........................8

    A.    The Statute of Limitations Has Run....................................................................8

    B.    SLUSA Preempts the Claim................................................................................9

    C.    The FAC Fails to Allege the Elements of Tortious Interference.........................10

CONCLUSION.................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Allergan PLC Sec. Litig.*,
  2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019)............................................................5

*Azurite Corp. v. Amster & Co.*,
  52 F.3d 15 (2d Cir. 1995) ...........................................................................................3

*B2 Opportunity Fund, LLC v. Trabelsi*,
  2017 WL 4684028 (D. Mass. Oct. 18, 2017) ..............................................................7

*Baldwin v. Merrill Lynch*,
  2019 WL 4046542 (D. Me. Aug. 27, 2019) .................................................................9

*Blatt v. Muse Techs.*,
  2002 WL 31107537 (D. Mass. Aug. 27, 2002) ............................................................5

*In re Bos. Sci. Corp. Sec. Litig.*,
  2022 WL 17823837 (D. Mass. Dec. 20, 2022)............................................................6

*Burt v. Maasberg*,
  2014 WL 1291834 (D. Md. Mar. 28, 2014) .................................................................3

*In re Carter-Wallace*,
  150 F.3d 153 (2d Cir. 1998) ........................................................................................3

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012)..........................................................................3

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
  778 F.3d 228 (1st Cir. 2015).....................................................................................10

*GAF Corp. v. Milstein*,
  453 F.2d 709 (2d Cir. 1971) ........................................................................................3

*Gruber v. Gilbertson*,
  2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) .............................................................3

*Grundy v. HSBC Bank USA*
  2018 WL 4899459 (D. Mass. July 16, 2018)...............................................................6

*Henderson v. Bank of N.Y. Mellon Corp.*,
  146 F. Supp. 3d 438 (D. Mass. 2015)..........................................................................9

ii

*Levie v. Sears Roebuck & Co.*,
　2006 WL 1886223 (N.D. Ill. July 5, 2006) ...............................................................................3

*SEC v. Liberty*,
　2021 WL 664834 (D. Me. Feb. 19, 2021) .................................................................................8

*In re Luxottica Grp. S.p.A., Sec. Litig.*,
　293 F. Supp. 2d 224 (E.D.N.Y. 2003).......................................................................................3

*In re Mindbody, Inc. Sec. Litig.*,
　489 F. Supp. 3d 188 (S.D.N.Y. 2020)........................................................................................3

*MTB Invest. Partners v. Siemens Hearing Instrus., Inc.*
　2013 WL 12149253 (D.N.J. Feb. 19, 2013) ..............................................................................3

*Puddu v. 6D Glob. Techs., Inc.*,
　2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) .......................................................................3, 8

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*,
　976 F.2d 58 (1st Cir. 1992)........................................................................................................4

*SEC v. Sharp*,
　2022 WL 4085676 (D. Mass. Sept. 6, 2022) ............................................................................8

*Shuster v. AXA Equitable Life Ins.*,
　2015 WL 4314378 (D.N.J. July 14, 2015) ................................................................................9

*Stratte-McClure v. Morgan Stanley*,
　776 F.3d 94 (2d Cir. 2015) ........................................................................................................3

*Swack v. Credit Suisse First Bos.*,
　383 F. Supp. 2d 223 (D. Mass. 2004).......................................................................................5

*Takata v. Riot Blockchain, Inc.*,
　2020 WL 2079375 (D.N.J. Apr. 30, 2020).................................................................................2

*Takata v. Riot Blockchain, Inc.*,
　2022 WL 1058389 (D.N.J. Apr. 8, 2022)...............................................................................2, 3

*Vladimir v. Bioenvision*,
　606 F. Supp. 2d 473 (S.D.N.Y. 2009).......................................................................................3

*In re XL Fleet Corp. Sec. Litig.*,
　2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)..............................................................................8

**State Cases**

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*,
　2017 WL 1501444 (Del. Super. Ct. Apr. 20, 2017)...................................................................9

*BTIG, LLC v. Palantir Techs., Inc.*,
    2020 WL 95660 (Del. Super. Jan. 3, 2020)........................................................................8, 9

iv

Defendants' Opening Memorandum, Dkt. No. 29 ("Mem."), showed why the First Amended Complaint ("FAC") is fatally flawed in numerous respects. Nothing in Plaintiff's Opposition, Dkt. No. 40 ("Opp."), alters that conclusion. Plaintiff understands that the fight for control of Sinovac is between an insider-led buyout group and an external competing buyout group (FAC ¶ 2, 38) while 1Globe, a principal shareholder caught in the middle, supported the highest bidder (FAC ¶ 39). The Opposition nevertheless muddles the FAC's allegations and confuses an alleged "secret plan" by the external buyout group with actions by 1Globe. These and other efforts cannot salvage the Complaint because the claims are clearly time-barred, refuted by Plaintiff's own allegations, and lacking as to scienter, loss causation, and other elements.

## ARGUMENT

### I.      The Court Should Dismiss the Securities Fraud Claims (Counts I-III)

#### A.      The Statute of Limitations Has Run

Defendants showed that Plaintiff's securities fraud claims are time-barred. Mem. at 7-8, 17-18. Plaintiff in response does not dispute that: (i) the challenged conduct predates this case by more than two years, and (ii) the SEC Order—which Plaintiff alleges "revealed" (FAC ¶ 12) the wrongdoing—also predates this case by more than two years. Thus, this an open-and-shut case for application of the two-year limitations period. Plaintiff's contrary arguments fail.

Plaintiff argues that its claim is timely because it "could not have pled loss causation earlier" and loss causation cannot exist until the Antigua Case is resolved. Opp. at 8-9. The Complaint and Opposition undermine this newly minted assertion that Plaintiff did not have the necessary facts to plead loss causation. For instance, the Opposition contains the heading: "The Complaint Adequately Alleges Loss Causation." Opp. at 19. Under it, Plaintiff asserts that loss causation has existed since 2016 because: (i) "Defendants actions harmed [stockholders] by concealing [Defendants'] triggering of the Rights Agreement" at that time, and (ii) Defendants'

1

conduct allegedly caused artificial deflation of Sinovac's stock price *during the putative class period*.  Opp. at 19, 21.  Although no injury occurred, to the extent Plaintiff claims otherwise, any purported injury must have occurred years ago.  Thus, loss causation is not a future occurrence.[1]

On the other hand, if loss causation somehow cannot exist until the Antigua Case is resolved, then the Complaint fails to plead loss causation now and must be dismissed.  Plaintiff cannot have it both ways.  Either this case is too late or it is too early.

Finally, Plaintiff cannot alter the result by arguing that Defendants somehow "prevented Plaintiff from bringing this action earlier."  Opp. at 9.  Unsurprisingly, Plaintiff never explains *how* Defendants supposedly did so.  Relatedly, Plaintiff claims he should not be "faulted" for "waiting" on developments in the Antigua Case.  Opp. at 11.  "Fault" is irrelevant; the statute of limitations is a legal limitation on the amount of time within which a Plaintiff must sue, and Plaintiff articulates no facts that would plausibly trigger any tolling of the statute.

### B.    A Section 13(d) Violation Cannot Be a Predicate for a Section 10(b) Claim

Defendants directed Plaintiff to recent, well-reasoned authority that rejects the notion that a Section 13(d) violation can serve as a predicate for a Section 10(b) claim.  Mem. at 8-9 (citing *Takata v. Riot Blockchain, Inc.*, 2022 WL 1058389 (D.N.J. Apr. 8, 2022)).  Instead of addressing the *Takata* court's reasoning, Plaintiff seeks to undermine its holding by citing an irrelevant order from the *Takata* case and case law that is not specific to Section 13(d).  These efforts fail.

As to *Takata*, Plaintiff cites an order granting a motion to dismiss and noting in dicta that violation of Section 13(d) reporting requirements could support a Section 10(b) claim.  Opp. at 11-12; *Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, at *15 (D.N.J. Apr. 30, 2020).  When the parties briefed a motion to dismiss on the amended complaint that followed, the court was skeptical

---

[1] To be clear, loss causation is indeed lacking for the reasons set forth in Defendants' briefing.  But the problem is not that the Antigua Case has yet to resolve—it is simply that Defendants have not harmed Plaintiff.

that a Section 13(d) violation could be a predicate for a Section 10(b) claim and ordered supplemental briefing. *Takata*, 2022 WL 1058389, at \*2. Following an exhaustive review of the case law, the court concluded, without qualification, that a "Section 13(d) violation may not give rise to a private right of action for damages under Section 10(b)." *Id.* at \*10; *see* Mem. at 8-9.[2]

Most of Plaintiff's cases present general principles of law that in no way engage with the exception adopted in *Takata* based on policy arguments in support of prohibiting plaintiffs from using Section 13(d) violations to claim damages under Section 10(b).[3]  *See Takata*, 2022 WL 1058389, at \*9-10 ("courts are extremely reluctant to imply" cause of action for remedies broader than Congress intended).  The few cases that Plaintiff cites related to Section 13(d) are much older than *Takata* and are not persuasive here.[4]

### C.       The FAC Confirms Defendants Did Not Misrepresent That Trigger Was Met

Defendants showed that the FAC is self-defeating because: (i) while Plaintiff theorizes

---

[2] Plaintiff states that the *Takata* court acknowledged that a Section 13(d) claim can serve as the basis for a Section 10(b) claim in "a variety of circumstances." Opp. at 12. However, the opinion simply states that the court would not consider many cases that the parties cited, because they arose from a different factual basis. *Takata*, 2022 WL 1058389, at \*9. Plaintiff further tries to distance itself from *Takata* by stating it seeks injunctive relief but does not explain why seeking injunctive relief *in addition to* damages would make the *Takata* holding inapplicable here. Opp. at 12.

[3] *See In re Mindbody, Inc. Sec. Litig.,* 489 F. Supp. 3d 188, 199, 201, 208 (S.D.N.Y. 2020) (omissions concerning conflicts and misstatements about performance, employment discussions, and proxy statements); *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 96 (2d Cir. 2015) (Item 303 disclosures)*; In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 467 (S.D.N.Y. 2012) (misstatements in SEC filings); *Levie v. Sears Roebuck & Co.*, 2006 WL 1886223, at \*1 (N.D. Ill. July 5, 2006) (omissions concerning merger negotiations); *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 154 (2d Cir. 1998) (misrepresentations in financial statements).

[4] The older Second Circuit cases that Plaintiff cites do not have relevant holdings. *See Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 18–19 (2d Cir. 1995) (affirming grant of summary judgment for defendants on Section 10(b) claim and assuming without deciding that Section 13(d) violation can be sole predicate of Section 10(b) action); *GAF Corp. v. Milstein*, 453 F.2d 709, 722 (2d Cir. 1971) (affirming dismissal of Section 10(b) claim as issuer lacked standing). Despite this, these cases propagated others that lack the level of analysis found in *Takata*. *See Vladimir v. Bioenvision*, 606 F. Supp. 2d 473, 490–91 (S.D.N.Y. 2009) (relying on *GAF* and *Azurite*); *Burt v. Maasberg*, 2014 WL 1291834, at \*17 (D. Md. Mar. 28, 2014) (relying on *Azurite*); *In re Luxottica Grp. S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 234, 235 (E.D.N.Y. 2003) (relying on *Azurite*); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at \*6 (S.D.N.Y. Mar. 30, 2021) (relying on *Vladimir*); *see also Gruber v. Gilbertson*, 2018 WL 1418188, at \*13 (S.D.N.Y. Mar. 20, 2018) (conclusory analysis based on general "duty to disclose").  The remaining case cited combined claims under both Section 10(b) and Section 18(a), which provides a private right of action for Section 13(d) violations and is not pled here. *See MTB Invest. Partners v. Siemens Hearing Instrus., Inc.*, 2013 WL 12149253, at \*4 (D.N.J. Feb. 19, 2013).

generally that Defendants failed to disclose that they allegedly triggered the Rights Agreement in 2016; (ii) FAC ¶ 133 specifically pleads that 1Globe's April 5, 2016 Schedule 13G filing *disclosed the existence of stockholdings triggering the Rights Agreement*. Mem. at 9-10. That allegation is a judicial admission[5]—Plaintiff cannot walk away from it, and it disposes of this case. *See id*. Plaintiff's attempts to avoid this obviously correct result fall flat.

Plaintiff first protests that Defendants "blatantly misread the complaint." Opp. at 13. But the Court can review FAC ¶ 133 and see that Defendants are not misreading it—it clearly alleges that 1Globe's public filing disclosed holdings sufficient to trigger the Rights Agreement.

Plaintiff next resorts to a *non sequitur*, asserting it is "implausible" that Defendants' April 2016 disclosure suffices to disclose the alleged triggering of the Rights Agreement because Defendants have been involved in "years of contentious disputes in which they have denied triggering the Rights Agreement." Opp. at 13.[6] This mixes apples and oranges. These disputes concern whether the alleged actions of 1Globe and others *related to the 2018 stockholders meeting* triggered the Rights Agreement. FAC ¶¶ 17, 111-14. The cases do not concern whether the April 2016 Schedule 13G filing disclosed the existence of holdings triggering the Rights Agreement. And, in any case, as just noted, Plaintiff clearly alleges the Trigger was disclosed. FAC ¶ 133.

Finally, Plaintiff cites irrelevant legal authority to assert that, the "truth" was not disclosed with sufficient "intensity and credibility." Opp. at 13. Plaintiff's cases are off point because they arise from situations in which defendants made a misstatement or omission and a court was asked

---

[5] *See Marley v. Bank of N.Y. Mellon*, 270 F. Supp. 3d 381, 384–85 (D. Mass. 2017) (allowing motion to dismiss where initial pleading contained judicial admission) (citing *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) (affirming district court finding that complaint allegation was judicial admission)).

[6] The Antigua Case involves a challenge to the validity of the Rights Agreement and the 2018 Sinovac Board reelection. The Delaware Case involves the same issues and is stayed pending the Antigua Case. Notably, the Chancery Court also entered a status quo order, which prohibits Sinovac from conducting a share exchange under the Rights Agreement. Order, *Sinovac*, No. 2018-0143-JTL (Mar. 6, 2019) (Del. Ch. Mar. 6, 2019).

4

to determine whether other truthful disclosures were nonetheless sufficient to render the statement inactionable.[7]  This is not a case in which Defendants allegedly falsely told the market they had not triggered the Rights Agreement but are trying to point to disclosures contradicting that misstatement.  Rather, Plaintiff alleges that Defendants failed to make accurate Section 13(d) filings.  But if (as FAC ¶ 133 concedes) Defendants made the filing, then they fulfilled their disclosure obligation—the law does not require inquiry into the filing's "intensity and credibility."

### D.    The FAC Fails to Allege Scienter

Defendants showed that Plaintiff's allegations do not plead a plausible inference of scienter.  Mem. at 10-14.   In particular, the FAC establishes three critical facts: (i) Defendants told Sinovac about holdings that supposedly triggered the Rights Agreement; (ii) Defendants made a public filing showing as much, as Plaintiff concedes; and (iii) 1Globe used the name "Chiang Li Family" on certain Section 13(d) filings that Plaintiff alleges were 1Globe holdings.  Mem. at 11. These facts—for which Plaintiff has no response—refute any inference that Defendants sought to defraud stockholders.  For instance, Plaintiff theorizes that Defendants had a fraudulent motive to secretly purchase stock to avoid the economic harm that could flow from a triggering of the Rights Agreement.  Opp. at 17.  But that theory cannot be correct, because it would make no sense for Defendants to *tell Sinovac about the holdings*, which the FAC repeatedly alleges (FAC ¶¶ 12, 132, 138, 139).  Similarly, Plaintiff theorizes that Defendants wanted to obscure their holdings as part of a takeover plan (Opp. at 16-17), but that only begs the question as to why 1Globe would report holdings under "Chiang Li Family," a name clearly associated with Chiang Li.  Plaintiff further

---

[7] *See In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at \*28 (S.D.N.Y. Sept. 20, 2019) (arguing that alleged omission concerning link between breast implants and rare type of blood cancer was inactionable in light of disclosures concerning possible association between impacts and cancer); *Swack v. Credit Suisse First Bos.*, 383 F. Supp. 2d 223, 236–38 (D. Mass. 2004) (arguing that alleged omission concerning conflict of interest was inactionable in light of disclosures concerning conflicts of interest and market knowledge); *Blatt v. Muse Techs., Inc.*, 2002 WL 31107537, at \*8 (D. Mass. Aug. 27, 2002) (arguing that alleged omission concerning account holdings and misstatement of cash holdings were inactionable in light of disclosures concerning drop in cash holdings and bleak financial outlook).

ignores that it is implausible that a family investment office, who publicly supported the highest bidder for Sinovac, would seek to acquire the company in a competing bid. Mem. at 11.

The balance of Plaintiff's scienter arguments (Opp. at 14-19) are simply a rehash of the flawed theories of the FAC concerning matters such as the core operations doctrine, which are already dispelled in the Opening Memorandum and thus will not be repeated.

### E.    The FAC Fails to Allege Loss Causation

The FAC alleged that loss causation exists because: (i) Sinovac breached the Rights Agreement, thereby depriving Plaintiff of stock that should have been issued pursuant to the Rights Agreement; (ii) Defendants "suppressed" the price of Sinovac stock; and (iii) Defendants halted Nasdaq trading of Sinovac stock. Mem. at 14-16. Defendants showed that these allegations are all fatally flawed regardless of pleading standard.[8] *Id.* Plaintiff now abandons its allegation concerning Nasdaq[9] and seeks unsuccessfully to rewrite the FAC to salvage its other allegations.

As to the first argument (that Sinovac's breach of the Rights Agreement harmed Plaintiff), Defendants pointed out that causation is lacking because, even if there were a breach of the Rights Agreement that deprived stockholders of shares, such breach was by Sinovac, which knew the Trigger had allegedly been met and had the sole authority to trigger the Rights Agreement. Mem. at 15. Unable to respond cogently, the Opposition now asserts that, while Sinovac may have "suspected" (Opp. at 20) that the Trigger had been met, it supposedly lacked "certainty" due to Defendants' actions. Opp. at 19 (citing FAC ¶¶ 96-102). This newly injected uncertainty by Sinovac is not, however, remotely what the FAC alleges.

---

[8] The First Circuit has not yet decided whether Rule 8 or Rule 9(b) applies to loss causation allegations. *See In re Bos. Sci. Corp. Sec. Litig.*, 2022 WL 17823837, at \*28 n.39 (D. Mass. Dec. 20, 2022).

[9] Defendants pointed out that they cannot cause Nasdaq to halt trading of a public company stock, thereby rendering the associated loss causation allegation nonsensical. Mem. at 16. The Opposition does not respond and concedes the point. *See Grundy v. HSBC Bank USA*, 2018 WL 4899459, at \*7 (D. Mass. July 16, 2018) (plaintiff waived argument where defendants presented argument on motion to dismiss, and plaintiff provided no response).

There is only one fair reading of the FAC with respect to Sinovac's conduct and state of knowledge—Sinovac knew through private correspondence (FAC ¶¶ 12, 132, 138, 139) and public disclosure (FAC ¶ 133) that the Trigger supposedly had been met,[10] but made a pretextual decision not to trigger the Rights Agreement until doing so would benefit the management-led buyout group.[11]   That Plaintiff is not even willing to acknowledge—let alone grapple with—their own FAC allegations speaks volumes.  These allegations are dispositive of loss causation:  if Plaintiff believes that Sinovac should have triggered the Rights Agreement in 2016 and breached by not doing so, then the cause of any purported injury is Sinovac and loss causation here is lacking.  *See B2 Opportunity Fund, LLC v. Trabelsi*, 2017 WL 4684028, at *5 n.5 (D. Mass. Oct. 18, 2017) (loss causation embodies traditional principles of but-for and proximate causation such that intervening causes break causal chain).

The Opposition also argues that Defendants caused the price of Sinovac stock to be "artificially deflated because investors could not account for the increased value that 1Globe and Li's substantial stake conferred."  Opp. at 21.  This appears to be a rehash of the FAC's assertion that Defendants somehow "suppressed" the price of Sinovac stock by supposedly concealing that the Trigger was met.  FAC ¶ 177.  But Plaintiff has not addressed, and therefore concedes, Defendants' arguments that the FAC lacks sufficient information to evaluate whether price

---

[10] FAC ¶¶ 12 ("Sinovac knew …, based on private correspondence starting in 2016, … that 1Globe and Li triggered the Rights Agreement"), 131 (Sinovac "knew that a Trigger Event … occurred"); 133 ("Sinovac knew that 1Globe triggered the Rights Agreement"); 134 ("Sinovac's Board knew … information starting in 2016 revealing that 1Globe triggered the Rights Agreement"); 139 (Sinovac's Board knew from 2016 correspondence "that 1Globe and the Chiang Li Family triggered the Rights Agreement"); 148 ("Sinovac's Board knew long before February 2019, that the Defendants … triggered the Rights Agreement"); 153 ("Sinovac knew of 1Globe's triggering of the Rights Agreement in 2016"); 220 ("Sinovac knew starting in 2016 … that Defendants triggered the Rights Agreement").

[11] *See* FAC ¶¶ 13 (alleging lack of public disclosure of the triggering event "gave Sinovac cover" to delay Rights Agreement until time "more beneficial for" management); 131 (alleging that Sinovac's decision to "delay[] its implementation [of the Rights Agreement]" was self-serving); 148 (alleging that Sinovac used supposed lack of public disclosure of triggering event as "pretext" to "delay implementing the Rights Agreement"); 153 (alleging it was "foreseeable" that Sinovac would construe the Trigger "in a way that unfairly favors" management).

7

suppression occurred and that FAC ¶ 133 undermines the FAC by asserting that Defendants' public filings were sufficient to notify stockholders of the alleged Trigger.[12]  Mem. at 15-16.

### F.      Manufacturing a Purported "Scheme" Does Not Alter the Conclusion

Plaintiff's attempt to explain how their baseless allegations of a purported "scheme" are distinct from the alleged misrepresentations only underscores that this case presents no genuine scheme claim.  Opp. at 21-22.  Allegations that Defendants sought to avoid accumulating more than 5 percent of shares in any account *to avoid Section 13(d) reporting*, concealed their identity *on Section 13(d) filings*, and sought to take control of the company *without disclosing a group on Section 13(d) filings* are all inextricably linked to Plaintiff's claims that Defendants' Section 13(d) filings contained material omissions or misrepresentations.  The single case that Plaintiff cites for the proposition that misrepresentations or omissions are "manipulative or deceptive" acts sufficient to establish scheme liability predates the controlling Second Circuit case on this point.[13]  Plaintiff's remaining cases are factually distinct and do not offer further analysis on this point.[14]

## II.     The Court Should Dismiss the Tortious Interference Claim (Count IV)

### A.      The Statute of Limitations Has Run

Plaintiff's tortious interference claim is untimely because numerous public lawsuits filed outside the limitations period provided Plaintiff with notice of the claim.  Mem. at 17-18; *BTIG, LLC v. Palantir Techs., Inc.*, 2020 WL 95660, at *3 (Del. Super. Jan. 3, 2020) (statute of limitations

---

[12] Plaintiff also does not take into account the multiple other Section 13(d) filings that 1Globe made during the class period, which alerted investors to its stake in Sinovac and its position regarding a buyout.  *See, e,g.*, FAC ¶¶ 72 (July 2017 Schedule 13G), 75 (March 2018 Schedule 13D), 152 (March 2019 Schedule 13D).

[13] *Compare SEC v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) (stating that "misstatements and omissions alone are not enough for scheme liability" and clarifying effect of *SEC v. Lorenzo* on circuit law)*, with Puddu*, 2021 WL 1198566, at *11 (relying on *Lorenzo* to hold that scheme liability may be based on misrepresentations or omissions).

[14] *SEC v. Sharp*, 2022 WL 4085676, at *3–4 (D. Mass. Sept. 6, 2022) (defendants provided services to public company control persons to facilitate dumping of penny stocks); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *7 (S.D.N.Y. Feb. 17, 2022) (individual defendant generated false pipeline and revenue projection data for company); *SEC v. Liberty*, 2021 WL 664834, at *1 (D. Me. Feb. 19, 2021) (defendants sold convertible promissory notes issued by shell companies at inflated prices and pocketed difference).

runs from inquiry notice).  Unlike cases where the complaint pleads that defendants fraudulently concealed information that would have revealed the injury, here various lawsuits indisputably revealed "facts sufficient to put a person of ordinary intelligence and prudence on inquiry."  *BTIG*, 2020 WL 95660, at \*6; *see supra* § I.A.1 (statute of limitations has run for securities claim).

There also is no basis to characterize this claim as a "continuing" tort; the claim accrued when Plaintiff allegedly suffered damages following Sinovac's breach.  *See, e.g.*, *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1501444, at \*2 (Del. Super. Ct. Apr. 20, 2017) (rejecting claim that tortious interference was continuing tort).  In any event, Plaintiff's claim that it has been continually injured by the trading halt is illogical because the putative class members all *sold* their shares during the class period.  FAC ¶ 18.

## B.      SLUSA Preempts the Claim

The Opening Memorandum showed that Plaintiff's tortious interference claim meets each of the four elements necessary for SLUSA preemption.  Mem. at 18-19.  Plaintiff concedes three elements and contests only "the fraud or misrepresentation in connection with the purchase or sale" element.  Opp. at 23-24.  That element is satisfied because, as Defendants explained, Plaintiff's theory is that it was harmed by ***selling stock*** at deflated prices and/or without the benefit of extra shares issued pursuant to the Rights Agreement.  FAC ¶¶ 198-99, 205.  Plaintiff's only response is to assert that their claim does not arise from securities transactions insofar as it concerns a Nasdaq trading halt.  Opp. at 23-24.  This is meritless and does not save the claim.  *See infra* § II.C.[15]

---

[15] Plaintiff's reliance on *Shuster v. AXA Equitable Life Ins.*, 2015 WL 4314378, at \*6 (D.N.J. July 14, 2015), in which the plaintiff "was not induced to sell or retain her investments," is irrelevant because the FAC alleges that the class "would not have sold said securities when they did" had the truth been known.  FAC ¶ 198.  The other cases are inapposite.  *See Baldwin v. Merrill Lynch*, 2019 WL 4046542, at \*4–5 (D. Me. Aug. 27, 2019) (no "sale of a covered security" because misrepresentation concerned 529 plan); *Henderson v. Bank of N.Y. Mellon Corp.*, 146 F. Supp. 3d 438, 443 (D. Mass. 2015) ("plaintiff, as a trust beneficiary, was powerless to buy or sell covered securities").

### C.    The FAC Fails to Allege the Elements of Tortious Interference

Finally, Plaintiff's tortious inference claim also fails to plead necessary elements.  Mem. at 19-20.  Plaintiff states that "the whole basis of [the tortious interference] claim is that Defendants' actions have prevented Plaintiff and the Class from being able to trade their securities *at all*."  Opp. at 23-24.  This is illogical because Plaintiff's claims *exclude* stockholders subject to the trading halt: the putative class is composed of those "who ***sold their securities*** between April 11, 2016 … and February 22, 2019," when trading was halted (FAC ¶ 18 (emphasis supplied); *see also* FAC ¶ 180), thus someone who did not sell their shares, and instead held through the trading halt, *is not even in the putative class*.  In any event, any tortious interference claim premised on the trading halt fails because the FAC does not plead—and could not plausibly plead—that interference by Defendants caused the trading halt.  Private parties such as Defendants cannot cause Nasdaq trading halts.  Plaintiff further asserts the causation analysis for tortious interference parallels that of loss causation.  Opp. at 25.  Thus, the loss causation arguments set forth in the opening brief and above dispose of the claim.

Beyond that, Plaintiff argues the FAC must plead only that Defendants acted "without justification."  Opp. at 25.  Plaintiff fails to meet even that standard here because the FAC pleads that Defendants acted in service of the legitimate financial goal of selling Sinovac at the best price. Mem. at 20.  Where the FAC so plainly states Defendants' motivation, there are no "factual questions" for a factfinder to resolve and dismissal is proper.  Opp. at 25.

### CONCLUSION

For the foregoing reasons, and for the reasons set out in the opening brief, the Court should not grant leave to amend[16] and should dismiss the Complaint with prejudice.

---

[16] *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (affirming dismissal and noting that "a mention in a footnote in the[] opposition to dismissal" is not proper request to amend)).

Dated: March 27, 2023                    Respectfully submitted,

                                         */s/ Michael G. Bongiorno*
                                         **WILMER CUTLER PICKERING
                                            HALE AND DORR LLP**
                                         Michael G. Bongiorno (BBO # 558748)
                                         Timothy J. Perla (BBO # 660447)
                                         Peter A. Spaeth (BBO # 545202)
                                         Erika M. Schutzman (BBO # 696241)
                                         Carol Guerrero (BBO # 705419)
                                         60 State Street
                                         Boston, MA 02109
                                         617-526-6000 (t)
                                         617-526-5000 (f)
                                         michael.bongiorno@wilmerhale.com
                                         timothy.perla@wilmerhale.com
                                         peter.spaeth@wilmerhale.com
                                         erika.schutzman@wilmerhale.com
                                         carol.guerrero@wilmerhale.com

                                         *Counsel for Defendants 1Globe Capital
                                         LLC, Jiaqiang Li, Chiang Li Family, Jeff
                                         Li, and Linda Li*