United States District Court
District of Massachusetts

|  |  |
|---|---|
| MW GESTION, *Individually and On Behalf of All Others Similarly Situated*,<br><br>            Plaintiff,<br><br>      v.<br><br>1GLOBE CAPITAL LLC et al.,<br><br>            Defendants. | Civil Action No.<br>22-11315-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff MW Gestion ("plaintiff" or "MW Gestion"), an asset management firm, brings this action, on its own behalf and on behalf of all others similarly situated, alleging securities fraud and tortious interference with a contract against 1Globe Capital LLC ("1Globe"), Jiaqiang Li, the Chiang Li Family, Linda Li and Jeff Li (collectively, "the defendants").

Defendants have filed a joint motion to dismiss (Docket No. 28) which is currently pending before the Court. For the following reasons, the motion will be allowed, in part, and denied, in part.

I.  **Background**

   A.  **Factual Background**

Plaintiff MW Gestion is an investment management firm incorporated in France that manages at least one fund which holds Sinovac securities. Defendant 1Globe is a Delaware corporation with its principal place of business in Boston, Massachusetts, of which Jiaqiang Li ("Li"), also of Boston, is the sole owner. The "Chiang Li Family" is an assumed name which Li has purportedly used from time to time in securities filings. Linda Li is the vice-president and director of 1Globe and resides in Boston, Massachusetts. She is a relative of Jiaqiang Li. Jeff Li is also a relative of Jiaqiang Li and has acted as the managing director of 1Globe.

Plaintiff alleges that competing groups of shareholders have been vying for control of Sinovac Biotech Ltd. ("Sinovac" or "the company") since 2016. One group includes the CEO of Sinovac, Wiedong Yin, and certain other directors and investors ("the Yin Group"). The opposing group includes 1Globe, Li and Sinobioway, an investor in Sinovac's main operating subsidiary ("the Sinobioway Group"). In March, 2016, the company adopted a Rights Agreement that contained a "poison pill" provision. Pursuant to that provision, additional Sinovac shares are to be distributed to shareholders under certain circumstances to dissuade would-be acquirers. For instance, if a shareholder

acquires more than 15% of Sinovac's stock, additional shares are to be offered to all other shareholders in order to dilute the holding of the acquiring party.

According to the amended complaint, defendants misrepresented the extent and coordination of their Sinovac stock holdings, in violation of Section 13(d) of the Securities Exchange Act of 1934, to avoid pertinent disclosure requirements and the implementation of the "poison pill" provision adopted by Sinovac.  Furthermore, defendants purportedly worked with others in an attempt to wrest control of Sinovac from its leadership, culminating in an attempt by the Sinobioway Group to vote in a new slate of directors at the annual meeting in 2018.  Plaintiff contends that it and other Sinovac shareholders have incurred damages as a result of defendants' misrepresentations, their evasion and impeding of the Rights Agreement and their costly vying for control of the company.

Plaintiff's complaint relies heavily upon information lifted from a cease-and-desist order that the SEC issued on May 13, 2020, against 1Globe and Li with respect to their violation of disclosure requirements pursuant to Section 13(d) ("the SEC Order").  The Court therefore considers the SEC Order to be incorporated by reference into the amended complaint.

### B. Procedural History

This is not the first lawsuit to be filed with respect to the implementation of the Rights Agreement or the struggle for control of Sinovac between competing shareholders.[1] Plaintiff filed this suit in August, 2022, on its own behalf and on behalf of others similarly situated. In November, 2022, the Court allowed a joint motion of the parties to set a scheduling order for amended pleadings and motions to dismiss. The pending motion to dismiss was timely filed pursuant to that schedule. Plaintiff filed an amended complaint in December, 2022, defendants moved to dismiss in January, 2023, and the parties subsequently filed opposition and reply briefs.

Defendant Jeff Li was not one of the original movants when defendants filed their motion to dismiss because he had not yet been served with the amended complaint. He was served shortly thereafter and, in February, 2023, sought to join the motion to dismiss (Docket No. 37) which the Court hereby allows him to do.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a

---

[1] See Section II.B.1.a below.

matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

B.  Application

1.  **The Securities Fraud Claims (Counts I, II and III)**

In Count I, plaintiff asserts that defendants violated Section 10(b) of the Exchange Act and Rule 10-5(b) promulgated thereunder by the Securities and Exchange Commission ("SEC"). In Count II, plaintiff alleges violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder by the SEC. Finally, in Count III, plaintiff asserts that the individual defendants violated Section 20(a) of the Exchange Act. Defendants move to dismiss the securities fraud claims on multiple grounds including that they are barred by the statute of limitations.

a.  **Statute of Limitations**

Defendants contend that Counts I, II and III are barred by the two-year statute of limitations applicable to claims of securities fraud. See 28 U.S.C. § 1658(b). Plaintiff filed this action on August 16, 2022, and thus its securities fraud claims are time-barred if a reasonably diligent plaintiff would have discovered the facts constituting the violation prior to August 16, 2020. See FirstBank P.R., Inc. v. La Vida Merger Sub, Inc., 638 F.3d 37, 38 (1st Cir. 2011) (citing Merck & Co. v. Reynolds, 559 U.S. 633, 653 (2010)).

Specifically, defendants submit that the securities fraud claims are time-barred on the grounds that a reasonably diligent

- 6 -

plaintiff would have discovered the pertinent facts due to: 1) lawsuits filed against 1Globe in 2018 that publicly alleged that defendants had violated Section 13(d) and improperly evaded the enforcement of the Rights Agreement and 2) the SEC Order containing details about defendants' alleged misconduct which was published in May, 2020. Defendants therefore contend that plaintiff's claims are untimely because they accrued before the end of May, 2020, at the latest.

MW Gestion replies that the determination of whether a claim is time-barred by the statute of limitations should not be resolved on a motion to dismiss if it involves questions of fact. In support of that principle, plaintiff cites SEC v. Sharp, 626 F. Supp. 3d 345, 385 (D. Mass. 2022). A court may dismiss a claim on the pleadings, however, "when there is no doubt that it is time-barred." Cap. Ventures Int'l v. UBS Sec. LLC, No. 11-CV-11937-DJC, 2012 WL 4469101, at *13 (D. Mass. Sept. 28, 2012) (cleaned up); see also Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014) (holding that a district court should grant a motion to dismiss if the action was commenced outside the limitations period and the complaint "fails to sketch a factual predicate that would provide a basis for tolling").

Here, the amended complaint extensively relies upon the May, 2020, SEC Order to justify the claim that defendants violated the securities laws. The complaint avers, for example, that the order

"makes clear" and "reveal[s]" defendants' alleged misconduct. As discussed in more detail below, such allegations demonstrate that the information contained in the SEC Order enabled a reasonably diligent plaintiff to discover the facts constituting defendants' alleged violations. Perhaps recognizing that the amended complaint's extensive, and often exclusive, reliance on the text of the SEC Order prevents MW Gestion from plausibly contending that its claims had not accrued before the end of May, 2020, plaintiff instead proffers several variations on the underlying contention that it could not have brought this action before August, 2022 because of unresolved issues which remained pending in other litigation.

Plaintiff first submits that it could not have pled loss causation earlier than it did and thus the accrual of its claim was delayed because otherwise it would not have survived a motion to dismiss. According to plaintiff, its alleged loss depends upon the timing of Sinovac's delayed implementation of the Rights Agreement and the effect of defendants' actions on Sinovac's share price, neither of which has yet been resolved. MW Gestion explains that Sinovac's implementation of the Rights Agreement was stalled by other, pending litigation and that trading in Sinovac stock was halted by NASDAQ.

As an initial matter, Sinovac's implementation of the Rights Agreement is still unresolved and trading in Sinovac's stock is

still on hold. Nevertheless, plaintiff has filed the instant action which includes allegations of loss causation. It is difficult to reconcile the notion that MW Gestion could not have pled loss causation earlier because of unresolved issues when it has now pled loss causation despite the pendency of those same issues.

In any event, the amended complaint alleges that defendants' actions caused damage to plaintiff and other putative class members throughout the purported Class Period, i.e. between April 11, 2016 and February 22, 2019, because they were unable to recover the value associated with millions of shares of Sinovac stock which would have been issued to them if the Rights Agreement had been implemented. Similarly, the complaint asserts that defendants' actions

> artificially suppressed the price of Sinovac securities . . . [and prevented the putative class from] being able to evaluate the implications for their investment decisions[.]

Finally, the complaint states that defendants' actions caused the suspension of "all trading in Sinovac stock on the NASDAQ" beginning in February, 2019.

All of the alleged harms occurred, and were known to have occurred, before August 16, 2020 (i.e. more than two years prior to the date on which plaintiff brought this suit). Furthermore, according to the allegations in the amended complaint, any missing

information about defendants' purported misconduct was filled in by the publication of the SEC Order in May, 2020. Despite plaintiff's implicit and self-defeating suggestion that its complaint may still be premature because of certain unresolved issues, the Court concludes that plaintiff's claim based upon allegations of loss causation, as pled in the amended complaint, accrued no later than May, 2020 and thus is time-barred as a matter of law.

In similar fashion, MW Gestion maintains that it could not have adequately pled scienter earlier than it did. The amended complaint, however, relies upon information disclosed in the SEC Order to allege that defendants deliberately hid their acquisition of Sinovac stock and purposefully evaded enforcement of the terms of the Rights Agreements. For instance, the following portion of the SEC Order is quoted in the amended complaint:

> 1Globe Capital and Li funded substantially all of the purchases [in Relative #2's account] through ten separate wire transfers, totaling $13 million, during the second half of 2016. During this same time period, Li's account also transferred a large block of shares of another stock to Relative #2's Canadian account. The shares were then liquidated and the proceeds used toward the ongoing purchases of Sinovac shares in Relative #2's account . . . . As the Sinovac stock position held in Relative #2's Canadian brokerage account neared the 5% disclosure threshold, Relative #1 opened a Canadian brokerage account in his own name in late December 2016 and began purchasing Sinovac shares in the account after receiving a $5 million wire transfer from 1Globe Capital and Li in February 2017.

The amended complaint avers that defendants acted with scienter because the SEC Order purportedly:

> make[s] clear that Defendants' Section 13(d) violations were the result of a deliberate plan to conceal the full extent and true nature of 1Globe's and Li's holdings of Sinovac stock in order to avoid their disclosure obligations and evade the Rights Agreement.

The Court does not decide here whether plaintiff has adequately alleged defendants' scienter. To the extent plaintiff has set forth allegations that support a finding of scienter, however, it has relied upon facts that were disclosed in the May, 2020 SEC Order. Indeed, plaintiff cites the very statements quoted above, as well as others taken directly from the SEC Order, when arguing that the amended complaint alleges a strong inference of scienter.

Plaintiff next propounds several related, equitable rationales for delaying or tolling the accrual of the statute of limitations. MW Gestion contends that the statute of limitations did not begin to accrue in May, 2020, because defendants "prevented Plaintiff from bringing this action earlier" by disputing, in other cases, the validity of the Rights Agreement and whether it was subject to enforcement. In another framing of that same contention, plaintiff cites In re Parmalat Sec. Litig., and asserts that the statute of limitations should be equitably tolled because of the pendency of the Antiguan litigation as to the Rights Agreement. 493 F. Supp. 2d 723, 731-32 (S.D.N.Y. 2007). As

discussed above, plaintiff's amended complaint, which alleges damages it incurred from 2016 to 2019 and avers that defendants' purportedly unlawful actions were disclosed by the SEC Order in 2020, controverts the notion that defendants (or other legal proceedings) somehow prevented plaintiff from alleging securities fraud before August, 2022.

Finally, plaintiff cites Doubleline Capital LP v. Odebrecht Fin., Ltd., and submits that the statute of limitations period has not started to run because defendants have expressly denied any wrongdoing. 323 F. Supp. 3d 393 (S.D.N.Y. 2018).  In Odebrecht, the district court found that a defendant's "express denials" of allegations reported in popular press articles could have allayed a reasonable investor's concerns and thus delayed the accrual of the statute of limitations. Id. at 438.  The circumstances described in Odebrecht do not, however, resemble those of the pending case, in which a comprehensive SEC Order published the factual allegations which plaintiff has adopted more than two years later in its amended complaint. Furthermore, the express denials of wrongdoing with which MW Gestion charges defendants here occurred in the context of ongoing litigation rather than in the context of publicly reassuring investors after the publication of a negative article.

### 2. Tortious Interference with a Contract (Count IV)

Defendants next contend that Count IV (tortious interference with a contract) is barred by the statute of limitations, pre-empted by the Securities Litigation Uniform Standards Act and that the amended complaint fails to state a claim in any event.

#### a. Statute of Limitations

The parties agree that Delaware law, which imposes a three-year statute of limitations on claims of tortious interference with a contract, applies for the purposes of this motion. See BTIG, LLC v. Palantir Techs., Inc., 2020 WL 95660, at *3 (Del. Super. Jan. 3, 2020). The statute of limitations for a claim of tortious interference begins to run when a "plaintiff receive[s] inquiry notice" of its claim. Id. Thus, Count IV is timely only if plaintiff received inquiry notice of its claim after August 16, 2019.

Under Delaware law, a plaintiff receives inquiry notice when it:

> becomes aware of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of injury.

Id. at *7 (cleaned up).

Defendants contend that plaintiff had inquiry notice in either April, 2016, when 1Globe filed a Section 13(d) statement which showed that it had continued to acquire additional stock

- 13 -

after the Rights Agreement was adopted, or at least by 2018, when the question of whether 1Globe violated Section 13(d) and/or precipitated enforcement of the Rights Agreement was raised in multiple lawsuits.  Plaintiff demurs and suggests that the lawsuits filed in 2018 did not provide inquiry notice because defendants vehemently contested whether their conduct was subject to enforcement of the Rights Agreement and sufficient information about such conduct did not become public until after the SEC Order was published.

Delaware courts have held that,

> at some point, a steady stream of lawsuits, investigations, and other problems will put stockholders on inquiry notice[.]

Lebanon Cnty. Employees' Ret. Fund v. Collis, 287 A.3d 1160, 1180 (Del. Ch. 2022).

In view of the facts alleged in the amended complaint, however, it would be premature to conclude that the lawsuits filed against defendants in 2018, and the subsequent developments in those cases through August 16, 2019, constituted a "steady stream" of information that clearly provided plaintiff with inquiry notice of its claim.  To the contrary, as addressed above, the complaint avers that many of the key facts constituting defendants' alleged misconduct were not revealed until publication of the SEC Order in May, 2020, within the statute of limitations period applicable to Count IV.  At this

point in the litigation, therefore, the Court cannot conclude that plaintiff's claim of tortious interference with a contract is time-barred.

### b.  Preemption

The Securities Litigation Uniform Standards Act ("SLUSA") preempts common law claims that seek recovery in connection with the purchase or sale of covered securities.  There are four prerequisites to the application of SLUSA preemption:

> [1] a covered class action, [2] based on state law, [3] alleging fraud or misrepresentation in connection with the purchase or sale of, [4] a covered security.

Hidalgo-Vélez v. San Juan Asset Mgt., 758 F.3d 98, 104 (1st Cir. 2014) (citation omitted); 15 U.S.C. § 78bb(f)(1).

Plaintiff does not dispute that 1) the case at bar is a covered class action, 2) the claim it asserts in Count IV is based on state law or 3) Sinovac stock qualifies as a covered security.  MW Gestion does contend, however, that it has not alleged fraud or misrepresentation in connection with the purchase or sale of Sinovac securities.

Although defendants focus on allegations that MW Gestion and other putative class members were denied shares of Sinovac securities and that they sold Sinovac securities at lower share prices, the Court concludes that plaintiff has espoused at least one theory of damages that does not involve the purchase or sale of securities.  Specifically, MW Gestion alleges that it and

other putative class members were unable to trade Sinovac stock at all after the NASDAQ suspended trading in February, 2019. Plaintiff submits that, under that damages theory, the alleged injury is based on its inability to access property and has no connection to securities transactions. At this stage of the proceedings, therefore, the Court agrees that the amended complaint sets forth a claim for damages as a result of tortious interference with a contract that is not preempted by the SLUSA.

### c. Failure to State a Claim

Finally, defendants contend that the amended complaint fails to plead the requisite elements of tortious interference with a contract which are:

> (1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.

Bhole, Inc. v. Shore Investments, Inc., 67 A.3d 444, 453 (Del. 2013).

Defendants submit that the complaint is deficient with respect to the fourth and fifth elements.

As MW Gestion points out, the question of whether a party has acted "without justification" is a fact-intensive inquiry that requires "consideration of many factors". See Am. Bottl. Co. v. BA Sports Nutrition, LLC, 2021 WL 6068705, at *19 (Del. Super. Ct. Dec. 15, 2021); Restatement (Second) of Torts § 767.

Viewed in the light most favorable to MW Gestion, the amended complaint alleges that defendants eschewed their Section 13(d) obligations in order to avert implementation of the Rights Agreement and advance the particular interests of the Sinobioway Group.  Although defendants respond that their conduct had "the legitimate financial goal of selling Sinovac at the best price", the amended complaint contains allegations which plausibly plead that defendants acted without justification.

Finally, MW Gestion has sufficiently pled causation of its alleged injuries.  The amended complaint contains plausible allegations that defendants' conduct interfered with the Rights Agreement, delayed its implementation and caused Sinovac to breach the contract.  Those foreseeable results of defendants' conduct allegedly caused plaintiff harm including, inter alia, the suspension of trading by NASDAQ.

### ORDER

For the foregoing reasons, defendant Jeff Li's motion for joinder (Docket No. 37) is **ALLOWED**.  Defendants' motion to dismiss (Docket No. 28) is, as to Counts I, II and III, **ALLOWED**, but is, as to Count IV, **DENIED**.

**So ordered.**

                                                  _/s/ Nathaniel M. Gorton_
                                                  Nathaniel M. Gorton
                                                  United States District Judge

Dated:  August 18, 2023