**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MW GESTION, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:    1:22-cv-11315-NMG |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| 1GLOBE CAPITAL LLC, JIAQIANG LI, CHIANG LI FAMILY, JEFF LI, and LINDA LI | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................5

    A.    Events Concerning Rights Agreement Adoption and Aftermath ...........................5

        1.    Competing Bids for Sinovac by Management Group and Sinobioway Group ........................................................................................5

        2.    Sinovac Adopts Rights Agreement Containing "Poison Pill" ....................6

        3.    Sinovac Rejects Sinobioway Offer and Holds a Contested 2018 Annual Meeting .................................................................................9

        4.    The Incumbent Board Declares a Trigger Event .......................................11

    B.    Pending Litigation Concerning Rights Agreement.................................................12

        1.    The Antigua Case.......................................................................................13

        2.    The Delaware Case .....................................................................................13

        3.    The Delaware Class Case............................................................................14

    C.    Procedural Posture .................................................................................................15

ARGUMENT............................................................................................................................15

I.    THE COURT SHOULD STAY THIS CASE PENDING RESOLUTION OF THE ANTIGUA AND DELAWARE CASES...........................................................15

    A.    The Court Should Stay This Case Pursuant to Its Inherent Authority to Manage Its Docket ..............................................................................16

    B.    International Comity Also Favors a Stay................................................................19

CONCLUSION.........................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1Globe Capital LLC v. Sinovac Biotech Ltd.*,
No. ANUHCVAP2018/012 (Ant. & Barb.)................................................................................13

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
633 F. Supp. 3d 385 (D. Mass. 2022) ....................................................................................15

*Goldhammer v. Dunkin' Donuts, Inc.*,
59 F. Supp. 2d 248 (D. Mass. 1999) ......................................................................................19

*Heng Ren Investments LP v. Sinovac Biotech Ltd., et al.*,
No. 1:19-cv-11612-NMG (D. Mass.) .....................................................................................12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..........................................................................................................15, 16

*Lerner v. Sinovac Biotech Ltd. et al.*,
No. 1:22-cv-12063-NMG (D. Mass.) .....................................................................................12

*MW Gestion v. Sinovac et al.*,
Case No. 2023-0907 (Del. Ch.) ..................................................................................10, 14, 15

*Promera Health, LLC v. Vireo Sys., Inc.*,
2016 WL 861215 (D. Mass. Jan. 14, 2016)...........................................................................16

*Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*,
No. 1:18-cv-10421-NMG (D. Mass.) ..............................................................................13, 17

*Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*,
No. 2018-0143-JTL (Del. Ch.) ...................................................................7, 10, 13, 14

*Taunton Gardens Co. v. Hills*,
557 F.2d 877 (1st Cir.1977).............................................................................................16, 17

**Statutes**

International Business Corporations Act, Section 122 .......................................................2, 10, 12

Defendants respectfully move the Court to stay the above-captioned action pending the resolution of related litigations in Delaware and Antigua.  Filed herewith is the Declaration of Timothy J. Perla ("Perla Decl."), with exhibits cited herein.

## INTRODUCTION

This case concerns the "poison pill" agreement adopted by Sinovac Biotech Ltd. ("Sinovac"), a China-based biopharmaceutical company, registered under the laws of Antigua and Barbuda and listed in Nasdaq (SVA).  In February 2016, Sinovac received a non-binding privatization offer at $6.18 per share from a management-led group ("Management Group") and a competing offer at $7.00 per share from an outside buyout group led by Sinobioway Biopharmaceutical Ltd ("Sinobioway Group").  Taking a US-listed Chinese company private held the potential of huge returns for investors upon re-listing in China as exemplified in the privatization of formerly US-listed Wuxi PharmaTech (NYSE:WX) and Mindray Medical (NYSE:MR).  As such, competition among Chinese investors for or joining such a buyout was fierce.

In March 2016, the Sinovac Board adopted a Rights Agreement that purported to be governed by Delaware law.  The Rights Agreement contained a "poison pill" designed to entrench management and prevent competing bids against a management-led buyout.  In June 2017, Sinovac announced its board's approval of a buyout by the Management Group at $7.00 per share.  It also announced that the board had amended the Rights Agreement to exclude the proposed transaction from triggering the "poison pill."  The Sinobioway Group increased its offer to $8.00 per share the next day.  In January 2018, Sinovac filed a Schedule 13E form with the SEC to ready itself for being acquired by the Management Group at $7.00 per share while rejecting the $8.00 per share offer from the Sinobioway Group.

1

1Globe Capital ("1Globe"), a long-term principal shareholder of Sinovac, was invited by the Management Group as well as by the Sinobioway Group to join the buyout by rolling over its shares. 1Globe set out its principles for joining or supporting the buyout which included a request to the Sinovac board to protect minority shareholders. 1Globe promoted a collaborative approach, but never joined either group.

On February 6, 2018, at the annual general shareholder meeting ("AGM"), a majority of shareholders, representing more than 85% of shares voted and not held by the Management Group, voted against the re-election of the incumbent board and for the election of a new board slate ("New Board"). On March 5, 2018, Sinovac announced re-election of the incumbent board ("Disputed Board"), despite losing the vote at the AGM, and filed a lawsuit in Delaware against all shareholders who voted against their re-election ("Delaware Case") alleging a trigger of the poison pill and thereby a dilution of their votes before the AGM. Sinovac also filed a lawsuit in this court against 1Globe in which it sought to invalidate 1Globe's votes at the AGM by alleging that 1Globe had breached SEC disclosure requirements concerning its shareholdings. The Disputed Board purportedly renewed the "poison pill" agreement which was set to expire in March 2018. To resolve these disputes and protect its investment, 1Globe filed claims in Antigua ("Antigua Case") seeking relief under Section 122 of the International Business Corporations Act ("IBCA"), asking the court to adjudicate the validity of the AGM election or order a new board election.

While court proceedings were ongoing in Delaware and Antigua, Sinovac's shares continued to trade on Nasdaq. On February 18, 2019, the Disputed Board took the highly unusual step of declaring that the poison pill had been triggered by 1Globe, OrbiMed Advisors and all shareholders who voted against the disputed board, which represented 45.5% of

Sinovac's total share capital.[1]  On February 22, 2019, Nasdaq halted trading in Sinovac shares "pending information request to Sinovac."  Trading has not resumed despite Sinovac's repeated promise to resume trading.  During the pandemic, Sinovac's COVID vaccine brought in billions of dollars in revenue and the Disputed Board distributed nearly $1.0 billion dollars in dividends to themselves and some former Management Group members while keeping trading suspended on Nasdaq.

Against this complex backdrop, the Plaintiff in this case, a French asset manager and not itself a Sinovac shareholder, allegedly obtained assignment of claims from one of its subsidiary funds, and brought this putative class action in August 2022 against certain of Sinovac's minority shareholders for alleged loss from an alleged Schedule 13D disclosure violation based on 1Globe's settlement with SEC.  This court dismissed all claims except the tortious interference claim, which is based on the Plaintiff's theory that the Defendants interfered with shareholders' contractual rights under the Rights Agreement, with the supposed result being that Sinovac shares have been subject to a Nasdaq trading halt since February 2019.

In September 2023, the Plaintiff brought a class action in Delaware concerning whether the Rights Agreement was breached by Sinovac's Board ("Delaware Class Case") and seeking to enjoin the implementation of the poison pill trigger announced on February 18, 2019.  The injunctive relief sought by the Plaintiff in the Delaware Class Case is the *same* relief that 1Globe obtained three years ago and which the Plaintiff has alleged in this Court caused the trading suspension and constitutes tortious interference.  Am. Compl.  ¶¶ 123–24.

---

[1] Prior to 2019, the last time a company had activated a "poison pill" was 2008, but was related to preserving a tax benefit.  Perla Decl. Ex. A (*Reuters* article).

As a minority shareholder, 1Globe could not and did not cause Nasdaq to suspend Sinovac's trading, which occurred weeks before 1Globe exercised its legal right to obtain injunctive orders to protect its investment. 1Globe has publicly highlighted the fact of the trading halt to urge Sinovac to work with Nasdaq to resume trading. After 1Globe obtained the status quo order in March 2019, Sinovac publicly promised to work with Nasdaq "to resume trading [Sinovac Common Stock] as expeditiously as possible," but failed to follow through its promise.[2] Despite being invited to participate by both buyout groups, 1Globe's adherence to principle has unequivocally protected all shareholder's interests. Had 1Globe not sought to protect the minority shareholders, their Sinovac shares would have been bought at $7.00 per share in 2018, which today carries a cash value of over $100 per share. 1Globe is now being sued by the Plaintiff, a non-Sinovac shareholder itself, in this action allegedly representing a putative class which has benefited enormously from 1Globe's actions to protect stockholders.

The instant motion presents a discrete issue—whether the Court should stay this case pending the outcome of the Delaware and Antigua cases. A stay makes perfect sense here. The elements of tortious interference include (among other things) a contract and a breach. The Antigua Case is currently on appeal to the court of last resort, the Judicial Committee of the Privy Council, which is expected to rule on the validity of the AGM vote and whether a defensive poison pill is allowed in principle under English law, which applies in Antigua. If 1Globe prevails in arguing that the New Board was validly elected in the 2018 AGM, the Rights Agreement would be invalid since the Disputed Board purportedly renewed the expired contract in March 2018 and annually thereafter.

---

[2] Perla Decl. Ex. F (Sinovac 3/19/19 Form 6-K Ex. 99.1).

4

Meanwhile, the Delaware Court of Chancery is poised to decide whether the Rights Agreement, which purports to be a contract governed by Delaware law, is valid (*i.e.,* whether there is a valid contract in the first place), whether the alleged triggering of the Rights Agreement was valid (*i.e.*, whether there was a breach), and, if a trigger occurred, which party triggered it (Sinovac Management, 1Globe, OrbiMed Advisors, or other minority shareholders). Were this Court to proceed with this litigation now, it would need to address these exact same issues. Doing so, of course, would waste resources and risk inconsistent rulings. It makes far more sense to allow the Antigua courts and the Delaware Court of Chancery to adjudicate these issues of Antiguan law and Delaware law before this Court wades into them. This Court reached a similar conclusion in another case before it involving Sinovac (1:18-cv-10421-NMG), which the Court stayed *sua sponte* pending resolution of the Antigua Case.

Thus, this Court should stay this case pending the outcome of Antigua and Delaware Cases. The parties can then proceed with this litigation promptly with the benefit of those rulings and whatever impact they have on this case.

## BACKGROUND

**A.     Events Concerning Rights Agreement Adoption and Aftermath**

1. <u>Competing Bids for Sinovac by Management Group and Sinobioway Group</u>

In January 2016, a consortium of buyers led by Sinovac's Chairman and CEO Weidong Yin (the "Management Group") submitted a proposal to acquire the company's outstanding shares for $6.18 per share. The "Management Group" included Yin and SAIF Partners IV L.P., Vivo Capital, and others, which collectively controlled at least 29.5% of Sinovac shares. In February 2016, a consortium led by Aihua Pan, the Chairman of Shandong Sinobioway

Biomedicine Co.[3] (the "Sinobioway Group"), submitted a competing proposal to acquire Sinovac's outstanding shares for $7.00 per share. The Sinobioway Group consisted of a subsidiary of China International Capital Corporation (CICC) and other investors.[4]

1Globe, a long-term principal shareholder of Sinovac, was invited in 2016 by the Management Group as well as by the Sinobioway Group to roll over its shares.[5]  Despite the enormous financial return potential in joining the buyout, 1Globe sent a letter on March 3, 2017, to Sinovac's board in which 1Globe made it clear its conditions for supporting and joining the privatization, which included, among others, a request to protect minority shareholders' interests.[6]  1Globe also communicated the extent of its shareholdings and shares held by related parties to the Sinovac board.[7]  On December 14, 2017, in replying to an invitational confirmation letter from the Sinovac Board, 1Globe re-iterated its principle for protecting minority shareholders and promoting a collaborative approach by the two buyout groups.[8]  1Globe never joined either buyout Group since its requests were not met.

2.  Sinovac Adopts Rights Agreement Containing "Poison Pill"

In March 2016, the directors of Sinovac caused it to adopt a Rights Agreement that contained a "poison pill" without shareholder approval.  *See* Order on Motion to Dismiss at 2, ECF No. 43 ("MTD Order"); Rights Agreement, ECF No. 30-1 ("Rights Agreement").

---

[3] Sinobioway owned a minority interest in Sinovac's operating subsidiary but did not own any shares of Sinovac.

[4] Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 19, 24.

[5] Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 48, 53.

[6] Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 39.

[7] *See, e.g.*, Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 30.

[8] Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 53.

A "poison pill," formally referred to as a "shareholder right agreement," is a tactic used by a board of directors to defend against unsolicited takeovers or the acquisition of companies without paying a controlling premium to shareholders. Once activated, the strategy allows shareholders, except for the acquiring party, to buy additional shares of company stock at a highly discounted price. It is not a method to create value or reward certain shareholders by penalizing other shareholders. On the contrary, it is a drastic measure that risks destroying a company's credibility in the market and has led to value destruction in the rare corporate examples where "poison pills" have ever been triggered. Moreover, "poison pills" are prone to be abused to entrench management as exemplified in the current Sinovac case.

Sinovac's rights plan is purportedly governed by Delaware law. On July 31, 2018, the Delaware Chancery Court stated that "…*a rights plan …is fundamentally a corporate control device involving a strawman counterparty*" and "*by definition is a control mechanism not a device with independent business purposes*." Order Denying Request for Trial Date in Sept. 2018 ¶ 3, *Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*, No. 2018-0143-JTL (Del. Ch. Jul. 31, 2018).

Sinovac's Rights Agreement operated or purported to operate as follows: 1) the Company declared a dividend of one preferred share purchase right (a "Right") in respect of each Common Share of the Company that had been issued or was outstanding as of April 8, 2016; 2) the Right was a "right to purchase" one-thousandth of a Series A Junior Participating Preferred Share upon terms and subject to conditions set out in the Rights Agreement; 3) a "Trigger Event" would be caused by any Person (with any Related Persons, as defined) acquiring 15% or more of the Common Shares, thereby becoming an "Acquiring Person." Rights Agreement, Recitals, Section 11.1.2. Under the extended definition of "Acquiring Person," in the absence of any actual

acquisition of any shares, the Person would still be deemed to have acquired shares (including exempted shares purchased before the adoption of the Rights Agreement) beneficially owned by other parties with whom the Person had an agreement, arrangement or understanding for the purposes of acquiring, holding, voting, or disposing of shares.  Rights Agreement, Section 1.1. However, the Sinovac Board retains discretion to determine whether an investor is an Acquiring Person even if such investor acquires more than 15% of Sinovac's shares, if that investor meets certain criteria, including that it "had no intention of changing or influencing control of the Company." *Id.*  Persons who already held over 15% would similarly fall into a separate category of "Exempt Persons."  Rights Agreement, Section 1.8.

The Rights Agreement provides two mechanisms to dilute the holdings of an Acquiring Person once a Trigger Event has been declared by the Sinovac Board: a "flip-in" and an "Exchange."  In the case of a "flip-in," each holder of a Right, other than the Acquiring Person that caused the Trigger Event, has the right to receive a specified number of shares at a specified price, thereby diluting the Acquiring Person.  Rights Agreement, Section 11.1.2.  In the case of an Exchange," the Board "*may, at its option,*" exchange one common share per Right for *shareholders other than the Acquiring Person that caused the Trigger Event*.  Rights Agreement, Section 27.1.  "*The exchange of the Rights by the Board may be made effective at such time, on such basis and with such conditions as the Board in its sole discretion may establish.*"  *Id.*

During 2016 and 2017, 1Globe disclosed to the Sinovac Board the shares owned by its related parties; this meant that the committee with the ultimate power to determine if a purchase constitutes a "Trigger Event" under the Rights Agreement was made aware of 1Globe's holdings, which runs counter to Plaintiff's theory that any alleged deficiencies in 1Globe's public filings were intended to evade triggering the poison pill.  Am. Compl. ¶¶ 134, 136–38.

8

3.   Sinovac Rejects Sinobioway Offer and Holds a Contested 2018 Annual Meeting

Sinovac announced on June 27, 2017, the Board's approval to proceed with the buyout by the Management Group at $7.00 per share.  The Rights Agreement was amended by the Sinovac Board to exclude the transaction with the Management Group as a trigger event the same day. On June 28, 2017, the Sinobioway Group increased its proposal to $8.00 per share.[9]

1Globe expressed its intention to support the Sinobioway Group's improved proposal at $8.00 per share and its principle for supporting a higher offer by other potential buyers in an amended Schedule 13D filed on July 7, 2017.  Sinovac rejected the Sinobioway Group's offer of $8.00 per share in October 2017 purportedly due to concerns with funding; however, this was viewed as a pretext to accept the offer from the Management Group. Compl. ¶ 108.  At the time, Sinovac common shares were trading above $8.00 per share.

On January 5, 2018, Sinovac filed Schedule 13E-3 and exhibits with the SEC in relation to the acquisition of Sinovac by the Management Group at the acquisition price of $7.00 per share (Nasdaq: SVA (Sinovac) was trading above $8.00 per share).  The filing included notice of a special meeting of shareholders, proxy statement and proxy card for approving the acquisition agreement.[10]

On February 6, 2018, Sinovac held an annual shareholder meeting to elect directors, which was scheduled to be the final AGM before the Management Consortium acquired the Company for $7.00 per share. At the AGM, James Chang, a partner at DLA Piper who represented a JPMorgan proxy with shares beneficially owned by OrbiMed Advisors, nominated

---

[9] Perla Decl. Ex. B (Sinovac Amended Proxy Statement) at 47.

[10] *See generally* Perla Decl. Ex. B.

9

an alternative slate of directors.  1Globe exercised its voting rights as a shareholder of Sinovac to vote for the alternative slate of directors.

At the AGM on February 6, 2018, a majority of shareholders, representing more than 85% of total shares not held by the Management Group, voted against the re-election of the incumbent board and for the election of new board nominees.  Instead of transferring power and duty to the newly elected Board, some of the incumbent board members of Sinovac ("Disputed Board") announced their own re-election on March 5, 2018, after one month of silence, essentially hijacking the Board.  On the same day, Sinovac filed a lawsuit in Delaware alleging a "poising pill" trigger by 1Globe, OrbiMed Advisors, and all shareholders who had voted against the incumbent board, representing 45.5% of total share capital.  Sinovac also sued 1Globe in Massachusetts for alleged breach of SEC disclosure requirements, which purportedly "sterilized" 1Globe's votes at the AGM.

The Disputed Board purportedly renewed the "poison pill" agreement which was set to expire in March 2018.  Compl. ¶ 4, *MW Gestion v. Sinovac Biotech Ltd. et al.*, Case No. 2023-0907 (Del. Ch. Sept. 6, 2023).

In order to resolve these disputes, on March 13, 2018, 1Globe filed an application in Antigua under Section 122 of the IBCA in which 1Globe asked the Antiguan court to adjudicate the validity of the AGM election or order a new board election.  In response, Sinovac prematurely moved for summary judgment in the Delaware Case, asserting all dissenting shareholders had triggered the poison pill before the AGM vote, and it alternatively requested an expedited trial.  The Delaware Chancery Court refused to rule on Sinovac's motion for summary judgement or to expedite trial, and stated *"...the investor went on to win a proxy contest against Sinovac's incumbent directors. Sinovac hopes to show that the investors were diluted by*

10

*operation of the rights plan before they could exercise the voting power necessary to prevail in the election.*"  Order Denying Request for Trial Date in Sept. 2018 ¶ 4, *Sinovac*, No. 2018-0143-JTL (Jul. 31, 2018).

In July 2018, the Disputed Board caused Sinovac to sell additional stock to the Management Group members at a discounted price, increasing the shares held by the Management Group from 29.5% to 40%.  The Disputed Board allegedly amended the Rights Agreement to exclude the purchase of these shares by the Management Group from becoming a "Trigger Event."

Trading in Sinovac's shares continued between March 2018 and February 2019, while the lawsuits in Delaware and Antigua were ongoing.

### 4.     The Incumbent Board Declares a Trigger Event

Having increased the shareholding by Management Group from 29.5% to 40% in July 2018, the Disputed Board took a highly unusual step on February 18, 2019, passing a resolution that declared a "trigger" of the poison pill by 1Globe, OrbiMed Advisors, and all shareholders who voted against the incumbent board at the AGM, which would significantly dilute all dissenting shareholders and thereby increase shares held by the Disputed Board and former Management Group from 40% to 55%.[11]  The Sinovac board's resolution approved an Exchange under the Rights Agreement by issuing common and Series B Preferred shares to all shareholders at nominal cost except those that voted against the incumbent directors at the AGM.  These exchange shares were held in trust and shareholders were given one year to claim them.[12]

On February 22, 2019, Nasdaq halted trading of Sinovac shares and gave the reason for

---

[11] Perla Decl. Ex. C (Sinovac 2/22/19 Form 6-K Ex. 99.1).

[12] Perla Decl. Ex. D (3/5/18 Sinovac Press Release).

the halt as "additional information requested" from Sinovac.[13]  Contemporaneous reporting by

Sinovac indicated that the trading halt was expected to last "weeks" "to give [Sinovac] time to

work out its plan."[14]  Although Sinovac issued press releases in March and April 2019 stating

that it would "work with the Nasdaq Stock Market LLC to resume trading of the Company's

Common Shares as expeditiously as possible,"[15] trading of Sinovac shares has not resumed.

Nasdaq suspended Sinovac trading weeks before 1Globe exercised its legal right to

protect its investment by obtaining a "status quo order" in the Delaware Case and an "injunction"

in the Antigua Case restraining Sinovac from diluting 1Globe's shares before the courts had time

to hear evidence and issue rulings.  As such, the trading suspension could not have been caused

by those actions by 1Globe.  As a minority shareholder, 1Globe has no power or right to cause

Nasdaq to suspend Sinovac's trading.  On the contrary, 1Globe publicly urged Sinovac to resume

trading.[16]

### B.    Pending Litigation Concerning Rights Agreement

The preceding events have spawned a number of lawsuits, which address legal and

factual issues that overlap with the issues presented in this case.[17]

---

[13] Perla Decl. Ex. E (Nasdaq Press Release).

[14] Perla Decl. Ex. A (*Reuters* article).

[15] *See* Perla Decl. Ex. F (Sinovac 3/11/19 Form 6-K Ex. 99.1); *see also* Perla Decl. Ex. G (Sinovac 4/15/19 Form 6-K Ex. 99.1).

[16] Perla Decl. Ex. H (1Globe Press Release).

[17] Other cases concerning Sinovac include. *(i)* Sinovac sued 1Globe alleging that 1Globe violated Section 13(d) reporting requirements.  Compl., *Sinovac Biotech Ltd. v. 1Globe Capital LLC et al.*, No. 1:18-cv-10421-NMG (D. Mass. Mar. 5, 2018).  On March 22, 2021, this Court entered a stay pending the outcome of the Antigua Case. Order, *Sinovac*, No. 1:18-cv-10421-NMG (D. Mass. Mar. 22, 2021). *(ii)* Two cases alleging that Sinovac wrongfully diluted investors through a private investment in public equity ("PIPE") offering were filed in the District of Massachusetts (not involving any Defendant here).  The Court recently dismissed all claims in *Lerner v. Sinovac Biotech Ltd. et al.*  *See* Order, *Lerner v. Sinovac Biotech Ltd. et al*, No. 1:22-cv-12063-NMG (D. Mass. Sept. 13, 2023).  A related case, *Heng Ren Investments LP v. Sinovac Biotech Ltd., et al.*, was stayed pending resolution of the motion to dismiss in *Lerner*.  *See* Order at 1, *Heng Ren Investments LP v. Sinovac Biotech Ltd., et al.*, No. 1:19-cv-11612-NMG (D. Mass. Feb. 15, 2023).

1.   The Antigua Case

On March 13, 2018, 1Globe filed claims in Antigua, where Sinovac is registered, seeking relief under Section 122 of IBCA concerning the validity of the AGM Election and the installation of the duly elected new slate of directors. Alternatively, 1Globe asked the court to order a new board election under section 122.  Compl., *1Globe Capital LLC v. Sinovac Biotech Ltd.*, No. ANUHCVAP2018/012 (Ant. & Barb. Mar. 13, 2018).  A justice of the Antiguan High Court dismissed 1Globe's claim by exercising his discretion under section 122 IBCA because he needed to reconcile the on-line voting before AGM and the right to amend a motion on the "floor" of an AGM although Antigua laws are silent on this matter.  At the AGM, the nominating shareholder moved to amend the motion at AGM and did not disclose nominees before the AGM.  The Antiguan High Court also declared that the Rights Agreement valid as the matter of Antiguan law, deferring to the Delaware Court of Chancery to adjudicate the Rights Agreement disputes based on Delaware law.  The Antigua Case is on appeal to the Judicial Committee of the Privy Council (JCPC), which is the court of last resort for legal disputes commenced in Antiguan courts.  The JCPC is expected to rule on the validity 2018 AGM Election and is also expected to rule on whether the Rights Agreement is permitted in principle as a matter of English law, which applies in Antigua.  The validity of the 2018 AGM Election will, in turn, impact whether the Rights Agreement is valid because the Rights Agreement expired on March 27, 2017 and was purportedly renewed by the Disputed Board.

2.   The Delaware Case

On March 5, 2018, Sinovac filed a lawsuit in the Delaware Court of Chancery against all shareholders that voted against the re-election of the incumbent board, including 1Globe, and OrbiMed Advisors.  Compl., *Sinovac*, No. 2018-0143-JTL (Mar. 5, 2018).  Sinovac alleged that

13

the Rights Agreement had been triggered by the shareholders' vote and sought to dilute the votes of all "dissenting shareholders" by diluting their shares at the AGM. The Delaware Court issued a "status quo" order providing injunctive relief against implementation of an Exchange under the Rights Agreement pending a resolution by the Delaware Court. *See* Order Denying Request for Trial Date in Sept. 2018 ¶ 4, *Sinovac*, No. 2018-0143-JTL (Jul. 31, 2018); Order, *Sinovac*, No. 2018-0143-JTL (Mar. 6, 2019). The Delaware Case presently is stayed pending a ruling by the Judicial Committee of the Privy Council. *See* Order, *Sinovac*, No. 2018-0143-JTL (Apr. 8, 2019).[18]

If the JCPC rules in favor of 1Globe on the validity of the 2018 AGM Election in the Antigua Case, the Rights Agreement will necessarily be unenforceable because the Rights Agreement expired in March 2018 and only was extended pursuant to a resolution of the ousted Disputed Board after the 2018 AGM Election, and annually thereafter. After the JCPC renders its decision, the Delaware Court of Chancery will take up questions under Delaware law including whether the Rights Agreement was validly adopted under Delaware law, whether a Trigger Event occurred, and, if a Trigger Event occurred, what party (Sinovac, 1Globe, OrbiMed Advisors, or other shareholders) caused of the Trigger Event.

### 3. The Delaware Class Case

On September 6, 2023, MW Gestion, the Plaintiff in this case, sued Sinovac for breach of contract based on the Sinovac Board's purported decision to implement an Exchange under the Rights Agreement as of February 22, 2019, and applied for an injunction preventing distribution of the exchange shares by Sinovac. Compl. ¶¶ 147–52, *MW Gestion*, No. 2023-0907 (Sept. 6,

---

[18] Vice-Chancellor Laster has expressed skepticism about the propriety of a foreign corporation adopting a Rights Agreement purportedly governed by Delaware law. *See* Order, *Sinovac*, No. 2018-0143-JTL (Del. Ch. Apr. 8, 2019).

2023).  In this new complaint, Plaintiff alleges that the Sinovac Board improperly declared an Exchange at an opportunistic time to advance their own personal interests.  *See, e.g., id.* ¶¶ 67, 121.  In an admission that is fatal to Plaintiff's theory of tortious interference, the complaint in the Delaware Class Case states that the Sinovac Board learned "as early as April 2016 and several subsequent times" about the shareholding of 1Globe and related parties.  *Id.* ¶ 4–5.  The parties are expected to brief a motion to dismiss between November 2023 and February 2024.  Order, *MW Gestion*, No. 2023-0907 (Sept. 21, 2023).

###### C.      Procedural Posture

Plaintiff filed this case on August 16, 2022, alleging that 1Globe violated federal securities laws related to filing requirements under Section 13(d) and engaged in tortious interference with contract through an alleged "poison pill" trigger that somehow caused the trading suspension of Sinovac shares in Nasdaq.  The Court dismissed all claims except the count for tortious interference with contract.  *See* MTD Order at 17.  Thus, the claim remaining for adjudication in this Court is whether 1Globe allegedly interfered with the contractual rights of Sinovac shareholders under the Rights Agreement by somehow causing Nasdaq to halt trading.  *Id.*

##### ARGUMENT

**I.      THE COURT SHOULD STAY THIS CASE PENDING RESOLUTION OF THE ANTIGUA AND DELAWARE CASES**

The Court should stay this case because doing so would: (i) conserve resources and avoid the possibility of inconsistent rulings on the fundamental legal questions presented in this case, without prejudicing Plaintiff; and (ii) respect considerations of international comity.

### A.    The Court Should Stay This Case Pursuant to Its Inherent Authority to Manage Its Docket

Courts have broad discretion to stay proceedings incidental to the power to control their own dockets. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). A stay is appropriate where there is "a related proceeding in another tribunal" and will therefore "conserve resources." *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392–93 (D. Mass. 2022) (internal quotations and citations omitted). A stay also is warranted if resolution of the issues in one action would "narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved" "even if it should not dispose of all the questions involved." *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir.1977) (citing *Landis*, 299 U.S. at 253–54). "The court may stay a case if 1) there is good cause to do so, 2) the stay is reasonable in duration and 3) it ensures that the competing equities are weighed and balanced." *Promera Health, LLC v. Vireo Sys., Inc.*, 2016 WL 861215, at *5 (D. Mass. Jan. 14, 2016) (Gorton, J.) (citing *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992)).

As noted above, this Court has already *sua sponte* stayed a related case before it concerning Sinovac (1:18-cv-10421-NMG), pending resolution of the Antigua Case. The Court should also stay this case for numerous reasons.[19]

***First***, a stay would conserve judicial and party resources. The surviving claim in this case posits that Defendants engaged in tortious interference with contract through an alleged "poison pill" trigger, which somehow caused the trading suspension of the Sinovac shares by Nasdaq. *See* MTD Order at 17. The elements of tortious interference include the existence of a

---

[19] In the case pending before this Court concerning Section 13(d) reporting requirements, this Court entered a stay *sua sponte* in favor of the Antigua Case. Order, *Sinovac*, No. 1:18-cv-10421-NMG (Mar. 22, 2021). Although Defendants herein believe a stay in favor of the Delaware cases is most efficient, an alternative approach would be to stay this case pending the Antigua Case (which will resolve first), and revisit with the benefit of a ruling in that case.

contract and an act that is a significant factor in causing a breach thereof. *Id.* at 16; Compl. ¶¶ 218–19. The courts in Antigua and Delaware cases will be adjudicating these exact same issues. Specifically, the Judicial Committee of the Privy Council will rule on the validity of the AGM election. If the ruling is in 1Globe's favor, the Rights Agreement would be invalid since the Disputed Board purportedly renewed the contract in March 2018 after they were voted out. Moreover, the Judicial Committee of the Privy Council will rule if a defensive poison pill is permitted in principle under English law, which applies in Antigua. The Delaware Case will decide whether the Rights Agreement was validly adopted under Delaware law, whether a Trigger Event occurred, and, if a Trigger Event occurred, which party (Sinovac, 1Globe, OrbiMed Advisors, or other shareholders) caused the Trigger Event. The Delaware Class Case will decide whether Sinovac breached the Rights Agreement. Given the significant overlap between this case and the Delaware Case, the Delaware Case will indisputably "narrow the issues" presented in this case and "assist in the determination of the questions of law involved" concerning whether there is a valid contract and whether said contract was breached. *Taunton Gardens*, 557 F.2d at 879.

Were this Court to proceed with this case now, it would encounter novel questions of contract law including whether the Rights Agreement is a valid contract governed by Delaware law when purportedly adopted by a company registered under the laws of Antigua without the benefit of rulings from the Delaware Court of Chancery. Proceeding with this case, ahead of Delaware Court of Chancery's adjudication of the same legal issues, would be a highly inefficient use of Court and party resources. Moreover, it is also inefficient for the parties to expend large sums of legal fees and costs on discovery when a ruling from Antigua or the Delaware Court of Chancery could invalidate Plaintiff's theory of liability in this case by finding

17

that the Rights Agreement was not validly adopted, was not breached, was not validly triggered, or was not triggered by any actions attributable to 1Globe Plaintiff wanted.

**Second**, absent a stay, there exists a risk of inconsistent rulings.[20]  As noted above, if this Court were to allow this litigation to proceed, it would be required to adjudicate the validity of a contract entered into by a foreign corporation purportedly pursuant to Delaware law as well as the actions of corporate fiduciaries under Antiguan law—the exact issues that the Antigua and Delaware Cases are adjudicating.  Moreover, whether there was a breach of that contract is the exact issues that the Delaware Cases are adjudicating.  For the same reason, considerations of comity also weigh in favor of a stay because Delaware courts are better positioned to decide whether, as a policy matter, corporations registered outside of Delaware may avail themselves of Delaware law through the adoption of Rights Agreements like the one at issue here.

**Finally**, a stay would not prejudice Plaintiff.  Plaintiff has been in no hurry to litigate: it filed this lawsuit in August 2022 over three years after the trading suspension started on February 22 2019.  Plaintiff now claims that the poison pill trigger and trading suspension caused it, and the putative class, damage.  No members of the putative class have indicated a desire to be involved with this lawsuit or sought earlier to bring similar claims against Defendants.  The stay requested herein will extend only until the relevant questions on the contract validity and possible breach are resolved in Antigua and Delaware cases—the minimal amount of time needed to achieve the benefits of the stay.  Finally, because this Court has already adjudicated a motion to dismiss substantially narrowing the case, the parties here will be positioned to proceed efficiently.

---

[20] Defendants' argument concerning inconsistent rulings is based on information currently known to them about what the Delaware Court of Chancery is *expected* to rule on.  Defendants expressly reserve their arguments on claim preclusion or issue preclusion stemming from the related litigation until such time that rulings in related case have been entered and the impact of those rulings on this matter can be evaluated.

## B.    International Comity Also Favors a Stay

A federal court also is empowered to stay a case where a related proceeding is pending in a foreign jurisdiction.  Courts in the First Circuit evaluate six factors when assessing whether a stay due to international comity is warranted.  *See Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 252–53 (D. Mass. 1999).  The six factors are:

> (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions.

*Id.*  Here, all six factors favor of stay in favor of the Antigua Case.

With respect to factors one and six, the Antigua Case involves an overlapping party with this case (1Globe) and was first-filed.  Further, as set forth in the previous section, staying this case in favor of the Antigua Case promotes judicial efficiency (factor 2) and would not prejudice Plaintiff (factor 5).  Finally, considerations of the adequacy of relief (factor 3) and convenience (factor 4) also favor a stay because, as discussed above, the Judicial Committee of the Privy Council is slated to resolve an issue of law central to this case—whether a defensive Rights Agreement can be valid in principle under English law, which applies in Antigua.  Having a ruling on that question will facilitate adjudication of this case, while avoiding wasted resources or inconsistent rulings.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court should stay this case pending resolution of the Antiqua Case and the Delaware Case.

19

Dated: November 3, 2023

Respectfully submitted,

/s/ *Michael G. Bongiorno*
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
Michael G. Bongiorno (BBO # 558748)
Timothy J. Perla (BBO # 660447)
Peter A. Spaeth (BBO # 545202)
Erika M. Schutzman (BBO # 696241)
60 State Street
Boston, MA 02109
617-526-6000 (t)
617-526-5000 (f)
michael.bongiorno@wilmerhale.com
timothy.perla@wilmerhale.com
peter.spaeth@wilmerhale.com
erika.schutzman@wilmerhale.com

*Counsel for Defendants*