**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| IN RE 1GLOBE CAPITAL LLC SECURITIES LITIGATION | No.: 1:22-cv-11315-NMG<br><br>Oral Argument Requested |

**LEAD PLAINTIFF'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................................3

        A.   Defendants Interfered With the Rights Agreement ...........................................................4

        B.   Defendants' Farfetched Version of Events ...................................................................5

        C.   The Other Pending Litigation.......................................................................................9

III.    ARGUMENT .......................................................................................................................13

        A.   Defendants Do Not Present "Extraordinary Circumstances" Supporting a Stay ...........14

        B.   Defendants Raise Irrelevant Facts ...............................................................................16

IV.     CONCLUSION....................................................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
  633 F. Supp. 3d 385 (D. Mass. 2022)......................................................................................17

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) .................................................................................................. 13, 16, 17

*Goldhammer v. Dunkin' Donuts, Inc.*,
  59 F. Supp. 2d 248 (D. Mass. 1999) ...............................................................................14, 17

*KPS & Assocs., Inc. v. Designs By FMC, Inc.*,
  318 F.3d 1 (1st Cir. 2003)............................................................................................... 1, 13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .............................................................................................................17

*Marquis v. F.D.I.C.*,
  965 F.2d 1148 (1st Cir. 1992).............................................................................................17

*Pierce Aluminum Co., Inc. v. Masteel Am. Corp.*,
  No. 23-CV-11431-RGS, 2023 WL 6127418 (D. Mass. Sept. 19, 2023) ................... 14, 15, 16

*Promera Health, LLC v. Vireo Sys., Inc.*,
  No. CV 15-12888-NMG, 2016 WL 861215 (D. Mass. Jan. 14, 2016)................................17

*Provanzano v. Parker*,
  796 F. Supp. 2d 247 (D. Mass. 2011)........................................................................... 13, 16

*Rapid Pharms. AG v. Kachroo*,
  180 F. Supp. 3d 96 (D. Mass. 2015) (Gorton, J.)................................................................14

*Spark Energy Gas, LP v. Toxikon Corp.*,
  864 F. Supp. 2d 210 (D. Mass. 2012)........................................................................*passim*

*Taunton Gardens Co. v. Hills*,
  557 F.2d 877 (1st Cir. 1977)................................................................................................17

Lead Plaintiff MW Gestion ("Plaintiff") respectfully submits this Memorandum of Law Opposition to Defendants' Motion to Stay. (ECF No. 51).[1]

## I.      INTRODUCTION

Defendants' motion to stay this action is part of their well-documented strategy of delaying accountability for their interference with Sinovac's Rights Agreement. The litigation that 1Globe brought in the Cayman Islands has been pending for over five years and Defendants are not able to say when it will be completed. In the meantime, Defendants have leveraged that pending action to halt implantation of the Poison Pill in Sinovac's Rights Agreement. This delay serves Defendants' interests because a central part of 1Globe's strategy in its battle for control of Sinovac has been to delay Sinovac's implementation of the Poison Pill. ¶¶ 111-15, 123-30.

1Globe should not be permitted to extend its strategy of delay by staying this action. A stay of a federal action pending resolution of a state or foreign action should not be granted absent "extraordinary circumstances" that support a federal court "shrink[ing] from 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003). The factors that courts use to assess whether a stay is warranted pending the resolution of another proceeding strongly reject the imposition of a stay here. Plaintiff and the other minority shareholders part of the proposed Class here are not part of the other actions between 1Globe and Sinovac. This action therefore involves different claims than those other cases. In addition, Plaintiff's other action against Sinovac was filed after this action and also involves different parties and claims. This case, unlike

---

[1] ¶_ references herein are to paragraphs of the Amended Class Action Complaint ("Complaint," ECF No. 23). Defendants' Memorandum of Law in Support of their Motion (ECF No. 52) is referenced as "Mem." "Defendants" includes Defendants 1Globe Capital LLC ("1Globe"), Jiaqiang "Chiang" Li, the Chiang Li Family, Linda Li, and Jeff Li. Capitalized terms not defined herein have the same meaning as in the Complaint. Internal quotation marks are omitted unless noted otherwise below.

the other ones that Defendants raise, focuses uniquely on whether 1Globe and its affiliates acted "without justification" in a way that "interfered with the Rights Agreement [and] delayed its implementation and caused Sinovac to breach the contract," resulting in "the suspension of trading [of Sinovac stock] by NASDAQ" so that investors "were unable to trade Sinovac stock at all" after "NASDAQ suspended trading in February, 2019." (ECF No. 43 ("MTD Order") at 16-17). The other actions that Defendants cite cannot possibly protect the interests of Plaintiff and the Class because their claims against 1Globe are not at issue in those other matters. Moreover, staying this action would prejudice Plaintiff and the Class because the damage here stems from their inability "to access [their] property." (MTD Order at 16-17). The longer this action is delayed, the more that harm is exacerbated.

Defendants argue that a stay (1) would "conserve judicial and party resources" and (2) avoid "a risk of inconsistent rulings." (Mem. at 16-18). But aside from ignoring the significant differences between this action and the other matters that Defendants discuss, their argument assumes that any overlapping issues should be decided in the other cases instead of this one. Their argument could be made in "all cases implicating" other actions and is therefore "not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." *Spark Energy Gas, LP v. Toxikon Corp.*, 864 F. Supp. 2d 210, 219 (D. Mass. 2012).

To support their request, Defendants spin a narrative that is untethered from reality. They deny having colluded with other shareholders at Sinovac's 2018 Annual Meeting and portray 1Globe as the champion of minority shareholders that transparently "communicated the extent of its shareholdings and shares held by related parties to the Sinovac board." (Mem. at 6-10). This description of events is divorced from what actually took place. It wholly ignores the findings by the SEC and the Antigua court that 1Globe and Li hid their true holdings of Sinovac stock to avoid

2

triggering the Rights Agreement, and that they had "secret plan to take control of" Sinovac that led to an "ambush" at the Annual Meeting that "deprived shareholders of the opportunity to make an informed and intelligent decision." ¶¶ 118, 171. Defendants' motion further supports Plaintiff's case because it shows the extent to which they contest 1Globe and Li's clear misconduct.

Defendants' rhetorical flourish is also beside the point. They raise issues that go to the merits of this action, not whether a stay is warranted. For example, Defendants argue that they did not cause the trading halt in Sinovac stock. (Mem. at 12). The Court has already ruled that Plaintiff has plausibly alleged that the "foreseeable results of defendants' conduct allegedly caused plaintiff harm including, inter alia, the suspension of trading by NASDAQ." (MTD Order at 17). Those allegations are now subject to discovery in this action. Defendants do not even suggest that they are at issue in any other action. These issues should be litigated as this case proceeds, not in Defendants' ill-conceived motion to stay.

For all of these reasons, and those explained further below, the Court should deny Defendants' motion to stay.

## II.    FACTUAL BACKGROUND

Defendant 1Globe is an investment company owned and controlled by Defendant Li. ¶¶ 25-26. Since 2016, 1Globe has been vying for control of Sinovac, a vaccine maker based in China. ¶¶ 31-32. Rather than conduct this campaign openly and transparently, Defendants misrepresented, and used deceptive tactics to conceal, their growing position in Sinovac stock. Plaintiff filed the complaint in this action on August 16, 2022 (ECF No. 1), was appointed Lead Plaintiff on October 19, 2022 (ECF No. 7), and filed the Amended Complaint on December 5, 2022 (ECF No. 23). On August 18, 2023, the Court denied Defendants' motion to dismiss as to Plaintiff's claim for tortious interference with contract. (MTD Order).

3

### A.      Defendants Interfered With the Rights Agreement

In March 2016, Sinovac enacted the Rights Agreement, containing the Poison Pill, to prevent shareholders from acquiring more than 15% of Sinovac stock. ¶ 11. Soon after the Rights Agreement was adopted, Defendants proceeded to violate it by acquiring additional shares of Sinovac stock beyond the 22.5% owned when the agreement was adopted. 1Globe also disrupted Sinovac's annual meeting in February 2018, as part of a group that sought to install a new slate of directors. 1Globe and Li joined with another group to vote for an insurgent slate of Directors while "keep[ing] the whole thing strictly confidential from Sinovac." ¶¶ 74, 109-20. The group's counsel even instructed that they "do this smartly. Don't leave any evidence to [Sinovac], showing that" they had "formed a 13(d)" group, to avoid detection as "conspirators." ¶ 117.

The Court summarized the amended complaint as alleging that "defendants misrepresented the extent and coordination of their Sinovac stock holdings, in violation of Section 13(d) of the Securities Exchange Act of 1934, to avoid pertinent disclosure requirements and the implementation of the 'poison pill' provision adopted by Sinovac. Furthermore, defendants purportedly worked with others in an attempt to wrest control of Sinovac from its leadership, culminating in an attempt by the Sinobioway Group to vote in a new slate of directors at the annual meeting in 2018." (MTD Order at 3). The Court ruled further that the amended complaint adequately "alleges that defendants eschewed their Section 13(d) obligations in order to avert implementation of the Rights Agreement and advance the particular interests of the Sinobioway Group." (*Id.* at 17).

Defendants' actions are well-documented, including in the SEC Order and decisions by the Antigua court. For example, the SEC determined in its enforcement action against 1Globe and Li that Li orchestrated the purchase of Sinovac stock in multiple accounts by a relative, Defendant Jeff Li, to conceal the full extent of 1Globe's ownership. ¶¶ 46, 52, 60, 68-70, 76-81. By May

4

2018, Li had acquired 32.6% of Sinovac stock, but still disclosed only the 22.5% that he and 1Globe owned at the start of the Class Period. ¶¶ 5, 59.

Each of Defendants' purchases of shares after the Rights Agreement was adopted, and agreements to vote their shares with others, constituted a Trigger Event under the agreement. ¶¶ 47, 56, 59. The Antigua court described 1Globe's deceptive practices leading up to Sinovac's 2018 annual shareholder meeting as 1Globe's "secret plan to take control of" Sinovac. ¶¶ 109, 118-20.

Defendants engaged in all of these deceptive acts to prevent Sinovac from implementing the Poison Pill that would substantially dilute their ownership stake. These tactics violated Defendants' duty under Section 13(d) of the Exchange Act to disclose material changes in ownership above five percent of Sinovac shares, to report a stake above 20% (including the joint stake shared by 1Globe and the Chiang Li Family), to report their purpose for acquiring the stock, and to report agreements to vote their shares with others. ¶¶ 61-62, 67, 71, 77, 82-95. Li and 1Globe then continued this strategy—causing years more of delay—by contesting Sinovac's actions in court, including by bringing suit in Antigua and opposing Sinovac's actions in Delaware and before this Court. ¶¶ 111-15.

The Court has ruled that Plaintiff adequately alleged that these deceptive acts by Defendants caused harm to Sinovac investors based on the "plausible allegations that defendants' conduct interfered with the Rights Agreement, delayed its implementation and caused Sinovac to breach the contract. Those foreseeable results of defendants' conduct allegedly caused plaintiff harm including, inter alia, the suspension of trading by NASDAQ." (MTD Order at 17).

**B.      Defendants' Farfetched Version of Events**

Defendants mischaracterize the course of events here, casting 1Globe as the hero defending ordinary shareholders. This absurd narrative asserts facts without any support and glaringly omits

5

the express findings of the SEC and Antigua courts.

For example, Defendants contend that 1Globe "communicated the extent of its shareholdings and shares held by related parties to the Sinovac board" and "that the committee with the ultimate power to determine if a purchase constitutes a 'Trigger Event' under the Rights Agreement was made aware of 1Globe's holdings." (Mem. at 6, 8). But all that these documents show is that 1Globe and the "Chiang Li Family"—which the SEC described as an "assumed name" that Li uses "to disclose his ownership of such shares in SEC filings" (¶ 45)—communicated in parallel with Sinovac. Defendants ignore the fact, reflected in their own exhibits, that 1Globe obscured the connection between itself and the "Chiang Li Family" to the point that Sinovac stated it had "not been able to confirm the precise nature of the relationship between 1Globe and the Chiang Li Family." (ECF No. 53-2 (Exhibit B to the Declaration of Timothy Perla), at 53). Indeed, the SEC determined that 1Globe and Li engaged in their deceptive purchasing pattern because "even a small increase in beneficial ownership, as determined under the rights plan, risked being deemed a 'trigger event' by Sinovac." (ECF No. 30-3 ("SEC Order") at 5). Even in this action, Defendants do not admit "whether the Trigger [under the Rights Agreement] was in fact met" or that they violated their duties under Section 13(d). (ECF No. 29 (Defendants' Motion to Dismiss Brief) at 5-6 & n.6).

Sinovac is by no means blameless in this course of events. But the point here is that Defendants tried to obscure their triggering of the Rights Agreement so that they could contest its implementation by Sinovac. That is exactly what happened, which caused Sinovac to delay implementation of the Rights Agreement and led directly to the halt in trading of Sinovac's shares on the NASDAQ. ¶¶ 149-54, 128, 178.

Defendants also mischaracterize their actions at Sinovac's Annual Meeting. They contend

that they "never joined" the Sinobioway Group and did not collude with other shareholders prior to the meeting, claiming instead that 1Globe merely "exercised its voting rights as a shareholder of Sinovac to vote for the alternative slate of directors." (Mem. at 6, 9-10). But Defendants do not address the substantial evidence to the contrary, including a recording of 1Globe's meeting with the Sinobioway Group in advance of the Annual Meeting that referred to their group as "conspirators," where the group's counsel cautioned that they must act "smartly," without "leav[ing] any evidence" that they had "formed a 13(d) group." ¶ 170; *see also* SEC Order ¶ 29 (describing how 1Globe and Li "decided to participate in an activist plan" and they were instructed "keep the whole thing strictly confidential from Sinovac").

Defendants also falsely portray 1Globe as the champion of "minority shareholders." (Mem. at 2, 6). Yet 1Globe disclosed in an SEC filing that it sought to participate in the Sinobioway Group's offer to buy all Sinovac shares for only $8 per share—just $1 per share more than the competing offer—by rolling over its shares in the transaction. ¶¶ 92, 108; (Mem. at 9). In other words, 1Globe sought to join the Sinobioway Group in purchasing Sinovac shares *from* minority shareholders at a lowball price, not to protect their interests by seeking out an offer at the highest price possible.

Next, Defendants mischaracterize the Sinovac Board as "retain[ing] discretion to determine whether an investor is an Acquiring Person even if such investor acquires more than 15% of Sinovac's shares." (Mem. at 8). But the provision they cite applies only to someone who becomes an Acquiring Person "inadvertently" and then "divests" the offending shares "as promptly as possible." (Rights Agreement (ECF No. 30-1) Section 1.1). Similarly, Defendants fail to mention that, after the Distribution Date, Rights no longer transfer "in connection with the transfer of the underlying Common Shares," regardless of when Sinovac subsequently decides to conduct an

7

exchange under the agreement. ¶¶ 99, 102, 154.

Defendants also describe the Rights Agreement and Poison Pill as "a drastic measure that risks destroying a company's credibility in the market and has led to value destruction in the rare corporate examples where 'poison pills' have ever been triggered." (Mem. at 7). This purported lesson in corporate governance makes it all-the-more predictable that Defendants' triggering of the Rights Agreement would lead to a halt in trading of Sinovac stock while the implications of their misconduct are resolved. It also does not absolve Defendants of triggering the Rights Agreement or of the harm that their actions has caused to Sinovac's minority shareholders.

In addition, Defendants contest 1Globe's causal role, even though that is irrelevant to their motion. (Mem. at 12). The Court has already ruled that Plaintiff has plausibly alleged that the "foreseeable results of defendants' conduct allegedly caused plaintiff harm including, inter alia, the suspension of trading by NASDAQ." (MTD Order at 17). Those allegations are now subject to discovery and have nothing to do with the topics at issue in the other litigation that Defendants discuss. Defendants' unfounded assertions as to their causal role support conducting, not staying, discovery. Defendants also misconstrue Plaintiff's claim. The halt in trading of Sinovac's stock on the NASDAQ was a foreseeable result of Defendants' entire course of conduct, including their deceptive purchasing scheme, conspiracy at the Annual Meeting, and contesting Sinovac's implementation of the Rights Agreement through years of litigation. Regardless of whether 1Globe wanted the trading halt to occur, it has plainly been trying to delay implementation of the Rights Agreement—which it has succeeded in doing for at least five years. The trading halt is a natural consequence of that effort.

Furthermore, on February 27, 2019, just five days after Sinovac announced that it was implementing the Rights Agreement, 1Globe applied for—and obtained—a "status quo" order

8

from the Delaware court, ensuring that implementation of the Rights Agreement would be delayed pending resolution of the Delaware and Antigua Actions. (*See* 1Globe Capital, LLC's Motion for Entry of a Status Quo Order, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143, 2019 WL 1023526 (Del. Ch. Ct. Feb. 27, 2019) and Order Granting Motion (Del. Ch. Mar. 6, 2019)). This was 1Globe's second attempt to obtain a "status quo" order from the Delaware court. 1Globe initially sought such an order on July 25, 2018. (*See* Defendant-Counterclaim Plaintiff 1Globe Capital, LLC's Motion for Entry of a Status Quo Order, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143, 2018 WL 3620778 (Del. Ch. July 25, 2018)). The Delaware court denied that request without prejudice because it determined that the "application should be presented in the first instance to the court in Antigua," but allowed 1Globe to "renew the application after a ruling has first been obtained from the court in Antigua." Denied Status Quo Order, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143 (Del. Ch. Aug. 8, 2018). 1Globe's obtaining a "status quo" order from the Delaware court after the trading halt began is further evidence of 1Globe's protracted plan to delay Sinovac's implementation of the Rights Agreement, with the trading halt being a predictable result. Even if the trading halt is only needed while Sinovac "work[s] out its plan" to implement the Rights Agreement, and even if Sinovac truly sought to have trading resume "as expeditiously as possible" (Mem. at 12), 1Globe's actions caused the trading halt to begin and caused it to continue indefinitely.

### C.      The Other Pending Litigation

Defendants mischaracterize other litigation arising out of the dispute between Sinovac and 1Globe. The issues that Defendants raise from those other matters are irrelevant to this case, have resolved already, or can be just as easily adjudicated by this Court. Defendants also do not provide

any timetable by which those other matters will be resolved.[2]

At bottom, this action focuses on different issues than these other matters. Here, the key issue is whether Defendants caused Sinovac investors harm by "act[ing] without justification" in a way that "interfered with the Rights Agreement, delayed its implementation and caused Sinovac to breach the contract," resulting in "the suspension of trading [of Sinovac stock] by NASDAQ" so that investors "were unable to trade Sinovac stock at all"—and were thus unable "to access [their] property"—"after the NASDAQ suspended trading in February, 2019." (MTD Order at 16-17). The crux of this case depends on 1Globe's actions in a way that is not at issue in the other matters. For example, Defendants expend much effort in their motion, as they did in their motion to dismiss, discussing whether their actions caused the trading halt of Sinovac stock. The Antigua and Delaware actions between Sinovac and 1Globe have nothing to do with that issue.

**The Antigua Action.** The court in Antigua has ruled against 1Globe at both the initial level and on appeal. Defendants try to portray the court in Antigua ruling against them only on the technical ground that it "needed to reconcile the on-line voting before AGM and the right to amend a motion on the 'floor' of an AGM although Antigua laws are silent on this matter." (Mem. at 13). But the Antigua court made 1Globe's misconduct clear. It ruled that 1Globe had a "secret plan to take control of" Sinovac that led to an "ambush" at the Annual Meeting and "deprived shareholders of the opportunity to make an informed and intelligent decision." ¶¶ 118, 171. The court in Antigua also determined that 1Globe's testimony that it was not aware of the proposed alternative slate

---

[2] The litigation between Sinovac and 1Globe that Defendants say "this Court has already [stayed] *sua sponte*" (Mem. at 5, 12, 16), was first stayed over two-and-a-half years ago because the Court had already been waiting since 2018 for an update on the Antigua litigation and the parties then **agreed** that the stay should continue. *Sinovac Biotech Ltd. v. 1Globe Cap. LLC*, No. 1:18-cv-10421-NMG, ECF Nos. 118, 123 (D. Mass. Mar. 22, 2021). It is also not relevant because it is between Sinovac and 1Globe, and does not involve Sinovac's minority shareholders.

before the Annual Meeting was not credible. For example, the court determined that the 1Globe employee that the Sinobioway Group nominated to the Sinovac Board must have been part of the group's plan because he would not otherwise have accepted the nomination on the spot without 1Globe's approval. ¶ 119. This plan was also shown by the 1Globe employee's actions following the contested Annual Meeting, including "[t]he haste with which he took charge of [Sinovac], even before an official election result was declared" and his being "at a loss to explain why the email address from which his junior colleague sent an anonymous email to [Sinovac] matched the email address of Sinobioway which, on the evidence, had been involved in planning to oust the Incumbent Directors and spreading negative publicity about them." ¶ 119; *see also* Declaration of Michael Grunfeld in Support of Lead Plaintiff's Memorandum of Law Opposition to Defendants' Motion to Stay ("Grunfeld Decl."), Exhibits 1-2. The court in Antigua also held that the Rights Agreement is valid under Antigua law. ¶ 118.

Defendants say that the "Antigua Case is currently on appeal to the court of last resort, the Judicial Committee of the Privy Council, which is expected to rule on the validity of the AGM vote and whether a defensive poison pill is allowed in principle under English law, which applies in Antigua." (Mem. at 4, 13). But the trial and appellate courts in Antigua have already roundly decided these questions against 1Globe based on overwhelming evidence. 1Globe's further appeal does not have any realistic hope of succeeding, and is instead a transparent tactic to further delay implementation of the Rights Agreement. The Antigua appellate court did not even allow 1Globe to appeal further the question of the validity of the Rights Agreement and the Privy Council has not decided whether it will allow that appeal. (Grunfeld Decl., Exhibit 3 (Sinovac 2022 20-F) at 73, Exhibit 4 (Letter, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143 (Del. Ch. Apr. 27, 2023)). The rulings of the Antigua court to date are clear. 1Globe's further appeal to the Privy

11

Council serves its purpose of delaying Sinovac's implementation of the Rights Agreement. The Antigua litigation has been pending since 2018 and even now, 1Globe cannot say when it will be completed.

**The Delaware 1Globe Action.** Sinovac has brought an action against 1Globe in Delaware Chancery Court seeking declaration that 1Globe caused a Trigger Event under the Rights Agreement on or before February 6, 2018. Defendants contend that the Delaware court will rule on "whether the Rights Agreement was validly adopted under Delaware law." (Mem. at 14). But the Antigua court has already ruled on that issue under Antigua law. ¶ 118. The Delaware court has made clear that it will defer to the Antigua court, including Vice Chancellor Laster's statement that he "hope[s] that the courts of Antigua will resolve this dispute under Antiguan law." Order, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143 (Del. Ch. Apr. 8, 2019).[3] At most, the Delaware court will decide whether 1Globe triggered the Rights Agreement—an issue that is not reasonably in dispute and that this Court is equally equipped to make. Indeed, Defendants recognize that the Delaware action will not bear on the issues here since they propose that an "alternative approach would be to stay this case pending the Antigua Case." (Mem. at 16 n.19).

**The Delaware Class Action.** Plaintiff's class action against Sinovac in Delaware Chancery Court is even farther afield from this action because it seeks relief based on harm caused by Sinovac implementing the Rights Agreement as of a date later than it should have. *See* Verified Class Action Complaint ¶¶ 15-17, *MW Gestion v. Sinovac Biotech Ltd.*, No. 2023-0907, 2023 WL

---

[3] The Delaware court has never suggested that it is considering the validity of the Rights Agreement, but rather, only that there is a question as to whether Delaware law may govern the agreement, which "is not presented by" the Delaware action. Order Denying Request for Trial Date in September 2018 ¶ 3, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143 (Del. Ch. July 31, 2018).

5804693 (Del. Ch. Sept. 6, 2023).[4] The date as of which the Rights Agreement should have been implemented is not an element of Plaintiff's tortious interference claim.

Defendants also gratuitously cast Plaintiff as "a French asset manager and not itself a Sinovac shareholder, [that] allegedly obtained assignment of claims from one of its subsidiary funds." (Mem. at 3). This merely reflects the standard relationship between an institutional asset manager and the investment funds that it manages. ¶ 22. Moreover, the SEC describes 1Globe as having "its principal place of business in Boston" and Defendant Li as "a PRC citizen who resides in Boston." (SEC Order ¶¶ 3-4).

## III.    ARGUMENT

A stay should not be granted because of a related proceeding in state court unless there are "extraordinary circumstances" that support a federal court "shrink[ing] from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *KPS & Assocs.*, 318 F.3d at 10. Under the "Colorado River Doctrine,"[5] "[t]he First Circuit looks at a number of factors in determining whether extraordinary circumstances exist, including: (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties." *Provanzano v. Parker*, 796 F. Supp. 2d 247, 256-57 (D. Mass. 2011) (holding "this case does not present extraordinary circumstances justifying a

---

[4] Defendants curiously accuse Plaintiff of making "an admission that is fatal to Plaintiff's theory of tortious interference, [because] the complaint in the Delaware Class Case states that the Sinovac Board learned 'as early as April 2016 and several subsequent times' about the shareholding of 1Globe and related parties." (Mem. at 15). But that allegation is entirely consistent with Plaintiff's theory here that Defendants' obstructive behavior interfered with the Rights Agreement being implemented as it should have been. ¶¶ 149-54, 128, 178.

[5] *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

stay").

The same principles apply where "the parallel action is pending in a foreign court rather than a state court." *Rapid Pharms. AG v. Kachroo*, 180 F. Supp. 3d 96, 100, 102 (D. Mass. 2015) (Gorton, J.) (holding "defendants are unable to establish that this case presents the kind of 'extraordinary' circumstances that demand a stay of proceedings"). Courts apply the following six *Goldhammer* factors "in determining whether to grant a stay because of parallel litigation in a foreign forum": "(1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions." *Pierce Aluminum Co., Inc. v. Masteel Am. Corp.*, No. 23-CV-11431-RGS, 2023 WL 6127418, at *2 (D. Mass. Sept. 19, 2023) (quoting *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 252-53 (D. Mass. 1999)).

### A.    Defendants Do Not Present "Extraordinary Circumstances" Supporting a Stay

A stay is not warranted here because "it is not clear that the issues to be adjudicated in both courts are sufficiently similar so that there is a serious risk of conflicting findings or outcomes." *Spark Energy Gas, LP*, 864 F. Supp. 2d at 218. Sinovac, which is a party in the other actions, "is not a party to this action." *Id.* Moreover, "the issues in the two courts are not identical." *Id.* This case, unlike the other ones that Defendants raise, focuses on whether 1Globe acted "without justification" in a way that "interfered with the Rights Agreement [and] delayed its implementation and caused Sinovac to breach the contract," resulting in "the suspension of trading [of Sinovac stock] by NASDAQ" so that investors "were unable to trade Sinovac stock at all"—and were thus unable "to access [their] property" after "NASDAQ suspended trading in February, 2019." (MTD

14

Order at 16-17; *see also supra* at 10).

The other factors that courts consider also weigh against a stay, and certainly do not present the "extraordinary circumstances" that Defendants must show to sustain one. While the Antigua and Delaware actions between Sinovac and 1Globe (but not the Delaware class action) were filed first, that "is not alone sufficient to overcome the presumption in favor of adjudicating the case in this court," particularly because it is not "clear whether [those actions are] likely to be tried anytime soon." *Spark Energy Gas, LP*, 864 F. Supp. 2d at 220. Defendants' delay in dragging out the Antigua litigation counsels ***against*** a stay here, which would allow them to delay a reckoning for their conduct even longer. Moreover, the Antigua action involves only the issue of "the validity of the Rights Agreement," but not the issue of "whether there was a 'trigger event' under the Rights Agreement." (Grunfeld Decl., Exhibit 1 (2018 Antigua Decision) at 28, ¶ 48). And because the Delaware action has been stayed since April 8, 2019 (Mem. at 14), pending resolution of the Antigua action, the Delaware action is still at its early stages and not likely to be resolved more quickly than this one. In addition, the factor of whether state law controls does not favor a stay because the claim at issue in this litigation is for tortious interference with contract, which is not at issue in any of the other proceedings.[6]

Moreover, there are strong reasons not to stay this action. Because the claim brought here is not brought in the other cases, Plaintiff and the class would be prejudiced because a stay would "delay [their] attempts to vindicate" their "rights for an indefinite amount of time." *Pierce Aluminum Co.*, 2023 WL 6127418, at *5. These other actions involving different parties also, by definition, cannot "adequately protect the interests" of Plaintiff against Defendants here.

---

[6] Even if Delaware or Antigua law needs to be applied to issues related to the Rights Agreement, this factor "does not tilt the balance in favor of" a stay. *Spark Energy Gas, LP*, 864 F. Supp. 2d at 220; (Mem. at 17; *see also supra* at 12).

*Provanzano*, 796 F. Supp. 2d at 256-57; *see also Pierce Aluminum Co.*, 2023 WL 6127418, at \*3 (holding the "adequacy of relief available in the alternative forum" does not support a stay).[7]

Defendants argue that a stay would not prejudice Plaintiff because Plaintiff "filed this lawsuit in August 2022 over three years after the trading suspension started on February 22, 2019." (Mem. at 18). This argument is improperly dismissive of Plaintiff's injury, which is "based on [the] inability" of Plaintiff and the class to "access [their] property" for over four years—and counting. (MTD Order at 16). Every further delay exacerbates that harm. *Pierce Aluminum Co.*, 2023 WL 6127418, at \*5. Moreover, Plaintiff did not learn the full extent of Defendants' misconduct until well after February 22, 2019 and did not file this action earlier because minority shareholders were "stuck in limbo" as a result of Defendants' misconduct. ¶ 122.

Overall, "[w]hen the relevant factors are considered in their totality, in light of the heavy presumption in favor of exercising jurisdiction," Defendants have not presented any "exceptional circumstance" that would justify a stay. *Spark Energy Gas, LP*, 864 F. Supp. 2d at 221.

## B.   Defendants Raise Irrelevant Facts

Rather than focus on the factors that courts apply when assessing whether to grant a stay, Defendants simply appeal to the Court's discretion. (Mem. at 16). They argue that a stay is warranted because (1) it would "conserve judicial and party resources" and (2) there is "a risk of inconsistent rulings." (Mem. at 16-18). But this argument assumes that the other actions should be favored over this one and exists "in all cases implicating *Colorado River* doctrine." *Spark Energy Gas, LP*, 864 F. Supp. 2d at 219. For this reason, "duplication and inefficiency," as well as having the same or related issues "decided by different courts," are "not enough to support a federal

---

[7] The remaining factors that courts consider "have little bearing on this case." *Spark Energy Gas, LP*, 864 F. Supp. 2d at 218.

court's decision to bow out of a case over which it has jurisdiction." *Id.* Indeed, the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* (quoting *Colorado River*, 424 U.S. at 816).

None of the cases that Defendants cite support a stay. (*See* Mem. at 16-17). For example, in *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), the Supreme Court held that a stay should not continue through lengthy appeals of another action. *Id.* at -57. Yet that is what Defendants ask for here as to the Antigua action. Defendants also argue that a stay is warranted under the *Goldhammer* factors. (Mem. at 19). But, as explained above, the factors that they cite—including the difference in parties and issues between this case and the other cases, judicial efficiency, prejudice, adequacy of relief, and convenience—either weigh against a stay or do not present the "extraordinary circumstances" needed to support one. (*See supra* at 14-16).[8]

## IV.    CONCLUSION

For the reasons explained above, the Court should deny Defendants' Motion to Stay in its entirety.

---

[8] The other cases that Defendants cite also dealt with very different circumstances, where other pending cases were much more closely related to the case at hand and public policy concerns supported a stay. (*See* Mem. at 16-17 (citing *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392 (D. Mass. 2022) (holding "the underlying factual dispute is essentially the same" and without a stay in favor of a DOJ action, the defendant would "face multiple private civil actions and a government civil enforcement action at the same time"); *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (holding a stay was in "the public interest" because the "case presents issues of 'public moment'" involving "the administration of a major federal program"); *Promera Health, LLC v. Vireo Sys., Inc.*, No. CV 15-12888-NMG, 2016 WL 861215, at *2, *6 (D. Mass. Jan. 14, 2016) (involving "separate action" between the **same parties**); *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992) (holding courts may stay FIRREA actions "to permit exhaustion of the mandatory administrative claims review process")).

Dated:  November 14, 2023

Respectfully submitted,

/s/ Daryl Andrews
Daryl Andrews (BBO #658523)
Glen DeValerio (BBO #122010)
**ANDREWS DEVALERIO LLP**
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
daryl@andrewsdevalerio.com
glen@andrewsdevalerio.com

*Counsel for Lead Plaintiff MW Gestion and
Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Michael Grunfeld (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff MW Gestion and
Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, Daryl Andrews, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: November 14, 2023

/s/ Daryl Andrews
Daryl Andrews
