# Exhibit 3

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**
**FORM 20-F**

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
   **For the fiscal year ended December 31, 2022**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report
**For the transition period from          to**
Commission file number: 001-32371

# SINOVAC BIOTECH LTD.

(Exact name of Registrant as specified in its charter)

**N/A**
*(Translation of Registrant's name into English)*

**Antigua, West Indies**
(Jurisdiction of incorporation or organization)

**No. 39 Shangdi Xi Road,**
**Haidian District, Beijing 100085**
**People's Republic of China**
(Address of principal executive offices)

**Nan Wang**
**Chief Financial Officer**
**No. 39 Shangdi Xi Road,,**
**Haidian District, Beijing 100085**
**People's Republic of China**
**Tel: +86-10-5693-1800**
**Fax: +86-10-5693-1800**
**E-mail: ir@sinovac.com**
(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Shares, par value $0.001 per share | SVA | The NASDAQ Global Select Market |
| Preferred Share Purchase Rights | | The NASDAQ Global Select Market |

Securities registered or to be registered pursuant to Section 12(g) of the Act:

**None**
(Title of Class)

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act:

**None**
(Title of Class)

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report
**99,502,243 Common Shares and 14,630,813 Series B Convertible Preferred Shares as of December 31, 2022**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

☐ Yes ☒ No

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.

☐ Yes ☒ No

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

☒ Yes ☐ No

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or such shorter period that the registrant was required to submit such files).

☒ Yes ☐ No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or an emerging growth company. See definition of "large accelerated filer," "accelerated filer," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | |
|---|---|---|
| Large accelerated filer ☐ | Accelerated filer ☒ | Non-accelerated filer ☐ |
| | | Emerging growth company ☐ |

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 13(a) of the Exchange Act. ☐

† The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements.☐

Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). ☐

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing:

U.S. GAAP ☒        International Financial Reporting Standards as issued by the International Accounting Standards Board ☐        Other ☐

If "Other" has been checked in response to the previous question, indicate by check mark which financial statement item the registrant has elected to follow.

☐ Item 17 ☐ Item 18

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

☐ Yes ☒ No

(APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS DURING THE PAST FIVE YEARS)

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court.

☐ Yes ☐ No

In September 2010, we entered into another operating lease agreement with SinoBioway with respect to expansion of Sinovac LS' business in research and development activities for an annual lease payment of RMB1.0 million. The lease commenced on September 30, 2010 and has an initial term of five years.

On April 8, 2013, we entered into four supplemental agreements with SinoBioway, under which the expiration date of all operating lease agreements was extended to April 7, 2033.

In 2019, we entered into an operating lease agreement with Dalian Jin Gang Group, the non-controlling shareholder of Sinovac Dalian, to rent refrigeration storage with the space of 2,000 sq.m. with an annual rent amounted RMB0.3 million. The lease commenced on January 1, 2019 and had a term of five years. On June 30, 2019, the lease agreement was amended. The term of the lease was changed to from July 1, 2019 to December 31, 2024, and the annual rent was changed to RMB0.2 million as the space of the leased refrigeration storage was reduced to 1,000 sq.m. In 2019, we also entered into a management service agreement with Dalian Jin Gang Group, pursuant to which it provided us with management service related to the operating lease agreement with an annual management service fee of RMB100,000. The management service agreement was amended on June 30, 2019, and the annual management service fee was changed to RMB44,000.

As of December 31, 2022, $6.4 million in right-of use asset and $6.0 million in current and non-current lease liability are related to the lease with SinoBioway and Jin Gang.

In 2022, we invested in $88.4 million to certain Vivo Capitals funds, where Mr. Shan Fu is the Managing Partner at Vivo Capital.

**Share Options**

See "Item 6. Directors, Senior Management and Employees — B. Compensation — 2003 Stock Option Plan" and "Item 6. Directors, Senior Management and Employees — B. Compensation — 2012 Share Incentive Plan."

**Trust for Incentive**

See "Item 6. Directors, Senior Management and Employees — B. Compensation — Trust for Incentive".

**Indemnification Agreements**

See "Item 6. Directors, Senior Management and Employees — B. Compensation — Indemnification Agreements."

**Employment Agreements; Non-Disclosure, Non-Competition and Proprietary Information Agreement**

See "Item 6. Directors, Senior Management and Employees — B. Compensation — Employment Agreements; Non-Disclosure, Non-Competition and Proprietary Information Agreement."

C.    Interests of Experts and Counsel

Not applicable.

**ITEM 8.  FINANCIAL INFORMATION**

A.    Consolidated Statements and Other Financial Information

We have appended consolidated financial statements filed as part of this annual report.

**Legal and Administrative Proceedings**

We may be subject to legal proceedings, investigations and claims relating to the conduct of our business from time to time.

*US Litigation*

*Delaware Chancery Court Action*

On March 5, 2018, we filed a lawsuit in the Court of Chancery of the State of Delaware seeking a determination whether 1Globe, The Chiang Li Family, OrbiMed and other shareholders of Sinovac Biotech Ltd. had triggered the Rights Agreement by forming a group holding approximately 45% of outstanding shares of Sinovac Biotech Ltd., in excess of the plan's threshold of 15%, and acting in concert prior to the 2017 AGM. The Rights Agreement is intended to promote the fair and equal treatment of all Sinovac shareholders and ensure that no person or group can gain control of Sinovac through undisclosed voting arrangements, open market accumulation or other tactics potentially disadvantaging the interest of all shareholders.

On April 12, 2018, 1Globe filed an amended answer to Sinovac Antigua's complaint, counterclaims, and a third-party complaint against Mr. Weidong Yin alleging, among other allegations, that the Rights Agreement is not valid, that Mr. Weidong Yin and the Buyer Consortium had previously triggered the Rights Agreement, and that 1Globe did not trigger the Rights Agreement. Sinovac Antigua and its board of directors believes that the actions taken by the board of directors were appropriate under the circumstances and that the allegations of the counterclaims and third-party complaint are without merit. 1Globe asks for various measures of equitable relief and also includes a claim for its costs, including attorneys' fees.

On July 31, 2018, following Sinovac Antigua motions for partial summary judgment and an expedited trial date, the Delaware Chancery Court effectively stayed the action pending receipt of a post-trial decision from the Antigua Court in the matter captioned 1Globe Capital, LLC and Sinovac Biotech Ltd., Claim No. ANUHCV 2018/0120. On December 19, 2018, the Antigua Court issued a judgment affirming the validity of Sinovac Antigua's Rights Agreement under Antigua law, and finding that "there was a secret plan to take control" of Sinovac Antigua at the 2017 AGM.

Based upon the Antigua Court's judgment and other facts known to the board of directors, our board of directors determined that the Collaborating Shareholders became Acquiring Persons on or prior to the 2017 AGM and their conduct resulted in a Trigger Event under Sinovac Antigua's Rights Agreement. As a result of becoming Acquiring Persons, the approximately 28.7 million Rights held by the Collaborating Shareholders automatically became void under the terms of the Rights Agreement. Pursuant to the Rights Agreement, our board of directors elected to exchange the approximately 42.4 million valid and outstanding Rights held by Sinovac Antigua's shareholders (not including the Collaborating Shareholders) for a combination of approximately 27.8 million common shares and approximately 14.6 million Series B preferred shares, all of which Sinovac Antigua issued into a trust on February 22, 2019 for the benefit of the holders of the valid and outstanding Rights. See "History and Development of the Company" for additional information.

On March 6, 2019, the Delaware Chancery Court entered a *status quo* order providing that Sinovac Antigua not distribute any of the Exchange Shares to rights holders until the final disposition of the pending Delaware litigation or further order of the Court. On April 8, 2019, the Delaware Chancery Court stayed the Delaware litigation pending the final outcome of 1Globe's appeal of the Antigua Judgment. The Antigua litigation is ongoing, see "– Antigua Litigation" below, and therefore the Delaware Chancery Court action remains stayed.

*Massachusetts District Court Actions*

On March 5, 2018, Sinovac Antigua also filed a lawsuit in the United States District Court for Massachusetts alleging violations of Section 13(d) of the Securities Exchange Act of 1934 by 1Globe and The Chiang Li Family. The lawsuit alleges, among other things, that the defendant shareholders failed to make required disclosures on Schedule 13D regarding their intentions to attempt to replace Sinovac Antigua's board of directors.

On April 9, 2018, we received a document request from the SEC requesting all of our documents concerning 1Globe, the Chiang Li Family, OrbiMed, certain other shareholders, and their affiliates. We have been cooperating with the SEC. We understand the SEC is investigating whether 1Globe, and possibly other shareholders, violated the U.S. securities laws. We do not have any information to suggest the SEC is investigating the actions of Sinovac Antigua or its officers and directors.

On May 21, 2018, 1Globe answered and filed counterclaims against Sinovac Antigua and certain of its executives, alleging violations of Section 10(b) of the Exchange Act and various state law claims. In response to Sinovac Antigua motion to dismiss 1Globe's counterclaims, on August 1, 2018, 1Globe filed amended counterclaims against Sinovac Antigua and certain of its executives, alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5, as well as state law claims of abuse of process, fraudulent misrepresentation, negligent misrepresentation, and aiding and abetting such violations, primarily arising out of allegedly false and/or misleading statements made by us regarding our business, operational, and financial results.

On August 17, 2018, the Massachusetts Court granted a consent motion to extend the deadline for Sinovac Antigua's response to 1Globe's counterclaims (and for any subsequent opposition by 1Globe) until after the Antigua Court issued a ruling in the matter captioned 1Globe Capital, LLC and Sinovac Biotech Ltd., Claim No. ANUHCV 2018/0120. On December 19, 2018, the Antigua Court issued a judgment, which 1Globe appealed on January 29, 2019. Per the Massachusetts Court's order, the parties have filed periodic status reports regarding the pending court proceedings in Antigua. No date for Sinovac Antigua's response to 1Globe's counterclaims has been set. We are vigorously pursuing this lawsuit; however, we cannot predict whether an ultimate outcome will be favorable or unfavorable, nor estimate the amount or range of potential loss (if any) at this time.

Also on August 1, 2018, 1Globe filed a motion for preliminary injunction seeking to enjoin Sinovac Antigua from, inter alia, altering its capital structure. On October 15, 2018, the Massachusetts Court denied 1Globe's motion. On November 14, 2018, 1Globe filed an appeal of the denial of its motion for preliminary injunction to the United States Court of Appeals for the First Circuit. On January 10, 2019, 1Globe filed a motion to hold its appeal in abeyance pending the outcome of its separate appeal of the Antigua Court's judgment, which Sinovac Antigua opposed. In October 2019, 1Globe voluntarily dismissed the appeal.

72

Separately, Heng Ren Investments LP ("Heng Ren") filed suit against Sinovac Antigua and Weidong Yin for alleged breach of fiduciary duties and wrongful equity dilution on May 31, 2019, in Massachusetts state court. Sinovac Antigua moved the matter from state court to the United States District Court for the District of Massachusetts. Subsequently, on April 29, 2021, Heng Ren filed an amended complaint which alleged that Mr. Yin breached fiduciary duties owed to minority shareholders, that Sinovac Antigua aided and abetted breaches of fiduciary duties, and that both Sinovac Antigua and Mr. Yin engaged in wrongful equity dilution. Heng Ren requested damages, attorneys' fees, and prejudgment interest. On September 14, 2020, Sinovac Antigua filed a motion to dismiss Heng Ren's claims. In July 2021, Sinovac moved to dismiss Heng Ren's amended complaint in the federal court in Massachusetts. On March 4, 2022, the court granted the motion as to the breach of fiduciary duty claims and denied the motion as to the wrongful equity dilution claim, and denied reconsideration of its decision on the motion. Sinovac has answered the complaint. On February 15, 2023, the court stayed discovery in the Heng Ren matter pending the resolution of an outstanding motion to dismiss filed in a purported shareholder's matter.

On December 5, 2022, a purported shareholder filed a putative class action complaint in United States District Court for the District of Massachusetts, asserting a claim under Section 204 of the Antigua and Barbuda International Business Corporations Act related to the PIPE transaction, alleging that all shareholders were harmed in an identical manner to one another by the PIPE transaction because the shares that were issued in the PIPE transaction allegedly undervalued Sinovac and all shareholders were purportedly wrongfully diluted as a result. The purported shareholder is represented by the same attorney who represents Heng Ren, and requests damages, attorneys' fees, and prejudgment interest. On January 18, 2023, Sinovac filed a motion to dismiss. The motion was fully briefed as of March 9, 2023, and is currently pending before the court.

On January 19, 2023, Sinovac filed a motion to stay the Heng Ren action pending the resolution of the putative class action. On February 16, 2023, Massachusetts federal court stayed the Heng Ren action.

*Antigua Litigation*

On March 13, 2018, 1Globe filed a complaint against Sinovac Antigua in the Antigua Court. The complaint seeks a declaration that the five persons purportedly proposed on the Non-Public Submission at the 2017 AGM were elected as directors of Sinovac Antigua at that meeting, an order of the Antigua Court that those directors be installed as Sinovac Antigua's board of directors, and a declaration that any actions taken on behalf of Sinovac Antigua at the direction of the board of directors since the 2017 AGM are null and void. On April 10, 2018, 1Globe filed a notice of application in the Antigua Court seeking an order declaring the result of the disputed election, an urgent order restraining Sinovac Antigua's board of directors from acting, pending determination of the dispute, including acting to initiate or continue litigation against the Shareholder Group, and other related relief. We attended the first hearing on May 9, 2018. In July 2018, the Antigua court heard an application by 1Globe for interim injunctive relief preventing Sinovac Antigua from exercising its rights under the Rights Agreement. This application was unsuccessful, but the judge set an expedited timetable to trial. The trial of the matter took place from December 3 to 5, 2018. On December 19, 2018, the judge handed down his judgment, finding in Sinovac Antigua's favor in full, dismissing 1Globe's claim and declaring that the Rights Agreement was validly adopted as a matter of Antigua law. On January 29, 2019, 1Globe filed a Notice of Appeal. On March 4, 2019, 1Globe filed an application for urgent interim relief, seeking an injunction to prevent Sinovac Antigua from continuing to implement its Rights Agreement until the resolution of the appeal. This urgent interim relief application was heard on April 4, 2019, at which the Court of Appeal made an order restraining Sinovac Antigua in similar terms to the Delaware Court order of March 6, 2019, together with restraint from operating the Rights Agreement in any way that affects 1Globe's rights or shareholding until determination of the appeal. 1Globe's appeal of the Antigua Court's Judgment was heard on September 18, 2019. On December 9, 2021, the Court of Appeal handed down its judgment, dismissing all grounds of appeal and upholding the Antigua Judgment. The Court of Appeal also confirmed that Sinovac Antigua's Rights Agreement was consistent with its Articles of Incorporation and By-laws, and Antiguan business law. In January 2022, the Court of Appeal extended the order initially made on April 4, 2019, that restrains Sinovac Antigua from taking further action under its Rights Agreement, including the distribution of the previously issued Exchange Shares, until the conclusion of any appeal to the Privy Council. 1Globe applied for leave to appeal to the Privy Council, and the hearing of that application was held on February 24, 2022, in which the Court of Appeal granted 1Globe leave to appeal certain grounds to the Privy Council. On April 19, 2022, 1Globe renewed its application directly to the Privy Council for leave to appeal on its ground of appeal concerning the validity of the Rights Agreement. On July 13, 2022, 1Globe filed its Notice of Appeal on those grounds on which the Court of Appeal had granted 1Globe leave to appeal. On September 16, 2022, 1Globe filed an application to the Privy Council seeking permission to amend its existing application for permission to appeal and its existing Notice of Appeal, and to seek permission to appeal on another ground rejected by the Court of Appeal concerning the exercise of the Antigua Court's discretion. Sinovac responded on October 21, 2022. On February 15, 2023, the Privy Council made a procedural decision to allow amendment of its existing application for permission to appeal, and decided to deal with procedural and substantive issues together at the Final Hearing. 1Globe has not yet taken steps to list a substantive hearing before the Privy Council. The appeal outcome is therefore pending.

As such, the final appeal is ongoing as of the date of this annual report. We cannot predict or estimate an outcome or economic burden for this case at this time.

*Hong Kong Litigation*

On October 8, 2018, Sinovac became aware that unauthorized documents in respect of Sinovac Hong Kong had been unlawfully filed with the Hong Kong Companies Registry to change the directors of Sinovac Hong Kong from Mr. Weidong Yin and Ms. Nan Wang to Mr. Jianzeng Cao and Mr. Pengfei Li. On October 15, 2018, Mr. Yin and Ms. Nan Wang commenced proceedings HCMP 1731/2018 before the Hong Kong High Court.

73