**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MW GESTION, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:    1:22-cv-11315-NMG |
| v. | ) ) | |
| 1GLOBE CAPITAL LLC et al. | ) ) | |
| Defendants. | ) ) ) ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Defendants respectfully submit this Supplemental Brief in accordance with the Court's

Order dated November 21, 2023, Dkt. No. 59, and in further support of Defendants' Motion to

Stay, Dkt. No. 51.  Defendants respond to each of the Court's questions as follows.

**I.    *Will the Privy Council adjudicate whether the Rights Agreement is permissible under English Law (and if so when) and/or is it governed by Delaware law?***

With respect to the first half of the Court's question, yes, the Privy Council is expected to

adjudicate whether the Rights Agreement is permissible under English law.  Exhibits A, B, and C

hereto evidence this reality.

The submitted filings establish this point unequivocally.  Exhibit A is a Status Report

previously filed in the Delaware Case jointly by Sinovac and 1Globe.  The filing describes the

procedural history of the Privy Council matter and states that "the Privy Council will rule on

whether the Rights Agreement is permitted in principle as a matter of English law."  Ex. A at 3.

Consistent with that, Exhibit B is the "Agreed Precis"[1] filed with the Privy Council on October

---

[1] The Precis is a one-page case summary of the issues agreed by appellant and respondent required under Privy Council Rules.  *See*  https://www.jcpc.uk/docs/composite-rules-and-practice-directions.pdf.

27, 2023, setting for the issues for adjudication before the Privy Council.  Item 3 in the Precis is

titled "The Rights Agreement Issue" and defines the following issue for adjudication:

> *Did the Court of Appeal err in upholding Smith J's finding that the Rights Agreement was valid as a matter of Antiguan law*? In particular, did the Court of Appeal err in (a) failing to disapprove or distinguish Stena; or (b) so far as such arguments are available to 1Globe in its appeal, failing to interfere with the Judge's finding that the Rights Agreement is valid under Antiguan law on the basis that: (i) entry into a rights agreement that (it is alleged) has discriminatory effect or may be triggered by the deployment of pre-existing shareholder rights can never be a lawful exercise of directors' powers; (ii) the Rights Agreement was entered into for an improper purpose and contrary to IBCA ss. 60 and 95; (iii) IBCA ss. 161 and 163 prevent directors from entering into such an agreement without shareholder approval; (iv) shareholders' shares were affected by the adoption or implementation of the Rights Agreement; and/or (v) a rebuttal presumption or reverse burden of proof exists and was not rebutted.

Exhibit B at 1 (emphasis supplied).  Exhibit C is a February 15, 2023 order from the Privy Council

granting permission to appeal.  Ex. C.  Thus, the Privy Council is expected to adjudicate the

validity of the Rights Agreement under English law.

With respect to the second half of the Court's question (concerning Delaware law), the

Privy Council is not expected to address substantive Delaware law issues since the specific Rights

Agreement entered by the Sinovac Board is governed by Delaware law and the lower court did not

deal with substantive issues of Delaware law.  Ex. A at 3.  The Delaware Court has expressed

willingness to adjudicate these issues as necessary.  *See infra* § III (describing expected role of the

Delaware Court of Chancery in this dispute).

With respect to timing, 1Globe's Antiguan counsel expects the Privy Council to announce

its decision during 2024.

## II.    *Does the claim for tortious interference survive if the Rights Agreement is found to have expired in March, 2018?*

No, the tortious interference claim does not survive if the Rights Agreement is found to

have expired in March, 2018, or if it was never valid.  This is so for several reasons.

2

*First*, if the Rights Agreement was valid at inception but expired in March 2018, that would dispose of the tortious interference claim. Plaintiff's surviving tortious interference claim posits that the February 2019 NASDAQ trading halt damaged Plaintiff by preventing the trading of Sinovac shares. *See* Mem. & Order dated August 18, 2023, Dkt. No. 43 (the "MTD Order") at 15, 17 (finding tortious interference claim not preempted insofar as it asserts damage based on the trading halt). As Sinovac's own SEC filings make clear, that trading halt occurred because, in February 2019, the Sinovac Board deemed the Rights Agreement triggered. *See* Ex. D (page from Sinovac Form 20F dated May 1, 2023 stating, "[i]n connection with the Exchange and the issuance of the Exchange Shares into the Shareholder 2019 Rights Exchange Trust, NASDAQ implemented a halt in trading in Sinovac Antigua's common shares in order to facilitate the orderly distribution of the Exchange Shares"). Also, in Sinovac's own fillings in 2019 following the entry of a "status quo order" from the Delaware Court of Chancery, Sinovac pledged to work with NASDAQ "to resume trading of the Common Shares as expeditiously as possible." ECF No. 53-6 (Sinovac 3/19/19 Form 6-K Ex. 99.1). If by February 2019 there was no valid Rights Agreement (because it had expired in March 2018), then there was no contract to serve as the basis for a tortious interference claim at the time the halt occurred notwithstanding which party is responsible for the trading suspension. *See* MTD Order at 16 (identifying elements of tortious interference including contract, breach, and intentional interference without justification); *Kable Prod. Servs., Inc. v. TNG GP*, 2017 WL 2558270, at *5 (Del. Super. Ct. June 13, 2017) (elements of tortious interference with contract claim includes "the existence of a valid and enforceable contract"). Thus, if the Rights Agreement expired in March 2018, the tortious interference claim fails, and it makes sense to await adjudication of that issue in Antigua and/or Delaware.

*Second*, the Antigua and Delaware Cases are also expected to determine whether the Rights

3

Agreement was *ever* valid. *See* Ex. B at 1 (Precis identifying as an issue for adjudication whether Antigua law allows rights agreements). If the Rights Agreement was never a valid contract, that too would dispose of the tortious interference claim because it would mean that there was never a contract for Sinovac to breach nor for Defendants to allegedly interfere with.

*Third*, in addition to adjudicating the validity of the Rights Agreement, the Antigua Case is expected to adjudicate whether the incumbent Sinovac Board was validly removed and the new board elected in February 2018. *See* Ex. B at 1 (setting forth as issue 1 the validity of the reelection). If the Sinovac Board was not validly reelected in February 2018, then—in addition to that Board's purported renewal of the Rights Agreement in March 2018 being invalid—that Board's February 2019 decision to trigger the Rights Agreement (which in turn precipitated the trading halt) also was invalid. In that instance, it would be the wrongful Rights Agreement triggering by Sinovac that unambiguously caused the trading halt on which Plaintiff now claims harm. If the new board was found to be validly elected in February 2018, the new board would be the authoritative board for the Rights Agreement.

*Finally*, if the Rights Agreement expired in March 2018, Plaintiff's allegation that 1Globe's alleged evasion of information delayed Sinovac Board's trigger determination would also fail. In a self-defeating statement, Plaintiff stated in a putative class action complaint filed in Delaware that despite learning that the Rights Agreement had been triggered, "Sinovac's Board … waited until a more opportune time [i.e., February 2019] for their personal interests to declare that the Rights Agreement was triggered." Compl. ¶ 108, *MW Gestion v. Sinovac et al.*, No. 2023-0907 (Sept. 6, 2023). Even if Plaintiff's allegation is valid, Sinovac's Board would not have a valid contract to trigger the Rights Agreement in February 2019 if the Rights Agreement expired in March 2018. The alleged delay of Sinovac Board's February 2019 determination certainly has

nothing to do with 1Globe's settlement with SEC in May 2020.  *See, e.g.*, *id.* ¶ 67 (alleging that February 2019 date is the date "most favorable to the Yin Group" for a trigger to occur).  Sinovac's Board knew the full extent of shareholdings by 1Globe and related parties.  *See* ECF No. 53-2 (Sinovac Amended Proxy Statement) at 52, 39 (stating that "[o]n October 16, 2017, the Special Committee received an email from 1Globe and its affiliates stating, among other things, that they held more than 30% of the Shares …" which followed 1Globe's letter on March 3, 2017 that asked the Sinovac board, among other things, to respect and protect the interests of shareholders" in the privatization).  In the alternative, even if Plaintiff's allegations regarding a breach are correct (which is denied), because the Board did not make a trigger determination before the Rights Agreement expired there is no causation to support a tortious interference claim.  As such, if the Rights Agreement expired in March 2018, the tortious interference claim would not survive regardless of whether the Privy Council rules in favor of the incumbent board or the new board because there would be no valid contract for them to make such a trigger determination as of February 2019.

Thus, for numerous reasons, this case should not proceed without the benefit of expected rulings in the Antigua and Delaware Cases.[2]

### III.    *Does the Delaware Court of Chancery have jurisdiction to decide the validity of the Rights Agreement upon resolution of the Antigua case?*

---

[2] To be responsive to this Court's question, Defendants herein focus only on why the tortious interference claim necessarily fails if the Rights Agreement is invalid or expired or if the incumbent Sinovac board was validly removed at the AGM.  But the converse is not true—even if the Rights Agreement were valid, the tortious interference claim would fail.  For instance, the notion that Defendants caused a NASDAQ trading halt makes no sense.  NASDAQ Rule 4120 (https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/Nasdaq%   20Equity%204)   governs trading halts and does not enable a stockholder like 1Globe to trigger a trading halt.  Consistent with this, the press release that NASDAQ issued when it halted trading says nothing about 1Globe and instead indicates that the halt was initiated due to the need for information from Sinovac.  *See* ECF No. 53-5 (February 22, 2019 NASDAQ press release).

Yes, the Delaware Court of Chancery has jurisdiction.  In that regard, Sinovac allegedly adopted a Rights Agreement governed by Delaware law and initiated litigation in Delaware Court of Chancery on the alleged trigger event in connection with the annual general shareholder meeting ("AGM") vote in February 2018.   No party has challenged the jurisdiction of the Delaware Court of Chancery in the Delaware Case and Defendants are unaware of any reason why the Delaware Court would lack jurisdiction.[3]

Attached hereto as Exhibit E is an Order issued by the Delaware Court dated July 31, 2018 that explains the posture.  The Delaware Court explained that the role of the Delaware Court would be to adjudicate "how Delaware law would govern if the choice-of-law clause in the rights plan selecting Delaware law actually holds up in the face of the internal affairs doctrine."  Ex. E at 3. The Delaware Court then ordered the Delaware Case stayed pending adjudication of the Antigua Case.  Ex. E at 4.

The parties to the Delaware Case reiterated this posture in a joint report to the Court of Chancery, which stated that "1Globe believes that the Privy Council will rule on whether the Rights Agreement is permitted in principle as a matter of English law, but will not rule on the legality of the adoption of the Rights Agreement because the lower court did not examine this issue."  Ex. A at 2.  Because the Sinovac Board entered into a Rights Agreement, which is purportedly governed by Delaware law, the Delaware Court of Chancery is also poised to rule on whether the Rights Agreement was triggered and by which party (management buyout consortium or dissenting shareholders) if the Rights Agreement is found to be validly adopted.

---

[3] Plaintiff MW Gestion also recently filed a class action against the Sinovac and the current board of directors in the Delaware Court of Chancery alleging breach of the Rights Agreement.

6

Accordingly, if the Antiguan courts determine that the Rights Agreement is permitted in principle under English law, then it is expected that the Delaware Court will adjudicate among other issues, the legality of the adoption of the Rights Agreement by Sinovac and if there was a trigger under Delaware law and by which party (management buyout consortium or dissenting shareholders).

### Conclusion

In sum, the Privy Council is expected to adjudicate, among other issues, the validity of the Rights Agreement under English law as well as if the incumbent board was removed and a new board elected at the AGM in February 2018. If the Privy Council finds that the Rights Agreement is not permitted in principle under English law, there will be no need for further proceedings in Delaware concerning whether the Rights Agreement is validly adopted per Delaware law and, if so, whether it was triggered and by whom. Similarly, if the Privy Council finds that the new board, which received the majority vote at the AGM in February 2018, was validly elected, there will also be no need for further proceedings in Delaware concerning the Rights Agreement because the Rights Agreement would have expired in March 2018. Alternatively, if the Privy Council finds that the Rights Agreement is permitted in principle under English law as well as the incumbent board of Sinovac was not validly removed at the 2018 AGM, the Delaware Court is expected to adjudicate the validity of the adoption of the Rights Agreement by Sinovac among other issues. As such, rulings by the Privy Council or Delaware Court will impact whether the tortious interference claim in this case can survive. Thus, this Court should stay this case pending resolution of the Antiqua Case and the Delaware Case.

Dated: November 27, 2023

Respectfully submitted,

/s/ *Michael G. Bongiorno*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Michael G. Bongiorno (BBO # 558748)
Timothy J. Perla (BBO # 660447)
Peter A. Spaeth (BBO # 545202)
Erika M. Schutzman (BBO # 696241)
60 State Street
Boston, MA 02109
617-526-6000 (t)
617-526-5000 (f)
michael.bongiorno@wilmerhale.com
timothy.perla@wilmerhale.com
peter.spaeth@wilmerhale.com
erika.schutzman@wilmerhale.com

*Counsel for Defendants*