**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE 1GLOBE CAPITAL LLC<br>SECURITIES LITIGATION | No.: 1:22-cv-11315-NMG |

**LEAD PLAINTIFF'S SUPPLEMENTAL OPPOSITION BRIEF**

Plaintiff respectfully submits this Supplemental Brief in accordance with the Court's Order dated November 21, 2023 (ECF No. 59), and in opposition to Defendants' Supplemental Brief in support of their Motion to Stay ("Supp. Brief," ECF No. 61).[1]

## I. *Will the Privy Council adjudicate whether the Rights Agreement is permissible under English Law (and if so when) and/or is it governed by Delaware law?*

The Privy Council has not agreed to adjudicate whether the Rights Agreement is permissible under English law. (*See* Plaintiff's Opposition to Defendants' Motion to Stay ("Plaintiff's Opposition," ECF No. 55) at 11 and Exhibit 3 thereto).

Defendants misleadingly state that "the Privy Council is *expected* to adjudicate whether the Rights Agreement is permissible under English law." (Supp. Brief at 1). Their purported evidence, however, states that the Privy Council "reserved, until the final substantive hearing, its decision on whether to grant permission to appeal on" the argument "that the Rights Agreement was entered into in bad faith or for an improper purpose." (ECF No. 62-1 at 2). The Privy Council has made clear that Sinovac is "at liberty to argue at the hearing that the appeal should not be permitted" on this ground. (ECF No. 62-3). Defendants' characterization is even more misleading because they contend that a letter submitted in the Delaware Action "states that 'the Privy Council will rule on whether the Rights Agreement is permitted in principle as a matter of English law'" ("Supp. Brief" at 1), omitting that this is merely what "1Globe believes." (ECF No. 62-1 at 3). And Defendants ignore that the "Agreed Precis" submitted to the Privy Council raises the issue of whether 1Globe should "be granted permission to appeal" this issue. (ECF No. 62-2 ¶ 2).

Moreover, two levels of judicial review in Antigua have already clearly explained that the Rights Agreement is allowed under English law (which applies in Antigua). (*See* ECF No. 55-2

---

[1] The Amended Class Action Complaint is referred to as the "Complaint." (ECF No. 23). Capitalized terms not defined herein have the same meaning as in the Complaint. Internal quotation marks are omitted and emphasis is added, unless noted otherwise below.

(Ex. 1 to Plaintiff's Opposition) ¶¶ 48-60; ECF No. 55-3 (Ex. 2 to Plaintiff's Opposition) ¶¶ 88-110). These clear analyses, combined with the Privy Council's refusal to even agree to hear an appeal on this issue, leave little doubt that this ruling will remain in place.

As for the timing of the Privy Council's decision, despite the fact that the Antigua action has been pending for **over five years**, Defendants are not able to give any more specificity than to state that it **might** be resolved one year from now (and might not). (Supp. Brief at 2).

In addition, although the Privy Council is not expected to address Delaware law, the Delaware Court will defer to the Antigua Court on the validity of the Rights Agreement and 1Globe will be precluded from raising the issue in the Delaware Action. (*See infra* at 5-7).

## II. *Does the claim for tortious interference survive if the Rights Agreement is found to have expired in March, 2018?*

Yes. Moreover, it is exceedingly unlikely that the Rights Agreement will be found to have expired at that time.

Defendants' argument that the Rights Agreement expired in March, 2018 is premised on their claim that 1Globe's insurgent slate of directors was properly elected at Sinovac's Annual Meeting in February 2018. (*See* Supp. Brief at 4; Mot. to Stay Brief (ECF No. 52) at 2, 4, 10, 13-14 (arguing that "[i]f the JCPC rules in favor of 1Globe on the validity of the 2018 AGM Election," then the "Rights Agreement will necessarily be unenforceable because [it] expired in March 2018 and only was extended" by "the ousted Disputed Board after the 2018 AGM Election")). In other words, Defendants' argument that the Rights Agreement expired in March 2018 stems from their argument that **everything** that Sinovac's Board did after the Annual Meeting is not valid. Such a result would require the enormously complicated and impracticable unwinding of all actions of Sinovac's Board over the last five years overseeing the affairs of a company that makes one of the world's key COVID vaccines, among other important vaccines. (Complaint ¶¶ 31-32).

Courts do not allow rescission remedies that involve the unwinding of past transactions when it "is not practical" to do so because of events that have transpired in the interim. *Interim Healthcare, Inc. v. Sherion Corp.*, 2003 WL 22902879, at *9 (Del. Ch. Nov. 19, 2003); *see also Stegemeier v. Magness*, 728 A.2d 557, 565 (Del. 1999) (holding "it is clear that the transaction can not be rescinded because [Magness] has built homes on the land and sold all of it to third parties").[2] This is especially so the more time that has passed, making it "all but impossible to unwind [the] transaction." *Interim Healthcare*, 2003 WL 22902879, at *9 (addressing "the sale of a company which occurred more than six years ago"); *Winston v. Mandor*, 710 A.2d 831, 834 (Del. Ch. 1996) (rescission was "impracticable" where "the transactions were completed one full year ago").

In these situations, courts award *__prospective__* relief only. In the unlikely event that Sinovac's incumbent Board is determined to have been invalidly elected at the Annual Meeting in 2018, prospective relief can easily address Defendants' concerns, such as by awarding monetary damages, requiring redress at the Board level going forward, or halting further implementation of the Rights Agreement. But even if those types of actions take place in the future, that will not change Sinovac's earlier breach of the Rights Agreement by declaring its implementation in February 2019. There also is no redress that 1Globe might receive in its actions against Sinovac that would undo the harm that it has already caused Plaintiff as a result of Plaintiff's not having access to its Sinovac shares since the trading halt began in early 2019. (ECF No. 43 at 15-17).

Defendants also do not reckon with the fact that it is extremely unlikely that the Privy Council will rule that 1Globe's insurgent slate of directors was properly elected at the Annual Meeting in 2018. The conclusion of the lower court in Antigua, which was upheld on appeal, that

---

[2] *See also Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 701, 704 (D. Mass. 1987) ("Since . . . rescission is impossible, plaintiffs now claim damages of principal plus interest, which I have determined to be their right.").

1Globe's directors were not properly elected was based on an extensive factual record, including that 1Globe's "secret plan to take control of" Sinovac led to an "ambush" at the Annual Meeting that "deprived shareholders of the opportunity to make an informed and intelligent decision." (Complaint ¶ 118; *see also* Complaint ¶ 119; ECF No. 55-2 (Ex. 1 to Plaintiff's Opposition) ¶¶ 24-47; ECF No. 55-3 (Ex. 2 to Plaintiff's Opposition) ¶¶ 73-88). The compelling evidence of 1Globe's misconduct even includes an audio recording from a January 8, 2018 meeting between 1Globe and the Sinobioway Group where they discussed their secret plan to "replace the Board of Directors" in a way that avoids detection as "conspirators," with counsel advising that they "do this smartly. Don't leave any evidence to [Sinovac], showing that our shareholders have formed a 13(d) [inaudible] group. This is important." (Complaint ¶¶ 116-17).

In addition, in the unlikely event that the Rights Agreement is found to have expired in March, 2018, Plaintiff's claim for tortious interference would survive for the independent reason that the "Expiration Date" in the Rights Agreement does not apply to the Board's implementation of the agreement through an "exchange" of shares, which it may do "at any time after the occurrence of a Trigger Event." (Rights Agreement (ECF No. 30-1) ¶ 27.1). The Rights Agreement describes in detail the contours of the Expiration Date. For example, the Expiration Date limits the shares to which Rights may attach or when shareholders may independently exercise Rights. (*Id.* at Recitals, ¶ 7.1). But, as Defendants have explained, Sinovac's Board conducting an "Exchange" of Rights is an independent mechanism for their implementation, separate from shareholders exercising them on their own. (*See* Mot. to Stay Brief (ECF No. 52) at 8).[3] And the Distribution Date under the Rights Agreement was long before Defendants contend that it expired in March,

---

[3] Even Defendants concede the possibility that "Plaintiff's allegations regarding a breach are correct" notwithstanding the Rights Agreement expiring in March 2018. (Supp. Brief at 5).

2018. (Complaint ¶¶ 131-48). It is Defendants' contesting that fact that caused Sinovac to delay implementation of the Rights Agreement. (Complaint ¶¶ 149-54).

Lastly, Defendants take their supplemental submission as yet another opportunity to make causations arguments that are both wrong and not responsive to the questions at hand. (*See* Plaintiff's Opposition (ECF No. 55) at 8; Supp. Brief at 3, 4-5 & n.2).

### III.    *Does the Delaware Court of Chancery have jurisdiction to decide the validity of the Rights Agreement upon resolution of the Antigua case?*

The Delaware Chancery Court will not decide the validity of the Rights Agreement upon resolution of the Antigua case because that issue has already been decided by the Antigua Court.[4]

The Antigua court expressly "declared that the Rights Agreement was validly adopted as a matter of Antigua law." (ECF No. 55-2 (Ex. 1 to Plaintiff's Opposition) ¶ 60; *see also supra* at 1-2). Moreover, the Delaware Chancery Court has made clear that it will defer to the Antigua court, including Vice Chancellor Laster's statement that he "hope[s] that the courts of Antigua will resolve this dispute under Antiguan law." (Ex. 1 to Grunfeld Declaration hereto (Order, *Sinovac Biotech Ltd. v. 1Globe Cap., LLC*, No. 2018-0143 (Del. Ch. Apr. 8, 2019)). Indeed, the Antigua Court was clear—based on instruction from the Delaware Court, 1Globe, and Sinovac—that the Antigua Court is the proper authority to "make a declaration on the validity of the Rights Agreement under Antiguan law" and the Delaware Court would be limited "to determin[ing] whether there was a 'trigger event' under the Rights Agreement and whether that . . . operated to dilute the Dissenting Shareholders." (ECF No. 55-2 (Ex. 1 to Plaintiff's Opposition) ¶ 48).

While the Delaware court noted that it has "serious questions about whether the board of directors of an Antiguan corporation can adopt a rights plan and select Delaware law to govern its

---

[4] Regardless of whether this is considered jurisdictional, collateral estoppel precludes the Delaware Court from deciding the issue and the Delaware Court has made clear that it will defer to the Antigua Court.

terms," it also made clear that "the question is ***not presented by this case*** [*i.e.*, the Delaware Action]." (Defendants' Ex. E (ECF No. 62-5) ¶ 3). Moreover, the Delaware Court explained that this legal question is "governed by Antiguan law." (*Id.*). The Delaware Court also made clear that this is a choice-of-law issue on which it will defer to the Antigua Court, not an independent basis to assess the validity of the Rights Agreement. (Ex. 1 to Grunfeld Declaration).

Furthermore, 1Globe could have raised this argument in the Antigua Action. Its failure to do so precludes it from raising it in the Delaware Action as a successive challenge to the issue of the validity of the Rights Agreement that has already been decided in the Antigua Action. *See Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179, at \*5 (D. Del. Nov. 1, 2023) (holding "[t]he Venezuela Parties' argument, even if it is a new argument, cannot prevent the application of collateral estoppel to its already-litigated position"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at \*9 (D. Del. Jan. 14, 2021) (holding party's raising "***new*** arguments in support of its ***old*** position does not defeat application of collateral estoppel" and concluding that new "arguments based on Delaware law does not change the reality that the validity of the writ has already been litigated") (emphasis in original). This preclusion doctrine applies with equal force to foreign judgements, such as the decision by the Antigua Court here. *See Doctor's Assocs., Inc. v. Windham*, 2014 WL 4101568, at \*3 (Del. Super. Ct. Aug. 18, 2014) (holding it is well settled "in Delaware that the doctrines of res judicata and collateral estoppel" apply to "a foreign judgment rendered upon adequate jurisdiction").

Defendants argue that the "Delaware Court explained that the role of the Delaware Court would be to adjudicate 'how Delaware law would govern if the choice-of-law clause in the rights plan selecting Delaware law actually holds up in the face of the internal affairs doctrine.'" (Supp. Brief at 6). But their selective quotation turns the court's ruling on its head. What the Delaware

Court actually said was that it would be "more beneficial for [the Delaware] court to have the benefit of the Antigua Court's views on the law of Antigua and Barbuda" because if the Delaware Court were to address the issue first—which it declined to do—its ruling "may not be of much help to the Antigua Court." (Defendants' Ex. E (ECF No. 62-5) ¶ 8). Defendants are trying to draw an artificial line between the issue of whether "the Rights Agreement is permitted in principle under English law," which Defendants say the Antigua court is addressing, and "the legality of the adoption of the Rights Agreement by Sinovac," which Defendants say the Delaware Court "is **expected**" to adjudicate. (Supp. Brief at 7; *id.* at 2, 3-4, 6). This false distinction mischaracterizes the record because the Antigua Court was clear that it decided **both** the general permissibility of rights agreements under Antigua/English law and that "the Rights Agreement was validly adopted as a matter of Antigua law" under the facts presented here. (ECF No. 55-2 (Ex. 1 to Plaintiff's Opposition) ¶¶ 49-52, 58, 60; ECF No. 55-3 (Ex. 2 to Plaintiff's Opposition) ¶¶ 97-110).

## IV.    CONCLUSION

In sum, the Privy Council has not agreed to revisit the two levels of court rulings that have firmly held that the Rights Agreement is valid under English law; there is no telling when the Privy Council will issue its decision on other issues; Plaintiff's tortious interference claim will survive even in the highly unlikely event that the election of Sinovac's incumbent directors at the Annual Meeting in February 2018 is held to be invalid; and the Delaware Chancery Court will not revisit the Antiguan Court's ruling that the Rights Agreement is valid, because collateral estoppel precludes 1Globe from revisiting this issue in the Delaware Action and the Delaware Court has made clear that it will defer to the Antigua Court. For all of these reasons, as well as those set out in Plaintiff's Opposition to Defendants' Motion to Stay, there is no reason to stay this action pending resolution of the actions between 1Globe and Sinovac in Delaware and Antigua that have been pending for over five years and have no end in sight.

Dated:  December 1, 2023

Respectfully submitted,

*/s/  Michael Grunfeld* _____

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Michael Grunfeld (*pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff*
*MW Gestion and the Class*

Daryl Andrews (BBO #658523)
Glen DeValerio (BBO #122010)
**ANDREWS DEVALERIO LLP**
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
daryl@andrewsdevalerio.com

*Counsel for Lead Plaintiff MW Gestion and*
*Liaison Counsel for the Class*

8