UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MW GESTION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 1:22-cv-11315-NMG |
| | ) | Pages 1 to 23 |
| 1GLOBE CAPITAL LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE

MOTION HEARING

December 6, 2023
11:07 a.m.

John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210

Linda Walsh, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210
lwalshsteno@gmail.com

APPEARANCES:

On Behalf of the Plaintiff:

    POMERANTZ LLP
    By: Michael Grunfeld, Esq.
    600 Third Avenue, 20th Floor
    New York, New York 10016
    212-661-1100
    mgrunfeld@pomlaw.com


On Behalf of the Defendants:

    WILMER CUTLER PICKERING HALE AND DORR LLP
    By: Timothy J. Perla, Esq.
        Andrew R. Jumper, Esq.
        Erika M. Schutzman, Esq.
    60 State Street
    Boston, Massachusetts 02109
    617-526-6696
    timothy.perla@wilmerhale.com

    WILMER CUTLER PICKERING HALE AND DORR LLP
    By: Michael G. Bongiorno, Esq.
    7 World Trade Center, 250 Greenwich Street
    New York, New York 10007
    212-937-7220
    michael.bongiorno@wilmerhale.com

                 Proceedings reported and produced
                  by computer-aided stenography.

P R O C E E D I N G S

THE CLERK:  All rise.

Thank you.  You may be seated.

This is Civil Action number 22-11315, MW Gestion versus 1Globe Capital LLC, et al.

Will counsel please identify themselves for the record.

MR. GRUNFELD:  Michael Grunfeld from Pomerantz on behalf of the plaintiff, MW Gestion.

THE COURT:  Mr. Grunfeld, good morning.

MR. GRUNFELD:  Good morning, Your Honor.

MR. PERLA:  Good morning, Your Honor.  Timothy Perla from Wilmer Hale for the defense.  With me are Michael Bongiorno, Erika Schutzman, and Andrew Jumper.

THE COURT:  Mr. Perla, good morning to you.  And is it Mr. Bongiorno?

MR. BONGIORNO:  Yes, Your Honor.

THE COURT:  And Mr. Jumper.

MR. JUMPER:  Yes, Your Honor.

THE COURT:  And Ms. Shutzman.

MS. SHUTZMAN:  Yes.  Good morning.

THE COURT:  Good morning to you all.  All right.

Please be seated.

We're here on the defendants' motion to stay this action.  And counsel have submitted actually two briefs each,

and I have also read the attached opinion of the Delaware Chancery back in July of 2018, believe it or not.  Five and a half years ago they stayed the Delaware case.  So I am familiar with your positions.

I'm going to give each side about ten minutes to supplement their particular arguments.  I have some questions that I would like you to address.  You don't have to address them now.  But before we leave you will -- I will give each side a brief rebuttal chance.

So my questions are if the Privy Council holds that the rights agreement is invalid as a matter of Antiguan law, does that necessarily render the rights agreement unenforceable even though it is governed by Delaware law?  And would your estimate be Chancery Court deferred to such a decision?

Second question would be, why should this Court expect the Privy Council to rule differently than the Antiguan courts below on the issue of validity of the 2018 directors or corporate election, and what, if anything, has happened in the Delaware Chancery case since July of 2018; that is, the Sinovac/1Globe action, not the class action?

The question for the defendants only is on what basis the defendant believes that the Privy Council will render a decision in the calendar year of 2024?

So defendant is the moving party, so I'll hear from the defendants first.  Will it be Mr. Perla or Mr. Bongiorno?

MR. PERLA:  It will, Your Honor.

THE COURT:  Mr. Perla.

MR. PERLA:  Thank you very much.  I'm going to answer the Court's question as part of the presentation that I'll make and keep it brief, recognizing that the Court has already read the submissions.

THE COURT:  Sure.

MR. PERLA:  My core point is quite simple, and it comes in three parts:  The viability of the rights agreement matters for this case because the existence of a contract is needed for tortious interference.  The validity of the rights agreement is at issue in Antiguan and Delaware, and so our position is that it makes sense to stay this case as a result.

Let me walk through that logic and answer your questions along the way.  I'll start with the easy part.  On the law I think it's probably undisputed that we need a valid contract in order to have a tortious interference with contract claim.  That's right in the motion to dismiss order.  I don't believe the plaintiff is disputing that.  I also believe it's undisputed that the complaint in this case cites the rights agreement as the one and only contract that's at issue.  So that logically tells me that we need to know whether or not the rights agreement is a valid contract in order to have a tortious interference claim.

So let me turn to the procedural posture in

Delaware/Antigua because that's the real question.  Is there any benefit to waiting for those cases to unfold, and of course the defendants posit that there is.

The first question is what exactly is it at issue in those cases, and quite simply, what's at issue in the Delaware and Antiguan cases is they are adjudicating whether the rights agreement is valid.  I have a little bit of difficulty in the supplemental submissions telling whether that's actually a disputed point or not.

Plaintiff's supplemental submission on page 1 acknowledges, as the Court just noted, that the lower courts did pass on the validity of the rights agreement, but then plaintiff spent several pages casting doubt on what, if anything, will come of the Antigua and the Delaware proceedings.

So I do want to start by bringing clarity to that point, which I think will also address one of the Court's questions.  The Antigua and Delaware courts collectively are adjudicating the validity of the rights agreement.  And the easiest way for me to show that is I can show you the plaintiff's own words.

The Court may know that there are actually two cases addressing the breach of the rights agreement.  There's this case, and then plaintiffs -- same plaintiff, same law firm -- also sued Sinovac recently in the Delaware Court of Chancery,

and so the two cases are companion cases.  Sinovac is accused of being the breacher in Chancery Court, and we are accused -- the defendants here are accused of interfering and causing that breach in this Court.  So they're companion cases of sorts. Why am I bringing this up?  If you look at the Delaware case filed in November by the plaintiffs here and you look at paragraph 144 -- it's a public document, but I do have a copy if the Court would like one.  The plaintiffs say with no equivocation that the validity of the rights agreement is at issue in the Delaware and Antigua cases.  So that's their position in the Chancery Court, and that should be their position here.  That is a fact.  We showed -- we provided the Court with copies of the documentation in the Antigua court showing that the Privy Council has four issues, including the validity of the rights agreement.

Now, the plaintiffs have argued the Privy Council may not adjudicate the rights agreement, may decline to do so. That's true.  That is one potential outcome of the Privy Council proceedings, but it doesn't undermine the reason that there should be a stay here because, to go directly to one of the Court's questions, if the Privy Council does not rule on the validity of the rights agreement, that simply means that the lower court ruling will stand, just as would happen if there were a subsequent appeal in the United States.  So whether or not one believes the Privy Council is going to take

up the issue or defer the issue, decline to address the issue, the end of the Antiguan litigation is going to provide us with clarity about whether the rights agreement is valid under Antiguan law.

Plaintiffs also say, and this echos the question by the Court, the plaintiffs believe it's exceedingly unlikely that the Privy Council is going to reverse as to the lower court ruling and say the rights agreement is invalid.  In truth, I'm not going to claim to be able to predict that any more than I claim to predict what the Supreme Court is going to do in this country next term.

To try to provide the Court with information in response to the question:  Why do we think that the court might reverse?  The answer is, as I understand it -- I'm not an Antiguan lawyer, which I suspect I don't have to tell the Court, but my understanding is it is an unsettled novel issue as to whether one can even have a rights agreement in Antigua. And if so, what circumstances would be allowed to adopt it.  So just to give one example.  It may be the law, although I'm not an Antiguan lawyer, it could be argued that one would need a shareholder vote to adopt a rights agreement.  Whether or not that's true is for the foreign court to tell us, and that's exactly an example of why a stay here is appropriate because otherwise the defendants will have no choice but to argue the same issues here because we don't have a final adjudication in

these courts.  We have to preserve our rights.

The plaintiffs have pointed out that it's taken the courts in Antigua five years and counting to adjudicate these issues.  They say it's because of the defendants' delay.  They haven't said what they did to delay.  It's not the case.  It's just that these are difficult issues and there are multiple appeals.

So our position is this Court should not embark on that when the Privy Council is going to provide clarity either by adjudicating the issue or leaving the lower court adjudication in place.

Let me turn briefly to the Delaware court, and I'll address the Court's next question.  The plaintiffs say there may be nothing for the Delaware court to do and that collateral estoppel is going to apply in any event so it can't be that there's anything for the Delaware court to do.  That doesn't undermine the reason for a stay, and I don't believe it's quite correct.

So you're familiar -- the Court has indicated familiarity with Judge Laster's order, so I won't belabor it.  But as I read the order, the court noted -- Vice-Chancellor Laster noted that it is possible that Delaware will have nothing to do, and it's possible that there is a Delaware adjudication to be had.  Why is that?  Because the rights agreement does something a little bit odd.  Sinovac is an

Antigua corporation.  So under the Internal Affairs Doctrine, which is the choice of law principle, one would think that an Antiguan court should acted in an Antiguan rights agreement. But the rights agreement states that Delaware law applies.  And what Judge Laster views is in his order, which is Exhibit E to my supplemental brief.  He says, I don't know if one can do that.  And so Judge Laster decides to await guidance from the court in Antigua and then determine whether or not there's anything to do in Delaware.

So it is certainly the case that Antigua could entirely resolve the issue and Judge -- Vice-Chancellor Laster could find that there's nothing to do in Delaware.  I would note, if that's the case, it doesn't really matter whether we stay this case in favor of just Antigua or Antigua and Delaware because in that world, the two cases are going to end at the same time anyway and collapses into the proposition of when we have the answer from Delaware we go forward here.

But the other possibility is that the Antigua court leaves open an issue that Vice-Chancellor Laster believes is appropriate to address that may be an issue of Delaware law, to the extent Delaware law is found to be applicable to the rights agreement.  In that case, Judge Laster will weigh in on Delaware law, and that's why our stay request embraces both the Antigua court and the Delaware court because, while it is possible that the two cases will end together, it is also

possible, consistent with Vice-Chancellor's stay order, that the Delaware court will weigh in on issues of Delaware law once Antigua has finished.

And to answer the Court's procedural question, I'm not aware of any proceedings occurring in Delaware since the 2018 stay other than periodic status reports jointly by the attorneys.

THE COURT:  So it's clear that Delaware is not going to do anything until the Privy Council decides this case.  Five and a half years he's waited.

MR. PERLA:  Correct, Your Honor.  But that's my understanding.

THE COURT:  Okay.

MR. PERLA:  So that brings me to my final point. Given that the validity of the rights agreement is supposed to be adjudicated in Antigua and/or Delaware, our position is that a stay is sensible.  It's efficient.  As I already alluded to, if we proceeded on this litigation now, we have no choice but to put these same issues before this Court because they haven't been decided yet.  That's an issue of foreign law.  So everybody is going to need foreign law experts.  I am not an Antiguan lawyer but I understand that to be a complicated issue because Antigua in the first instance --

THE COURT:  You are looking at my law clerks, and they're not Antiguan lawyers either.

MR. PERLA:  My apologies.  I was looking over to actually try to project to the reporter, but I apologize for that.

THE COURT:  No, no.  You don't have to apologize for that.  They looked at you when you were my law clerk.

MR. PERLA:  I remember sitting in their chair, but if memory serves me, we were down the hall.  Apologies, Your Honor.

Back to my point, the efficiency of staying this case, we would otherwise be embarking on something that Antigua is already adjudicating and we would be doing it as a matter of foreign law.  There would be foreign law experts.  We would need to take discovery from Sinovac and perhaps its officers concerning the adoption of the rights agreement.  These are things Antigua is already doing.  We should wait to see what happens.

The other problem with proceeding now is conflicting rulings.  What happens if this Court and say the court in Antigua reach opposite conclusions about the validity of the rights agreement?  Obviously conflicting rulings are never a good thing, but it would be particularly a difficult, practical problem here because there are public shareholders throughout the world for Sinovac that are waiting to see whether the rights agreement is valid and whether or not they receive exchange shares under it.

So what happens if two courts made opposite rulings? I don't know the answer to that, but I know how to avoid the problem, and we avoid the problem by simply staying this case. So Your Honor --

THE COURT:  The last question is what knowledge do you have of the Privy Council?  The only experience I've had involves an extradition in Hong Kong that took the Privy Council two years, at least, it might have been two and a half.

MR. PERLA:  So, Your Honor, the only information I have, as I indicated in the briefing, is that I am informed by counsel for 1Globe that is handling that matter that they expect adjudication to conclude in 2024.

THE COURT:  And what is his expectation based upon?

MR. PERLA:  Experience in that court.

THE COURT:  In London?  Is that where it is?

MR. PERLA:  I have to confess, I don't know the geographic location off the top of my head.

THE COURT:  It's a U.K. higher court.

MR. PERLA:  It is.

THE COURT:  I presume it's in London.

MR. PERLA:  That may well be true, Your Honor, but you're correct about the court.

THE COURT:  All right.  Thank you, Mr. Perla.  I'll hear from Mr. Grunfeld.

MR. PERLA:  Thank you, Your Honor.

MR. GRUNFELD:  Thank you, Your Honor.  I'll start by focusing on the validity of the rights agreement because that's what defense counsel has focused on; and the issue of the validity of the rights agreement, it's really already been decided by the Antigua court.  In fact, it's been decided --

THE COURT:  Decided by?

MR. GRUNFELD:  By the Antigua court.  In fact, it's been decided twice by the Antigua court on two levels of review.  So defendants' argument that the validity of the rights agreement is still an open question is really based on heaps of speculation.  They acknowledge that the Privy Council has not even agreed to hear that issue.  If it were really such a novel issue of law, certainly the Privy Council would have agreed to hear the issue.  They agreed to hear other issues in the Antigua appeal, but they have not even decided that the issue of validity of the rights agreement is worth their time to consider.

THE COURT:  Where do you get this, what they have decided?  Have they told you everything that they're going to consider on this appeal?

MR. GRUNFELD:  Yes.  It's part of the exhibits that defendants submitted in their supplemental briefing where it's very clear.

So in Exhibit A to defendants' supplemental briefing, which is docket entry 62-1, on the third page they state -- and

this is a letter submitted by the parties in the Delaware action -- that the Privy Council granted 1Globe's application to amend its notice of appeal and reserved until the final substantive hearings decision on whether to grant permission to appeal on the other two grounds.  If you follow the cross-references, it's clear that those grounds that it hasn't yet decided whether to even hear include the validity of the rights agreement.

THE COURT:  So that doesn't give me a real strong feeling that they're not going to consider this issue.  They're going to wait to decide whether they're going to consider it, maybe depending on what the briefs say, but it doesn't indicate to me that they've decided not to hear that issue.

MR. GRUNFELD:  Well, the point is, Your Honor, that given that there's some amount of discretion on what issues they're willing to hear on appeal, and they have very clearly said they will hear other issues but not this issue of validity of the rights agreement, it signifies that they view that issue as less potentially meritorious than the other issues they have clearly agreed to hear.

And you don't need to take my word for it.  There's also in the record the two decisions by the first two levels of review by the Antigua courts which discuss in detail both why rights agreements are valid in theory under Antigua law and also why the particular rights agreement here is valid under

the facts presented here, including what's allowed by Sinovac's articles of association and other corporate documents.

And so we're not really dealing with the situation where this issue is completely up for grabs in another action. In fact, one of the cases that the defendants cited in their opening motion to stay was a Supreme Court decision that specifically held that there's less reason to stay when you're waiting for the result of subsequent appeals as opposed to an original court's decision, and that's all the more so true here given how long this has all gone on for.

It's clear from defense counsel's discussion just now that even now they can't say for certain when the Privy Council will issue its decision. They don't even know if it will be the next year or later.

And then as with the Delaware court, Vice-Chancellor Laster has made clear in Delaware that he wants to defer to the Antigua court on issues of Antigua law. And even this issue of whether it's allowed for an Antigua company to have a rights agreement under Delaware law, even on that issue Vice-Chancellor Laster said that that itself is an issue of Antigua law, which he would appreciate the Antiguan court's ruling on. So it's clear as a matter of his preference that he's going to defer to rulings from the Antiguan court, but even more so, 1Globe will be precluded as a matter of law from raising the issue of the validity of the rights agreement

before the Delaware court.

In their briefing, although they seem to have moved away from that position in their argument just now, defendants framed the issue of the validity of the rights agreement as an irrevocable matter in terms of what's before the Court in Antigua and as a practical matter in terms of the rights agreement here in terms of what's before the Delaware Chancery Court.  But it's very clear from the opinions of the Antigua court, which we cite in our briefing, that the Antigua court decided both issues.  It decided that rights agreements are valid in principle, and it decided the actual rights agreement adopted by Sinovac is valid here as a matter of Antigua law.

And it's a very straightforward application of collateral estoppel that once an issue has been decided, that issue cannot be raised in a subsequent case even under a new argument.  And the issue here, as Your Honor and both sides have stated many times, the fundamental issue we're talking about is the validity of the rights agreement.  And given that that is decided by the Antigua case, there's complete legal preclusion from that issue being decided in the Delaware case.  So --

THE COURT:  Let me just confirm that you have no other information from Delaware that they have done anything since July of 2018?  In other words, five and a half years there's been no movement in that case, correct?

MR. GRUNFELD:  That's right, Your Honor.  We've reviewed the documents of the Delaware case, and it appears --

THE COURT:  And do you have any reason to doubt the statement of defense counsel that this is likely to be resolved by the Privy Council in the year of 2024?

MR. GRUNFELD:  I do, Your Honor.  If you follow the updates in the various cases, including the Delaware case, and I believe there's another case between Sinovac and 1Globe before Your Honor that was stayed because both Sinovac and 1Globe consented to that case being stayed.  Before it was stayed, there was various status updates by the parties over the course of several years, and they kept on saying, oh, we think that the Antigua decision will happen at time X, and then that time would pass and they would give another deadline.

THE COURT:  That had to do with the decisions made in the Caribbean Island.  This one has to do with the higher court in London, England.  There's a difference, right?

MR. GRUNFELD:  Well, from my understanding of how the Privy Council operates, it's hearing appeals from not just Antigua but from all over the countries that are subject to the Privy Council, many of which are in the Caribbean, and they only hear a couple of cases a year, and the fact that Antigua in the appellate decision was decided in 2021, and we still can't say for certain when the Privy Council will decide the appeal, gives me no confidence that it will be decided next

year as opposed to two years from now or who knows when.

THE COURT:  All right.  Thank you, Mr. Grunfeld.

Do you have any rebuttal, Mr. Perla?

MR. PERLA:  Thank you, Your Honor.  Just a few very brief directly responsive points.

To clarify, the Privy Council has agreed to hear the rights agreement validity issue.  The Privy Council has indicated that Sinovac is entitled during that argument to assert that the matter should not be adjudicated.  That is clear from docket 62-3, which is a certification from the court certifying the appeal and allowing the appeal to proceed -- from the clerk of the Privy Council.  Thank you.  And it indicates respondent is to be at liberty to argue at the hearing that the appeal should not be permitted on the new grounds one and three.  Ground three is the ground we're talking about.

So what's going to happen is during what I understand to be a three-day Privy Council hearing, all of the grounds will be argued, and Sinovac is at liberty to argue that the court should not actually take up the rights agreement ground but it is going to be argued.

The only other point I wanted to make, there was an argument about collateral estoppel which essentially asserts there's going to be nothing for the Delaware court to do because at that point 1Globe will be precluded from making any

arguments.  I don't believe that's the case for the simple reason that if the Antigua court leaves an issue of Delaware law undecided, then there's no decision on the merits to support collateral estoppel.  In other words, if the Delaware court has something to do, it's not because it's collateral estoppel, it's something undecided.  And I think that's apparent from the fact of Vice-Chancellor Laster's stay.  If it were apparent because of collateral estoppel that there is no way Delaware could have anything to do, then the court would dismiss the case, not have stayed it and indicated we're going to see what happens and whether there's anything to do.

The solution to all of this appears to be a temporary stay, perhaps where we report to this Court on the proceedings as we learn more.  The stay I would -- should be in favor of the Antigua courts so that we have the benefit of the Privy Council ruling.  And as to the Delaware court, I would posit that this stay should include Delaware.  Because even if the plaintiffs are correct and there's nothing for the Delaware court to do, then the stay ends when Antigua ends.  If the plaintiffs are incorrect and there's something for Delaware to do, then this Court can revisit, but we would have the benefit of that ruling with the stay.  So that's what we posit should occur here.  Thank you.

THE COURT:  Thank you, Mr. Perla.

Mr. Grunfeld, any rebuttal?

MR. GRUNFELD:  Thank you, Your Honor.

Just two main points.  One is that this is the first I'm hearing from the defense counsel that now their position is that the Privy Council may not actually decide the validity of the rights agreement.  It's very clear that that issue is before the Privy Council.  Defendants have said in their briefing that issues of Delaware law were not raised in the Antigua proceedings.  There's no reason whatsoever to think that the Privy Council will leave that as an open issue beyond just another layer of speculation that the defendants are trying to confuse the matter with.

The second point I wanted to raise is just for all that we're focused on the validity of the rights agreement, I don't want to lose sight of the fact that overall to obtain a stay defendants have the burden to show that there are extraordinary circumstances here, and those are not met for the reasons we set out in our opening brief, including the fundamental ways that this case does not overlap with the other cases.

And even if Your Honor were to conclude that there are certain issues that overlap, that's not a reason for a stay given the difference in parties, the difference in issues, and the clear rulings we have already from the Antigua court.

THE COURT:  All right.  Thank you, Mr. Grunfeld.

I am going to issue a more formal order, but I will

enter the order now.  I am going to stay this case until December 15th, 2024, or the ruling of the Privy Council in this case, whichever occurs sooner, with the requirement that counsel are to give this Court a status report six months from now -- that is, by June 15th of 2024 -- as to the status of the case in the Privy Council, and if there has been any change, the status in the case in the Delaware Chancery Court.

But I will enter a stay that will be contingent upon the Privy Council's decision in this case, not the Delaware Chancery Court's.  But I want to know what's going on six months from now.

Anything else that needs to come to the Court's attention?

MR. GRUNFELD:  No, Your Honor.  Thank you.

MR. PERLA:  No, Your Honor.

THE COURT:  We're adjourned.  Thank you, Counsel.

THE CLERK:  All rise.

(Adjourned, 11:34 a.m.)

CERTIFICATE OF OFFICIAL REPORTER


I, Linda Walsh, Registered Professional Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter, to the best of my skill and ability.

Dated this 7th day of December, 2023.



/s/ Linda Walsh

Linda Walsh, RPR, CRR

Official Court Reporter