1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MW Gestion,                          )
Individually and On Behalf of        )
All Others Similarly Situated,       )
                                     ) No. 1:22-cv-11315-NMG
                    Plaintiffs        )
                                     )
vs.                                  )
                                     )
1Globe Capital, LLC, et al.,         )
                                     )
                    Defendants.       )
                                     )


BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
Status Conference


John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210


March 5, 2025
2:36 p.m.


Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

APPEARANCES:

Michael Grunfeld
Pomerantz, LLP
600 Third Avenue
Ste 20th Floor
New York, NY 10016
212-661-1100
mgrunfeld@pomlaw.com
for Plaintiff.

Erika M. Schutzman
Timothy J. Perla
Wilmer Hale, LLP
60 State Street
Boston, MA 02109
617-526-6590
erika.schutzman@wilmerhale.com
timothy.perla@wilmerhale.com
for Defendants.

Michael G. Bongiorno
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
212-937-7220
michael.bongiorno@wilmerhale.com
for Defendants.

PROCEEDINGS

THE CLERK:  All rise for the Honorable Court.

(The Honorable Court entered.)

THE CLERK:  You may be seated.  Court is now in session.  Your Honor, this is the Civil Matter 22-CV-11315, MW Gestion v. 1 Globe Capital, LLC, status conference.

Would counsel please introduce themselves for the record, beginning with the plaintiff, please.

MR. GRUNFELD:  Good afternoon, your Honor.  Michael Grunfeld from Pomerantz for plaintiff.

THE COURT:  Mr. Grunfeld, good afternoon.

MR. BONGIORNO:  Good afternoon, your Honor.  Mike Bongiorno from Wilmer Hale for the defendants.

THE COURT:  Mr. Bongiorno, good morning.

MR. SCHUTZMAN:  Good morning, your Honor.  Erika Schutzman, Wilmer Hale, for the defendants.

MR. PERLA:  Good afternoon, your Honor.  Timothy Perla for the defendants.

THE COURT:  Good afternoon to you all.

We're here on a status conference in which I have received a status report about a month ago in which I am informed that the case, has finally been resolved, what we're calling the Antigua case by a decision of the Judicial Committee of the Privy Counsel in Great Britain, which seemed to resolve the issue that was before the Court many years ago

or several years ago.

Has there been a resolution, Mr. Grunfeld, in the meantime?

MR. GRUNFELD:  Thank you, your Honor.  So I've discussed with counsel for defendants and explained that plaintiffs plan to seek to amend the complaint.  So plaintiffs don't plan to continue to pursue the tortious interference with contract claim that the Court previously ruled on but planned to seek to amend the complaint, taking into account the Privy Counsel's decision.

THE COURT:  Amended in what sense?

MR. GRUNFELD:  At the very least, plaintiffs plan to make a claim for tortious interference with business relationship and that the Court's prior ruling already found that the plaintiff adequately alleged key elements of the tortious interference with contract claim that overlap with the claim for tortious interference with business relations, but this new claim does not require a valid contract.  So plaintiffs submit that they continue to have that claim available to them.

THE COURT:  All right.  Does the defendant wish to respond?  Mr. Bongiorno?

MR. BONGIORNO:  Well, certainly, your Honor.  We haven't seen this amended complaint.  We're shocked by the notion that this is what they're going to do now.  They fought

very hard against a stay.  Mr. Perla argued that with Mr. Grunfeld before Christmas in 2023.  We never once heard, it's okay if the Antigua court invalidates this contract because we have another claim we can make anyway.

We've been sitting here for 15 months now.  In December of this past year, which we haven't heard yet from Antigua, we updated the Court and the Court extended the stay through six months through June of this year.  So, in theory, we would have been sitting around for close to 2 years, more like 3 years when you start with where the complaint was filed, and we've never heard about this.  We've never heard about this.

Without -- I sincerely say Mr. Grunfeld is a very intelligent lawyer and Pomerantz is an excellent plaintiff firm.  They're adversaries.  We go against them all the time. They could have figured this out a long time ago if this was a real claim.  What on earth is going on here?  Why did we sit here for a year and a half?

Pleading in the alternative happens every day. There's a contract, tortious interference with contracts and, oh, by the way, if there isn't a contract, take a look at what's happening behind door number two.  We'll pursue that one.  This case would be over by now one way or the other if they said that.  Instead, here we are.  So we're not --

THE COURT:  I understand your position and I share

some of the initial reaction, but I'm going to give the plaintiff an opportunity to try to persuade me otherwise.

How long do you think you need, Mr. Grunfeld, to file this motion with supporting memoranda?  And it better be quick.

MR. GRUNFELD:  We would do so within three weeks.

THE COURT:  Two weeks.  Two weeks from today, which is what?  The 19th of March.  Plaintiffs will file a motion for leave to file an amended complaint and the reasons therefore.

How long do you need to respond to that, Mr. Bongiorno?

MR. BONGIORNO:  I'd ask for three weeks, your Honor.

THE COURT:  I'll give you two weeks.

MR. BONGIORNO:  I had a feeling.

THE COURT:  This matter, as you've alluded to, has been around a long time and it needs to be moved along.  I'm doing this in my head.  The 19th plus two weeks is what?

THE CLERK:  April 2nd, Judge.

THE COURT:  April 2nd for oppositions.  Then I will try to resolve the matter as soon as possible or at least promptly and we'll go from there and see what happens.

Is there anything else that needs to come to my attention in this regard?  Mr. Grunfeld?

MR. GRUNFELD:  I would just respond briefly to the points Mr. Bongiorno made, if that's okay with your Honor.

THE COURT:  Yeah, you can.

MR. GRUNFELD:  I would just note that the reason why this thing wasn't included before is because the case law states that it's extremely similar to the tortious interference with contract claim.  So there was no need for this claim while there was a valid contract.  None of the points that Mr. Bongiorno was raising were actually legal points.  They were just arguing about the timeline.

THE COURT:  Why didn't you argue it in the alternative, that even if there isn't a contract, there are business relations that were tortiously interfered with?

MR. GRUNFELD:  Well, at that point, there was already two court decisions from two levels of the court in Antigua holding that the rights agreement was valid.  So it just didn't seem necessary to have the additional nearly duplicative claim at that point in time.  And plaintiffs submit that --

THE COURT:  Wasn't that the issue that was before the Privy Counsel, the Judicial Committee of the Privy Counsel, which is the court of last resort in the United Kingdom? Wasn't that the issue, whether or not there was a contract?

MR. GRUNFELD:  That was part of the what the Privy Counsel was deciding, but there was already two court decisions prior to that, and plaintiff submits that defendants still would have sought the very same stay if they saw it even if there was this alternative claim in the complaint because of the Privy Counsel decision was still pending at that time.

THE COURT:  But we wouldn't have to wait for the two plus years it took Antigua to decide it and get it up to London if the argument had been in the alternative.  It doesn't matter whether there's a contract.  There were business relationships that weren't part of the contract that were interfered with.  So why do we need to go to England?  Why couldn't you have said that?

MR. GRUNFELD:  Plaintiff submits that, even had we said that, there still would have been this tortious interference with contract claims as well.  So we would have been waiting for the Privy Counsel decision.

THE COURT:  I'll wait until I see your papers, but I do intend to move this case along.  It has been pending for almost three years.  When, in fact, was it filed in 2022?  Does anybody have a date?  I guess I do.  March 22, 2022.  It's coming up on its -- wait a minute.  Is that right?

MR. BONGIORNO:  August 16th of 2022, your Honor.

THE COURT:  So it's not quite three years old but it will be three years old this summer, and I don't like to have civil cases on my docket for more than three years.  So I'm going to do everything I can to get this matter, even if I allow an amendment to the complaint, there's going to be an expedited effort to get it resolved sooner rather than later.

Anything else from the defendants' side that I should know about, Mr. Bongiorno?

MR. BONGIORNO:  No, your Honor.

THE COURT:  Then we have the dates.  I'll get something from the plaintiff in two weeks and something from the defendant in four weeks and try to resolve it within that month.

We're adjourned.  Thank you.

THE CLERK:  All rise for the Honorable.

(The Honorable Court exited.)

(Adjourned, 2:46 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS    )

I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken March 5, 2025 in the above-entitled matter to the best of my skill and ability.

/s/ Kristin M. Kelley                    March 13, 2025

Kristin M. Kelley, RPR, CRR                    Date
Official Court Reporter