**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MW GESTION, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>1GLOBE CAPITAL LLC, JIAQIANG LI, CHIANG LI FAMILY, JEFF Li, and LINDA LI<br><br>Defendants. | Case No.: 1:22-cv-11315-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**THE SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 3

    A.  The Proposed Second Amended Complaint is Not Futile ..................................... 4

        1.  Plaintiff's Tortious Interference Claims Are Not Futile ............................ 4

        2.  The Court's Causation Ruling Continues to Apply ................................... 9

        3.  Plaintiff's Tortious Interference Claims Are Substantially Related and Relate Back to the Amended Complaint ................................................... 10

        4.  Plaintiff's Claims Are Not Futile ............................................................ 13

    B.  Defendants Cannot Establish Undue Delay or Prejudice ..................................... 13

        1.  Plaintiff Has Not Unduly Delayed ........................................................... 13

        2.  Any Delay Has Been Caused by 1Globe ................................................. 16

        3.  Defendants will not be Prejudiced by the Amendment ........................... 18

    C.  Lead Plaintiff Did Not Act in Bad Faith or With a Dilatory Motive .................... 20

III. CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amyndas Pharms., S.A. v. Zealand Pharma A/S,*
48 F.4th 18 (1st Cir. 2022) ........................................................................................ *passim*

*Barr Inc. v. Studio One, Inc.,*
146 F. Supp. 3d 375 (D. Mass. 2015) .......................................................................5

*Blu Homes, Inc. v. Kaufmann,*
2011 WL 3290362 (D. Mass. July 29, 2011)..........................................................4, 18

*Bos. Tea Co. v. Bay Valley, LLC,*
2018 WL 4211313 (S.D.N.Y. Sept. 4, 2018)...........................................................5

*Bove v. Goldberg,*
2007 WL 446014 (Del. Super. Apr. 9, 2020) ..........................................................6

*Cabana v. Forcier,*
200 F.R.D. 9 (D. Mass. 2001) (Gorton, J.) ..............................................................18

*Cabrera v. Black & Veatch Special Project Corp.,*
2024 WL 1435146 (D.D.C. Mar. 28, 2024)..............................................................14, 19

*Cal. ex rel. Wible v. Warner Chilcott PLC,*
2014 WL 1338285 (D. Mass. Apr. 1, 2014) (Gorton, J.).........................................14

*CMRK, Inc. v. Tampico Trading Grp., LLC,*
2017 WL 4798127 (D. Mass. Oct. 24, 2017).............................................................20

*Cojocaru v. CUNY,*
2020 WL 5768723 (S.D.N.Y. Sept. 28, 2020)..........................................................5

*Dahl v. Bain Cap. Ptnrs.,*
878 F. Supp. 2d 298 (D. Mass. 2012) .......................................................................12

*DiMare ex rel. DiMare, Inc. v. DiMare,*
2021 WL 3493553 (Mass. Super. Apr. 28, 2021).....................................................8

*Diotima Shipping Corp. v. Chase, Leavitt & Co.,*
102 F.R.D. 532 (D. Me. 1984)...................................................................................16

*Doelger v. JPMorgan Chase Bank, N.A.,*
2024 WL 4727989 (D. Mass. Mar. 25, 2024)...........................................................5

*E. Moran, Inc. v. Tomgal, LLC*,
2023 WL 6307000 (D.P.R. Sept. 28, 2023)................................................................4, 13, 20

*Eaton Vance Senior Income Tr. v. Saba Cap. Master Fund*,
2021 WL 2785120 (Mass. Super. Apr. 7, 2021)........................................................7

*Encite LLC v. Soni*,
2011 WL 5920896 (Del. Ch. Nov. 28, 2011) ............................................................7

*Fiorillo v. Winiker*,
85 F. Supp. 3d 565 (D. Mass. 2015) ...........................................................2, 4, 5, 11

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................................................4

*Garcia v. Corr. Med. Serv., Inc.*,
2016 WL 7377103 (D.N.J. Dec. 20, 2016)................................................................19

*Genereux v. Am. Beryllia Corp.*,
577 F.3d 350 (1st Cir. 2009)......................................................................................10

*Green Mtn. Realty Corp. v. Leonard*,
2010 WL 1461590 (D. Mass. Apr. 9, 2010) ..............................................................12

*Green v. Sirchie Acquis. Co.*,
633 F. Supp. 3d 393 (D. Mass. 2022) ........................................................................10

*Hamann v. Carpenter*,
937 F.3d 86 (1st Cir. 2019)........................................................................................11

*Harris v. Carter*,
582 A.2d 222 (Del. Ch. 1990)....................................................................................8

*Iconics, Inc. v. Massaro*,
2016 WL 199407 (D. Mass. Jan. 15, 2016) ...............................................................11, 12

*In re GlassHouse Techs., Inc.*,
604 B.R. 600 (Bankr. D. Mass. 2019), *aff'd*, 654 B.R. 190 (D. Mass. 2023)............5

*In re Lupron Mktg. & Sales Pracs. Litig.*,
295 F. Supp. 2d 148 (D. Mass. 2003) ........................................................................10

*In re Morrow Park Holding LLC*,
2020 WL 3415649 (Del. Ch. June 22, 2020)..............................................................5

*Klunder v. Brown Univ.*,
778 F.3d 24 (1st Cir. 2015)........................................................................................19

iii

*Malpiede v. Townson*,
 780 A.2d 1075 (Del. 2001) ...............................................................................6, 7

*MIT v. Shire PLC*,
 2014 WL 404696 (D. Mass. Feb. 2, 2014) .......................................................4, 13

*Murphy v. West*,
 533 F. Supp. 2d 312 (W.D.N.Y. 2008) ................................................................12

*O'Donnell v. Robert Half Int'l*,
 429 F. Supp. 2d 246 (D. Mass. 2006) (Gorton, J.).............................................19, 20

*Oliver v. Bos. Univ.*,
 2006 WL 1064169 (Del. Ch. Apr. 14, 2006) .........................................................8

*Pasternack v. Shrader*,
 863 F.3d 162 (2d Cir. 2017)...........................................................................18, 20

*Perry v. Rose*,
 2012 WL 3903475 (D. Mass. Sept. 6, 2012) .........................................................16

*Quaak v. Dexia, S.A.*,
 445 F. Supp. 2d 130 (D. Mass. 2006) ...............................................................12, 13

*Republic Maximal LLC v. Romulus Cap. Partners II, LLC*,
 2024 WL 3169798 (D. Mass. June 25, 2024) .....................................................3, 10

*Sanchez v. Pereira-Castillo*,
 590 F.3d 31 (1st Cir. 2009)................................................................................10

*Savoy v. White*,
 139 F.R.D. 265 (D. Mass. 1991).............................................................3, 14, 18, 19

*Sensitech, Inc. v. LimeStone FZE*,
 581 F. Supp. 3d 342 (D. Mass. 2022) (Gorton, J.)..............................................5, 6

*Sonicsolutions Algae Control, LLC v. Diversified Power Int'l, LLC*,
 2021 WL 9096701 (D. Mass. Sept. 9, 2021) ...........................................................11

*Stumpf v. Garvey*,
 2005 WL 2127674 (D.N.H. Sept. 2, 2005)..............................................................10

*Trindade v. Grove Servs.*,
 91 F.4th 486 (1st Cir. 2024)...........................................................................12, 13

*Tutor Perini Corp. v. Banc of Am. Sec. LLC*,
 2013 WL 5376023 (D. Mass. Sept. 24, 2013) .........................................................10

*U.S. Bank Nat'l Ass'n v. James*,
 680 F. Supp. 2d 259 (D. Me. 2010) ...............................................................................19, 20

*Weinreich v. Brooks*,
 340 F.R.D. 57 (D. Mass. 2021) (Gorton, J.) ...................................................................14, 19

*West v. Access Control Related Enters., LLC*,
 2019 WL 2385863 (Del. Super. Ct. June 5, 2019) ................................................................5

*Williams Cos. S'holder Litig.*, 2021 WL 754593 (Del. Ch. Feb.26, 2021), *aff'd*,
 264 A.3d 641 (Del. 2021) ......................................................................................................7

*Wortley v. Camplin*,
 333 F.3d 284 (1st Cir. 2003) ................................................................................................10

**Statutes**

Securities Exchange Act of 1934 ......................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12 .....................................................................................................................4

Fed. R. Civ. P. 15 ............................................................................................................. *passim*

Lead Plaintiff MW Gestion ("Plaintiff") respectfully submits this Memo of Law in Support of its Motion For Leave to File the Second Amended Complaint. The Proposed Second Amended Complaint ("PSAC") and a redline to the Amended Complaint (ECF No. 23), are attached as Exhibits ("Exs.") 1-2 to the accompanying Declaration of Michael Grunfeld ("Grunfeld Decl.").[1]

## I.    INTRODUCTION

Defendants engaged in a deceptive scheme, in violation of their duties under Section 13(d) of the Exchange Act, in which they repeatedly purchased Sinovac stock to the point that 1Globe owned over 30% of the Company's shares. These findings were laid out in detail in the SEC Order. The Court has already ruled that Plaintiff adequately alleged that Defendants acted "without justification" because their wrongful conduct entailed "eschew[ing] their Section 13(d) obligations in order to avert implementation of the Rights Agreement and advance the particular interests of the Sinobioway Group" and that this conduct caused Plaintiff's alleged injuries because "the suspension of trading by NASDAQ" was a "foreseeable result[]" of Defendants' wrongful conduct. ECF No. 43 at 16-17.

Plaintiff previously alleged that Defendants' actions tortiously interfered with the Rights Agreement. When Plaintiff filed the prior complaint in December 2022, two levels of review by Antiguan courts had ruled that the Rights Agreement was valid under Antigua law. On January 16, 2025, the Judicial Committee of the Privy Council ("Privy Council") reversed course, ruling the Rights Agreement was not valid under Antigua law. ¶¶ 136-39; Grunfeld Decl., Ex. 3 ¶¶ 70-76.

The PSAC brings claims for tortious interference with business relations to account for the fact that the Rights Agreement is no longer valid. These updated tortious interference claims are similar to the prior tortious interference with contract claim, with the "difference between the two

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the PSAC. Paragraph ("¶_") references are to the PSAC. Citations and internal quotation marks are omitted, and emphasis is added, unless noted otherwise.

torts [being] merely the existence of a contract." *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 571 n.3 (D. Mass. 2015). Indeed, the prior claim is the "contractual counterpart" of the claims in the PSAC and courts "have not consistently distinguished between the two torts" because a claim for tortious interference with contract is "include[d] within [the] ambit" of a claim for tortious interference with business relations. *See infra* at 11. The PSAC therefore brings the same overall tortious interference claim as the prior complaint, modified only to account for the Privy Council's recent decision. This scenario falls well within the types of situations in which plaintiffs are granted leave to amend, which Fed. R. Civ. P. 15(a)(2) dictates should be freely given.

Plaintiff's claim that Defendants tortiously interfered with their business relationship with Sinovac is not futile because it is premised on the exact same conduct by Defendants—their Section 13(d) violations—that the Court already ruled was adequately alleged to be wrongful and to have caused Plaintiff's harm resulting from the inability to access their shares on the NASDAQ, where trading has been halted since February 22, 2019. In addition, Plaintiff's status as a Sinovac shareholder is the type of business relationship that supports a claim for tortious interference with business relations. Defendants knew about that relationship, and that their actions would interfere with it, for the same reasons alleged in the prior complaint, including because the purpose of their conduct was to evade the requirements of Section 13(d) that are intended to protect shareholders.

In addition, Plaintiff's claims "relate back" to the prior complaint because they arise out of the same conduct, transaction, or occurrence that formed the basis of Plaintiff's tortious interference with contract claim. Given their similarity to the tortious interference claim in the prior complaint, which the Court has already ruled was adequately alleged, Plaintiff's claims are certainly not futile under Rule 15(a)(2).

Leave to amend should also be granted because Plaintiff did not unduly delay in bringing

2

the tortious interference claims in the PSAC. When the prior complaint was filed, two levels of review by Antiguan courts had already firmly ruled that the agreement was valid and 1Globe did not yet even have permission to appeal the validity of the Rights Agreement to the Privy Council. Plaintiff could not have been expected to predict the Privy Council's complete reversal over two years later. Allowing plaintiffs to amend when subsequent developments reveal deficiencies in their earlier pleading is a paradigmatic example of when leave should be granted, regardless of how much time has elapsed since the earlier pleading. Furthermore, any delay in obtaining the Privy Council's ruling was caused by 1Globe's delay in prosecuting its appeal to the Privy Council.

Plaintiff also did not unduly delay for the additional reason that Defendants will suffer no prejudice from proceeding with this case. Courts "may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." *Savoy v. White*, 139 F.R.D. 265, 268 (D. Mass. 1991). Defendants will not suffer any prejudice because the litigation is at an early stage, with no discovery having taken place as a result of the stay that Defendants requested. The many cases discussed below make clear that prejudicial delay is a consideration only when the amendment will cause a delay in the later stages of litigation, such as discovery or to the trial date (which has not been set here). Furthermore, the ordinary efforts involved in the litigation process required to litigate Plaintiff's claims do not constitute prejudice under Rule 15(a)(2).

Lastly, Plaintiff has not engaged in any bad faith because it is pursuing recourse for Defendants' conduct that the Court has already ruled is adequately alleged to be wrongful and to have caused harm. For all of these reasons, and those explained further below, the Court should grant Plaintiff leave to file the PSAC, which should be "freely give[n]" under Rule 15(a)(2).

## II.    ARGUMENT

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave to amend when justice so requires." *See also Republic Maximal LLC v. Romulus Cap.*

3

*Partners II, LLC*, 2024 WL 3169798, at \*5 (D. Mass. June 25, 2024). The Supreme Court has explained that leave to amend should be "freely given" because the purpose of pleading under the Federal Rules is "to facilitate a proper decision on the merits," not to set the stage for having "one misstep" decide the outcome of the case. *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

In the First Circuit, amendments should be "liberally permitted" absent a showing of undue delay, bad faith or dilatory motive, futility, or undue prejudice to the opposing party. *Blu Homes, Inc. v. Kaufmann*, 2011 WL 3290362, at \*11 (D. Mass. July 29, 2011). The Rule 15(a)(2) standard "puts a thumb on the scale in favor of allowing amendments in non-frivolous cases." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 39 (1st Cir. 2022). Leave to amend should be freely permitted unless there is an "apparent or declared reason" to deny plaintiff's request. *MIT v. Shire PLC*, 2014 WL 404696, at \*10 (D. Mass. Feb. 2, 2014).

## A.   The Proposed Second Amended Complaint is Not Futile

A proposed amended complaint is futile only "if it is either frivolous or contains some fatal defect." *Amyndas Pharms.*, 48 F.4th at 40. Futility is measured under the "liberal criteria" of Rule 15, rather than the standard for motions to dismiss under Rule 12(b)(6). *See E. Moran, Inc. v. Tomgal, LLC*, 2023 WL 6307000, at \*3 (D.P.R. Sept. 28, 2023).

### 1.   Plaintiff's Tortious Interference Claims Are Not Futile

Plaintiff's tortious interference claims in the PSAC are not futile because these claims share core elements with Plaintiff's prior claim for tortious interference with contract that the Court has already ruled was adequately pled. Courts apply the same analysis to claims for tortious interference with contract and tortious interference with business relations, with the "difference between the two torts [being] merely the existence of a contract." *Fiorillo*, 85 F. Supp. 3d at 571 n.3, 572 (holding "complaint states a claim for tortious interference with contractual or business

4

relations"); *see also Sensitech, Inc. v. LimeStone FZE*, 581 F. Supp. 3d 342, 348 (D. Mass. 2022) (Gorton, J.) (holding tortious interference with contract is "contractual counterpart" of tortious interference with business relations claim); *Barr Inc. v. Studio One, Inc.*, 146 F. Supp. 3d 375, 380 (D. Mass. 2015) (holding "[s]imilarly" to tortious interference with contract claim, "the elements of tortious interference with advantageous relations are a known advantageous relationship; deliberate interference, improper in motive or means; and resulting economic harm"). This is true for tortious interference with both a current business relationship and the "anticipated involvement in one." *Fiorillo*, 85 F. Supp. 3d at 571 n.3 (comparing tortious interference claims under Massachusetts law). Delaware law also assesses claims for tortious interference with business relations and tortious interference with contract under these standards. *In re Morrow Park Holding LLC*, 2020 WL 3415649, at *20 (Del. Ch. June 22, 2020) (analyzing "tortious interference in prospective business relations and tortious interference with contracts" together); *West v. Access Control Related Enters., LLC*, 2019 WL 2385863, at *6 (Del. Super. Ct. June 5, 2019) (same).[2]

The Court already ruled when it held, in connection with the prior complaint, that Plaintiff sufficiently pled the elements that Defendants acted "without justification" because Defendants' wrongful conduct entailed "defendants eschew[ing] their Section 13(d) obligations in order to

---

[2] Defendants chose to apply Delaware law to their prior motion to dismiss based on the choice-of-law provision in the Rights Agreement, which Plaintiff did not oppose for purposes of that motion. *See* ECF No. 29 at 17 n.15; ECF No. 40 at 22 n.13. But the Rights Agreement is no longer valid and under Massachusetts law, "rights and liabilities in tort are determined by the state law which, with respect to that issue, has the most significant relationship to the parties and the occurrence." *Doelger v. JPMorgan Chase Bank, N.A.*, 2024 WL 4727989, at *18 (D. Mass. Mar. 25, 2024), *R&R adopted*, 2024 WL 4406990 (D. Mass. Sept. 27, 2024); *see also In re GlassHouse Techs., Inc.*, 604 B.R. 600, 619 (Bankr. D. Mass. 2019) (applying Massachusetts law because the acts alleged "occurred primarily in Massachusetts, where GlassHouse's principal place of business was located"), *aff'd*, 654 B.R. 190 (D. Mass. 2023). Massachusetts has the "most significant relationship" to Plaintiff's claims because that is where Defendants 1Globe, Li, the Chiang Li Family, and Linda Li are located and committed their wrongful conduct. ¶¶ 25-28. In addition, where the "outcome would be the same regardless of which state's law applies, there is no conflict and the court need not resolve the choice of law question." *Doelger*, 2024 WL 4727989, at *18. There are no conflicts between Massachusetts and Delaware law for the reasons explained above. Moreover, if New York law were to apply because Plaintiff and the Class were unable to access their shares on the NASDAQ, there also are no conflicts with New York law. *See Cojocaru v. CUNY*, 2020 WL 5768723, at *6 (S.D.N.Y. Sept. 28, 2020); *Bos. Tea Co. v. Bay Valley, LLC*, 2018 WL 4211313, at *8 (S.D.N.Y. Sept. 4, 2018); ¶ 36 n.5.

avert implementation of the Rights Agreement and advance the particular interests of the Sinobioway Group" and "causation of [Plaintiff's] alleged injuries" because "the suspension of trading by NASDAQ" was a "foreseeable result[]" of Defendants' wrongful conduct. ECF No. 43 at 16-17. The same allegations that supported that claim support Plaintiff's tortious interference with business relations claim because Defendants' same wrongful conduct—their Section 13(d) violations—caused the same harm of the suspension of trading by NASDAQ.

The PSAC is also not futile as to Plaintiff's tortious interference claims because (1) Plaintiff and the Class were in a business relationship (or a prospective one) with Sinovac; (2) Defendants knew about that relationship; and (3) Defendants' intentional wrongful conduct interfered with that relationship.[3] This claim applies to a third party's interference with an "existing business relationship." *Sensitech*, 581 F. Supp. 3d at 349 (citing *Comey v. Hill*, 387 Mass. 11, 13, 19 (1982) (holding defendant interfered with plaintiff's role as salesman for which plaintiff "had no written contract . . . but was paid a [sales] commission")); *Bove v. Goldberg*, 2007 WL 446014, at *4 (Del. Super. Apr. 9, 2020) (holding tort applies to interference "with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation" or "preventing a third person from continuing a business relation with another").

Interference with a shareholder's benefits from their status as shareholders addresses the type of advantageous business relationship that supports a claim for tortious interference with business relations. For example, in *Malpiede v. Townson*, 780 A.2d 1075, 1100 (Del. 2001), the Delaware Supreme Court held that where an acquiror "deliberately misrepresented its voting interest in" the company "to forestall the implementation of a poison pill defense," such "allegations may support an inference that [the acquiror] intentionally interfered with the auction

---

[3] Defendants' conduct interfered with both Plaintiff's current shareholder relationship with Sinovac and Plaintiff's prospective relationship in terms of Plaintiff's future ability to access its shares.

process."[4] So too here, Defendants' Section 13(d) violations that they used to advance their position in vying to control Sinovac and to avoid the Rights Agreement, interfered with Plaintiff's ability "to access [their] property" of Sinovac shares. ECF No. 43 at 16. *See also Encite LLC v. Soni*, 2011 WL 5920896, at \*27 (Del. Ch. Nov. 28, 2011) (holding "reasonable expectation of owning" stock in company "that would own IFCT's assets[,] by way of a business relationship with IFCT" and defendant's conduct that caused plaintiff to lose "the net value of this stock," supported standing to sue for tortious interference with prospective business relationship).[5]

Plaintiff's ability to bring these tortious interference claims based on their shareholder relationship with Sinovac is further supported by the fact that shareholders may bring claims directly where their "'injury is distinct from the injury suffered generally' by the business entity or the shareholders as a whole." *Eaton Vance Senior Income Tr. v. Saba Cap. Master Fund*, 2021 WL 2785120, at \*4 (Mass. Super. Apr. 7, 2021) (quoting *Int'l Bhd. of Elec. Wkrs. Loc. No. 129 Ben. Fund v. Tucci*, 476 Mass. 553, 557-58 (2017)). Plaintiff's inability to access their Sinovac shares is distinct from any injury suffered by Sinovac because the harm relates to the ability to access property that belongs specifically to shareholders and arises out of Sinovac's dispute with 1Globe. This injury was not suffered by "shareholders as a whole" because it was caused by 1Globe, Sinovac's largest shareholder. Similarly, "stockholders have three fundamental, substantive rights: to vote, to sell, and to sue," the impairment of which gives rise to direct claims. *Williams Cos. S'holder Litig.*, 2021 WL 754593, at \*20 (Del. Ch. Feb.26, 2021), *aff'd*, 264 A.3d

---

[4] *Malpiede* went on to hold that while this type of conduct could support a claim for tortious interference, causation was not adequately alleged because "Knightsbridge effectively remedied its earlier misrepresentation well before the board acted." 780 A.2d at 1100. Here, however, 1Globe did not remedy its Section 13(d) violations, which were not revealed until after the harm was underway, when the SEC Order was issued in 2020 and 1Globe and Sinovac were in the midst of their protracted dispute. Indeed, the Court has already held that Plaintiff adequately alleged causation.

[5] Massachusetts applies the same law for tortious interference as Delaware. *See supra* at 4-6.

7

641 (Del. 2021).[6] Furthermore, shareholder harm in the context of attempts by other shareholders "to solidify their control over [a company] at the expense of the minority shareholders" gives rise to direct claims. *Oliver v. Bos. Univ.*, 2006 WL 1064169, at \*17 (Del. Ch. Apr. 14, 2006).[7] The direct nature of Plaintiff's harm to its basic shareholder rights supports it serving as the basis for the claim that Defendants interfered with the business relationship between Plaintiff and Sinovac.

Defendants knew about Plaintiff's and the Class's shareholder relationship because they knew that Sinovac was a public company with many shareholders. In addition to the obvious nature of this basic fact, that knowledge is demonstrated by Defendants' efforts to evade the Rights Agreement through their secret campaign to accumulate nearly one-third of Sinovac's stock and to vote their shares at the Annual Meeting. ECF No. 43 at 3, 17; ¶¶ 45-83. Defendants "admit actual knowledge of the Rights Agreement." ECF No. 46 ¶ 217; *see also id.* ¶ 161 (admitting as to Li). Since Defendants knew about the Rights Agreement that Sinovac had with its shareholders, they knew those shareholders existed.

Defendants intentionally interfered with the relationship between Sinovac and its shareholders by knowingly committing their Section 13(d) violations without justification "in order to avert implementation of the Rights Agreement and advance the particular interests of the Sinobioway Group." ECF No. 43 at 16-17; ¶¶ 45-83. Defendants' Section 13(d) violations enabled their entire scheme, including 1Globe's ambush at the Annual Meeting while "fail[ing] to disclose material information that is required in a Schedule 13D." ¶ 119.[8] The purpose of Section 13(d) is to protect shareholders by allowing them "to evaluate substantial shareholdings and the

---

[6] *See also Harris v. Carter*, 582 A.2d 222, 234 (Del. Ch. 1990) (holding "a shareholder has a right to sell his or her stock") (citing *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 408 (Del. 1985))).

[7] "[E]ssentially the same standard" applies under Delaware and Massachusetts law to whether a claim is direct or derivative. *DiMare ex rel. DiMare, Inc. v. DiMare*, 2021 WL 3493553, at \*2 (Mass. Super. Apr. 28, 2021).

[8] Moreover, while Defendants' entire scheme to take control of Sinovac is rooted in their Section 13(d) violations, 1Globe's ambush at the Annual Meeting is additional wrongful conduct that is actionable here. ¶¶ 104-19, 139.

implications of such shareholdings for their own investment in the security" and Defendants' actions deprived Sinovac's shareholders "of information necessary to make fully informed investment decisions." ¶¶ 3, 9, 119, 184 (quoting SEC Order). Defendants' intentional campaign to evade and misrepresent those disclosure obligations thus interfered with the relationship between Sinovac and its shareholders.[9]

### 2.    The Court's Causation Ruling Continues to Apply

The PSAC adequately alleges that Defendants' wrongful actions caused Plaintiff's injury because the Court has already ruled that the exact same actions at issue in the PSAC are adequately alleged to have foreseeably "caused plaintiff harm including, inter alia, the suspension of trading by NASDAQ." ECF No. 43 at 17. The causation element is even stronger in the PSAC because the breach of the Rights Agreement is not an element, making the causal chain even more direct. Defendants' scheme rooted in their Section 13(d) violations led directly to 1Globe's protracted dispute with Sinovac, which foreseeably caused the extended trading halt in Sinovac stock since February 22, 2019 while that dispute was pending. ¶¶ 16, 122, 138, 159-61.

The invalidity of the Rights Agreement does not diminish the Court's prior ruling that Plaintiff has adequately alleged that Defendants' conduct caused their injury. Defendants engaged in independent wrongful conduct—their Section 13(d) violations—that had the foreseeable result of leading to 1Globe's protracted dispute with Sinovac that resulted in the halt in trading of Sinovac stock since 2019. Given that the Rights Agreement was sufficiently in place at the time to motivate Defendants' Section 13(d) violations (which they undertook to evade the poison pill), Defendants knew or reasonably should have known that their actions "would cause [Sinovac] to inflict" the

---

[9] The Court has already rejected any argument by Defendants that they did not know the Section 13(d) reporting requirements. *See* ECF No. 29 at 12, 20; ECF No. 43 at 16-17. Any such argument is also not believable in light of the SEC's findings of Defendants' extensive efforts to evade those requirements. ECF No. 40 at 17-18.

injury on Sinovac's shareholders. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50–51 (1st Cir. 2009) (holding causal chain supported by "results attributable to reasonably foreseeable intervening forces"); *Green v. Sirchie Acquis. Co.*, 633 F. Supp. 3d 393, 402 (D. Mass. 2022) (same).

Moreover, "[o]nly unusual, extraordinary negligence of a third party will excuse an original tortfeasor's liability" and "[w]hether conduct meets this standard" is "normally a jury question." *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 375 (1st Cir. 2009); *see also Wortley v. Camplin*, 333 F.3d 284, 295–96 (1st Cir. 2003) (holding "[p]roximate causation and intervening cause are usually issues for the jury"); *Stumpf v. Garvey*, 2005 WL 2127674, at \*12–13 (D.N.H. Sept. 2, 2005) (holding whether an intervening event interrupted the causal chain "is a matter of proof after discovery"); *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 2013 WL 5376023, at \*21 (D. Mass. Sept. 24, 2013) (rejecting argument that loss was "attributable to market-wide conditions"). Sinovac's reaction to 1Globe's conduct, including Sinovac seeking to implement the poison pill and its protracted dispute with 1Globe, which caused the halt in trading of Sinovac stock, was a "foreseeable result[]" of Defendants' wrongful conduct. ECF No. 43 at 16-17; ¶ 129. Acting based on the now-mistaken assumption that the Rights Agreement was valid cannot be considered "unusual, extraordinary negligence" because two courts in Antigua had ruled that the Rights Agreement was valid. *Genereux*, 577 F.3d at 375; *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 295 F. Supp. 2d 148, 175 (D. Mass. 2003) (holding causal chain not broken where "it was defendants who instigated both the *culpable* and the innocent intermediaries to commit acts").

3.    Plaintiff's Tortious Interference Claims Are Substantially Related and Relate Back to the Amended Complaint

Amendments to the complaint are permitted where the amendments are substantially related to the claims asserted in the prior complaint. *See Republic Maximal*, 2024 WL 3169798, at \*5 (granting motion for leave to amend where new allegations and the addition of a state law claim

10

were substantially related to the claims in the original complaint). That is the case here because the PSAC alleges that the exact same actions by Defendants caused the exact same harm as in the prior complaint. The amendments to the PSAC are made only to address the new development of the Privy Council's decision.

While Plaintiff has revised the causes of action to style them as claims for tortious interference with business relations or prospective business relations, these claims substantially overlap with the prior claim, with the "difference between the two torts [being] merely the existence of a contract." *Fiorillo*, 85 F. Supp. 3d at 571 n.3; *see also supra* at 4-5. Indeed, "the tort of interference with an advantageous business relationship apparently includes within its ambit the tort of wrongful interference with an existing contract, and Massachusetts courts 'have not consistently distinguished between the two torts.'" *Hamann v. Carpenter*, 937 F.3d 86, 92 (1st Cir. 2019) (quoting *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815 n.6 (1990)); *see also Sonicsolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, 2021 WL 9096701, at *2 (D. Mass. Sept. 9, 2021) (analyzing claims for tortious "interference with contractual or business relations" based on the same allegations). The current claims are simply a modification of the prior claim to account for the change in circumstances resulting from the Privy Council's decision.

Similarly, Plaintiff's tortious interference claims in the PSAC are timely because they relate back under Fed. R. Civ. P. Rule 15(C)(1)(B) to the tortious interference claim in the prior complaint. Plaintiff's claims relate back because they "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Iconics, Inc. v. Massaro*, 2016 WL 199407, at *5 (D. Mass. Jan. 15, 2016) (quoting Fed. R. Civ. P. 15(c)(1)(B)). "This analysis is directed to conduct rather than causes of action, and new legal theories may relate back to the original filing where — as here — there is a shared basis

11

in factual circumstances." *Id.* at \*5. Defendants were therefore "given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim." *Id.* Even where "the specific copyrights in question changed from one version of the complaint to the next" and "the amended complaints provide substantially more detail than the original complaint," the amended complaint still relates back to the original complaint where "the basic sequence of events laid out in each is the same." *Id.* The PSAC here is even more related to the prior complaint based on their shared factual circumstances. *See also Dahl v. Bain Cap. Ptnrs.*, 878 F. Supp. 2d 298, 300 (D. Mass. 2012) (holding amendment "altering the class allegation and adding an additional claim with respect to the PanAmSat transaction related back"); *Green Mtn. Realty Corp. v. Leonard*, 2010 WL 1461590, at \*2 (D. Mass. Apr. 9, 2010) (new claims challenging new decision by Zoning Board of Appeals "arose out of the 'conduct, transaction, or occurrence'" in prior complaint); *Quaak v. Dexia, S.A.*, 445 F. Supp. 2d 130, 137 (D. Mass. 2006) (holding "addition of new claims . . . does not alone defeat relation back" and "[a]lthough the specific factual allegations for the new claims were not in prior pleadings, Defendant was on notice that it was under attack for the full range of its conduct with respect to its scheme to inflate the price of L & H stock").

The PSAC also relates back for the additional reason that Rule 15(C)(1)(A)-(B) is "a one-way ratchet; less restrictive state relation-back rules will displace federal relation-back rules, but more restrictive state-relation back rules will not." *Trindade v. Grove Servs.*, 91 F.4th 486, 495 (1st Cir. 2024); *see also Murphy v. West*, 533 F. Supp. 2d 312, 316 (W.D.N.Y. 2008) (holding that "[t]he general rule is that if state law 'affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim'" (quoting *DeRienzo v. Harvard Indus.*, 357 F.3d 348, 353 n.8 (3d Cir.2004)). Under Massachusetts's "liberal rules governing the amendment and relation back of pleadings," the PSAC relates back to the prior complaint because

12

they both "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" and the prior complaint provided Defendants "with sufficient notice of the wrongdoing alleged in the amended complaint." *Trindade*, 91 F.4th at 495.

### 4. Plaintiff's Claims Are Not Futile

The PSAC is also not futile because the question here is only whether Plaintiff should be granted leave to amend under Rule 15(a)(2), which is freely given. The merits of Plaintiff's amendments can be addressed on a motion to dismiss if Defendants choose to bring one. *See MIT*, 2014 WL 404696, at *10 (holding evidence "suggests an amendment may not be futile[, h]owever, the court will, if necessary, address that issue on a motion to dismiss the possible Second Amended Complaint"); *Quaak*, 445 F. Supp. 2d at 137 (holding relation-back analysis "is vexingly difficult to apply and usually requires a fact-intensive inquiry"); *E. Moran*, 2023 WL 6307000, at *3.

### B. Defendants Cannot Establish Undue Delay or Prejudice

### 1. Plaintiff Has Not Unduly Delayed

Delay alone is an insufficient basis for denying leave to amend and the opposing party must establish there was "undue delay." *Amyndas Pharms.*, 48 F.4th at 37. Courts determine "how long is too long" based on the facts and circumstances of each case, which is "not simply a matter of counting days." *Id*. Instead, ascertaining whether a delay is "undue" requires an evaluation of the totality of the circumstances surrounding the proposed amendment. *Id*. "This is not a high hurdle, and the dispositive datum often will be the reasonableness of the pleader's actions." *Id*. The circumstances here support Plaintiff's request because "this is a complex case in which ramified issues are at play," where minority shareholders have been caught in the middle of the years-long, complicated dispute between Sinovac and 1Globe that has involved litigation in Antigua, Massachusetts, and Delaware, including the Privy Council's recent change of course. *Id*. at 39.

An amended complaint is not unduly delayed, regardless of how much time has passed,

when leave is sought after deficiencies in the prior complaint are first identified. *See Amyndas Pharms.*, 48 F.4th at 37 (holding no undue delay when leave was sought in response to "a ruling from the court pointing out flaws in the original pleading"); *Savoy*, 139 F.R.D. at 268-69 (holding no undue delay where "plaintiff filed suit over a year ago" and over four months after dismissal of "original count for breach of fiduciary duty"). This Court allows amendments after deficiencies in a complaint are first identified, even if "the factual support for [plaintiff's] amendment has been within his possession since he filed his original Complaint." *See Cal. ex rel. Wible v. Warner Chilcott PLC*, 2014 WL 1338285, at \*2 (D. Mass. Apr. 1, 2014) (Gorton, J.) (holding "justice requires allowing [plaintiff] leave to amend one last time" because "he has not engaged in undue delay in seeking to amend after the defendants pointed out deficiencies in the [SAC]").

This principle applies when the plaintiff seeks to add "additional claims" in light of recent developments that "altered the 'legal landscape,' . . . particularly when [the plaintiff] has not previously had an opportunity to make the responsive changes." *Weinreich v. Brooks*, 340 F.R.D. 57, 59 (D. Mass. 2021) (Gorton, J.) (allowing amendment despite "considerable" delay). Similarly, in *Cabrera v. Black & Veatch Special Project Corp.*, 2024 WL 1435146, at \*2-3 (D.D.C. Mar. 28, 2024), the case was stayed pending the decision in another case and plaintiffs then sought, in "[l]ight of the shifting legal landscape," to "proffer[] a new theory of liability that it could have advanced earlier." The court allowed leave to amend even though the litigation had "already gone on for four years," because of the "case's unusual procedural posture." *Id.* at \*5.

That is precisely what has happened here, where there has been only one substantive ruling on the prior complaints, where the Court denied Defendants' motion to dismiss.[10] The new development of the Privy Council's ruling that the Rights Agreement is invalid has raised concerns

---

[10] The prior complaint was the first one filed after Plaintiff was appointed as Lead Plaintiff and any Defendants appeared in the case. *See* ECF No. 18.

with the claims as they were previously pled. But until the Privy Council's decision, Plaintiff did not have any reason to doubt the validity of the Rights Agreement. Rather than wait for a ruling on Defendants' contemplated motion for judgment on the pleadings (ECF No. 74), Plaintiff is now proactively seeking to address the impact of the Privy Council's decision on the prior complaint.

Indeed, when the prior complaint was filed, two levels of review by Antiguan courts had already firmly ruled that the Rights Agreement was valid and 1Globe did not yet even have permission to appeal the validity of the Rights Agreement to the Privy Council. ¶ 130 (1Globe and Sinovac jointly explaining in April 27, 2023 letter that the Antigua Court of Appeal refused 1Globe permission to appeal the issue of "whether the Rights Agreement is permitted under Antiguan law"); Grunfeld Decl., Ex. 4. Even when the Privy Council subsequently allowed 1Globe to amend its notice of appeal on February 15, 2023, it still "reserved, until the final substantive hearing, its decision on whether to grant permission to appeal" on that ground. ¶ 131. Plaintiff could not have been expected to predict the Privy Council's complete reversal over two years later. *Cf. Amyndas Pharms.*, 48 F.4th at 40 (holding a "party is not required to seek leave to amend its complaint each time a new piece of favorable information surfaces unless that new information is essential to the viability of its case"). Even Defendants admitted in their Answer that "Sinovac adopted" the Rights Agreement and that they had "actual knowledge" of it, without contesting its validity. ECF No. 46 ¶¶ 2, 10, 14, 41-42, 47, 105, 161, 217. The SEC Order also accepted the significance of the Rights Agreement, making clear that Li disapproved of the Rights Agreement, without questioning its validity. ¶¶ 45, 105, 168; ECF No. 30-3 ¶¶ 16-17. Moreover, the current claims would have unnecessarily complicated the prior complaint, which assumed the validity of the Rights Agreement.[11] Even when a court dismisses a claim, plaintiffs are typically given leave to replead

---

[11] Moreover, even if the current claims were included in the prior complaint, Defendants still would have sought to stay the action since the PSAC discusses the Antigua Action, including the Privy Council decision.

to address the deficiencies identified by the court rather than being required to have foreseen those issues at the outset. There is even more reason to allow amendment here, where the reason for them arises not from a development in the case at hand, but from the Privy Council's decision reversing two prior decisions based on Antiguan law. Plaintiff is not required to have predicted that even-more speculative possibility when filing the prior complaint.

### 2. Any Delay Has Been Caused by 1Globe

An independent reason why Plaintiff has not unduly delayed is that any delay in obtaining the Privy Council's ruling was caused by 1Globe's delay in prosecuting its appeal to the Privy Council, precluding 1Globe from arguing that Plaintiff unduly delayed by waiting for that decision before amending the complaint. *See Perry v. Rose*, 2012 WL 3903475, at *4 (D. Mass. Sept. 6, 2012) (holding delay caused because reports "were not produced, despite earlier requests, until the deadline to amend pleadings had nearly expired"); *Cf. Diotima Shipping Corp. v. Chase, Leavitt & Co.*, 102 F.R.D. 532, 535 (D. Me. 1984) (holding delay "cannot be attributed . . . to the Defendant," where plaintiff sought "to change the basis of jurisdiction on the eve of trial"). Defendants argued at the recent status conference that the stay of this case since December 2023 because of the pending appeal to the Privy Council could have been avoided if Plaintiff sought to amend at that time. Grunfeld Decl., Ex. 5 at 5:5-8. But 1Globe itself prolonged the length of the stay by delaying its appeal to the Privy Council.

1Globe delayed at two key stages in its appeal to the Privy Council. *First*, 1Globe delayed many months by trying to raise new arguments that it plainly was not permitted to raise on appeal. *Second*, even after the Privy Council set the scope of 1Globe's appeal on February 15, 2023, 1Globe inexplicably delayed even more before perfecting its appeal.

On April 19, 2022, 1Globe applied directly to the Privy Council for permission to appeal

16

"whether the Rights Agreement is permitted under Antiguan law" and on July 13, 2022, 1Globe filed its initial notice of appeal on issues for which it already had permission to appeal. ¶ 130; Grunfeld Decl. Ex. 4. But then, on September 16, 2022, 1Globe applied to raise new issues in its appeal. ¶ 131. The Privy Council did not allow 1Globe to appeal these issues related to the validity of the Rights Agreement that were raised after "a change in 1Globe's legal team, following which a largely new case was advanced," because these issues were "not advanced in either of the courts below." ¶ 135; Grunfeld Decl., Ex. 3 ¶¶ 30-31, 76. 1Globe's belated attempt to change the basis of its appeal—which the Privy Council was highly critical of—delayed the Privy Council's decision setting the scope of the appeal until February 15, 2023. ¶¶ 131, 133.

Shortly thereafter, on April 27, 2023, 1Globe estimated that the Privy Council "appeal will be decided in the next 12 to 18 months"—*i.e.*, as soon as April 2024. ¶ 132; Grunfeld Decl., Ex. 4. But 1Globe then delayed even further. As Sinovac explained on August 15, 2023, although 1Globe was initially granted permission to appeal on February 24, 2022, and the Privy Council finalized the scope of the appeal on February 15, 2023, "1Globe [was] still completing necessary procedural filings, and has not yet taken steps to list a substantive [ Privy Council] hearing." ¶ 133; Grunfeld Decl., Ex. 6. 1Globe did not even file its Statement of Facts and Issues with the Privy Council until October 27, 2023, which was a necessary step before the parties could notify the council that the appeal was ready for a hearing. ¶ 134; Grunfeld Decl. ¶ 10. When 1Globe moved to stay this case at the end of 2023, it still did not have any update on the timing of the hearing, expecting only that the appeal would "conclude in 2024" based on information from "counsel for 1Globe that is handling that matter." Grunfeld Decl., Ex. 7 at 4:21-23, 13:5-22; ECF No. 61 at 2.[12]

1Globe thus caused the nearly three-year delay from when it was initially granted

---

[12] It was not until April 29, 2024 that Sinovac stated that the "final substantive hearing before the Privy Council is listed for July 10 to 11, 2024." Grunfeld Decl., Ex. 8.

permission to appeal to the Privy Council to when the Privy Council finally issued its decision in January 2025. Even if some of that time was spent on legitimate parts of the appellate process, much of that time elapsed because 1Globe improperly sought to raise new issues that it had not raised below and then, even after the scope of the appeal was set, took an inordinate amount of time to perfect its appeal. If 1Globe had perfected its appeal sooner, the Privy Council easily could have issued its decision in line with the April 2024 timeframe that 1Globe predicted shortly after the Privy Council set the contours of the appeal in February 2023, not to mention the many additional months that were delayed prior to then because 1Globe tried to appeal issues it was not permitted to raise. Defendants cannot complain that Plaintiff has unduly delayed in accounting for the Privy Council's ruling when 1Globe caused that decision to arrive so much later than necessary.

### 3.     Defendants will not be Prejudiced by the Amendment

The issues of prejudice and undue delay are closely linked because "courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." *Savoy*, 139 F.R.D. at 268. Similarly, "delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (holding "denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion"). Courts therefore hold that there is no undue delay, regardless of how much time has passed, when a motion to amend is made at the early stages of litigation. *See Blu Homes*, 2011 WL 3290362, at *11 (holding "there is no undue delay or undue prejudice" because litigation is at "the early stages" with "no discovery schedule or trial date [having] yet been set"); *Cabana v. Forcier*, 200 F.R.D. 9, 13-14 (D. Mass. 2001) (Gorton, J.) (allowing cross-motions to amend, and holding no undue delay or prejudice, where motions made after close of discovery). The First Circuit has explained that most often, "prejudice

18

takes the form of additional, prolonged discovery and a postponement of trial." *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015) (holding no prejudice where discovery was ongoing); *Savoy*, 139 F.R.D. at 269 (holding no prejudice where new claims "closely relate to claims in the original complaint" and "the parties have not been assigned a trial date").[13]

There is no prejudice here, where discovery has not even begun and no trial date has been set. *See Weinreich*, 340 F.R.D. at 60 (holding no prejudice to defendants "because this case remains in its nascent stages"); *O'Donnell v. Robert Half Int'l*, 429 F. Supp. 2d 246, 251 (D. Mass. 2006) (Gorton, J.) (granting plaintiffs lave to amend to "allege new facts in support of an alternative theory of RHI's liability" where "litigation remains in the early stages and is not nearly ready for trial"); *Cabrera*, 2024 WL 1435146, at *5 (allowing leave to amend because case was "still only early days for Rule 15 purposes" and SAC "will functionally reset the case"). Indeed, Plaintiff sought to commence discovery but it has not begun because Defendants successfully moved to stay this action while the Privy Council appeal was pending. ECF Nos. 47-48, 51-53, 67.

For example, in *U.S. Bank Nat'l Ass'n v. James*, 680 F. Supp. 2d 259, 260 (D. Me. 2010), the court allowed leave to amend on a motion made over two months after dismissal of defendant's third-party complaint—over seven months after the original third-party complaint—"and two days before the deadline for amendment." *James*, Case No. 09-cv-00084 (D. Me.), ECF Nos. 12, 38. The court rejected the argument that the amendment should not be allowed because it was based on materials in defendant's "possession since well prior to the date of Plaintiff's complaint" or that it was based on "new legal theories without substantive new facts." *James*, 680 F. Supp. 2d at 261.

The types of delay that "are inevitable when any pleading is amended," such as new

---

[13] *See also Garcia v. Corr. Med. Serv., Inc.*, 2016 WL 7377103, at *3 (D.N.J. Dec. 20, 2016) (holding that "[e]ven if the amendment could be considered 'delayed,' Defendants have not shown they will be prejudiced") (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938–39 (3d Cir. 1984) as holding district court abused its discretion in denying leave to amend ten years after filing initial complaint when defendants had not shown they would be prejudiced)).

19

motions to dismiss and "further discovery"—which is not at issue here—are merely the "inconveniences and delays that are inherent in the granting of any such motion" and do not justify denial of leave to amend. *James*, 680 F. Supp. 2d at 261-62; *see also Pasternack*, 863 F.3d at 174 (holding "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice"). The fact that the motion to amend in *James* was filed before the deadline in the scheduling order for motions to amend supported allowing the amendment, even though the third-party plaintiff "provide[d] only minimal explanation of his apparent delay." 680 F. Supp. 2d at 262-63; *see also CMRK, Inc. v. Tampico Trading Grp., LLC*, 2017 WL 4798127, at *1 (D. Mass. Oct. 24, 2017) (holding no undue delay where motion to amend filed on "the last day permitted by the scheduling order," because court did not find timing of amendment "evidences bad faith, dilatory motive, or another unseemly motivation"). There is much more reason to allow amendment here, where discovery has not commenced and there is no case schedule in place because Defendants moved to stay the case, and Plaintiff has a strong reason for why it now seeks to amend following the Privy Council's decision.

### C.    Lead Plaintiff Did Not Act in Bad Faith or With a Dilatory Motive

For the reasons described above, Plaintiff has not acted in bad faith or dilatory motive. *See O'Donnell*, 429 F. Supp. 2d at 252 (holding amendments "not dilatory given the time-line of events" and no evidence of plaintiffs' bad faith); *CMRK*, 2017 WL 4798127, at *1. In order to be granted leave to amend, the reason for the amendment must be a "valid one," which is not a "high hurdle" to clear. *Amyndas Pharms.*, 48 F.4th at 37. Avoiding dismissal is a "perfectly valid" reason to amend "and far from frivolous" under Rule 15. *E. Moran*, 2023 WL 6307000, at *4.

### III.    CONCLUSION

For all of these reasons, the Court should grant Plaintiff's motion for leave to file the PSAC.

20

Dated: March 19, 2025                              Respectfully submitted,

                                                  **POMERANTZ LLP**

                                                  */s/ Michael Grunfeld*_____
                                                  Jeremy A. Lieberman (*pro hac vice*)
                                                  Michael Grunfeld (*pro hac vice*)
                                                  600 Third Avenue, 20th Floor
                                                  New York, New York 10016
                                                  Telephone: (212) 661-1100
                                                  Facsimile: (212) 661-8665
                                                  Email: jalieberman@pomlaw.com
                                                  Email: mgrunfeld@pomlaw.com

                                                  *Lead Counsel for Lead Plaintiff MW
                                                  Gestion and the Class*

                                                  **ANDREWS DEVALERIO LLP**
                                                  Glen DeValerio (BBO #122010)
                                                  Daryl Andrews (BBO #658523)
                                                  P.O. Box 67101
                                                  Chestnut Hill, MA 02467
                                                  Telephone: (617) 999-6473
                                                  Email: daryl@andrewsdevalerio.com
                                                         glen@andrewsdevalerio.com

                                                  *Counsel for Lead Plaintiff MW Gestion
                                                  and Liaison Counsel for the Class*

21