# EXHIBIT 8

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**
**FORM 20-F**

**(Mark One)**

☐    **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the fiscal year ended December 31, 2023**

OR

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☐    **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report

**For the transition period from            to**

Commission file number: 001-32371

# SINOVAC BIOTECH LTD.

(Exact name of Registrant as specified in its charter)

**N/A**

*(Translation of Registrant's name into English)*

**Antigua, West Indies**

(Jurisdiction of incorporation or organization)

**No. 39 Shangdi Xi Road,**
**Haidian District, Beijing 100085**
**People's Republic of China**

(Address of principal executive offices)

**Nan Wang**
**Chief Financial Officer**
**No. 39 Shangdi Xi Road,,**
**Haidian District, Beijing 100085**
**People's Republic of China**
**Tel: +86-10-5693-1800**
**Fax: +86-10-5693-1800**
**E-mail: ir@sinovac.com**

(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Shares, par value $0.001 per share | SVA | The NASDAQ Global Select Market |
| Preferred Share Purchase Rights | | The NASDAQ Global Select Market |

Securities registered or to be registered pursuant to Section 12(g) of the Act:

**None**

(Title of Class)

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act:

**None**

(Title of Class)

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report

**99,638,043 Common Shares and 14,630,813 Series B Convertible Preferred Shares as of December 31, 2023**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

☐ Yes ☒ No

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.

☐ Yes ☒ No

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

☒ Yes ☐ No

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or such shorter period that the registrant was required to submit such files).

☒ Yes ☐ No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or an emerging growth company. See definition of "large accelerated filer," "accelerated filer," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐                    Accelerated filer ☒                    Non-accelerated filer ☐

Emerging growth company ☐

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 13(a) of the Exchange Act. ☐

† The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements. ☐

Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). ☐

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing:

| U.S. GAAP ☒ | International Financial Reporting Standards as issued by the International Accounting Standards Board ☐ | Other ☐ |

If "Other" has been checked in response to the previous question, indicate by check mark which financial statement item the registrant has elected to follow.

☐ Item 17 ☐ Item 18

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

☐ Yes ☒ No

(APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS DURING THE PAST FIVE YEARS)

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court.

☐ Yes ☐ No

Under the Delaware General Corporation Law, a corporation's governing documents may be amended with the approval of a majority of the outstanding shares entitled to vote, unless the certificate of incorporation provides otherwise. As permitted by Antigua and Barbuda law, Sinovac Antigua's By-laws may only be amended with the vote of holders representing a majority of all its shares voting issued and outstanding or the unanimous written resolution of all shareholders. By-laws can be amended by a vote or unanimous written resolution of the directors.

### *Indemnification of Directors and Executive Officers and Limitation of Liability*

Antigua and Barbuda law does not limit the extent to which a company's by-laws may provide for indemnification of officers and directors, except to the extent any such provision may be held by the Antigua and Barbuda courts to be contrary to public policy, such as to provide indemnification against civil fraud or the consequences of committing a crime. Our By-laws permit indemnification of officers and directors for losses, damages, costs and expenses incurred in their capacities as such unless such losses or damages arise from negligence or illegal action of such directors or officers. This standard of conduct is generally the same as permitted under the Delaware General Corporation Law to a Delaware corporation. In addition, we have entered into indemnification agreements with Sinovac Antigua's directors and our senior executive officers that provide such persons with additional indemnification beyond that provided in Sinovac Antigua's By-laws.

Insofar as indemnification for liabilities arising under the Securities Act may be permitted to Sinovac Antigua's directors and our officers or persons controlling us under the foregoing provisions, we have been informed that in the opinion of the SEC such indemnification is against public policy as expressed in the Securities Act and is therefore unenforceable as a matter of United States law.

We have obtained directors and officers insurance providing indemnification for our directors for certain liabilities.

### *Anti-takeover Provisions in the By-laws*

Some provisions of our By-laws may discourage, delay or prevent a change in control of our company or management that shareholders may consider favorable, including provisions that authorize Sinovac Antigua's board of directors to issue preferred shares in one or more series and to designate the price, rights, preferences, privileges and restrictions of such preferred shares without any further vote or action by Sinovac Antigua's shareholders.

However, under Antigua and Barbuda law, Sinovac Antigua's directors may only exercise the rights and powers granted to them under our By-laws for what they believe in good faith to be in the best interests of our company.

### *Rights of Non-resident or Foreign Shareholders*

There are no limitations imposed by Sinovac Antigua's By-laws on the rights of non-resident or foreign shareholders to hold or exercise voting rights on Sinovac Antigua's shares. In addition, there are no provisions in Sinovac Antigua's By-laws governing the ownership threshold above which shareholder ownership must be disclosed.

### *Rights Agreement*

In March 2016, Sinovac Antigua adopted the Rights Agreement that provides for the issuance of one Right for each of its outstanding common shares. In February 2019, Sinovac Antigua amended and restated the Rights Agreement that provides for the issuance of one Right for each of its outstanding common shares or Series B Preferred Shares. In February 2021, 2022, 2023, and 2024, Sinovac Antigua further amended the amended and restated Rights Agreement to extend its term until February 2025. The Rights are designed to assure that all of Sinovac Antigua's shareholders receive fair and equal treatment in the event of any proposed takeover and to guard against partial tender offers, open market accumulations, undisclosed voting arrangements and other abusive or coercive tactics to gain control of Sinovac Antigua or its board of directors without paying all shareholders a control premium. The Rights will cause substantial dilution to a person or group that acquires 15% or more of the aggregate total of Sinovac Antigua's common shares and Series B Preferred Shares on terms not approved by its board of directors.

Rights agreements are allowable under Delaware law. Additionally, as discussed above, on December 19, 2018, the Antigua Court held that Sinovac Antigua's Rights Agreement is valid under Antigua law. 1Globe filed notice to appeal the Antigua Court's judgment on January 29, 2019. 1Globe's appeal of the Antigua Court's Judgment was heard on September 18, 2019, and the appeal decision was announced by the Court of Appeal on December 9, 2021, upholding the Antigua Judgment in each point. On April 19, 2022, 1Globe applied to the Privy Council for permission to appeal the determination in the Antigua Judgment that the Rights Agreement is valid under Antigua law. 1Globe has not yet taken steps to list a substantive hearing before the Privy Council. The final substantive hearing before the Privy Council is listed for July 10 to 11, 2024. The judgment will be reserved and delivered in writing at a later date. The appeal outcome is therefore pending.

C.   <u>Material Contracts</u>

We have not entered into any material contracts other than in the ordinary course of business and other than those described in "Item 4. Information on the Company" or elsewhere in this annual report on Form 20-F.

D.    Exchange Controls

89

**SIGNATURES**

The registrant hereby certifies that it meets all of the requirements for filing on Form 20-F and that it has duly caused and authorized the undersigned to sign this annual report on its behalf.

Sinovac Biotech Ltd.

By:     /s/ Weidong Yin
_____
Name: Weidong Yin
Title: Chairman and Chief Executive Officer

Date: April 29, 2024

104