**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MW Gestion, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 1:22-cv-11315-NMG |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| 1GLOBE CAPITAL LLC, et al. | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR**
**LEAVE TO FILE THE SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Introduction.................................................................................................................1

Background ................................................................................................................2

A.    Sinovac's Disputed "Poison Pill" and 2018 Annual Shareholder Meeting
      Spawns Litigation ..........................................................................................2

B.    The Nasdaq Trading Halt................................................................................3

C.    This Litigation.................................................................................................5

ARGUMENT...............................................................................................................6

I.    The Court Should Deny the Motion Based on Undue Delay................................6

II.   The Amendment Would Be Futile........................................................................9

A.    The Tortious Interference Claims Would Be Time-Barred ...................................10

      1.    Choice of Law......................................................................................10

      2.    The Claims Are Time-Barred Under New York Law ..............................12

      3.    The Claims Are Also Time-Barred Under Massachusetts Law.................12

      4.    The Claims Are Also Time-Barred Under Delaware Law .......................13

B.    The Proposed Second Amended Complaint Fails to State a Claim Upon
      Which Relief Can Be Granted ................................................................................14

      1.    Tortious Interference with Business Relations (Counts I-II).....................14

      2.    The Court Dismissed Plaintiff's Securities Claims (Counts III–V)...........18

C.    *Noerr-Pennington* Immunity Bars the Tortious Interference Claims....................18

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008)..................................7

*Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49 (1st Cir. 1998)..........................7

*Bamboo Ide8 Ins. Servs., LLC v. Everett Cash Mut. Ins. Co.*, 2024 N.Y. Misc.
LEXIS 13517 (N.Y. Sup. Ct. Oct. 11, 2024).....................................................14

*Blackstone v. Cashman*, 860 N.E.2d 7 (Mass. 2007).......................................................7

*Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343 (D. Mass. 2018) ...............................11

*Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14 (1st Cir. 2013)......................6, 7, 9

*Capruso v. Village of Kings Point*, 16 N.E.3d 527 (N.Y. 2014).....................................12

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (N.Y. 2004).......................................................15

*Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc.*, 727 F. Supp. 717 (D.
Mass. 1989), *aff'd*, 929 F.2d 881 (1st Cir. 1991)..............................................12

*Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517 (1st Cir. 2023)..............................................8

*Davric Me. Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000)..........................................19

*Delanerolle v. St. Catherine of Sienna Med. Ctr.*, 221 N.Y.S.3d 555 (N.Y. App.
Div. 2024) ...................................................................................14, 15, 16, 17

*Echavaria v. Uline, Inc.*, 534 F. Supp. 3d 168 (D. Mass. 2021).....................................10

*E. Moran, Inc. v. Tomgal, LLC*, 2023 U.S. Dist. LEXIS 175561 (D. Mass. Sept.
28, 2023) ............................................................................................................9

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377 (S.D.N.Y. Dec.
30, 2020) ..........................................................................................................15

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996) ....................................9

*Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411 (K.Y. App. Oct. 15, 2004)................19

*Grant v. News Grp. Bos., Inc.*, 55 F.3d 1 (1st Cir. 1995) ................................................7

*Harrington v. Costello*, 7 N.E.3d 449 (Mass. 2014)......................................................13

*Hatch v. Dep't for Child.*, 274 F.3d 12 (1st Cir. 2001)....................................................9

*Hayes v. New Eng. Millwork Distribs., Inc.*, 602 F.2d 15 (1st Cir. 1979).......................................6

*Henry v. Bank of Am.*, 48 N.Y.S.3d 67 (N.Y. App. Div. 2017).....................................................12

*Hoyos v. Telecorp Comms., Inc.*, 488 F.3d 1 (1st Cir. 2007)........................................................10

*Humana Inc. v. Biogen, Inc.*, 126 F.4th 94 (1st Cir. 2025).............................................................7

*Hutchison v. Brown*, 97 N.Y.S.2d 757 (App. Div. 1950) ..............................................................12

*Icahn v. Raynor*, 2011 WL 3250417 (N.Y. Sup. Ct. 2011) ...........................................................19

*In re Lombardo*, 755 F.3d 1 (1st Cir. 2014)....................................................................................7

*Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712 (N.Y. App. Div. 2020).......................................14

*Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013) ...............................9

*Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48 (1st Cir. 2018)...........................................6, 7, 8

*Kay v. N.H. Dem. Party*, 821 F.2d 31 (1st Cir. 1987) (per curiam)................................................7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................................10

*Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289 (N.Y. 1993)..............................................................12

*Lan Glob., Inc. v. Alchemy Telco Sols. US, LLC*, 2023 WL 5978297 (D. Mass.
Aug. 25, 2023) ...........................................................................................................................7

*Learning Annex Holdings, LLC v. Gittelman*, 850 N.Y.S.2d 422 (N.Y. App. Div.
2008) ........................................................................................................................................16

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001)........................................................................14

*Matter of People v. N. Leasing Sys., Inc.*, 142 N.Y.S.3d 36 (N.Y. App. 2021).............................19

*McGough v. Phillips & Assocs., PLLC*, 2025 N.Y. Misc. LEXIS 1635 (N.Y. Sup.
Ct. Mar. 18, 2025)....................................................................................................................18

*Mukarker v. City of Philadelphia*, 238 F. Supp. 3d 174 (D. Mass. 2017) ....................................11

*Neelon v. Krueger*, 303 F.R.D. 433 (D. Mass. 2014) .....................................................................7

*Nierman v. Hyatt Corp.*, 808 N.E.2d 290 (Mass. 2004) ................................................................11

*Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388 (1st Cir. 2013) .....................................................6, 7

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 U.S. Dist. LEXIS 42123
(N.D. Cal. Mar. 7, 2025)...........................................................................................................19

iii

*Oneida Tribe of Indians of Wis. v. Harms*, 2005 U.S. Dist. LEXIS 27558 (E.D. Wis. Oct. 24, 2005) ................................................................................................18

*Pa. State Univ. v. Keystone Alts. LLC*, 2020 U.S. Dist. LEXIS 144636 (M.D. Pa. Aug. 12, 2020) ...............................................................................................18

*Palmer v. Champion Mortg.*, 465 F.3d 24 (1st Cir. 2006)..............................................6

*Parrott v. Logos Cap. Mgmt., LLC*, 936 N.Y.S.2d 194 (N.Y. App. Div. 2012)............................16

*Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 815 N.E.2d 241 (Mass. App. Ct. 2004).................................................................................14

*Piccolo v. Singleton*, 2019 WL 4261735 (E.D.N.Y. Sept. 9, 2019) ...............................................12

*Prof'l Real Est. Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) .....................20

*Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159 (S.D.N.Y. 2021).......................12

*Rizk v. Cohen*, 535 N.E.2d 282 (N.Y. 1989)...........................................................11, 12

*Ryan v. Newark Grp., Inc.*, 2024 WL 4815478 (D. Mass. Nov. 18, 2024) ......................................7

*Spa v. Alcor Sci.*, 2019 U.S. Dist. LEXIS 240271 (D.R.I. Mar. 26, 2019)...................................18

*Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir. 1983) .......................7

*Stone v. GERS, Inc.*, 2008 WL 11388734 (D. Mass. July 1, 2008) .................................................7

*Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991 (9th Cir. 2008) ...........................18

*Travelers Supply, Inc. v. Hilton Head Lab'ys, Inc.*, 2008 WL 5533434 (D. Mass. Dec. 23, 2008)...............................................................................11

*Trs. of Univ. of Pa. v. St. Jude Childs. Rsch. Hosp.*, 940 F. Supp. 2d 233 (E.D. Pa. 2013) ..............................................................................18

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001)...................................................................12

*Valkyrie AI LLC v. PriceWaterhouseCoopers LLP*, 221 N.Y.S.3d 101 (N.Y. App. Div. 2024) ................................................................................14

*Villanueva v. United States*, 662 F.3d 124 (1st Cir. 2011) ...........................................................7

## STATUTES, RULES, AND REGULATIONS

17 C.F.R. § 240.13d-101...............................................................................................17

10 Del. C. § 8106 .........................................................................................................13

D. Mass. L.R. 5.4(d) ...........................................................................................................6

Fed. R. Civ. P. 8 .................................................................................................................7

Fed. R. Civ. P. 12 ...............................................................................................................9

Fed. R. Civ. P. 15 ...............................................................................................................9

Fed. R. Civ. P. 44.1 ..........................................................................................................11

Mass. Gen. Laws ch. 260, § 2A (2024) ...........................................................................12

Nasdaq Rule 4120 .............................................................................................................15

N.Y. C.P.L.R. § 214(4) (McKinney 2025) .......................................................................12

Securities Litigation Uniform Standards Act.....................................................................5

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 142 (1988) .............................................10, 11

**INTRODUCTION**

This action is the final chapter in a series of legal proceedings following the purported adoption of a Rights Agreement in 2016 by the former board of directors of Sinovac Biotech Ltd. ("Sinovac" or the "Company"), and the unlawful refusal of its incumbent board to step down following a shareholder vote in 2018. A final appellate ruling from the Judicial Committee of the Privy Council ("Privy Council") has all but disposed of other pending litigation filed in the wake of these events. The same result is necessary here.

Plaintiff MW Gestion ("Plaintiff") has unduly delayed seeking leave to amend. On December 6, 2023, this Court granted Defendants' motion to stay this case, in which Defendants argued that the ruling from the Privy Council would be determinative of the issues here. At that time, Plaintiff neither sought to amend its claims to include tortious inference with business relations nor argued that it could plead such claims. Now, two and half years into the case and after a fourteen-month stay that would have been unnecessary without Plaintiff's delay, Plaintiff asks the Court for a second chance to amend. As Plaintiff readily concedes, the facts in the proposed amended complaint are not new and were known to Plaintiff both at the outset of the litigation and when the Court entered the stay. Instead, Plaintiff seeks to amend its pleading now only after learning that its sole remaining claim for tortious interference with contract cannot survive. Undue delay alone is sufficient grounds to deny the Motion, and courts in the First Circuit have regularly denied requests for leave to amend following shorter delays.

The proposed amendment to assert claims for tortious interference with business relations is also futile. *First*, the claims are time-barred. *Second*, the invalidity of the Rights Agreement dooms Plaintiff's claims because there is no causal link between the trading halt and Defendants' success in obtaining a "status quo order" or Defendants' technical non-compliance with beneficial ownership reporting requirements. Plaintiff also fails to allege the essential elements of the claims.

1

Plaintiff's new claims appear to be predicated on the theory that Defendants somehow tortiously caused Nasdaq to halt trading in Sinovac securities based on their technical non-compliance with beneficial ownership reporting requirements that they settled via a "neither admit nor deny" settlement with the U.S. Securities and Exchange Commission ("SEC"). But Plaintiff's own pleadings reveal that it was Sinovac's illegal actions in connection with an invalid Rights Agreement that caused Nasdaq to halt trading. *Finally*, the allegation that the trading halt was extended for years due to the entry of a "status quo order" by the Delaware Court of Chancery triggers the *Noerr-Pennington* doctrine, which immunizes litigation activity from tort liability.

## BACKGROUND

### A.  Sinovac's Disputed "Poison Pill" and 2018 Annual Shareholder Meeting Spawns Litigation

For years, shareholders, a management-led buyout coalition, and a competing consortium have been at odds over Sinovac. *See* Dkt. No. 43 at 2 (Memorandum and Order summarizing allegations) ("MTD Order"). In March 2016, Sinovac purported to adopt a Rights Agreement that contained a "poison pill." *Id.* If triggered, the "poison pill" empowered Sinovac to distribute additional shares to shareholders, thereby diluting any would-be acquirers. *Id.* One mechanism for distributing additional shares was an "exchange" whereby the Sinovac Board could effect an "exchange . . . [of] one common share per Right" for shareholders other than the would-be acquirer who triggered the "poison pill" provision. *See* Dkt. No. 81-1 ¶ 101 ("Proposed Compl.").

On February 6, 2018, Sinovac held an annual shareholder meeting *Id.* ¶ 108. Shareholders unaffiliated with management elected new directors ("New Board"). *Id.* However, the incumbent board ("Former Board") unlawfully refused to step down and then purportedly renewed the Rights Agreement annually for more than seven years. *Id.* ¶¶ 42, 44, 109.

On March 5, 2018, Sinovac commenced litigation in the Delaware Court of Chancery

2

against shareholders that voted against the re-election of the Former Board (the "Delaware Case"). Ex. A (Compl., *Sinovac Biotech Ltd. v. 1Globe Capital, LLC*, No. 2018-0143-JTL (Del. Ch. Mar. 5, 2018)).[1] Sinovac sought a declaration that the shareholders who voted against the Former Board at the annual meeting in 2018 triggered the poison pill. Proposed Compl. ¶ 111. On March 13, 2018, to help resolve the Delaware Case, 1Globe Capital LLC ("1Globe"), the largest (though still a minority) shareholder of Sinovac, filed an application in the Antiguan High Court (the jurisdiction where Sinovac is registered) to ask the court to determine the validity of the election of the New Board and the Rights Agreement (the "Antigua Case").[2] *Id.* ¶ 113. On April 12, 2018, 1Globe also filed counterclaims in the Delaware Case seeking a declaration that the Rights Agreement was invalid and that 1Globe and other shareholders who voted against the Former Board at the 2018 annual shareholder meeting did not trigger the Rights Agreement. Ex. B (Amended Answer and Affirmative Defenses and Verified Counterclaims and Third-Party Complaint, *Sinovac*, No. 2018-0143-JTL (Del. Ch. Apr. 12, 2018).

### B.    The Nasdaq Trading Halt

Not content to allow courts to adjudicate the validity of the Rights Agreement, on February 22, 2019, Sinovac's Former Board declared that a triggering event under the Rights Agreement had occurred when shareholders "voted" against the Former Board at the 2018 annual shareholder meeting. Proposed Compl. ¶ 120. Sinovac announced that it would proceed with a share exchange involving more than 40 million exchange shares. *Id.* ¶ 121. As a result, Nasdaq halted trading and planned to keep trading halted at least through March 8, 2019, to facilitate an orderly distribution of the exchange shares. Thus, the Former Board's illegal decision to implement an exchange

---

[1] All exhibits referred to herein that are not already filed on the docket are attached to the Declaration of Michael Bongiorno and are cited as "Ex. []".
[2] Compl., *1Globe Capital LLC v. Sinovac Biotech Ltd.*, No. ANUHCVAP2018/012 (Ant. & Barb. Mar. 13, 2018).

pursuant to an invalid Rights Agreement caused the trading halt. *See id.* ¶ 122.

On February 27, 2019, in the Delaware Case, 1Globe filed a Motion for Entry of a Status Quo Order enjoining the distribution of the exchange shares to prevent irreversible chaos in the Company's capital structure and the unlawful dilution of its ownership and that of other affected shareholders, which represented approximately 45% of the Company's total share capital, pending further order of the Delaware court. Ex. C (Motion for Status Quo Order). On March 6, 2019, the Delaware court granted the motion and entered a status quo order enjoining the distribution of the exchange shares (the "Status Quo Order").[3] Ex. D (transcript of ruling granting motion for status quo order); Ex. E (Status Quo Order); Proposed Compl. ¶ 123. On March 8, 2019, Sinovac announced that "because of the *Status Quo* Order, the Exchange would not happen" until the Delaware court ruled on the Rights Agreement and whether it had been triggered. Proposed Compl. ¶ 124. Nasdaq implemented a trading halt due to the authorization of more than 40 million exchange shares by the Company's Former Board. *See id.* ¶ 122. Instead of canceling the wrongfully authorized and undistributed exchange shares to allow trading resumption, Sinovac's Former Board chose to keep trading halted to entrench themselves, as the trading halt also prevented a new board election from taking place at an annual shareholder meeting. *See id.* ¶ 109; Ex. F at 15 (Sinovac, Annual Report (Form 20-F) (Apr. 29, 2024)) ("With the ongoing litigations concerning the Exchange and the Rights Agreement, Sinovac . . . has not been able to hold an annual meeting of shareholders since February 2018 . . . .").

On January 16, 2025, 1Globe won on all issues in its appeal before the Privy Council. The Privy Council found that the Rights Agreement is void, the New Board was duly elected at the

---

[3] In retrospect, it is now clear that 1Globe's success in obtaining the Status Quo Order saved Sinovac from potentially disastrous chaos due to unlawful actions of the Former Board in attempting to implement an exchange under the Rights Agreement.

annual shareholder meeting in 2018, and the Former Board ceded office then and have been *"imposters"* since. Dkt. No. 74-1 ¶ 88 (emphasis added) (Privy Council Ruling). Thus, 1Globe did nothing unlawful in connection with the 2018 annual shareholder meeting. *Id.* ¶¶ 76, 88.

## C.    This Litigation

Almost three years ago, on August 16, 2022, Plaintiff filed this lawsuit to allege claims concerning the trading halt that occurred six years ago in 2019. MTD Order at 4. The first amended complaint (filed several months later) alleged that Defendants: (i) violated Section 10(b) of the Securities Exchange Act and (ii) engaged in tortious interference with contract. *Id.* On August 18, 2023, the Court dismissed all claims except the claim for tortious interference with contract. *Id.* at 17. With respect to that claim, the Court held that: (i) it was premature at the pleading stage to conclude under Delaware law (which governed due to a choice of law clause in the Rights Agreement) that the statute of limitations had run; and (ii) the claim was not preempted by the Securities Litigation Uniform Standards Act ("SLUSA") to the extent it focused on the trading halt. *Id.* at 13–17.

On November 3, 2023, Defendants moved to stay this case, arguing that Plaintiff's tortious interference claim depended on the validity of the Rights Agreement, so it made sense to allow the Antigua Case and Delaware Case to conclude before litigating this case. Dkt. No. 51. In response, Plaintiff opposed the stay and asked this Court to proceed to discovery by arguing that awaiting the Privy Council's ruling had taken too long and reiterating its confidence that the Right Agreement was valid. *See* Dkt. No. 55. Following briefing and a hearing, the Court stayed this case pending a ruling from the Privy Council (Dkt. No. 67) and thereafter extended the stay (Dkt. No. 73). This case remained stayed for approximately 14 months. At no time did Plaintiff suggest amending the complaint a second time or asserting a claim that did not depend on the Rights Agreement. Moreover, notwithstanding its eagerness and motivation to lift the stay on its case

(Dkt. No. 72), Plaintiff has not disputed that its entire lawsuit is built on the validity of the Rights Agreement (Dkt. No. 51).  Only a month after the Privy Council ruling did Plaintiff raise the specter of a tortious interference with business relations claim at a status conference, and then belatedly filed this Motion.[4]

### ARGUMENT

A court may deny leave to amend due to "undue delay, bad faith, futility, [or] the absence of due diligence."  *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (internal quotation marks omitted) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).

### I.    The Court Should Deny the Motion Based on Undue Delay

Undue delay alone constitutes sufficient grounds to deny leave to amend.  *Calderón-Serr v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (denying leave to amend nearly one year after filing and explaining, "[a]ppreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend" (citation omitted)).  When a movant waits "a considerable period of time" to seek leave to amend, courts require that the movant "show some valid reason for [its] neglect and delay."  *Nikitine*, 715 F.3d at 390–91 (internal quotation marks omitted) (quoting *Hayes v. New Eng. Millwork Distribs., Inc.*, 602 F.2d 15, 19–20 (1st Cir. 1979)).  Where the amendment advances a new legal theory based on facts previously pleaded, a court may reasonably find undue delay.  *See id.* at 391.  Additionally, the First Circuit "condemn[s] a 'wait and see' approach to pleading," in which a plaintiff "'having the needed information, deliberately wait[s] in the wings with another amendment to a complaint should the court hold the first amended complaint was insufficient.'"  *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018)

---

[4] Plaintiff missed the Court-imposed March 19, 2025 deadline for doing so, which was set at the status conference two weeks earlier.  It filed the Motion more than two hours after the 6 p.m. filing deadline.  D. Mass. L.R. 5.4(d) ("All electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day").

(ellipses omitted) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008)).

Plaintiff sued in August 2022 and seeks to amend *more than two and a half years* later—more than double the period that justified denial of leave to amend in *Calderón-Serra*. *See* 715 F.3d at 20. Indeed, Plaintiff's motion comes more than a year and a half after this Court resolved Defendants' Motion to Dismiss. The First Circuit and this District have routinely found much shorter delays than the 30-month delay by Plaintiff here to be too long.[5]

Moreover, there can be no doubt that the delay was undue. Plaintiff does not point to the emergence of any new fact that would have precluded an earlier assertion of tortious interference with business relations. Plaintiff misses the point by arguing that the Privy Council only recently invalidated the Rights Agreement, or by complaining that Plaintiff should not be faulted for failing to "predict" the Privy Council ruling. Mem. at 3, 15, 16. Clairvoyance was not needed. If Plaintiff wished to pursue a tortious interference with business relations claim, Plaintiff should not have awaited a ruling on the validity of the Rights Agreement because the absence of a contract is not required. *See, e.g.*, *Blackstone v. Cashman*, 860 N.E.2d 7, 12 (Mass. 2007) ("[A]n advantageous relationship with a third party," includes "present or prospective contract[s]"). In other words, tortious interference with contract and tortious interference with business relations are not mutually exclusive. Moreover, even if Plaintiff incorrectly thought the viability of the claims depended on the validity of the Rights Agreement, Plaintiff should have pled tortious interference with business relations in the alternative. Fed. R. Civ. P. 8(d)(2)–(3) (allowing claims to be

---

[5] *See, e.g. Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 108 (1st Cir. 2025) (19 months); *Kader*, 887 F.3d at 61 (16 months); *In re Lombardo*, 755 F.3d 1, 3–4 (1st Cir. 2014) (17 months); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (4 months); *Nikitine*, 715 F.3d at 390 (9 months); *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998) (15 months); *Grant v. News Grp. Bos., Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (14 months); *Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (per curiam) (3 months); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983) (17 months); *Ryan v. Newark Grp., Inc.*, 2024 WL 4815478, at *14 (D. Mass. Nov. 18, 2024) (21 months); *Lan Glob., Inc. v. Alchemy Telco Sols. US, LLC*, 2023 WL 5978297, at *2 (D. Mass. Aug. 25, 2023) (10 months); *Neelon v. Krueger*, 303 F.R.D. 433, 434 (D. Mass. 2014) (9 months); *Stone v. GERS, Inc.*, 2008 WL 11388734, at *1 (D. Mass. July 1, 2008) (13 months).

pleaded in the alternative even if they are "hypothetical" and "regardless of consistency"); *see Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 534–39 (1st Cir. 2023) (parallel pleading of tortious interference with contract and tortious interference with business relations).

What's more, even apart from Plaintiff's failure to bring the claim initially, Plaintiff has no excuse whatsoever for failing to assert its claim when Defendants filed their motion to stay. The entire premise of that stay was that the Privy Council ruling could dispose of the case because the Rights Agreement could be deemed invalid and thereby dispose of the tortious interference with contract claim. *See* Dkt. No. 52 at 19–21 (Mem. in Support of Motion to Stay); Dkt. No. 67 (Order Dated Dec. 6, 2023) (granting stay). If Plaintiff believed it had a claim for tortious interference with business relations that would survive regardless of the outcome of the Privy Counsel's ruling and thereby render a stay pointless, Plaintiff could have stated so before this case was stayed for 14 months. But Plaintiff did not do so. The reason is obvious: Plaintiff only contrived the new claim in a desperate ploy to keep the case alive, by first mentioning it over a month after the Privy Council ruling.

This is precisely the sort of (at best) "wait and see" approach to pleading that the First Circuit has "condemned" and found to constitute undue delay. *See Kader*, 887 F.3d at 61. Plaintiff's decision to wait to manufacture new tortious interference claims until it realized its original claim would fail unnecessarily burdens the parties and the judicial system. *See Advest, Inc.*, 512 F.3d at 57. Allowing Plaintiff to amend after learning of the outcome of the Privy Council's decision risks encouraging this pleading method.

Moreover, Plaintiff cannot pass the blame for the delay to 1Globe for supposedly taking too long to prosecute the Privy Council appeal. Mem. at 16–18. Like the proposed amendment, this theory defies common sense—what possible reason would 1Globe have to delay a Privy

8

Council appeal to correct unfavorable, incorrect lower court rulings? More importantly, if Plaintiff had indicated at any time during this nearly three years-old case, or when the Court was considering the stay, that it could plead a claim that did not depend on the Privy Council ruling, then the length of the Privy Council appeal would have become irrelevant because the parties could have continued this litigation in the meantime.

Finally, although prejudice is unnecessary where undue delay is present,[6] the prejudice to Defendants is severe. The significant passage of time means witness memories will have faded even further compared to when the case was filed, which was already untimely. Had Plaintiff timely advanced its proposed claims for tortious interference with business relations, the claims could have been teed up for a motion to dismiss years ago. Such undue delay arising from Plaintiff's approach has led to the present long-drawn-out litigation that causes great distraction to 1Globe, which is focused on researching new therapies against cancer, and wastes resources that otherwise would be spent on this important research.

## II.    The Amendment Would Be Futile

A proposed amendment is futile if it would not survive under Rule 12(b)(6).[7] *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Plaintiff's claim for tortious interference with business relations (Proposed Complaint Counts I and II) is futile because: (i) the claims are

---

[6] Undue delay *or* prejudice provide grounds for the denial of leave to amend. *Calderón-Serra,* 715 F.3d at 20.

[7] Plaintiff states that futility is not measured under the Rule 12(b)(6) standard, but instead by what Plaintiff refers to as the more "liberal criteria of Rule 15." Mem. at 4. This is a misstatement of law, one which Plaintiff appears to derive from an errant sentence in one case. Plaintiff cites a sentence from *E. Moran, Inc. v. Tomgal, LLC*, stating with respect to a complaint amendment that "as opposed to a plain Fed. R. Civ. P. 12(b)(6) attack, in this context, futility ought to be measured against Fed. R. Civ. P. 15's liberal criteria." 2023 U.S. Dist. LEXIS 175561 (D. Mass. Sept. 28, 2023). The reference to "in this context" is difficult to interpret, but the court does not appear to have been trying to suggest that Rule 15 futility somehow differs from the Rule 12(b)(6) standard. The immediately preceding sentence in *Moran* expressly confirms that the Rule 12 standard governs futility, and the court then cites *Juárez v. Select Portfolio Servicing, Inc.*, which states that amendment futility is judged by "Federal Rule of Civil Procedure 12(b)(6)." 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted) (quoting *Hatch v. Dep't for Child.*, 274 F.3d 12, 19 (1st Cir. 2001)).

time barred; (ii) the Proposed Complaint fails to plead required elements; and (iii) *Noerr-Pennington* immunity bars the claims.

### A.      The Tortious Interference Claims Would Be Time-Barred

Application of the statute of limitations presents a choice of law issue because different potentially relevant jurisdictions have different claim accrual rules. The following subsections establish that: (i) under Massachusetts choice of law rules, New York law applies; (ii) the claims are time-barred under New York law because there is a three-year limitations period with no tolling; and (iii) even if Massachusetts law applied, the claims would be time-barred.[8]

### 1.      Choice of Law

A federal court addressing a state law claim applies the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Hoyos v. Telecorp Comms., Inc.*, 488 F.3d 1, 5 (1st Cir. 2007) ("A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law . . . ."). "Under Massachusetts choice of law rules, tort claims are governed by the law of the state in which the injury occurred, unless another state has a more significant relationship to the underlying cause of action." *Echavaria v. Uline, Inc.*, 534 F. Supp. 3d 168, 171 (D. Mass. 2021). Further, Massachusetts courts use a "functional approach" based on Section 142 of the Restatement (Second) of Conflict of Laws to determine the applicable statute of limitations. Under that approach, Massachusetts will apply its own statute of limitations unless "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations having a more significant relationship to the parties and the occurrence."

---

[8] Delaware law governed Plaintiff's prior tortious interference with contract claim due to a choice of law provision appearing in the Rights Agreement. The choice of law provisions in the Rights Agreement are irrelevant because the Rights Agreement is invalid. In any event, Plaintiff's new tortious interference claim is not based on contract, so the choice-of-law analysis applicable to tort claims determines what law governs. There is no allegation that any events relevant to this case occurred in Delaware, so Delaware is no longer among the potentially relevant bodies of law.

Restatement (Second) of Conflict of Laws § 142(2)(a)–(b) (1988).

Massachusetts lacks a substantial interest in this dispute. Plaintiff is a French company. Proposed Compl. ¶ 24.[9] 1Globe is incorporated in Delaware. *Id.* ¶ 25. And the Nasdaq trading halt allegedly caused plaintiff's injury in New York. *Id.* ¶ 36 n.5. That some Defendants reside in Massachusetts or that 1Globe's principal place of business is in Massachusetts—does not create sufficient interest for Massachusetts law to govern. *Nierman v. Hyatt Corp.*, 808 N.E.2d 290, 293 (Mass. 2004).[10]

Instead, New York has the most significant interest in Plaintiff's claim. Plaintiff alleges an injury due to the Nasdaq trading halt, which the Proposed Complaint acknowledges occurred in New York. Proposed Compl. ¶ 36 n.5. This weighs heavily in favor of applying New York's statute of limitations. *See Mukarker v. City of Philadelphia*, 238 F. Supp. 3d 174, 178 (D. Mass. 2017) (applying Pennsylvania's statute of limitations because "Pennsylvania has the most significant relationship to the claim as the site of the injury and the state where the alleged negligent maintenance was performed").

Moreover, New York has policy interests in having its statute of limitations apply to claims arising within its borders. New York courts have "consistently refused to judicially adopt the so-called 'discovery rule,' leaving such rule making to the Legislature." *Rizk v. Cohen*, 535 N.E.2d 282, 285 n.3 (N.Y. 1989) (citations omitted). That neither the New York legislature nor the courts have enacted a universal discovery rule demonstrates an exercise of judgment in favor of limiting

---

[9] In light of Plaintiff's French domicile (Proposed Compl. ¶ 24), the facts may support the application of French law. Defendants reserve all rights in that regard and hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 that they may argue that French law applies were this case to continue.

[10] *See Travelers Supply, Inc. v. Hilton Head Lab'ys, Inc.*, 2008 WL 5533434, at *7 (D. Mass. Dec. 23, 2008) (no substantial interest where "Massachusetts' only tie to this litigation appears to be the residency of Plaintiff, a corporation presumably organized under the laws of this state"); *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 354–55 (D. Mass. 2018) (Massachusetts' interest in holding resident-defendants accountable less significant where injury and plaintiff's residence are out-of-state)

11

defendants' exposure to liability in New York. *Cf. TRW Inc. v. Andrews*, 534 U.S. 19, 38 (2001) (Scalia, J., concurring) (legislatures must "strike the balance between remediation of all injuries and a policy of repose"). Applying New York's statute of limitations also is consistent with the justified expectations of shareholders and companies trading on Nasdaq, an exchange based in New York, that claims arising out of a trading halt will be governed by New York law. *See Hutchison v. Brown*, 97 N.Y.S.2d 757, 763 (App. Div. 1950) ("Stock and commodity transactions are ordinarily governed by the law of the place where the order is executed, irrespective of where the order is given or where the parties reside . . . ." (citation omitted)).

### 2.    The Claims Are Time-Barred Under New York Law

The New York statute of limitations for tortious interference with business relations is three years from the date of injury. N.Y. C.P.L.R. § 214(4) (McKinney 2025). There is no discovery rule tolling. *See Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 176 (S.D.N.Y. 2021) (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)); *Rizk*, 535 N.E.2d at 285 n.3. Plaintiff's alleged injury is the inability to "trade" Sinovac shares. Proposed Compl. ¶¶ 207, 210. That injury occurred on February 22, 2019, when trading halted. *Id.* ¶ 161. Thus, Plaintiff's claim accrued at that time and expired three years later, on February 22, 2022. Because Plaintiff did not sue until August 2022, its claims are time-barred.[11]

### 3.    The Claims Are Also Time-Barred Under Massachusetts Law

Massachusetts has a three-year statute of limitations for tortious interference claims. Mass. Gen. Laws ch. 260, § 2A (2024); *Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc.*, 727 F.

---

[11] It does not matter that the trading halt remains in place. The continuing wrong doctrine only allows a plaintiff to "challenge an *ongoing* violation at any time *while the violation lasts*." *Piccolo v. Singleton*, 2019 WL 4261735, at *5 (E.D.N.Y. Sept. 9, 2019) (ellipses and quotation marks omitted) (quoting *Capruso v. Village of Kings Point*, 16 N.E.3d 527, 532 (N.Y. 2014)). Here, the alleged violation is not continuing—only the assertion of injury. *See Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 2017) ("The doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.'" (citation omitted)).

Supp. 717, 723 (D. Mass. 1989), *aff'd*, 929 F.2d 881 (1st Cir. 1991). Massachusetts recognizes a discovery rule whereby a cause of action accrues when plaintiff has "sufficient notice of two related facts: (1) that [it] was harmed; and (2) that [its] harm was caused by the defendant's conduct." *Harrington v. Costello*, 7 N.E.3d 449, 454 (Mass. 2014). As established above, Plaintiff's asserted injury (*i.e.*, the trading halt) occurred more than three years before suit. The discovery rule does not salvage the claim. By February 22, 2019, Nasdaq halted the trading of Sinovac stock. Proposed Compl. ¶ 122. On the same day, Sinovac announced the trading halt following its Former Board's authorization of a share exchange that was triggered by the alleged voting conduct of 1Globe and other shareholders at the 2018 annual shareholder meeting. Proposed Compl. ¶ 120. On March 8, 2019, Sinovac announced that the trading halt would continue due to the Delaware Case involving 1Globe. *Id.* ¶ 124. Thus, more than three years prior to suit, Plaintiff had notice of the alleged injury (the halt) and that the alleged cause was 1Globe's alleged conduct at the annual meeting and obtainment of a Status Quo Order.[12]

### 4. The Claims Are Also Time-Barred Under Delaware Law

Although the Court applied Delaware law in the MTD Order, Delaware law is not applicable here because the choice of law provision in the Rights Agreement now is irrelevant. *See supra* 10 n.8. Even if the three-year statute of limitations under Delaware law applied (*see* 10 Del. C. § 8106), the new claims would be time-barred for the same reasons the claims are time-

---

[12] This Court previously found it premature to conclude that the statute of limitations had run under Delaware law because 1Globe entered the SEC settlement concerning Section 13 issues within three years of suit. MTD Order at 14–15. However, that logic does not transfer to the new claim. Whereas the prior claim asserted that deficiencies in Section 13 filings concealed Defendants' share ownership and thereby prejudiced Plaintiff's contract rights under the Rights Agreement, the Rights Agreement has now been found void, and Plaintiff's new claim focuses on the trading halt. The trading halt has nothing to do with Section 13 filings—the Complaint alleges that the halt was caused by the initiation of an exchange and then continued due to the Status Quo Order in Delaware. Proposed Compl. ¶¶ 111, 122. Thus, Plaintiff did not need notice of any alleged deficiency in Section 13 filings for the new claim to accrue. Rather, Plaintiff simply needed awareness of the halt and 1Globe's alleged involvement in causing it, both of which had to have occurred by March 2019, outside the limitations period.

13

barred under Massachusetts law.  *See supra* 12–13.

### B.      The Proposed Second Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted

#### 1.      Tortious Interference with Business Relations (Counts I-II)

Plaintiffs fail to plead a claim for tortious interference with business relations because they fail to plead the necessary elements of the claim: (1) that plaintiff had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Delanerolle v. St. Catherine of Sienna Med. Ctr.*, 221 N.Y.S.3d 555, 558 (N.Y. App. Div. 2024) (citations omitted); *Bamboo Ide8 Ins. Servs., LLC v. Everett Cash Mut. Ins. Co.*, 2024 N.Y. Misc. LEXIS 13517, *7 (N.Y. Sup. Ct. Oct. 11, 2024) (same elements for tortious interference with prospective business relations).[13]  Crucially, "it must be affirmatively alleged that the defendant's conduct was motivated solely by malice or to inflict injury by unlawful means going beyond mere self-interest or other economic considerations." *Valkyrie AI LLC v. PriceWaterhouseCoopers LLP*, 221 N.Y.S.3d 101, 103 (N.Y. App. Div. 2024) (citations omitted). Plaintiff's proposed claim lacks or fails to satisfy these necessary elements.

***First***, Plaintiff has not pled a business relationship with which Defendants have interfered (*i.e.*, first element).  To state a claim, "[P]laintiff must allege a specific business relationship with an identified third party with which the defendants interfered." *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (N.Y. App. Div. 2020) (citation omitted)); *Bamboo Ide8*, 2024 N.Y. Misc.

---

[13] Plaintiff concedes that there are no material distinctions among New York, Delaware, and Massachusetts law as to the elements of tortious interference.  Mem. at 5 & n.2.  Given that Defendants contend New York law applies (*see supra* II.A.), Defendants apply New York law herein.  However, Defendants' arguments based on the proposed amendment apply with equal force to Delaware and Massachusetts law.  *See Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 815 N.E.2d 241, 245 (Mass. App. Ct. 2004) (similar elements under Massachusetts law); *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (similar elements under Delaware law).

LEXIS 13517, *7 ("Conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (N.Y. 2004)). The Proposed Complaint asserts that the alleged "business relationship" between Plaintiff and Sinovac includes the "ability to access" shares and Plaintiff's "expectation of [its] continued ability to access" shares. Proposed Compl. ¶¶ 198, 210. The Proposed Complaint alleges that Defendants interfered with Plaintiff's "business relationship" *with Sinovac* by allegedly causing the trading halt. *Id*. ¶¶ 198, 200, 203, 206, 210, 212, 218. But that makes no sense. Nasdaq is an exchange that executes market transactions *among buying and selling investors*. Nasdaq may "halt trading *on Nasdaq*" and refuse to accept trading orders. Nasdaq Rules 4120(a)(1), (c)(4)(B). But that does not affect the fact that Plaintiff owns shares, can sell them privately outside the exchange, or otherwise "access" them. Indeed, shareholders including 1Globe have engaged in private transactions to buy and sell Sinovac shares since 2019. *See* Ex. G (Share Purchase Agreement between 1Globe and third-party concerning sale of Sinovac shares). Thus, the only ability Plaintiff lost during the trading halt was to sell Sinovac shares on the Nasdaq exchange, and there is no allegation Plaintiff wished to do so. Moreover, if Plaintiff sells shares on Nasdaq, the counterparty would be a market buyer, not Sinovac, so in no circumstance is there a disruption of any "business relationship" *with Sinovac*.

**Second**, the Proposed Complaint fails to allege that Plaintiff's "business relationship" with Sinovac was injured by Defendants' wrongful interference (*i.e.*, second element). *See Delanerolle*, 221 N.Y.S.3d at 558 (tortious interference with business relations requires plaintiff to plead that defendants' conduct injured plaintiff's relationship with third party); *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020)("[P]laintiff must allege

15

that it was actually and wrongfully prevented from entering into or continuing in a *specific* business relationship." (quotations omitted)). This means the termination of or damage to an existing business relationship or loss of a prospective business relationship, which is characterized as business a plaintiff would have gained "but for" the defendant's conduct. *See Parrott v. Logos Cap. Mgmt., LLC*, 936 N.Y.S.2d 194, 195 (N.Y. App. Div. 2012); *Learning Annex Holdings, LLC v. Gittelman*, 850 N.Y.S.2d 422, 423 (N.Y. App. Div. 2008). Plaintiff remains a shareholder of Sinovac and, apart from the inability to sell Sinovac shares through Nasdaq (which would reflect Plaintiff choosing to terminate the "business relationship"), the trading halt has had no impact on whatever "business relationship" could be deemed to exist with Sinovac.

*Third,* the Proposed Complaint fails completely in pleading "that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort" (*i.e.*, third element) or thereby caused injury (*i.e.*, fourth element). *Delanerolle*, 221 N.Y.S.3d at 558. The Privy Council judgment establishes that, far from being wrongdoers, Defendants were the *victims* of Sinovac's use of an illegal Rights Agreement to attempt to dilute Defendants' holdings (through the share exchange) and to entrench the Former Directors. Defendants were required to invest six years of time and resources in litigation to vindicate their rights and those of shareholders to have a validly elected board, which has recently declared cash dividends (about 10x of the share price) to all Sinovac shareholders. Moreover, after six years of litigation, 1Globe helped protect the ownership of approximately 45% of shareholders from unlawful dilution, preventing (to the benefit of all shareholders) the unlawful disruption in Sinovac's capital structure that would have resulted from the more than 40 million exchange shares. It is beyond ironic that Plaintiff— purported representative of shareholders' interests—ignores this reality.

*Finally,* Plaintiff cannot establish that any act of Defendants caused injury to Plaintiff's

16

relationship with any third party.  Given the Privy Council's rulings, the trading halt cannot possibly be attributed to Defendants' actions, including its allegedly  non-compliant Section 13 filings or obtained a Status Quo Order.  *E.g.*, Proposed Compl. ¶¶ 90, 92, 94, 96, 197, 209; *see infra* Section II.C. (litigation activity immunized by Noerr-Pennington doctrine from constituting wrongful conduct for purposes of tort claim).  The reference to Section 13 filings is a distraction with no causal relation to the supposed injury that Plaintiff now claims, which is based on a trading halt.  *Delanerolle*, 221 N.Y.S.3d at 558 (causation required to state claim).  By the Complaint's own allegations, the trading halt had nothing to do with Section 13 filings; the halt was Nasdaq's decision flowing from Sinovac's illegal attempt to initiate a share exchange based on voting at the 2018 annual shareholder meeting.  Proposed Compl. ¶ 122.  The halt then continued for six years because Sinovac refused to cancel the more than 40 million illegal exchange shares—again, an event having nothing to do with Section 13 filings.  Moreover, Section 13 filings are *informational*—they disclose how many shares a filer holds.  17 C.F.R. § 240.13d-101 (Section 13D filing instructions).  But Sinovac did not lack that information.  *See* Proposed Compl. ¶ 140 (alleging that, since 2016, Sinovac was aware of Defendants' holdings).  If Sinovac had wanted to seek (illegally) to declare a triggering event at any time based on Defendants' shareholdings, nothing about any alleged deficiency in Section 13 filings affected that.[14]  Thus, there is no causal connection between the Section 13 issues on which Plaintiff seeks to build a claim, including the SEC settlement which was released in 2020, more than one year after Nasdaq executed the trading halt in 2019 that Plaintiff cites as damage.  If anything, the halt prevented the trading of exchange shares that would never have been valid.  In addition, Plaintiff cannot base any claim on

---

[14] Plaintiff posits that Section 13 filings could have "publicly" disclosed Defendants' share ownership and thereby preventing Sinovac from "delay[ing]" the share exchange.  Proposed Compl. ¶ 205.  But Sinovac, not public shareholders, decide whether a trigger has occurred.  Moreover, even if public shareholders could have somehow "forced" an earlier trigger, the Rights Agreement is void so shareholders would not have been entitled to anything.

17

Defendants' motion for a Status Quo Order.  Given the Privy Council's ruling, it is now clear that the Status Quo Order did not harm any Sinovac shareholders, but rather saved them from the chaos and difficulties that would have been associated with an exchange of 40 million shares pursuant to an illegal and invalid Right Agreement.  Moreover, as discussed below, no tort claim can be based on the motion for a Status Quo Order under the *Noerr-Pennington* doctrine.

### 2.    The Court Dismissed Plaintiff's Securities Claims (Counts III–V)

The Proposed Complaint restates Plaintiff's federal securities claims but acknowledges they were dismissed and indicates they are included for preservation.  Proposed Compl. ¶ 21 & n.1, p. 67 (Count III) & n.34.  Those claims remain deficient for the reasons that Defendants argued[15] and the Court identified (MTD Order at 6–12).  The Court should ignore them.

### C.    *Noerr-Pennington* Immunity Bars the Tortious Interference Claims

*Noerr-Pennington* immunity bars tort claims seeking to impose liability premised on a defendant's engagement in actions protected by the First Amendment.  *Pa. State Univ. v. Keystone Alts. LLC*, 2020 U.S. Dist. LEXIS 144636, at *9–10 (M.D. Pa. Aug. 12, 2020) (lengthy discussion of history of *Noerr-Pennington* doctrine).  Although *Noerr-Pennington* originated in the antitrust context, the "doctrine has been extended to grant immunity from certain tort claims, such as tortious interference." *Id.* (citations omitted)[16]

Prosecuting litigation—a form of government petitioning protected by the First

---

[15] Defendants incorporate herein by reference their prior motion to dismiss the securities claims.  Dkt. Nos. 28, 29.

[16] *See Spa v. Alcor Sci.*, 2019 U.S. Dist. LEXIS 240271, at *36–39 (D.R.I. Mar. 26, 2019) (tracing history of *Noerr-Pennington* and rejecting argument that it only applies in antitrust context); *McGough v. Phillips & Assocs., PLLC*, 2025 N.Y. Misc. LEXIS 1635, at *4 (N.Y. Sup. Ct. Mar. 18, 2025) ("The filing of litigation falls within the protection of the *Noerr-Pennington* doctrine, which has been applied to bar claims of tortious interference predicated on the commencement of litigation." (citations omitted)); *see also Trs. of Univ. of Pa. v. St. Jude Childs. Rsch. Hosp.*, 940 F. Supp. 2d 233, 247 (E.D. Pa. 2013) (granting motion to dismiss tortious interference claim based on *Noerr-Pennington* immunity); *Oneida Tribe of Indians of Wis. v. Harms*, 2005 U.S. Dist. LEXIS 27558, *3 (E.D. Wis. Oct. 24, 2005) (same); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("*Noerr-Pennington* doctrine applies to . . . state law tortious interference with prospective economic advantage claims.").

18

Amendment—presents a classic example of activity protected by *Noerr-Pennington*.  *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 U.S. Dist. LEXIS 42123, at *13 (N.D. Cal. Mar. 7, 2025) ("Because initiating and participating in litigation is one method of petitioning the government, litigation-related conduct falls within the scope of *Noerr-Pennington*."); *Matter of People v. N. Leasing Sys., Inc.*, 142 N.Y.S.3d 36, 44 (N.Y. App. 2021) ("The *Noerr-Pennington* doctrine protects the right under the First Amendment to the United States Constitution to petition the government for governmental action, including through litigation.").  Further, just as the First Amendment applies both to federal and state government, *Noerr-Pennington* immunity blocks liability based on a party petitioning either federal or state government, such as by litigating in either state or federal courts.  *See Davric Me. Corp. v. Rancourt*, 216 F.3d 143, 147–48 (1st Cir. 2000) (applying *Noerr-Pennington* to petitions before Maine government); *Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411, 416 (K.Y. App. Oct. 15, 2004) (applying *Noerr-Pennington* based on lawsuit in Kentucky state court); *Icahn v. Raynor*, 2011 WL 3250417, at *3–4 (N.Y. Sup. Ct. 2011) (applying *Noerr-Pennington* to claims based on lawsuit in New York state court).

Under these standards, *Noerr-Pennington* immunity bars Plaintiff's claim.  As cited above, the law is settled that immunity extends to tortious interference claims that seek to punish government petitioning, which extends to litigation activity.  Plaintiff's claim seeks to impose liability for government petitioning, specifically on the basis that Defendants obtained a Status Quo order in the Delaware Court of Chancery that Plaintiff alleges caused the extended Nasdaq trading halt.  The Complaint repeatedly asserts that the trading halt that forms the basis of Plaintiff's asserted injury resulted from Defendants' litigation in the Delaware court.  *E.g.*:

> On March 6, 2019, the Delaware Chancery Court granted 1Globe's Motion for a *Status Quo* Order.  This Order halted Sinovac from taking any action to Exchange the Rights under the Rights Agreement until the final disposition of the Delaware action.  The

19

> Exchange, *and trading of Sinovac securities*, have been suspended since that time, pending resolution by the Delaware Chancery Court of whether the Rights Agreement was triggered.

Proposed Compl. ¶ 123 (second emphasis added).  Paragraph 124 then alleges that the trading halt has continued for six years due to the Status Quo Order:

> On March 8, 2019, Sinovac announced that *because of the Status Quo Order*, the Exchange would not happen until the court in the Delaware Action 'has determined whether the conduct of 1Globe Capital, LLC, Chiangjia Li, OrbiMed Advisors LLC and those additional shareholders who voted with the foregoing at the annual general meeting held in February 2018 (the "Collaborating Shareholders") triggered the Rights Agreement . . . .'

Proposed Compl. ¶ 124 (emphasis added).[17]

Plaintiff's tortious interference claim is barred (and therefore futile) because it seeks to recover damages based on a trading halt that the Proposed Complaint alleges was the direct result of Defendants' successful effort in Delaware to obtain the Status Quo Order.  Thus, by Plaintiff's own allegations, the claim would punish Defendants for petitioning the government (*i.e.*, obtaining the Status Quo Order), which is what *Noerr-Pennington* immunity precludes.[18]

## CONCLUSION

The Court should not grant leave to amend.

---

[17] *See also, e.g.*, Proposed Compl. ¶ 14 ("Trading in Sinovac stock on the Nasdaq has been halted since February 22, 2019, *while securityholders waited for a court to decide whether to side with Sinovac management or 1Globe*.") (emphasis added); *id.* ¶ 122 (the "trading halt was then extended indefinitely because the Exchange was halted at 1Globe's request"); *id.* ¶ 128 ("Sinovac has disclosed in recent SEC filings that the Exchange Shares would not be distributed until the conclusion of both the appeal in the Antigua [Case] and the conclusion of the Delaware [Case]. The implementation of the Exchange under the Rights Agreement, as well as all trading of Sinovac shares on the Nasdaq, therefore remained halted while the Antigua and Delaware [Cases] have been pending."); *id.* ¶ 161 (referring to "the trading halt while 1Globe's litigation against Sinovac was pending").

[18] *Noerr-Pennington* immunity recognizes an exception for the pursuit of "sham" claims, which means claims that are (i) objectively baseless, and (ii) subjectively motivated by a desire to abuse process rather than obtain judicial relief. *Prof'l Real Est. Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).  The Complaint does not allege that Defendants' actions in the Delaware Court of Chancery were a sham.  Nor could Plaintiff so allege, because Defendants' litigation position (that the Rights Agreement is invalid) was correct.

Dated: April 2, 2025

Respectfully submitted,

*/s/ Michael G. Bongiorno*

**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
Michael G. Bongiorno (BBO # 558748)
Timothy J. Perla (BBO # 660447)
Peter A. Spaeth (BBO # 545202)
Erika M. Schutzman (BBO # 696241)
60 State Street
Boston, MA 02109
617-526-6000 (t)
617-526-5000 (f)
michael.bongiorno@wilmerhale.com
timothy.perla@wilmerhale.com
peter.spaeth@wilmerhale.com
erika.schutzman@wilmerhale.com

*Counsel for Defendants 1Globe Capital
LLC, Jiaqiang Li, Chiang Li Family, Jeff
Li, and Linda Li*