<pre>
                    United States District Court
                       District of Massachusetts
</pre>

|  |  |
|---|---|
| MW Gestion<br><br>   Plaintiff,<br><br>   v.<br><br>1Globe Capital LLC et al.<br><br>   Defendants. | Civil Action No.<br>22-11315-NMG |

## MEMORANDUM & ORDER

GORTON, J.

Plaintiff, MW Gestion ("plaintiff" or "MW Gestion"), alleges that defendants, 1Globe Capital ("1Globe"), Jiaqiang Li and others (collectively, "defendants"), engaged in tortious interference with a shareholder rights agreement. Following the decision of another court that found the shareholder contract invalid, plaintiff now seeks leave to amend its complaint to omit its claim for tortious interference with contract and to assert claims for tortious interference with business relations and business expectancy. For the reasons that follow, the motion to amend will be denied.

## I. **Background**

Plaintiff is an investment management firm incorporated in France that manages funds holding securities of Sinovac Biotech Ltd. ("Sinovac"). Defendant 1Globe is a Delaware corporation

that also held shares in Sinovac.  In March, 2016, Sinovac entered into a Rights Agreement with its shareholders that is governed by the laws of Antigua.  The agreement contained a shareholder rights plan, more commonly known as a "poison pill" provision, which sought to dissuade any takeover acquirers by distributing additional shares of Sinovac stock to existing shareholders under certain circumstances.  In effect, the provision would cause the dilution of the percentage of shares held by any would-be acquirer, thus preventing it from obtaining effective control over Sinovac.  At the time Sinovac adopted the Rights Agreement, several groups of shareholders, including defendants 1Globe and Jiaqiang Li, were competing for control of Sinovac.

Plaintiff alleges that defendants misrepresented to the public the extent and coordination of their Sinovac stock holdings, in violation of multiple provisions of the Securities Exchange Act of 1934 and the Rights Agreement.  In response, plaintiff filed suit in Delaware in 2018 and in this Court in 2022, alleging three counts under the Securities Exchange Act and one count of tortious interference with the Rights Agreement.  Defendants subsequently moved to dismiss.  This Court allowed the motion to dismiss with respect to plaintiff's three claims under the Securities Exchange Act but denied it as to the remaining claim for tortious interference with contract.

Simultaneously, the parties to this case have been involved in a dispute as to whether the Sinovac Rights Agreement is valid. Because that agreement was governed by the laws of Antigua, litigation began in 2018 in a lower court in Antigua, proceeded to the appellate court and, ultimately, came before the Judicial Committee for the Privy Council ("the Privy Council") in the United Kingdom.[1]

Both Antiguan courts agreed that the Rights Agreement was valid and this Court ordered the present case stayed during the appeal to the Privy Council. On appeal, the Privy Council reversed and held that the Rights Agreement was invalid under Antiguan law, effectively nullifying plaintiff's claim for tortious interference with a contract. Now, plaintiff moves to amend its complaint by deleting its contract interference claim and asserting two claims for tortious interference with business relations and business expectancy. Defendants oppose the motion to amend.

## II. **Legal Standard**

When a party seeks leave to amend its pleading, courts will "freely" grant leave "when justice so requires." Fed. R. Civ. P. 15(a)(3). The First Circuit has recognized the amendment standard does not pose a "high hurdle" on the moving party.

---

[1] The Judicial Committee for the Privy Council is the highest court of appeal for British dependencies and Commonwealth nations, including Antigua.

Calderón-Serra v. Wilmington Tr. Co., 715 F.3d 14, 19 (1st Cir. 2013). Leave to amend should be denied, however, if it stems from "undue delay, bad faith . . . [or] the absence of due diligence on the movant's part" or if amendment would result in "undue prejudice to the opposing party." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006); Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend will also be denied if it would be "futile" such that the amended complaint would fail to state a claim upon which relief can be granted. Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). In essence, a decision to allow or deny an amendment requires the Court to examine carefully the "totality of the circumstances" and exercise its broad discretion. Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989).

III. **Analysis**

Defendants in this case first argue that leave to amend should be denied because of plaintiffs' undue delay in seeking leave, i.e., it has been more than two years since plaintiff filed this case.

Undue delay is not simply determined by counting the days between the filing of a complaint and a request to amend. See Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 37 (1st Cir. 2022) (holding that length of time alone is "not a sufficient basis" for finding undue delay); compare Savoy v.

- 4 -

White, 139 F.R.D. 265, 269 (D. Mass. 1991) (finding delay of "over a year," without more, was not undue), with Stone v. GERS, Inc., No. CV 07-10743-JLT, 2008 WL 11388734, at *2 (D. Mass. July 1, 2008) (finding 13-month delay was undue).  Instead, it depends upon on the "reasonableness of the [movant's] actions." Calderón-Serra, 715 F.3d at 19.  The longer a plaintiff delays before seeking leave to amend, however, "the more likely [a] motion to amend will be denied." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).

When faced with a lengthy delay, the burden is on the movant to show some "valid reason" for its "neglect and delay," Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 19 (1st Cir. 1979), and if it fails to do so, the delay alone is "enough to justify denying a motion for leave to amend," Calderón-Serra, 715 F.3d at 20.  The reasons for amendment that the First Circuit have found valid are broad and include the filing of a motion to dismiss, a ruling indicating "flaws in the original pleading" or "the discovery of new information." Amyndas Pharms., S.A., 48 F.4th at 37.  Once a party becomes aware of the potential flaws in its pleading, however, it cannot simply "wait and see" if a court finds in its favor and only then seek to amend in the face of an unfavorable decision. Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 61 (1st Cir. 2018).

In <u>ACA Fin. Guar. Corp.</u> v. <u>Advest, Inc.</u>, 512 F.3d 46 (1st Cir. 2008), for example, the First Circuit affirmed a denial of a motion for leave to amend that was filed 18 months after plaintiffs filed their first amended complaint. <u>Id</u>. at 54-55. Because the grounds upon which they sought to amend under the Securities Exchange Act were long known to them, they were not entitled to "wait and see" for over one year if the complaint was rejected before filing a second amended complaint. <u>Id</u>.

Here, plaintiff filed its first amended complaint in December, 2022, but did not seek leave for further amendment until more than two years later. That two-year delay in a case that is now nearly three years old tips the balance against allowing further amendment and increases plaintiff's burden to show why such a lengthy delay is not "undue." See <u>Hayes</u>, 602 F.2d at 19; <u>Calderón-Serra</u>, 715 F.3d at 20.

Plaintiff offers no such reason. MW Gestion asserts no newly discovered information that only now permits it to bring claims for interference with business relations and business expectancy, see <u>Amyndas Pharms., S.A.</u>, 48 F.4th at 37, but instead bases its request to amend upon facts known to it since the start of this case. That is precisely the kind of wait-and-see approach that the First Circuit has rejected. See <u>Kader</u>, 887 F.3d at 61.

- 6 -

Much like the plaintiffs in <u>Kader</u>, 887 F.3d at 61, and <u>ACA Fin. Guar. Corp.</u>, 512 F.3d at 55-56, MW Gestion "deliberately wait[ed] in the wings" for over two years and now moves to amend only after the Privy Council reached an adverse decision. At the time plaintiff filed its first amended complaint, it knew that the validity of the Rights Agreement was an issue. By that time, the Antigua case, filed in 2018, had been pending for approximately four years. At no point during that extended litigation, however, did plaintiff seek leave to assert its alternative claims, which would have been permissible and would constitute a commonplace form of pleading. <u>See</u> Fed. R. Civ. P. 8(d)(2).

Plaintiff rejoins that this delay is not undue because it could not have foreseen that the Rights Agreement would be invalidated and, moreover, any delay is attributable to defendants. The facts, however, present a different picture. Although plaintiff is correct that the Antiguan courts initially ruled in its favor, the very pendency of that litigation put the Rights Agreement in jeopardy. <u>See</u> <u>Mogel</u> v. <u>UNUM Life Ins. Co. of Am.</u>, 677 F. Supp. 2d 362, 365 (D. Mass. 2009) (indicating that late-stage request to amend are viewed unfavorably when relevant facts were known to the movant since the start of the case).

If plaintiff believes it has a claim against defendant, irrespective the Rights Agreement, it could, and should, have

stated such a claim during the pendency of this case, even
before this Court entered a stay to await the Privy Council's
ruling. Cf. California ex rel. Wible v. Warner Chilcott PLC, No.
CIV.A. 11-11143-NMG, 2014 WL 1338285, at *2 (D. Mass. Apr. 1,
2014) (finding no undue delay where plaintiff moved to amend
within time to respond to motion to dismiss); Weinreich v.
Brooks, 340 F.R.D. 57, 59 (D. Mass. 2021) (finding no undue
delay where delay resulted from transfer of venue).  Instead,
plaintiff waited for the Privy Council and only after its
adverse decision did plaintiff resort to "Plan B."

    As the First Circuit has warned, permitting a dilatory,
"wait and see" approach to amendment would result in:

> delays, inefficiencies, and wasted work . . . impose
> unnecessary costs and inefficiencies [and place a burden]
> on both the courts and party opponents.

ACA Fin. Guar. Corp., 512 F.3d at 57.  In short, "plaintiffs do
not get leisurely repeated bites at the apple" and, therefore,
plaintiff's motion for leave to amend will be denied. Id.;
Kader, 887 F.3d at 61; see City of Mia. Fire Fighters' & Police
Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 35 (1st
Cir. 2022) (affirming denial of motion for leave to amend where
plaintiffs sought "a third bite of the apple in the form of a
second amended complaint").[2]

---

[2] Because undue delay alone is sufficient grounds to deny leave to amend, see
Calderón-Serra, 715 F.3d at 20, the Court declines to address defendants'
arguments that amendment would result in prejudice or be futile.

## ORDER

For the foregoing reasons, the motion of plaintiff, MW Gestion, for leave to amend (Docket No. 79) is DENIED.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated:  April 23, 2025